ATTACHMENT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-0988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFFS' MOTION TO COMPEL DEFENDANT CHARLES JOHNSON TO
### RESPOND TO POST-JUDGMENT INTERROGATORIES, SIT FOR DEPOSITION,
### <u>AND PRODUCE DOCUMENTS</u>

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully submit this Motion to Compel Defendant Charles Johnson to Respond to Post-Judgment Interrogatories, Sit for Deposition, and Produce Documents.

### INTRODUCTION

After securing a $71 million judgment against Charles Johnson, Plaintiffs served a minimal set of post-judgment discovery: two interrogatories asking Johnson to identify where he banks and his cryptocurrency holdings; a request to sit for a deposition; and a request for documents reflecting his assets. The goal was simple—to identify assets that can be used to satisfy the judgment. The automatic stay under Federal Rule of Civil Procedure 62(a) has expired, and both this Court and the Fifth Circuit have denied Johnson's requests for a stay. Plaintiffs are entitled to enforce their judgment and seek discovery into Johnson's assets.

Johnson has refused to comply with any of this discovery. He has ignored the interrogatories, declined to sit for a deposition, and failed to produce a single document. Worse, and as detailed in Plaintiffs' pending motion for a show-cause hearing, Johnson has mocked his

1

obligations. He has taunted Plaintiffs and their counsel (including threats of ethics complaints and lawsuits), and he has boasted about his defiance publicly to his social media followers.

When Plaintiffs requested dates for a deposition, Johnson responded:

- "Not going to be going to any deposition. But I love that for you." (Ex. C at Appx. 018);

- "You can try but yeah, it's not going to happen." (Ex. C, Appx. 017).

When served with the interrogatories, he replied: "I'm getting advice from the Feds not to talk to you unless it's absolutely necessary." (Ex. G at Appx. 043). And in a recent email to the Court's proposed orders email address, Johnson made his position explicit: "I refused to have my personal files rampaged through by Lambert et al." (Ex. D, Appx. 022). In a November 1, 2025, Substack blog post, Johnson plainly states that he does not want to participate in discovery to prevent Lambert from executing on his assets to fulfill the judgment. "I was correct not to share any data with Lambert's attorney" because "Lambert's attorney wants to know all of my assets. The objective is to take my assets and then try to put me in prison."[1]

Plaintiffs note that they are not filing these motions for sport or academic interest. They are trying to find where Charles Johnson is hiding his assets—assets that would be used to satisfy the $71 million judgment. And Johnson has substantial assets. As detailed in Plaintiffs' motion for a show-cause hearing, Johnson holds at least $1 million in Othram stock and has recently posted about substantial Bitcoin holdings, even though he previously claimed to be penniless and unable to afford counsel. (*See* ECF No. 115 (detailing Othram holdings)).

---

[1] Charles C. Johnson, Life Updates: Moving House and Legal, Substack (Nov. 1, 2025), https://charlesjohnson.substack.com/p/life-updates-moving-house-and-legal.

Johnson claims the Plaintiffs' goal is to send him to jail. However, Plaintiffs' counsel has pleaded with him to comply with the court orders to prevent this possibility, telling him "You said that you would rather go to jail than sit for a deposition. This information request may obviate or delay the need for a deposition. I do not want you to go to jail." (ECF 116-1 at 14).

Indeed, in just the past few weeks, Johnson has recently boasted on social media about his cryptocurrency and stock holdings.

- On an October 13, 2025 podcast, Johnson stated, "Aptera, which is a solar-powered car company, which is something that I invested in a little while ago now, Aptera is going to be publicly listed."[2] Aptera completed its IPO on October 16, 2025.

- On November 2, 2025, Johnson tweeted a "laughing crying" emoji in response to a 2017 post that stated, "Chuck Johnson is heavily invested in bitcoin," when Bitcoin was valued at $3,076.31. (Ex. H at Appx. 047). Bitcoin has been consistently over $100,000 for most of 2025. The unambiguous implication is that Johnson is bragging about his Bitcoin assets.[3]



---

[2] Charles C. Johnson, *Thoughts and Adventures Live: Ep. 2 | His Excellency Trump in the Middle East*, Substack (Oct. 13, 2025), https://charlesjohnson.substack.com/p/thoughts-and-adventures-live-ep-2, at 18:16) (discussing investment in Aptera).

[3] Charles C. Johnson (@realchuckcj), X (Nov. 2, 2025), https://x.com/realchuckcj/status/1985161235768262977,  https://archive.is/DkLx7.

- On November 4, 2025, Johnson posted on X, "This is not a joke. Any of the anti-Zohran Mamdani players want to sell me their condos or apartments?" Once again, Johnson is suggesting that he has substantial liquid assets—enough to purchase New York real estate from individuals leaving the city.[4]

These claims directly contradict Johnson's earlier representations to the Court that he is of "limited financial means" and unable to afford counsel. (ECF No. 10 at 2.) That falsehood—and Johnson's calculated effort to conceal the true extent of his financial resources—underscores the urgent need for the Court to enforce his post-judgment discovery obligations.

## ARGUMENT

"The scope of postjudgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). Federal Rule of Civil Procedure 69 authorizes a creditor, such as Plaintiffs, to conduct post-judgment discovery "to uncover any hidden or concealed assets of the judgment debtor." *T-M Vacuum Prods., Inc. v. Taisc, Inc.*, No. 07-cv-4108, 2008 WL 5082413, at *2 (S.D. Tex. Nov. 25, 2008) (quoting 13 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE-CIVIL § 69.04 (2008)); *see also Republic of Argentina v. NML Cap.*, Ltd., 573 U.S. 134, 138 (2014) (noting that under Rule 69, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive").

"Rule 69 allows post-judgment discovery to proceed according to the federal rules governing pre-trial discovery." *Nat. Gas Pipeline Co. of Am. v. EnergyGathering, Inc.*, 2 F.3d 1397, 1405 (5th Cir. 1993). To that end, Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. "[I]f the party against whom [postjudgment] discovery is sought fails to answer, Rule 37(a)(2)(B) allows the discovering party to move to compel." *United States v.*

---

[4] Charles C. Johnson (@realchuckcj), X (Nov. 4, 2025),
https://x.com/realchuckcj/status/1985751574547710384, https://archive.is/mqKHX.

*Cabelka*, No. 16-cv-00126, 2018 U.S. Dist. LEXIS 104039, at *3, 2018 WL 3423964 (N.D. Tex. May 15, 2018). Under Federal Rule of Civil Procedure 37(a)(3)(B), a party seeking discovery may move for an order compelling an answer or production if "a party fails to answer an interrogatory submitted under Rule 33" or if "a party fails to produce documents . . . as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B).

Johnson has failed to pay the judgment entered against him. Plaintiffs are therefore entitled to engage in post-judgment discovery to identify assets that may be used to satisfy it. *See JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 256 (5th Cir. 2019) ("Rule 69 was intended to establish an effective and efficient means of securing the execution of judgments.") (internal quotations omitted). Plaintiffs properly served Johnson with interrogatories, a request for a deposition, and requests for production—including tax returns. (Exs. A-C, Appx. 005-020).

Johnson has refused to respond in any way to Plaintiffs' valid postjudgment discovery, relying on the (false) claim that a stay is in effect. After Johnson said that a stay was in effect, Plaintiffs reminded him that "[b]oth the district court and the Fifth Circuit have denied your stay" and consequently "you are still obligated to participate in discovery." (Ex. E, Appx. 027). Johnson responded, "Incorrect. That is not what the Fifth Court [*sic*] stated." (*Id.*). But the record is clear that no stay is in place. Plaintiffs are therefore entitled to an order compelling Johnson to comply with post-judgment discovery. *See Cabelka*, 2018 WL 3423964, at *1-2 (granting motion to compel where party failed to respond to postjudgment interrogatories).

Finally, Plaintiffs recognize that Johnson is unlikely to comply with this motion—just as he has refused to comply with every discovery obligation to date. When served with Plaintiffs' discovery requests, Johnson made clear that he had no intention of responding. He explicitly stated

that he would not appear for a deposition, would not answer interrogatories, and would not produce documents. In light of these statements, Plaintiffs anticipate the need to seek further coercive relief, including civil contempt. But before such sanctions may be imposed, a clear and specific court order compelling compliance is required. *See Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) (noting that civil contempt only arises when a court order is in effect).

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant this Motion to Compel and enter an order:

- directing Defendant Charles Johnson to serve complete, verified responses to Plaintiffs' post-judgment interrogatories within five days;

- compelling Johnson to schedule a deposition within five days of this order, to be conducted no later than December 14, 2025; and

- requiring Johnson to produce all documents responsive to Plaintiffs' post-judgment requests for production.

Dated: November 6, 2025                    Respectfully Submitted,

                                           /s/ *Will Thompson*
                                           Will Thompson
                                           DLA PIPER LLP (US)
                                           Will Thompson
                                           State Bar No. 24094981
                                           will.thompson1@us.dlapiper.com
                                           1900 N. Pearl Street
                                           Dallas, Texas 75201
                                           Telephone: (406) 546-5587

                                           COUNSEL FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 6, 2025, a true and correct copy was

served via the Court's electronic filing system and emailed to the defendant.

<u>/s/ *Will Thompson*</u>
Will Thompson

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that he attempted on multiple occasions throughout September, October, and November 2025 to engage with Defendant Charles Johnson regarding his obligations to respond to post-judgment discovery, including Plaintiffs' interrogatories and requests for a deposition and requests for documents. These efforts included direct emails reminding Johnson of his discovery obligations and requesting compliance. Johnson did not respond in good faith. Instead, he threatened the undersigned's law license and made clear—both in writing and in communications to the Court—that he has no intention of complying with discovery. In light of Johnson's repeated refusals and overt hostility, the undersigned certifies that a further meet and confer would have been futile.

/s/ Will Thompson
Will Thompson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| Charles Johnson, | § | |
| *Defendant* | § | |
| | § | |
| | § | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL**
**DEFENDANT CHARLES JOHNSON TO RESPOND TO POST-JUDGMENT**
**INTERROGATORIES, SIT FOR DEPOSITION, AND PRODUCE DOCUMENTS**

Before the Court is Plaintiffs' Motion to Compel Defendant Charles Johnson to Respond to Post-Judgment Interrogatories, Sit for Deposition, and Produce Documents. Having considered the Motion and record, the Court **GRANTS** the Motion. It is therefore **ORDERED** that:

1. Defendant Charles Johnson shall serve complete, verified responses to Plaintiffs' postjudgment interrogatories within five (5) days of the date of this Order;

2. Defendant Charles Johnson shall schedule a mutually agreeable date for his deposition within five (5) days of the date of this Order, and such deposition shall occur no later than December 14, 2025; and

3. Defendant Charles Johnson shall produce all documents responsive to Plaintiffs' post-judgment requests for production within five (5) days of the date of this Order.

SO ORDERED on this the ___ day of November 2025.

_____
Hon. Mark T. Pittman
United States District Judge

ATTACHMENT 2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC, ET AL.,

    Plaintiffs,

v.                             **No. 4:24-cv-00988-P**

CHARLES JOHNSON,

    Defendant.

## ORDER

On November 10, 2025, the Court held a show cause hearing in the above-captioned case regarding Plaintiffs' Motion to Compel Defendant Charles Johnson to Respond to Post-Judgment Interrogatories, Sit for Deposition, and Produce Documents (ECF No. 119). After considering the Motion, the relevant law, this case's posture, and for the reasons stated at the hearing, the Court hereby **GRANTS** the Motion.

Accordingly, the Court **ORDERS** Defendant to serve complete, verified responses to Plaintiffs' post-judgment interrogatories within **five days** of this order. Defendant is also **ORDERED** to attend a deposition on **November 17, 2025, at 8:30 a.m.** in the fourth-floor jury room of the Eldon B. Mahon Federal Courthouse at 501 W. 10th Street, Fort Worth, Texas 76102. Defendant shall also produce all documents responsive to Plaintiffs' post-judgment requests for production at the deposition on **November 17, 2025.**

Additionally, while stated at the November 10, 2025 hearing, the Court finds it pertinent to again remind Defendant that any communication with the Court must be accomplished through filing a motion via the e-filing system, not through letters sent to the Court's proposed orders inbox.

**SO ORDERED** on this **10th day of November 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

ATTACHMENT 3

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC, ET AL.,

    Plaintiffs,

v.                                 No. 4:24-cv-00988-P

CHARLES JOHNSON,

    Defendant.

## ORDER

On November 10, 2025, the Court ordered, among other things, that Defendant attend a deposition on **November 17, 2025, at 8:30 a.m.** in the fourth-floor jury room of the Eldon B. Mahon Federal Courthouse at 501 W. 10th Street, Fort Worth, Texas 76102. ECF No. 129. Due to circumstances outside of the Court's control, the fourth-floor jury room is now unavailable at that time.

Accordingly, the Court **ORDERS** Defendant to attend a deposition on **November 17, 2025, at 8:30 a.m.** in the **third-floor jury room** of the Eldon B. Mahon Federal Courthouse at 501 W. 10th Street, Fort Worth, Texas 76102.

**SO ORDERED** on this **14th day of November 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

ATTACHMENT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC, ET AL.,

    Plaintiffs,

v.                                                          No. 4:24-cv-00988-P

CHARLES JOHNSON,

    Defendant.

## ORDER

The Court is scheduled to hold a hearing on the Motion for Appointment of a Receiver, Thursday, November 20, 2025, at 2:00 p.m. In addition, the Court **ORDERS** Defendant to **SHOW CAUSE** at the hearing for failure to comply in good faith with post-judgment discovery. At the Defendant's deposition on Monday, November 17, 2025, Defendant informed Plaintiff repeatedly that he was there to provide "minimal consent" and incomplete information. ECF No. 136. He also failed to serve the interrogatory responses previously ordered by the Court. ECF No. 136. This behavior is wholly unacceptable.

The Court also has been informed by Court staff that at the deposition, Defendant stole items belonging to the Court, such as mugs and water bottles. Accordingly, the Court also **ORDERS** Defendant to **SHOW CAUSE** at the scheduled hearing for stealing court property.

As a result of these actions, Defendant should be prepared to **SHOW CAUSE** why the Court should not impose additional sanctions up to and including holding him in civil contempt and placing him in the custody of the United States Marshal until he purges himself of his contempt.

**SO ORDERED** on this **19th day of November 2025.**

*Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

ATTACHMENT 5

```
1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF TEXAS

3                    FORT WORTH DIVISION

4   POINT BRIDGE CAPITAL, LLC    )    CASE NO. 4:24-CV-00988-P
    ET AL                        )
5                                )
                                 )    FORT WORTH, TEXAS
6   vs.                          )
                                 )    NOVEMBER 20, 2025
7   CHARLES JOHNSON              )    1:40 P.M.

8
                            VOLUME 1
9               TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE MARK T. PITTMAN
10            UNITED STATES DISTRICT COURT JUDGE

11

12  A P P E A R A N C E S:

13  FOR THE PLAINTIFF:      WILLIAM BENNETT THOMPSON
                            DLA Piper, LLP US
14                          1900 N. Pearl Street
                            Suite 2200
15                          Dallas, Texas  75201
                            Telephone:  214.743.4500
16

17

18  PRO SE DEFENDANT:       CHARLES JOHNSON
                            1624 Fieldthorn Drive
19                          Reston, Virginia 20194
                            Telephone:  617.429.4718
20

21  STAND-BY COUNSEL:       DEVON JUDY SANDERS
                            ASSISTANT FEDERAL PUBLIC DEFENDER
22                          NORTHERN DISTRICT OF TEXAS
                            819 Taylor Street, Room 9A10
23                          Fort Worth, Texas  76102
                            Telephone:  817.978.2753
24

25
```

```
 1

 2   RECEIVERS:              JEFFREY J. ANSLEY
                             ADAM D. FARRELL
 3                           Vedder Price
                             300 Crescent Court
 4                           Suite 400
                             Dallas, Texas  75201
 5                           Telephone:  469.895.4790

 6

 7   COURT REPORTER:         MONICA WILLENBURG GUZMAN, CSR, RPR
                             501 W. 10th Street, Room 310
 8                           Fort Worth, Texas  76102
                             Telephone:  817.850.6681
 9                           E-Mail:  mguzman.csr@yahoo.com

10

11

12   Proceedings reported by mechanical stenography, transcript
     produced by computer.
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                            **INDEX**

2                                        PAGE   VOL.

3    Appearances ................................4     1

4

5    Motion to Appoint Receiver .................7     1

6

7    Motion to Show Cause – Property Taken ......14    1

8

9    Miranda Rights Given .......................17    1

10

11   Court's Ruling .............................22    1

12

13   Motion to Show Cause – Discovery ...........22    1

14

15   Questioning by the Court ...................31    1

16

17   Court's Ruling .............................52    1

18

19   Proceedings Adjourned ......................58    1

20

21   Reporter's Certificate .....................59    1

22

23   Word Index .................................60    1

24

25

```
 1                    P R O C E E D I N G S

 2                 (November 20, 2025, 1:40 p.m.)

 3           THE COURT:  This is Case Number 4:24-CV-988-P, Point

 4      Bridge Capital, LLC, et al vs. Charles Johnson.

 5           Who do I have for plaintiffs?

 6           MR. THOMPSON:  Will Thompson for the plaintiffs,

 7      Your Honor.

 8           THE COURT:  Okay.  Mr. Johnson?

 9           DEFENDANT JOHNSON:  Charles Johnson representing

10      himself, with Ms. Sanders assisting.

11           MS. SANDERS:  I just want to note for the record,

12      Your Honor, I've been appointed for the limited purpose of

13      this hearing.  I do not have Mr. Johnson's permission to speak

14      on his behalf.

15           THE COURT:  You do not or you do?

16           MS. SANDERS:  I do not.

17           THE COURT:  Okay.  Let me -- Ms. Sanders, let the

18      record reflect that I have asked Ms. Sanders -- thank you for

19      being here.  I know that this is the last thing you probably

20      wanted to deal with today, especially because you were with me

21      all morning in a criminal docket.

22           But let the record reflect, I made a request that

23      Ms. Sanders, a very competent Federal Public Defender, show up

24      here today out of abundance of caution, due to some of the

25      past actions that we've seen from Mr. Johnson.
```

1          One of the things that we're going to take up later

2    is going to be contempt.  And I want you here as standby

3    counsel for now.  The first matter I'm going to take up is a

4    purely civil -- it's a receivership motion.  And when I get to

5    the portion that might possibly involve him needing advice on

6    his Constitutional rights, then we'll take that up, okay?

7          *MS. SANDERS:*  Understood.  Thank you, Your Honor.

8          *THE COURT:*  But, again, thank you for being here

9    today.  Again, this is done simply as an abundance of caution.

10         And Mr. Johnson, thank you for being here today.

11         *DEFENDANT JOHNSON:*  You're welcome, Your Honor.

12         *THE COURT:*  All right.  We have several matters to

13   take up today.  And you've heard me express this the last

14   couple of times you've been here, Mr. Johnson, there isn't a

15   lot of time for shenanigans.

16         We do have a very busy docket, I've had a very busy

17   morning.  You have an outstanding $71 million judgment, as I

18   said at the previous hearing, that has not been stayed, has

19   not been superseded.

20         You were involved in every type of avoidance when it

21   came to the underlying case, you would not answer questions,

22   you would not cooperate.  You went through, at least, two

23   attorneys I can think of.  I've admonished you several times

24   that you need to think about trying to find an attorney.  I've

25   threatened you with contempt at various times.

1          I ordered you to appear at the courthouse and answer

2    post-judgment discovery and to give your deposition.  I am at

3    the end of my rope.  I don't have any more patience, and I do

4    not think it would be in your best interest to do what you've

5    done previously with me; and that is, to not answer questions,

6    not cooperate.  It's just not going to end well.

7          I've done everything that I can possibly do to

8    ensure that, not only do you have all the due process that

9    you're entitled under our Constitution and our common law

10   system, but also even more so.  Indeed, I've even asked a

11   public defender to be here today.

12         So, it's probably not going to be in your best

13   interest to do anything other than answer my questions and

14   participate.  We don't have time to listen to stories.  I'm

15   trying to get to the bottom of this.

16         I cannot make it any clearer than I made at the last

17   hearing, that you have a $71 million judgment, the plaintiffs

18   are entitled to collect on that judgment, and they're entitled

19   to post-judgment discovery to determine what assets you have.

20         Thus far, you have been absolutely, 100%

21   uncooperative.  As a result of that, the plaintiffs have filed

22   a motion for a receivership.  Now, a receiver is appointed by

23   the Court to, basically, take control of your assets and your

24   estate, and determine what's out there and what is subject to

25   the judgment that the plaintiffs have.

1          The motion that has been filed by the plaintiffs

2     appears very meritorious to the Court.  Indeed, you said at

3     the last hearing that we had about, I believe it was a little

4     over a week ago, that you would not object to the appointment

5     of a receiver.  And I have done my best to try and identify

6     some attorneys and some law firms that I know have the ability

7     to serve as receiver in this case that I believe are best

8     suited to do so.

9          If we would like to hear argument on the receiver,

10    I'd be happy to hear it.  But I think it might be best for me

11    to ask you, Mr. Johnson, Are you going to object?  Because you

12    did not file a response to the motion to appoint a receiver

13    filed by the plaintiffs.  Are you objecting to the appointment

14    of a receiver of your estate?

15          *DEFENDANT JOHNSON:*  No objections, Your Honor.

16          *THE COURT:*  Okay.  You need to be sure you stand

17    when you address the Court.

18          *DEFENDANT JOHNSON:*  Oh, sorry, yes.

19          No objections, Your Honor.  I don't think it will be

20    totally necessary, but they're *(sic)* happy to comb through all

21    of my assets.

22          *THE COURT:*  Okay.  No need to engage in a colloquy

23    with the Court.

24          *DEFENDANT JOHNSON:*  No objection.

25          *THE COURT:*  No objection.

1    Mr. Thompson, before I make my ruling on the

2    unopposed motion, is there anything you'd like to say with

3    regards to the appointment of the receiver?

4    *MR. THOMPSON:*  No, Your Honor.  We'll just stand

5    on -- on our motion for receiver and the supplement that we

6    filed.  We think a receiver is necessary, even more so

7    following the deposition.  We have no objection to the

8    tentative recommendations that Your Honor cited for the

9    receiver, and we're happy to go forward.

10    *THE COURT:*  Okay.  Well, I'd like to take this like

11    the old Johnny Cash song, One Piece at a Time; let's do it one

12    piece at a time, and we'll gradually get to the end, okay?

13    So, hearing no objection, and having reviewed the

14    carefully filed and constructed motion for receiver filed by

15    the plaintiffs, the Court's determined that it is appropriate

16    in this case, that all of the legal requirements for the

17    appointment of a receiver have been met in this case, it's not

18    been objected to by Mr. Johnson.

19    Now, Mr. Johnson, the Court, after much study and

20    consideration, has determined the appropriate folks to appoint

21    as a receivership in this case, both to protect you and to

22    protect the plaintiffs -- and again, you should take comfort

23    in the fact that I have a lot of respect and admiration for

24    Mr. Robert Webster, who was suggested by the plaintiffs.  But

25    out of abundance of caution, quite frankly, given your

1  proclivity to engage in conspiracies and to feed conspiracy

2  theories, I went an entire different direction and decided not

3  to appoint Mr. Webster.  Although, I've known Attorney Webster

4  for almost 20 years, and I can assure you no one is better

5  suited to serve as a receiver, and certainly look out for your

6  interests, as well as the Court's and the plaintiffs'.

7          But partially, at least, in consideration from some

8  of your concerns, I've decided that the receiver that I will

9  appoint in this case is the law firm of Vedder Price.  I've

10 asked the two attorneys over there that will be conducting and

11 be appointed as receiver in this case to please appear at the

12 hearing today.  I see that they're out there.

13         Mr. Ansley, would you please step forward, along

14 with Mr. Farrell.

15             *(Attorneys approach the bench)*

16         *THE COURT:*  Why don't both of you two make an

17 appearance on the record, just so it's clear.

18         *MR. ANSLEY:*  Yes, Your Honor.

19         *THE COURT:*  I don't believe I'll need to hear

20 anything else from you.  But make your appearance, and if I

21 need anything, or we need you later, it's good that you're

22 here.

23         Thank you, Mr. Ansley.

24         *MR. ANSLEY:*  Jeff Ansley with Vedder Price.

25         *MR. FARRELL:*  Good afternoon, Judge.  Adam Farrell

1    with Vedder Price.

2          *THE COURT:*  All right.  Thank you, gentlemen.  If

3    you'll have a seat at counsel table.

4          So, in choosing the law firm of Vedder Price, and

5    Mr. Ansley and Mr. Farrell, to serve as your receiver, again,

6    I did this trying to find the most capable folks to serve as

7    receiver while still maintaining your interest.

8          Mr. Ansley is a longtime prosecutor, criminal

9    defense attorney, as well as commercial litigation attorney

10   here in the Dallas/Fort Worth area.  He's not only served at a

11   large law firm here in Fort Worth for a number of years, but

12   he also has experience both at the Security and Exchange

13   Commission, the U.S. Attorney's Office, and he is a longtime,

14   well-respected criminal defense attorney in the white-collar

15   space.  So, I thought he would be perfect for this.  Unlike,

16   perhaps, maybe Mr. Webster, he also has a staff that can look

17   into the assets in this case and pursue correct claims.

18         I believe, Mr. Ansley, that I saw a release

19   recently, I believe you-all have hired an additional former

20   Assistant U.S. Attorney that dealt with questions involving

21   the affirmative civil enforcement division; is that correct?

22         *MR. ANSLEY:*  That's correct, Your Honor.  We hired

23   Andrew Robbins from the U.S. Attorney's Office in Dallas.

24         *THE COURT:*  I'm obviously not going to direct the

25   receiver as how to staff your cases.  But having been at the

1  U.S. Attorney's Office several years ago, I can tell you, as
2  you well know, too, Mr. Ansley, that attorney would certainly
3  have the ability to be able to look at assets and determine
4  what's recoverable from a judgment and what's not.
5        MR. ANSLEY:  *(Nods head)*
6        THE COURT:  So, I was glad -- that was another thing
7  that played into my reason to appoint you-all.  Thank you.
8        Mr. Farrell is well-known here in Fort Worth.  He
9  was a law clerk for the Honorable Reed O'Connor, the Honorable
10  Terry Means, and he also did some work for me.  I know him to
11  be honest and forthright.
12        He's also a retired Air Force captain, where he was
13  a prosecutor, and has experience in both prosecution and
14  defense work, as well as advising the highest levels of
15  command in the Pacific Ocean Command for the Air Force on
16  various strategic decisions.
17        Is that a good way to put it, Mr. Farrell?
18        MR. FARRELL:  Yes, Your Honor.
19        THE COURT:  And he's, I believe, been at Vedder
20  Price for several months.  So I thought that he would be a
21  good person to deal with this, too.  Like Mr. Ansley, I
22  personally know him to be honest and forthright.
23        And I can assure you, Mr. Johnson, that both of
24  these individuals are there not only to determine what assets
25  you have and what is appropriate, but they're also not going

1   to be conceding that any assets that would not be subject to

2   the judgment; if they are exempt, they won't be going after

3   them.  So they are very well versed in this kind of thing.

4           But, unfortunately, when you have a judgment -- I

5   warned you about this several months ago, when you represented

6   yourself in trial.  When you have a judgment against you and

7   you don't stay the judgment or supersede the judgment, it is

8   collectible; and that's where we are.  And you have not been

9   cooperative, and I am left with no other choice but to do

10  this.  And again, I'll note that you haven't objected to it.

11          So, effective here on out, after this hearing today,

12  I will be signing the proposed order for a receiver that

13  Mr. Thompson submitted, giving all those powers listed therein

14  to the two receivers.  It might be a good idea for you to

15  visit with them at some point today.

16          Mr. Thompson, do you have any questions for me?

17          *MR. THOMPSON:*  No, Your Honor.

18          *THE COURT:*  Okay.

19          *MR. THOMPSON:*  On the receiver aspect of it.

20          *THE COURT:*  And probably a good idea for you to

21  visit with the receivers as well.

22          But these two gentlemen and their law firm stand

23  effectively into the shoes of the Court.  They are effectively

24  appointed as my officers to go out and determine what assets

25  you have and what is recoverable, because you've refused to

1   cooperate.  And to the extent that you don't cooperate with

2   them, I'm sure that they will let me know.

3           Do my receivers have any questions for me?

4           *MR. ANSLEY:*  No, Your Honor.

5           *THE COURT:*  All right.  Thank you, gentlemen.

6           *DEFENDANT JOHNSON:*  May I ask a question, Your

7   Honor?

8           *THE COURT:*  Yes, sir.

9           *DEFENDANT JOHNSON:*  So, I have a fiancee that is

10  pregnant that has like difficulties, and if it's possible with

11  the receivers, I'd prefer not to be coming down to Fort Worth

12  and Dallas, if we can do it over the phone.  Is that possible?

13          I'm happy to send them all my assets.  I have no

14  objection to them, and, frankly, kind of happy that you chose

15  them.

16          *THE COURT:*  I'll let you visit with them.

17          *DEFENDANT JOHNSON:*  Okay.  Thank you.

18          *THE COURT:*  As I said, they effectively stand in my

19  shoes.  I've known both of these individuals over here for --

20  at least Mr. Ansley, for probably almost 30 years.  I can

21  assure you, if you cooperate with him, he'll cooperate with

22  you, okay?

23          *DEFENDANT JOHNSON:*  Okay.

24          *THE COURT:*  All right.  Now let's take up our

25  remaining issues.

1        In addition to having a hearing today with regards

2   to plaintiffs' motion for a receiver, the Court has also

3   ordered defendant to appear today and show cause why he

4   apparently failed to comply in good faith with the order that

5   I entered that he had to comply with post-judgment discovery.

6        And that not only deals with the failure to answer

7   interrogatories, written discovery information regarding his

8   assets, but also his failure to answer questions at the

9   deposition that was noticed to take place at the courthouse on

10  Monday.

11       Counsel for plaintiff has submitted a rough draft of

12  the deposition, and I've had a chance to review it.  And the

13  only thing that I can say to describe your behavior in the

14  deposition, Mr. Johnson, is that you were either unresponsive,

15  or obstructive throughout the deposition, and it was largely a

16  complete waste of time.  And the transcript speaks for itself.

17       It was also brought to my attention, and this is

18  part of the order causing you to appear today, that certain

19  items showed up missing from Judge O'Connor's jury room; and

20  that would be all of the water the taxpayers had paid for for

21  our jurors, and then also there was mug that was taken.

22       Why don't we do, as I said, the Johnny Cash method,

23  and take up the alleged theft of Government property first.

24  And before I do that, as I said, out of abundance of caution,

25  before I consider your response to the allegation that you

1  stole Government property from the jury room, I think it might

2  be ideal for me to formally appoint Ms. Devon Sanders, one of

3  our best Federal Public Defenders here in Fort Worth.  And I

4  will appoint her as standby counsel in this case.  And she is

5  there if you have any questions about your Constitutional

6  rights.

7              *DEFENDANT JOHNSON:*  No, Your Honor.  I can clear it

8  up, rather quickly, if you'd like.

9              *THE COURT:*  Would you like to visit with her?

10             *DEFENDANT JOHNSON:*  No, I don't.

11             *THE COURT:*  So you don't choose to use her services?

12             *DEFENDANT JOHNSON:*  Correct.  I'm happy to have her

13 present next to me, but I don't need her services.

14             *THE COURT:*  Okay.

15             *DEFENDANT JOHNSON:*  If I may very quickly?

16             *THE COURT:*  No, you may not.

17             *DEFENDANT JOHNSON:*  Okay.

18             *THE COURT:*  I'm still talking to you.

19             Ms. Sanders, have you had a chance to at least maybe

20 visit with him about his rights under the Fifth Amendment, or

21 should I give him his Miranda warnings at this time?  It

22 sounds like he's declined to have you represent him, so I hate

23 to put you in a spot.  I would like for you to remain as just

24 standby counsel.

25             *MS. SANDERS:*  Absolutely, Your Honor.

1          I have communicated with Mr. Johnson.  But I agree,

2   out of an abundance of caution, if you could give him those

3   warnings, I think that might be best for everyone involved.

4          THE COURT:  I think so, too.

5          DEFENDANT JOHNSON:  Just to be clear, I checked my

6   Miranda rights this morning, and I'm happy to waive them.  I'm

7   happy to speak on my own behalf.

8          (Discussion between defendant and counsel)

9          DEFENDANT JOHNSON:  Yes, Your Honor.

10         So --

11         THE COURT:  Wait.  Be careful.  I'm really, really

12  -- this is it for you, buddy.  I'm trying to be patient, but

13  I've been dealing with this for at least nine months, okay?

14         DEFENDANT JOHNSON:  Yes, Your Honor.

15         THE COURT:  I want to make sure -- Ms. Sanders,

16  thank you for, again, being here and trying to admonish

17  Mr. Johnson, although he's not your client.  Sounds like he

18  doesn't want your advice.  It's one thing to say that to the

19  Court-appointed attorney, its another to me.

20         I am going, at this time, to read you your rights

21  under the famous United States vs. Miranda case regarding your

22  rights -- I'm sorry, Miranda vs. Arizona case, regarding your

23  rights under the Constitution when it comes to

24  self-incrimination.

25         I would ask that you please listen carefully.  You

1  said that you understand these rights?

2              *DEFENDANT JOHNSON:*  I do, Your Honor.

3              *THE COURT:*  Okay.  Well, let me read them to you,

4  and I'll ask you a follow-up question.

5              Mr. Johnson, you have the right to remain silent.

6  Anything you say can and will be used against you in a court

7  of law.

8              You have the right to speak to an attorney, and have

9  an attorney present during questioning.  If you cannot afford

10 a lawyer, one will be provided for you at Government expense.

11             Do you understand those rights as I've read them to

12 you?

13             *DEFENDANT JOHNSON:*  I do and I waive them.

14             *THE COURT:*  And you understand that if you so

15 desire, I will take a break and let you visit with Ms. Sanders

16 and we'll appoint her to act as your attorney?

17             *DEFENDANT JOHNSON:*  I do, Your Honor.  And she's not

18 necessary at this time.

19             *THE COURT:*  Okay.  Please answer questions yes or no

20 and that goes for the remainder of the hearing.

21             *DEFENDANT JOHNSON:*  Yes.

22             *THE COURT:*  I want you to go over to the podium.

23             *DEFENDANT JOHNSON:*  Okay.

24             *THE COURT:*  Why don't you grab the mug there.

25             As I said, let's take up the issue of the property

1   that was allegedly removed from the jury room.

2           Did you remove the items as I've described them?

3           *DEFENDANT JOHNSON:*  I did, Your Honor.

4           *THE COURT:*  Okay.  It's your opportunity to show

5   cause.  Why did you do that?

6           *DEFENDANT JOHNSON:*  Several reasons.

7           One, I asked previously if anything that was in the

8   kitchenette was mine to take; and I was informed that, yes, I

9   could.  I then asked about the mug, but there is no sink in

10  the kitchen.  And so I went back and took the mug back to my

11  hotel room, bought some dish soap -- and gave four water

12  bottles that I had taken previous -- or that I had taken, and

13  gave two of them to some homeless people outside of my

14  courtroom -- or outside of the Courtyard Marriott, where I was

15  staying.  I then gave two more to other homeless people in the

16  area.

17          Since this trial has begun --

18          *THE COURT:*  So you removed Government property, and

19  you took the water bottles and gave them to homeless folks.

20  And you took a mug and took it back and washed it?

21          *DEFENDANT JOHNSON:*  Correct.

22          And I brought some tea with me, because there's no

23  tea options -- not a lot of healthy options in the courthouse.

24          So, I was there for six hours.  I think I --

25          *THE COURT:*  This was not meant as a spa trip.  This

1  was meant for you to actually answer truthfully the questions.

2          *DEFENDANT JOHNSON:*  Yes.

3          *THE COURT:*  And you're saying somebody in the Court

4  staff told you that you could use Government property, and you

5  could take the water bottles and give them away and you could

6  take the mug back to your hotel?

7          *DEFENDANT JOHNSON:*  They never said that I could

8  take it back to my hotel.  But they did say -- I did ask if

9  everything that was in that room was mine to use.

10         *THE COURT:*  Okay.

11         *DEFENDANT JOHNSON:*  I'm perfectly willing to go down

12 to county lockup over a mug, which has been returned.

13         *THE COURT:*  Let me --

14         *DEFENDANT JOHNSON:*  The same with the water bottles,

15 I'm perfectly willing to sit before a jury --

16         *THE COURT:*  You have a tendency not to know when to

17 be quiet, okay?

18         *DEFENDANT JOHNSON:*  Yes.

19         *THE COURT:*  I'm trying to be as polite as possible.

20         *DEFENDANT JOHNSON:*  Actually, I didn't steal a

21 Bible, it was returned to me by one of the --

22         *THE COURT:*  Again --

23         *DEFENDANT JOHNSON:*  -- homeless people I gave it to.

24         *THE COURT:*  -- please be quiet unless there's a

25 question outstanding.  You can have a seat.

1          *DEFENDANT JOHNSON:*  Thank you.

2          *THE COURT:*  Mr. Thompson, do you care to respond to

3    this?  You would have been there.

4          *MR. THOMPSON:*  Yes, I do.

5          I disagree with Mr. Johnson's statements.  As to the

6    water bottles, I don't recall anyone saying anything.

7          I did have a recollection about the mug, because I

8    was in the discussions.  It was four people there, myself, the

9    court reporter, the videographer, and Mr. Johnson.  The

10   deposition had concluded, or at least I called time on it when

11   he, it was clear, wasn't going to answer the questions.

12         He said, I'd like a souvenir for my time here.  And

13   he brought the mug that he had with him, he says -- I said --

14   he says, Can I take it?  I said, I don't think so, it's not

15   yours.  I specifically said, It's not your mug.  And I said,

16   why would you want it?  I said, I don't know why you want to

17   take it because it's a Tarrant County Bar Association mug.

18         And I distinctly recall, and I wrote this down,

19   Mr. Johnson saying, Well, I suppose it is better to ask for

20   forgiveness than to ask for permission, or maybe it's easier

21   to ask for forgiveness than it is permission, and then walked

22   out.  And then made another quip, because Mr. Johnson at the

23   deposition had said, repeatedly, that he might be called in

24   for a show cause hearing, but he wouldn't -- there would be no

25   -- he could always leave.  He mentioned having -- the worst

1    thing that would come about it is he'd have to eat some food

2    he shouldn't have to.  But he says, I guess this will be my

3    mug shot; and he kind of held that up.

4         *THE COURT:*  It's a pretty clever pun.

5         *MR. THOMPSON:*  And, Your Honor, I didn't print it

6    out, but I read Mr. Johnson's social media Substack, and he

7    posted a picture with the mug, and said, This is my mug shot,

8    and just, you know -- but that's all I have to say.

9         I disagree with Mr. Johnson's characterization.

10   Neither myself, nor the court reporter, nor the Court staff,

11   ever granted him any type of permission; and instead we said

12   it was not his mug.

13        *THE COURT:*  Thank you.

14        I hate to do this to the Court Security Officer.

15   But does Mr. Johnson's story about a court staff person

16   telling him that he could make use of the kitchenette sound

17   credible to you, given that either you or one of your officers

18   down there you supervise are the one that led him up to the

19   kitchenette and the jury room?

20        *SECURITY OFFICER:*  No, sir.  It is not.

21        I, myself, escorted Mr. Johnson to Judge O'Connor's

22   jury room on the third floor.  I advised Mr. Johnson where the

23   men's room was, adjacent to the jury room, and indicated rooms

24   where he would be deposed, and advised him to remain in that

25   area until the conclusion of the deposition.

1    *THE COURT:*  Thank you, Officer.

2         Mr. Johnson, having heard the response to the show

3    cause order, having heard from Mr. Thompson and the Court

4    Security Officer as to their version of what happened, and,

5    quite frankly, having worked in this building for the past six

6    and a half years, and knowing that even the Judge can't take

7    water from the jury room, I am deeply disturbed by the fact

8    that you undertook these actions.

9         This was not meant for you to come up here and make

10   a joke of this.  And it seems like that's all you have been

11   able to do.  I think that the least severe sanction that I can

12   think of to correct the behavior, and that would be, frankly,

13   I can't think of another word for it, but stealing Government

14   property, would be a $1,000 fine, due and payable immediately

15   at the conclusion of this hearing down in the Clerk's Office,

16   for removing those items without permission.

17        So that's Johnny Cash's first piece of the Cadillac.

18   Let's go to the second piece.  You've also been ordered to

19   show cause, and this is the second time, as to why you did not

20   make a good-faith effort to comply with the post-judgment

21   written discovery.

22        Based on the current filings before the Court, you

23   still have not answered, for example, the interrogatories.

24   We're not taking the deposition up at this time, as I said,

25   this is the second piece of the Cadillac that we're trying to

1  put together here.  I only care about the -- what is it,

2  Mr. Thompson, do we have two outstanding orders or one at this

3  point that he comply with post-judgment discovery?  I have the

4  original order, and then the second one from the last hearing;

5  is that correct?

6          *MR. THOMPSON:*  That's my understanding, Your Honor.

7          *THE COURT:*  Okay.  So why don't you frame it for us,

8  and then we'll allow Mr. Johnson to respond.  But is the

9  Court's statement correct, that there has been absolutely no

10 compliance with the Court's two orders and admonishments, and

11 we do not have answers to that written discovery?

12         *MR. THOMPSON:*  Yes, Your Honor.

13         A little color on that.  As to the order,

14 plaintiffs, last week -- or the week before, had moved to

15 compel Johnson to enter -- excuse me, answer two

16 interrogatories as to his assets and also his cryptocurrency

17 holdings.  Your Honor granted that after the November 10th

18 hearing.  Those were never answered.

19         Mr. Johnson, at the deposition, didn't bring those

20 interrogatory answers.  Those were due on the previous

21 Saturday.  Your Honor ordered them five days from November

22 10th.  We didn't receive anything, he did not bring them to

23 the deposition.

24         What he said was, he gave that -- he gave them to

25 his dad to mail.  And I just checked, five minutes before our

1    hearing, at 2:00 today, and my office had not received any

2    mail related to these interrogatories.  Mr. Johnson also

3    provided no proof that he had mailed them.  So that's the

4    answer on the interrogatories.

5         I guess the only corollary to that is --

6         THE COURT:  And he swore under oath -- I'm assuming

7    you swore him in at the deposition -- to this story?  Was this

8    story on the record?

9         MR. THOMPSON:  This story was under oath.  He was

10   sworn in by the court reporter.

11        THE COURT:  And that's evidenced by the rough

12   transcript that you filed with the Court; is that correct?

13        MR. THOMPSON:  Correct, Your Honor.  We requested

14   the rush transcript on that, it was long.

15        But multiple times I noted to Mr. Johnson that -- at

16   the very beginning, outset of the deposition, I said that the

17   oath that he swore in that deposition was the same as if he

18   was before Judge Pittman in the courtroom; and Mr. Johnson

19   said that he understood that.

20        Mr. Johnson has like -- said that he would answer

21   minimal questions about his assets.  The word that he

22   repeatedly used was, I think, "Minimal compliance."  And I

23   discuss that more in Docket Entry 131, our supplement -- or

24   excuse me, Docket Entry 136, plaintiffs' supplement to support

25   a motion to appoint a receiver.

1          I asked Mr. Johnson what minimum compliance was; he

2     said, Well, it's the absolute minimum.  So I said, You're not

3     going to tell me about all your assets; and he said something

4     along the lines of that's correct.

5          *THE COURT:*  And again, so our record is clear, we're

6     just talking about the written discovery.  I'll get to the

7     deposition.

8          *MR. THOMPSON:*  Sure.  Absolutely.  So, that's the

9     answer on the interrogatories.

10          Your Honor's order on plaintiffs' motion to compel

11     post-judgment discovery also compelled Mr. Johnson to bring

12     certain documents to the deposition, to show up to the

13     deposition with those documents.  Included within the

14     plaintiffs' request Mr. Johnson was ordered to produce were

15     tax returns; he produced nothing.  Again, citing to some

16     unnamed government authority that he was operating under.

17          That is the best summary of Mr. Johnson's compliance

18     with Your Honor's orders on the production of interrogatories

19     and outstanding document requests.

20          *THE COURT:*  Okay.

21          All right.  Mr. Johnson, it's been laid out by both

22     the Court and Mr. Thompson.  Please approach the stand, and

23     let's have your opportunity to show cause.  And again --

24          *DEFENDANT JOHNSON:*  Sure.

25          *THE COURT:*  -- I don't need a long colloquy.

1    *DEFENDANT JOHNSON:*  Very -- very quickly.

2    *THE COURT:*  Stop.

3    *DEFENDANT JOHNSON:*  Sorry.

4    *THE COURT:*  We're only dealing with the written

5    discovery, and that includes the documents you were supposed

6    to bring to your deposition, that includes the orders that you

7    were subject to to answer the post-judgment discovery.

8         I've read the deposition transcript.  As I said, you

9    were unresponsive and obstructive to each and every question

10   dealing with the written discovery.  Mr. Thompson has said you

11   didn't bring any requested documents, the ordered documents,

12   rather, to the deposition.  And this is part of the reason

13   necessitating the appointment of a receiver.

14        So, it's your chance, tell me why you should not be

15   sanctioned and/or held in contempt.

16   *DEFENDANT JOHNSON:*  Very simply, Your Honor.  You

17   said at the last hearing that we came together that you would

18   stop the abuse and harassment that would take place in the

19   discovery where there were questions that were asked that had

20   nothing to do with my post-judgment assets.  And there were,

21   quite a number of questions.  My relationship with the FBI, my

22   relationship with somebody who's currently facing criminal

23   charges, there were quite a number of questions.  It went on

24   for six hours, which is probably why I wanted the water.

25        And so, yes, there is an abuse of process that's

1    been going on, the abuse of process started when I --

2              THE COURT:  Did you bring any documents with you?

3              DEFENDANT JOHNSON:  I did not, Your Honor.

4              THE COURT:  Did you answer interrogatories?

5              DEFENDANT JOHNSON:  I did answer the interrogatories

6    when he asked them in the room, yes.  And I did answer them,

7    and I did --

8              THE COURT:  We'll get to the deposition in a moment.

9              DEFENDANT JOHNSON:  Yeah.

10             THE COURT:  Okay.  That is absolutely noncompliant.

11   So you've violated two of my orders.  And I'm left with no

12   other choice but to hold you in contempt for failure to comply

13   with the ordered post-judgment discovery and providing those

14   documents, you were ordered to do so.

15             So we're going to put that aside.  You can have

16   another seat.

17             DEFENDANT JOHNSON:  Okay.  Thank you.

18             THE COURT:  Johnny Cash is going to try to put the

19   bumper on his Cadillac.  We're going to talk about the

20   deposition and what went on at the court-ordered deposition.

21             And Mr. Thompson, I don't think I need you for this,

22   but I am going to need Mr. Johnson.  Out of abundance of

23   caution, you were specifically ordered to comply with the

24   written discovery and bringing the various documents; you've

25   told me today you didn't do it.  The best thing I can get out

1    of you as an excuse, is that you have some sort of FBI/CIA

2    handlers or something that's forbidding you to do that.

3         Here in the United States, even if that's true, the

4    judiciary is a coequal branch of government with the executive

5    branch or the legislative branch, and I have authority to

6    order you to do this and to produce this.  You haven't done

7    it.

8         I have taken several hours out of my day.  As you

9    know when you were here last time, I just got out of a

10    week-and-a-half-long trial.  This morning was spent sentencing

11    various criminal defendants.  But I have managed to take home

12    your deposition transcript and exhaustively read it; taking

13    time away from my family.

14         I cannot say anything else, other than regarding

15    matters that you were ordered to respond to, you were

16    consistently unresponsive, obstructive during that deposition.

17    So at this time, I am asking you to come take a seat on our

18    witness stand.  Out of abundance of caution, before I announce

19    my final decision and what will happen to you for being held

20    in contempt, I would like to give you one last opportunity to

21    comply with the Court's orders concerning the disclosure of

22    your assets.

23         So come up to the witness stand.

24              *(Defendant approaches the stand)*

25              *THE COURT:*  Before you take a seat, sir, raise your

1   right hand.

2           *(Witness sworn)*

3           *THE COURT:* Have a seat.

4           All right.  Be sure you speak into the microphone,

5   so Monica can hear.

6           Now, as I said, I've spent several hours reviewing

7   the deposition transcript, as well as the matters before the

8   Court today.  I have taken a very close look at the deposition

9   transcript.

10           I want to note for the record at this time that your

11   answers to several of the financial questions were evasive, at

12   best.  You repeatedly refused to provide information on the

13   basis of your alleged government contracts -- contacts, and

14   you frequently interrupted Mr. Thompson and diverted to

15   unrelated narratives and nonsense.

16           Today, you're asking questions that I am -- I am

17   asking you questions and I am not the attorney.  I'm telling

18   you, you had better give me clear, direct and complete

19   responses to my questions.

20           So what I have done, Mr. Thompson, I went and

21   reviewed your deposition transcript, I don't know how any

22   counsel of any experience could have gotten through this.

23   What a difficult task for you.  I can't imagine being any more

24   frustrated, so I commend you for your patience.

25           I have picked out what I think are the most

1    pertinent questions that were unanswered at the deposition,

2    and I'm about to go through those.  But I want to let you

3    know, because Mr. Johnson was so obstructive, that I did my

4    best to try to draft the questions in the same way that you

5    stated them, but just, quite honestly, it was hard for you to

6    get any questions out.  So I have drafted the questions as

7    best I can with an eye towards that.

8         *MS. SANDERS:*  Your Honor, may I briefly approach the

9    witness?

10         *THE COURT:*  The witness has said he doesn't want to

11    consult you.

12         *MS. SANDERS:*  Just for a brief minute.

13         *THE COURT:*  Out of abundance of caution, I'll let

14    you.  But I'll note, that so far Mr. Johnson has refused to

15    take your advice or allow you to represent him.  So I'll do it

16    one time, okay?

17         *MS. SANDERS:*  Thank you.

18              *(Discussion between defendant and counsel)*

19         *THE COURT:*  Ms. Sanders, I don't want to ask you

20    what you advised Mr. Johnson, but, again, my understanding is

21    he's refusing to allow you to act as his attorney; is that

22    correct?

23         *MS. SANDERS:*  Yes your Honor.

24         *THE COURT:*  Okay.  All right.  Thank you, though,

25    again, for being here.

1          Let me ask you a few questions, answer them fully

2    and responsively.  And I'll preface this again by saying, if

3    you don't know the answer, or you're not allowed to disclose

4    pursuant to your alleged government contacts, that's not going

5    to cut it.  Do you understand that?

6          *DEFENDANT JOHNSON:*  I do, Your Honor.

7          *THE COURT:*  Okay.  Listen very closely.

8          In your deposition you stated multiple times that

9    you intended to be only, "Minimally compliant," and would not

10   -- and would provide, "not complete information" -- again, I'm

11   quoting directly from your deposition transcript "in response

12   to the Court's discovery orders."

13         The Court requires full compliance and complete

14   responses regarding your financial information.  Are you now

15   prepared to provide a complete, detailed and accurate account

16   and information about your finances?

17         *DEFENDANT JOHNSON:*  I am to the -- to those

18   gentlemen there.  Is that who I'm supposed to interact with?

19         *THE COURT:*  You're here today to answer this.

20         *DEFENDANT JOHNSON:*  Yes.  I am prepared.

21         *THE COURT:*  Okay.  All right.  Thank you.

22         Have you transferred, moved, or otherwise disposed

23   of any assets for the purpose of placing them beyond the reach

24   of Point Bridge Capital or Mr. Hal Lambert, the plaintiffs in

25   this case?

1          *DEFENDANT JOHNSON:*  No.  I have not, Your Honor.

2          *THE COURT:*  Okay.

3          Have many -- how many government trusts do you own

4    and how many are you a beneficiary of?  So how many trusts do

5    you currently own and how many are you the beneficiary of?

6          *DEFENDANT JOHNSON:*  On the government trust side, I

7    don't know the answer.

8          *THE COURT:*  Well, do you have a guess for us?  More

9    than two?

10         *DEFENDANT JOHNSON:*  They were set up for me by other

11   people, so I don't know the answer to that question.

12         *THE COURT:*  Well, I'm asking you to tell me how many

13   you think there might be.  One, two, three, four?

14         *DEFENDANT JOHNSON:*  Maybe one, maybe two.

15         *THE COURT:*  Maybe one, maybe two?

16         *DEFENDANT JOHNSON:*  I don't know.

17         *THE COURT:*  Maybe ten?

18         *DEFENDANT JOHNSON:*  I don't know.

19         *THE COURT:*  Less than ten?

20         *DEFENDANT JOHNSON:*  Well, every time something is

21   done, typically there's a -- there's a asset -- or there's an

22   account that's set up for them.  So I wouldn't know the answer

23   to that question.  I'm not -- I'm not in charge of that.

24         *THE COURT:*  And these are trusts that are held in

25   your benefit?

1          *DEFENDANT JOHNSON:*  I don't think so, Your Honor.  I

2     think they're held for the benefit of things that are done for

3     the government.

4          *THE COURT:*  Explain that.

5          *DEFENDANT JOHNSON:*  So my understanding is that when

6     there's work that's done on behalf of the U.S. Government,

7     there are trusts that are oftentimes created for individuals

8     who act as custodians, or they use that money for the

9     operation or for what's going on.  So I don't think that that

10    money is mine per se.

11         *THE COURT:*  Are you talking about for clandestine

12    activities?

13         *DEFENDANT JOHNSON:*  Not necessarily clandestine, but

14    for all kinds of manners.  Yeah, I don't know the answer to

15    the question, that's why I couldn't answer it the other day.

16         *THE COURT:*  Can you identify those trusts for us?

17         *DEFENDANT JOHNSON:*  I cannot, Your Honor.  I don't

18    know them.

19         *THE COURT:*  But you do know that you have them?

20         *DEFENDANT JOHNSON:*  I do know that somebody who

21    worked -- that I worked with told me that he had set them up

22    on my behalf and on behalf of my ex-wife and daughter.

23         *THE COURT:*  Who told you this?

24         *DEFENDANT JOHNSON:*  I will not say.

25         *THE COURT:*  You're refusing to answer the question;

1    is that correct?

2            *DEFENDANT JOHNSON:*  I am, Your Honor.

3            *THE COURT:*  Okay.  Moving on.

4            How many trusts do you know of that you are the

5    beneficiary of?  And that might include something that maybe

6    your parents, or grandparents, or other family members might

7    have set up for you.

8            *DEFENDANT JOHNSON:*  I think I'm the beneficiary of

9    one that my father set up, but I don't know.

10           *THE COURT:*  How do you not know whether you're the

11   beneficiary of a trust?

12           *DEFENDANT JOHNSON:*  Typically, we are WASPs, we

13   don't really talk about that sort of thing.  We usually find

14   out when people die.

15           *THE COURT:*  That's not been my experience in 50

16   years, but -- so you don't know whether you have -- you're a

17   beneficiary of a trust or not?

18           *DEFENDANT JOHNSON:*  Correct.  I have my own trust.

19           *THE COURT:*  Okay.  Tell us --

20           *DEFENDANT JOHNSON:*  Which is --

21           *THE COURT:*  -- tell us about your own trust.

22           *DEFENDANT JOHNSON:*  Which is Xavier Capital Trust,

23   and it has two assets in it.

24           *THE COURT:*  Tell us the assets.

25           *DEFENDANT JOHNSON:*  They are the Clearview AI stock

1    and they're the Othram stock.

2            THE COURT:  And were these trusts -- you set these

3    trusts up?

4            DEFENDANT JOHNSON:  They were set up by an attorney

5    in California that was introduced to me.

6            THE COURT:  Well, you understand what I mean.

7            DEFENDANT JOHNSON:  What do you mean?

8            THE COURT:  You went to the attorney and asked the

9    attorney, Please set up a trust for my benefit and these are

10   the assets I want placed in the trust?

11           DEFENDANT JOHNSON:  Correct, Your Honor.  And that

12   was in 2019, which is beyond the scope -- or beyond the

13   questions -- time limit that Mr. Thompson asked about.

14           THE COURT:  You understand with the appointment of a

15   receiver all of this has to be disclosed, and whether it's

16   subject to the $70 million judgment or not, is not a question

17   for you to determine, rather it's a question for me to

18   determine?

19           DEFENDANT JOHNSON:  I agree, Your Honor.  I'm happy

20   to comply with the two gentlemen that you just put in charge

21   of the receivership.

22           THE COURT:  Let me continue.  Any other trust that

23   you can think of?

24           DEFENDANT JOHNSON:  No, Your Honor.

25           And Mr. Thompson asked me about a trust that was

1    called the Task Force Trust, and that involved the assets that

2    are in question here, which is --

3          *THE COURT:*  I'm asking big questions, because I want

4    you to give detailed answers.

5          *DEFENDANT JOHNSON:*  Yes.  I'm giving you as detailed

6    an answer as I can.

7          *THE COURT:*  All right.  The Task Force Trust, what

8    is that?

9          *DEFENDANT JOHNSON:*  The Task Force Trust was set up

10    by myself and brother and father.  And it was set up with the

11    intent of putting half of my interest in this special purpose

12    vehicle in a company called Umbra, which is a synthetic

13    aperture radar technology system.  And so, Mr. Lambert cheated

14    me out of that interest, so ultimately I didn't end up putting

15    it into --

16          *THE COURT:*  I don't care whether --

17          *DEFENDANT JOHNSON:*  -- the Task Force Trust.

18          *THE COURT:*  -- it was cheated or whatever --

19          *DEFENDANT JOHNSON:*  So there's no assets in the

20    trust.

21          *THE COURT:*  -- I need to know what you own --

22          *DEFENDANT JOHNSON:*  Yes.

23          *THE COURT:*  -- and you haven't been telling us.

24          *DEFENDANT JOHNSON:*  Just so you know --

25          *THE COURT:*  You're even refusing to ask *(sic)*

1    questions.

2         *DEFENDANT JOHNSON:*  Okay.  And then -- so, yeah,

3    those are it for me.

4         And then my ex-wife and daughter have a trust, but

5    those assets haven't been touched since 2019.  And again,

6    those -- I think this would be the Clearview and Othram stock,

7    or they could also include some of the Umbra stock as well.

8         *THE COURT:*  Okay.  Let me continue.

9         What's your best estimate of the total amount of

10   money you have received from the United States Government or

11   any foreign government?

12        *DEFENDANT JOHNSON:*  I don't know.  Maybe somewhere

13   around a few million.

14        *THE COURT:*  You've received $3 million from the

15   United States Government?

16        *DEFENDANT JOHNSON:*  Not totally sure, Your Honor.

17        *THE COURT:*  That's just a ballpark or was that a --

18        *DEFENDANT JOHNSON:*  I don't know.  Because typically

19   the way it's done is sometimes you're given a contract through

20   an intermediary.  So I just don't know the answer to that

21   question, I couldn't answer it truthfully.

22        *THE COURT:*  Do you want to discuss any of the work

23   you've done for the United States Government?

24        *DEFENDANT JOHNSON:*  No, Your Honor.  I like doing

25   the work.  I intend to continue doing it, if I can.

1    *THE COURT:* So you're refusing to answer the

2    question, The type of work you've made $3 million, allegedly,

3    from the United States; is that correct?

4    *DEFENDANT JOHNSON:* Correct, Your Honor.

5    *THE COURT:* Have you ever received any money from

6    any foreign governments?

7    *DEFENDANT JOHNSON:* Not to my knowledge, Your Honor.

8    *THE COURT:* What does that mean, not to my

9    knowledge?

10    *DEFENDANT JOHNSON:* There have been times in which

11    I've been asked to take money from individuals that have

12    connections with foreign governments, but the U.S. Government

13    has been okay with it. I've gotten a form, called an OIA,

14    when that was done, which is an otherwise illegal activity

15    form. And that was some work I did when I was a confidential

16    informant for the FBI.

17    And, again, I would prefer not to discuss any of

18    those things, because it affects my ability to work and --

19    *THE COURT:* Well, I don't care what you prefer and

20    not prefer, you're under oath, answer the questions. And if

21    you don't want to answer them, that's fine; there are

22    consequences for that. But I'm just -- I don't have time for

23    the stories.

24    So the answer is, I'm not going to disclose or I am

25    going to --

1          *DEFENDANT JOHNSON:*  Not going to disclose.

2          *THE COURT:*  Okay.  Has any United States Government

3     or -- let's keep this as broad as possible.  Has any

4     government anywhere, or any government agency, ever

5     established a bank account for you or provided you prepaid

6     cards in connection with any alleged informant work?

7          *DEFENDANT JOHNSON:*  Yes.

8          *THE COURT:*  Okay.  Describe those to us at this

9     time.

10         *DEFENDANT JOHNSON:*  Well, they're no longer

11    operational.  But I have been provided with credit card -- or

12    with credit cards with access to bank accounts, yes.

13         *THE COURT:*  By who?

14         *DEFENDANT JOHNSON:*  By -- one was my handler in the

15    FBI, and the other is a handler in a government -- another

16    government agency.

17         *THE COURT:*  Who is your handler at the FBI?

18         *DEFENDANT JOHNSON:*  He was Johnathan Boomer.  He's

19    since out, so I can talk about it.  But some of those cases we

20    worked on are still ongoing.

21              *(Court Reporter interrupts)*

22         *DEFENDANT JOHNSON:*  Yes.  J-O-H-N-A-T-H-A-N.

23         *THE COURT:*  What other government agencies are you

24    working with.

25         *DEFENDANT JOHNSON:*  I decline to answer the

1  question.

2          *THE COURT:*  Okay.  That's all I want to know.

3          Have you provided, with Mr. Thompson, a

4  comprehensive list of all the portfolio companies or

5  entities in which you hold any financial interest whatsoever?

6  Yes or no?

7          *DEFENDANT JOHNSON:*  No.

8          *THE COURT:*  Okay.  You were provided -- you were

9  required by Court order to produce monthly statements from

10  your Woodforest bank account, among other financial

11  statements, pursuant to the request for production number

12  three, which you were ordered to answer.

13          At your deposition, per the transcript, you stated

14  that you would not comply with that request.

15          Are you prepared to comply with that request now?

16          *DEFENDANT JOHNSON:*  I am, Your Honor.

17          *THE COURT:*  Do you have those documents with you?

18          *DEFENDANT JOHNSON:*  I do not, Your Honor.

19          *THE COURT:*  Okay.

20          *DEFENDANT JOHNSON:*  I don't handle any of my

21  banking.  I'd have to go call somebody to handle it for me,

22  but I don't have a phone.

23          *THE COURT:*  So you were supposed to bring those, you

24  didn't bring them --

25          *DEFENDANT JOHNSON:*  I didn't bring them.

1      THE COURT:  -- and you don't have them?

2      DEFENDANT JOHNSON:  That's right.

3      THE COURT:  Okay.  This is the last question that I

4  have; and, then, Mr. Thompson, if you'd like to do some

5  follow-up, I'll turn it over to you.  But I did the best I

6  could from the questions that you were allowed to get, okay?

7      During your deposition you were asked to identify

8  all of your bank accounts in your name; and you stated you did

9  not know.  I find that to be absolutely uncredible, zero

10  credibility.  I just do not believe that you don't know your

11  bank accounts.

12      Are you prepared today to identify and disclose

13  all -- disclose bank accounts in your name?

14      DEFENDANT JOHNSON:  I am, Your Honor.

15      THE COURT:  All right.  List them off.

16      DEFENDANT JOHNSON:  I have three bank accounts at

17  Woodforest bank, combined total assets of them are under --

18  maybe 3,000 to $4,000 currently, and that's it.  That's all

19  I've got.

20      THE COURT:  You don't have any other bank accounts?

21      DEFENDANT JOHNSON:  No, Your Honor.

22      THE COURT:  What about investment accounts?

23      DEFENDANT JOHNSON:  I don't have any of those

24  either.

25      THE COURT:  Any other that might not be in the name

1  of a -- not your name individually, but maybe an LLC, or

2  another entity that you have an interest in that you can write

3  checks or have access to cash out of the accounts?

4           *DEFENDANT JOHNSON:*  No, Your Honor.

5           *THE COURT:*  And no others, other than this one?

6           *DEFENDANT JOHNSON:*  No others.

7           *THE COURT:*  And that's a checking account?

8           *DEFENDANT JOHNSON:*  That's a checking account, yeah.

9  From Woodforest bank, which is in The Woodlands, Texas.

10          *THE COURT:*  Do you have any safe deposit boxes down

11  there?

12          *DEFENDANT JOHNSON:*  No, Your Honor.

13          *THE COURT:*  Do you have any cryptocurrency?

14          *DEFENDANT JOHNSON:*  No, Your Honor.

15          *THE COURT:*  You understand you're under oath?

16          *DEFENDANT JOHNSON:*  I do understand I'm --

17          *THE COURT:*  Lying under oath is a crime.

18          *DEFENDANT JOHNSON:*  I have no cryptocurrency.

19          *THE COURT:*  If I find that you've perjured yourself,

20  I'm referring you to the U.S. Attorney's Office for charges.

21          *DEFENDANT JOHNSON:*  By all means.

22          *THE COURT:*  Be careful what you ask for.

23          Mr. Thompson, do you have any further questions for

24  Mr. Johnson that he previously failed to answer that you'd

25  like to place on the record at this time?

1     MR. THOMPSON:  I do, Your Honor.  I'll keep it very
2  short and very brief.

3     Mr. Johnson, the Wyoming, LLC, JXC, LLC; do you know
4  what I'm talking about?

5     DEFENDANT JOHNSON:  I do.  I don't think that's the
6  exact account, but yes.

7     MR. THOMPSON:  The Wyoming, LLC, that was set to
8  take the proceeds of the sale of the Othram stock --

9     DEFENDANT JOHNSON:  Correct.

10    MR. THOMPSON:  -- are you aware of that?

11    DEFENDANT JOHNSON:  I am aware of that, yes.

12    MR. THOMPSON:  Did you set that up?

13    DEFENDANT JOHNSON:  I did not.

14    MR. THOMPSON:  Did a government handler set that up?

15    DEFENDANT JOHNSON:  Yes.

16    MR. THOMPSON:  What is the name of that government
17 handler?

18    DEFENDANT JOHNSON:  I refuse to answer the question.

19    MR. THOMPSON:  Do you know the person's name?

20    DEFENDANT JOHNSON:  Yes.

21    MR. THOMPSON:  You had no role in setting up that
22 government --

23    DEFENDANT JOHNSON:  Zero role whatsoever.

24    MR. THOMPSON:  Do you realize that you previously
25 testified that the reason that there's a Wyoming, LLC, set up

1    to take the proceeds of the Othram sale, was because your

2    family or your grandmother had a connection with Wyoming?

3            *DEFENDANT JOHNSON:*  Yes.  My handler is well aware

4    of my Wyoming connections.

5            *THE COURT:*  In fact, I believe you testified at the

6    last hearing that the reason why you were in Wyoming was due

7    to a family connection, and some assets up there that had

8    nothing to do with this case.

9            Am I misstating what you said at the last --

10           *DEFENDANT JOHNSON:*  You are, Your Honor.

11           *THE COURT:*  I am not?

12           *DEFENDANT JOHNSON:*  You are misstating it.

13           *THE COURT:*  Okay.

14           *DEFENDANT JOHNSON:*  So, I have a Wyoming connection.

15   My grandmother is from there.  She helped -- dealt with

16   accounts for Navy intelligence.  And so Wyoming is a very --

17   it's a state that intersects with a lot of U.S. interests,

18   shall we say.

19           And so, I've never been to Sheridan, I've never been

20   to that bank account.  I don't have any accounts that are in

21   -- I think it was like a -- what was the name of the bank

22   that's in there?  There was like a list or something of the

23   bank.

24           *MR. THOMPSON:*  Wells Fargo.

25           *DEFENDANT JOHNSON:*  Yeah, Wells Fargo.  I don't have

1    a Wells Fargo account.  I think I was banned from Wells Fargo

2    in 2019.

3              THE COURT:  Why were you banned from Wells Fargo in

4    2019?

5              DEFENDANT JOHNSON:  At the time I owned lots of

6    cryptocurrency, Your Honor.

7              THE COURT:  What happened to all the crypto?

8              DEFENDANT JOHNSON:  I was -- I just got rid of all

9    of it, because then-President Donald Trump gave a Tweet where

10   he said that he didn't like cryptocurrency.  And I was under

11   the impression that there were people who were looking at me

12   in the U.S. Government around various things, and they asked

13   me to get -- just -- just disabuse myself of a lot of my

14   assets, get rid of a lot of those assets.

15             THE COURT:  Go ahead, Mr. Thompson.  I have a

16   follow-up.

17             MR. THOMPSON:  I was just going to keep this just

18   for the record.

19             Mr. Johnson, identify all of the exchanges, hard

20   wallets, or at places where your cryptocurrency was ever

21   stored since you possessed it.

22             DEFENDANT JOHNSON:  I don't know those.  But I don't

23   have any cryptocurrency.  I haven't had any since at least

24   2018/2019 time frame.

25             MR. THOMPSON:  Not my question, sir.

1          *DEFENDANT JOHNSON:*  I don't have any -- I don't have

2    any hard wallets, I don't have any paper wallets.  I don't

3    touch the stuff.  I don't like the stuff.  I think its used by

4    a lot of criminals to do a lot of dangerous --

5          *THE COURT:*  Rather than giving us a colloquy, if you

6    don't have any, say no.

7          *DEFENDANT JOHNSON:*  I have none, zero, zilch.

8          *THE COURT:*  Mr. Thompson, go ahead.

9          *MR. THOMPSON:*  My question, Mr. Johnson, is,

10   Identify the exchanges, how many hard wallets you had, where

11   you stored your cryptocurrency when you did possess it.

12         *DEFENDANT JOHNSON:*  I don't know.

13         *THE COURT:*  You have no idea where you stored your

14   cryptocurrency?

15         *DEFENDANT JOHNSON:*  I think I had a Coinbase account

16   maybe at one point, but I haven't used it.

17         *THE COURT:*  Did you ever have any hard

18   cryptocurrency that you had placed in -- underneath your bed

19   in a shoebox, or safe deposit box?

20         *DEFENDANT JOHNSON:*  No.  No, I did not.  I do not.

21         *THE COURT:*  You never had any hard cryptocurrency?

22         *DEFENDANT JOHNSON:*  I don't know.  Maybe, I could

23   have, but I don't recall it off the top of my head.  I had a

24   lot of money at the time, but I don't anymore.

25         *THE COURT:*  Do you understand that if you're in my

1    spot and you're listening to this, that it is very hard for me

2    to believe -- and I preface this by saying, I've been doing

3    this for 12 years on three different courts, I've seen a lot

4    of people testify, I've heard a lot of testimony.  I found

5    that -- find it to be completely not believable that you don't

6    know whether you had any hard cryptocurrency.

7         *DEFENDANT JOHNSON:*  I don't understand the question

8    your Honor is asking me.  I don't have any, didn't have any.

9         *THE COURT:*  You never had any hard cryptocurrency?

10        *DEFENDANT JOHNSON:*  I had some on a laptop, but that

11   was a long time ago.

12        *THE COURT:*  Would you like to do any follow-up?  I'm

13   just concerned you're never going to get any answers.

14        *MR. THOMPSON:*  I have one more question.

15        *THE COURT:*  Yeah.

16        *MR. THOMPSON:*  Because I just want to make it clear

17   for follow-up.

18        Mr. Johnson, the sale of the Othram stock, the

19   purpose of that sale was to prevent Hal Lambert and the

20   plaintiffs in this action for executing on it, correct?

21        *DEFENDANT JOHNSON:*  No.  It was not.

22        *THE COURT:*  It wasn't to prevent -- well, go ahead.

23        *MR. THOMPSON:*  That's not what you said in your

24   deposition, Mr. Johnson.

25        Mr. Johnson, in your deposition you said the purpose

1    of the transaction was, in part, to keep the sale proceeds of

2    the Othram stock from, in part, Mr. Hal Lambert and

3    plaintiffs, prevent them --

4            *DEFENDANT JOHNSON:*  I never said that.  And there's

5    video evidence that I didn't say it.

6            *THE COURT:*  I'm reading the portion of your

7    transcript, let's just -- let me ask you about that.

8            You were asked a question:  Your position is that

9    Hill *(sic)* and the plaintiffs are not entitled to the proceeds

10   of the Othram stock, or the stock itself?

11           Answer:  That's correct.

12           Question, by the attorney, Mr. Thompson:  And the

13   purpose of this transaction using the JXC Wyoming, LLC, and

14   the Wells Fargo bank account was to prevent Hill *(sic)* and the

15   plaintiffs from executing on that stock and those proceeds

16   before the matter -- before the matter in the Court case

17   concluded or before the operation concluded?

18           Answer, by Mr. Johnson:  That's a fair way of

19   putting it.  But it was -- it's about asset preservation.

20           Sounds like you admitted you were moving items

21   around and hiding them --

22           *DEFENDANT JOHNSON:*  No, Your Honor.

23           *THE COURT:*  -- and transferring them to avoid the

24   judgment.  I was using your words, not mine.

25           *DEFENDANT JOHNSON:*  Yeah.  So, asset preservation

1  means -- my understanding is that that Wyoming, LLC bank

2  account belongs, and has connections, to the U.S. Government.

3  So, putting it into an account where it can be preserved by a

4  U.S. Government trustee, that's effectively what Your Honor

5  has done by appointing those receivers.  So, I have no

6  objection in giving those gentlemen that -- that stock.

7         I do object to giving my ex-wife and daughter's

8  stock.  And I was hoping to take out the whole chunk of the

9  Othram stock because that -- those belong to my --

10        *THE COURT:*  Well, I asked you in my second question,

11  Have you transferred, moved, or otherwise disposed of any

12  asset for the purpose of placing them beyond the reach of the

13  plaintiffs?

14        You admitted to that in your deposition, it sounds

15  like you're admitting it to me here in the courtroom.

16        *DEFENDANT JOHNSON:*  I haven't moved any of it, the

17  sale never went through.

18        *THE COURT:*  Shh, be quiet.

19        *MR. THOMPSON:*  Your Honor, just to clarify, the

20  transaction has not gone through, because the buyer was --

21  became aware of the asset preservation order.  The more

22  precise, probably, question is, Has he attempted to transfer

23  any of those assets?

24        *THE COURT:*  Well, what's the answer to that?

25        Because attempting is also in violation of the

1   order.

2           *DEFENDANT JOHNSON:* That's correct, Your Honor.

3           *THE COURT:* Okay. Any more questions?

4           *MR. THOMPSON:* Just one, Your Honor.

5           Mr. Johnson, what is the operation that must

6   conclude -- before you said that -- why the assets need to be

7   preserved, you said they need to be preserved before an

8   operation is completed?

9           *DEFENDANT JOHNSON:* Right. That's correct. I did

10  say that.

11          *MR. THOMPSON:* What is the operation?

12          *DEFENDANT JOHNSON:* I won't discuss that.

13          *MR. THOMPSON:* What government agency is conducting

14  the operation?

15          *DEFENDANT JOHNSON:* I won't discuss that.

16          *MR. THOMPSON:* Do you have any communications

17  concerning this operation?

18          *DEFENDANT JOHNSON:* I won't discuss that.

19          *MR. THOMPSON:* Nothing further, Your Honor.

20          *THE COURT:* Before you step down, I want to say this

21  with all -- and I'm not being facetious, I'm not making

22  accusations. This is just really -- Mr. Johnson, I'm

23  concerned about you. Because I'm, frankly, left with no other

24  choice, other than to hold you in contempt. So when I ask you

25  this, please don't think I'm being accusatory.

1              Have you ever been diagnosed with a mental illness?

2         *DEFENDANT JOHNSON:*  No, Your Honor.  I have not.

3         *THE COURT:*  Are you currently seeing any mental

4    healthcare professionals?

5         *DEFENDANT JOHNSON:*  No.  Not that I know of.

6         *THE COURT:*  Are you on any type of psychiatric --

7         *DEFENDANT JOHNSON:*  No.

8         *THE COURT:*  -- type medications at the moment?

9         *DEFENDANT JOHNSON:*  No.  In fact, I sat for a

10   psychological evaluation maybe three months ago, and was found

11   to be doing pretty well.

12        *THE COURT:*  And was that voluntary?

13        *DEFENDANT JOHNSON:*  It was voluntary, yes.  It was

14   to start another company.

15        *THE COURT:*  Do you -- do you feel like that you're

16   mentally competent, in the sense you understand why you're

17   here and the consequences?

18        *DEFENDANT JOHNSON:*  I'm very happy to be here.

19        *THE COURT:*  And you understand that I'm about to

20   hold you in contempt?

21        *DEFENDANT JOHNSON:*  I do understand that.  I wish

22   Your Honor would not do that, because he's appointed some

23   receivers that I could work with very comfortably.

24        *THE COURT:*  Well, the problem is you're still not

25   answering questions like you're supposed to.

1          So, let me ask you to please step down.  And I'm

2    going to ask you to go over to the podium, okay?

3          *DEFENDANT JOHNSON:*  Okay.

4          *THE COURT:*  At this time, the Court, having covered

5    all the three bases that I pointed out for Mr. Johnson to show

6    cause, has failed -- has made a determination, after reviewing

7    the record, hearing Mr. Johnson's testimony, hearing

8    Mr. Thompson, listening to these responses, that I'm left with

9    no choice, when I consider the least severe sanction to

10   correct the unlawful conduct, other than to order the

11   following.

12         So as I said, Johnny Cash's Cadillac had three

13   different pieces in this case.  The first thing we took up was

14   whether Mr. Johnson should be held in contempt for effectively

15   stealing government property.  That would be the mug that you

16   took, as well as the waters, from our jury room.

17         In order to correct that behavior, I am imposing the

18   least severe sanction that I believe can correct this conduct,

19   and that is to impose a $1,000 fine to be due and payable

20   immediately after this hearing.  The U.S. Marshal is going to

21   take you down to the third floor Clerk's Office, and you're

22   going to pay that today.

23         The other two pieces involve your failure to comply

24   with the Court's orders with regards to, number one, the

25   post-judgment discovery, and that includes the written

1    discovery you were required to respond to and the items that

2    you were required to bring on Monday, which you didn't do.

3          Again, taking my oath seriously, and considering the

4    least severe sanction to correct the property *(sic)*, I am

5    going to be holding you in contempt.

6          Also, the third part was the failure of you to

7    answer the questions that were asked of you at the deposition.

8    Out of abundance of caution, I have not only asked the

9    competent public defender to be here to provide you with legal

10   advice, I've read your Miranda rights, and I've even put you

11   on the stand to try to get you to answer these questions one

12   more time, and you have not done so.  Indeed, you continue to

13   be obstructive and try to avoid answering them.

14         Therefore, having no other choice, and considering

15   the least severe sanction necessary to correct the unlawful

16   conduct, I am going to make some rulings.  But I am going to

17   order the United States Marshal to arrest you and place you

18   into custody for being in contempt of court, until such time

19   as you purge yourself of the contempt by complying with the

20   Court's orders.

21         Mr. Johnson, throughout this case, has shown a

22   repeated history of failing to comply in good faith with

23   post-judgment discovery, despite numerous opportunities given

24   him to cure his unlawful conduct, including at today's

25   hearing, he has shown no willingness to comply with the

1    Court's orders.

2            Defendant's unlawful conduct is well-documented.

3    Indeed, on October the 28th of 2025, plaintiffs filed a motion

4    asking the Court to make Mr. Johnson appear and show cause to

5    hold him in civil contempt for violating the Court's asset

6    protection order and personally threatening plaintiff and

7    plaintiffs' counsel, among other allegations.  That same day,

8    the Court denied Mr. Johnson's motion to stay enforcement of

9    the judgment, and I granted plaintiffs' motion to hold a show

10   cause hearing.

11           On November the 6th, plaintiffs filed a motion to

12   compel defendant, Charles Johnson, to respond to post-judgment

13   interrogatories and sit for his deposition and produce

14   documents.  And I, accordingly, scheduled a hearing on that

15   motion.

16           After holding a hearing on November the 10th, when I

17   was in the middle of a trial, I granted plaintiffs' motion to

18   compel, and ordered defendant to answer plaintiffs'

19   post-judgment interrogatories within five days, produce the

20   documents that he was required and asked to produce, and sit

21   for his deposition here at the courthouse on Monday, November

22   17th of 2020.

23           Subsequent to that hearing, plaintiffs then filed a

24   motion for appointment of receiver; which I have considered

25   today and granted.  I also allowed Mr. Johnson to respond to

1  that motion, no written response was filed, in disobedience of

2  the Court's order.

3      Thus, I conducted the hearing today.  At the hearing

4  today, Mr. Johnson has said he did not object to the

5  appointment of a receiver.  But I'll also note, that before

6  today's hearing, plaintiff did file a supplement to its

7  original motion to appoint a receiver, further documenting

8  Mr. Johnson's noncompliance with my orders; that is at ECF

9  Number 136.

10      The Court finds that while Mr. Johnson was

11  physically present for his deposition here in the courthouse,

12  the defendant failed to respond to the questions asked in good

13  faith, and repeatedly gave evasive answers while asserting

14  that his plan was to give minimal information as possible.

15      The Court staff additionally reported that defendant

16  stole mugs and water bottles belonging to the Court, resulting

17  in the $1,000 sanction.

18      In response to defendant's noncompliance, I again

19  ordered the defendant to show cause for his failure to respond

20  in good faith to the questions asked in the deposition, and

21  his failure to produce documents and serve his interrogatory

22  responses, and his theft of Court property.

23      I then gave, yet again, Mr. Johnson another chance

24  to comply with those orders at the hearing held today, and

25  I've asked him several questions, and I've also allowed

1    Mr. Thompson to ask him several questions to those asked

2    during the deposition.  And again, he's failed to respond in

3    good faith.

4          Therefore, I find Mr. Johnson to be in contempt of

5    court.  And considering the least severe sanction possible to

6    correct the unlawful conduct, the Court orders the United

7    States Marshal to arrest defendant at this time and place him

8    into custody in the Johnson County Jail as to such time as he

9    purges himself of his contempt.

10          I would ask, gentlemen, on your way down, if you

11    please drop by the Clerk's Office so he can pay his $1,000

12    fine.

13          My receivers, I don't know how long the Marshals

14    need to process him in, but I know you'll want to visit with

15    him about his assets.  Whether you want to do that today,

16    given the late hour, or whether you want to go down to Johnson

17    County, I leave it up to you.  Thank you for your service,

18    both of you.  And also, Mr. Thompson, I appreciate your

19    patience.  Ms. Sanders, thank you.

20          Anything else for the Court before Mr. Johnson is

21    taken in?

22          *MS. SANDERS:*  Briefly, Your Honor.

23          When it comes to the issue of answering questions at

24    the deposition, how would Mr. Johnson purge -- I mean, is

25    there going to be another deposition scheduled?  Should he

1    provide notice that he's ready to sit for a deposition?

2            *THE COURT:*  I think that Mr. Johnson will contact

3    someone and tell them when he's ready to answer the questions,

4    both at the deposition and the interrogatory and produce the

5    documents.  If he's ready to do that, and he purges himself,

6    he can get out of jail.

7            *MS. SANDERS:*  So providing notice?

8            *THE COURT:*  Yeah.

9            *DEFENDANT JOHNSON:*  Your Honor, if I may?

10           *THE COURT:*  But again -- please stop.

11           He's refused your services, Ms. Sanders.  So as far

12    as I'm concerned, there's no obligation for you ethically to

13    continue.  It's up to him.

14           All right.  We'll stand off the record.

15           *THE MARSHAL:*  Your Honor, Deputy Sanford.  Can we

16    determine if he can pay that fee now or just take him to the

17    third floor, because that changes our risk assessment.

18           *THE COURT:*  Okay.  Thank you, Deputy.

19           Do you have a credit card?

20           *DEFENDANT JOHNSON:*  I don't with the -- not money

21    for $1,000, I don't have it.

22           *THE COURT:*  Okay.  We'll take you in immediately,

23    and you'll also be held in contempt until you can purge

24    yourself of the $1,000 fine.

25           *DEFENDANT JOHNSON:*  I can do both of that, if I can

1  access a computer.

2          *THE COURT:*  You're going to be taken in at this

3  time, and we'll see what you can do.  It might be a good idea

4  to -- I know you're entitled to a phone call, you'll be told

5  what that process is, but you need to take efforts to purge

6  yourself of this contempt.

7          *DEFENDANT JOHNSON:*  And do I purge myself when I

8  send the material to the receivers, or do I send it -- when I

9  send it to Mr. Thompson?

10         *THE COURT:*  I'm not here to give you legal advice.

11         *DEFENDANT JOHNSON:*  Okay.

12         *THE COURT:*  You should have complied with my orders.

13  It's been nine months of this.

14         Thank you, deputies.

15         Okay.  Thank you all.  Stand in recess.

16              *(Proceedings Adjourned)*

17

18

19

20

21

22

23

24

25

1              REPORTER'S CERTIFICATE

2

3       I, Monica Willenburg Guzman, CSR, RPR, certify

4  that the foregoing is a true and correct transcript from

5  the record of proceedings in the foregoing entitled matter.

6       I further certify that the transcript fees format

7  comply with those prescribed by the Court and the Judicial

8  Conference of the United States.

9       Signed this 12th day of December, 2025.

10

11                      /s/Monica Willenburg Guzman
                        Monica Willenburg Guzman, CSR, RPR
12                      Texas CSR No. 3386
                        NCRA No. 32278
13                      Official Court Reporter
                        The Northern District of Texas
14                      Fort Worth Division

15

16  CSR Expires:        7/31/2027

17  Business Address:   501 W. 10th Street, Room 310
                        Fort Worth, Texas  76102
18
    Telephone:          817.850.6681
19
    E-Mail Address:     mguzman.csr@yahoo.com
20

21

22

23

24

25

**DEFENDANT JOHNSON: [155]**
**MR. ANSLEY: [5]** 9/18 9/24 10/22 11/5 13/4
**MR. FARRELL: [2]** 9/25 11/18
**MR. THOMPSON: [33]** 4/6 8/4 12/17 12/19 20/4 21/5 23/6 23/12 24/9 24/13 25/8 43/1 43/7 43/10 43/12 43/14 43/16 43/19 43/21 43/24 44/24 45/17 45/25 46/9 47/14 47/16 47/23 49/19 50/4 50/11 50/13 50/16 50/19
**MS. SANDERS: [10]** 4/11 4/16 5/7 15/25 30/8 30/12 30/17 30/23 56/22 57/7
**SECURITY OFFICER: [1]** 21/20
**THE COURT: [174]**
**THE MARSHAL: [1]** 57/15

**$**

**$1,000 [6]** 22/14 52/19 55/17 56/11 57/21 57/24
**$3 [2]** 37/14 38/2
**$4,000 [1]** 41/18
**$70 [1]** 35/16
**$71 [2]** 5/17 6/17

**/**

**/s/Monica [1]** 59/11

**1**

**100 [1]** 6/20
**10th [5]** 2/7 23/17 23/22 54/16 59/17
**12 [1]** 47/3
**12th [1]** 59/9
**131 [1]** 24/23
**136 [2]** 24/24 55/9
**1624 [1]** 1/18
**17th [1]** 54/22
**1900 [1]** 1/14
**1:40 [2]** 1/7 4/2

**2**

**20 [3]** 1/6 4/2 9/4
**2018/2019 [1]** 45/24
**2019 [5]** 35/12 37/5 45/2 45/4 45/24
**20194 [1]** 1/19
**2020 [1]** 54/22
**2025 [4]** 1/6 4/2 54/3 59/9
**2027 [1]** 59/16
**214.743.4500 [1]** 1/15
**2200 [1]** 1/14
**28th [1]** 54/3
**2:00 [1]** 24/1

**3**

**3,000 [1]** 41/18
**30 [1]** 13/20
**300 [1]** 2/3
**310 [2]** 2/7 59/17
**32278 [1]** 59/12
**3386 [1]** 59/12

**4**

**400 [1]** 2/4
**469.895.4790 [1]** 2/5
**4:24-CV-00988-P [1]** 1/4
**4:24-CV-988-P [1]** 4/3

**5**

**50 [1]** 34/15
**501 [2]** 2/7 59/17

**6**

**617.429.4718 [1]** 1/19
**6th [1]** 54/11

**7**

**7/31/2027 [1]** 59/16
**75201 [2]** 1/15 2/4
**76102 [3]** 1/23 2/8 59/17

**8**

**817.850.6681 [2]** 2/8 59/18
**817.978.2753 [1]** 1/23
**819 [1]** 1/22

**9**

**9A10 [1]** 1/22

**A**

**ability [3]** 7/6 11/3 38/18
**able [2]** 11/3 22/11
**about [29]** 5/24 7/3 12/5 15/5 15/20 18/9 20/7 21/1 21/15 23/1 24/21 25/3 25/6 27/19 30/2 31/16 33/11 34/13 34/21 35/13 35/25 39/19 41/22 43/4 48/7 48/19 50/23 51/19 56/15
**absolute [1]** 25/2
**absolutely [6]** 6/20 15/25 23/9 25/8 27/10 41/9
**abundance [9]** 4/24 5/9 8/25 14/24 16/2 27/22 28/18 30/13 53/8
**abuse [3]** 26/18 26/25 27/1
**access [3]** 39/12 42/3 58/1
**accordingly [1]** 54/14
**account [13]** 31/15 32/22 39/5 40/10 42/7 42/8 43/6 44/20 45/1 46/15 48/14 49/2 49/3
**accounts [10]** 39/12 41/8 41/11 41/13 41/16 41/20 41/22 42/3 44/16 44/20
**accurate [1]** 31/15
**accusations [1]** 50/22
**accusatory [1]** 50/25
**act [3]** 17/16 30/21 33/8
**action [1]** 47/20
**actions [2]** 44/22 22/8
**activities [1]** 33/12
**activity [1]** 38/14
**actually [2]** 19/1 19/20
**ADAM [2]** 2/2 9/25
**addition [1]** 14/1
**additional [1]** 10/19
**additionally [1]** 55/15
**address [3]** 7/17 59/17 59/19
**adjacent [1]** 21/23
**Adjourned [1]** 58/16
**admiration [1]** 8/23
**admitted [2]** 48/20 49/14
**admitting [1]** 49/15
**admonish [1]** 16/16
**admonished [1]** 5/23
**admonishments [1]** 23/10
**advice [5]** 5/5 16/18 30/15 53/10 58/10
**advised [3]** 21/22 21/24 30/20

**advising [1]** 38/18
**affects [1]** 38/13
**affirmative [1]** 10/21
**afford [1]** 17/9
**after [7]** 8/19 12/2 12/11 23/17 52/6 52/20 54/16
**afternoon [1]** 9/25
**again [21]** 5/8 5/9 8/22 10/5 12/10 16/16 19/22 25/5 25/15 25/23 30/20 30/25 31/2 31/10 37/5 38/17 53/3 55/18 55/23 56/2 57/10
**against [2]** 12/6 17/6
**agencies [1]** 39/23
**agency [3]** 39/4 39/16 50/13
**ago [5]** 7/4 11/1 12/5 47/11 51/10
**agree [2]** 16/1 35/19
**ahead [3]** 45/15 46/8 47/22
**AI [1]** 34/25
**Air [2]** 11/12 11/15
**al [2]** 1/4 4/4
**all [37]** 4/21 5/12 6/8 7/20 8/16 10/2 10/19 11/7 12/13 13/5 13/13 13/24 14/20 21/8 22/10 25/3 25/21 29/4 30/24 31/21 33/14 35/15 36/7 40/2 40/4 41/8 41/13 41/15 41/18 42/21 45/7 45/8 45/19 50/21 52/5 57/14 58/15
**allegation [1]** 14/25
**allegations [1]** 54/7
**alleged [4]** 14/23 29/13 31/4 39/6
**allegedly [2]** 18/1 38/2
**allow [3]** 23/8 30/15 30/21
**allowed [4]** 31/3 41/6 54/25 55/25
**almost [2]** 9/4 13/20
**along [2]** 9/13 25/4
**also [22]** 6/10 10/12 10/16 11/10 11/12 11/25 14/2 14/8 14/17 14/21 22/18 23/16 24/2 25/11 37/7 49/25 53/6 54/25 55/5 55/25 56/18 57/23
**although [2]** 9/3 16/17
**always [1]** 20/25
**am [22]** 6/2 12/9 16/20 22/7 27/22 28/17 29/16 29/16 29/17 31/17 31/20 34/2 38/24 40/16 41/14 43/11 44/9 44/11 52/17 53/4 53/16 53/16
**Amendment [1]** 15/20
**among [2]** 40/10 54/7
**amount [1]** 37/9
**Andrew [1]** 10/23
**announce [1]** 28/18
**another [10]** 11/6 16/19 20/22 22/13 27/16 39/15 42/2 51/14 55/23 56/25
**ANSLEY [10]** 2/2 9/13 9/23 9/24 10/5 10/8 10/18 11/2 11/21 13/20
**answer [44]** 5/21 6/1 6/5 6/13 14/6 14/8 17/19 19/1 20/11 23/15 24/4 24/20 25/9 26/7 27/4 27/5 27/6 31/1 31/3 31/19 32/7 32/11 32/22 33/14 33/15 33/25 36/6 37/20 37/21 38/1 38/20 38/21 38/24 39/25 40/12 42/24 43/18 48/11 48/18 49/24 53/7 53/11 54/18 57/3
**answered [2]** 22/23 23/18
**answering [3]** 51/25 53/13 56/23
**answers [6]** 23/11 23/20 29/11 36/4 47/13 55/13
**any [55]** 6/3 6/16 12/1 12/16 13/3 15/5

# A

**any... [49]** 21/11 24/1 26/11 27/2 29/21 29/22 29/23 30/6 31/23 35/22 37/11 37/22 38/5 38/6 38/17 39/2 39/3 39/4 39/6 40/5 40/20 41/20 41/23 41/25 42/10 42/13 42/23 44/20 45/23 45/23 46/1 46/2 46/2 46/6 46/17 46/21 47/6 47/8 47/8 47/9 47/12 47/13 49/11 49/16 49/23 50/3 50/16 51/3 51/6

**anymore [1]** 46/24

**anyone [1]** 20/6

**anything [10]** 6/13 8/2 9/20 9/21 17/6 18/7 20/6 23/22 28/14 56/20

**anywhere [1]** 39/4

**aperture [1]** 36/13

**apparently [1]** 14/4

**appear [5]** 6/1 9/11 14/3 14/18 54/4

**appearance [2]** 9/17 9/20

**appears [1]** 7/2

**appoint [10]** 7/12 8/20 9/3 9/9 11/7 15/2 15/4 17/16 24/25 55/7

**appointed [6]** 4/12 6/22 9/11 12/24 16/19 51/22

**appointing [1]** 49/5

**appointment [8]** 7/4 7/13 8/3 8/17 26/13 35/14 54/24 55/5

**appreciate [1]** 56/18

**approach [3]** 9/15 25/22 30/8

**approaches [1]** 28/24

**appropriate [3]** 8/15 8/20 11/25

**are [39]** 6/18 7/7 7/11 7/13 11/24 12/2 12/3 12/8 12/23 21/18 29/25 31/14 32/4 32/5 32/24 32/24 33/2 33/7 33/7 33/11 34/4 34/12 34/25 35/9 36/2 37/3 38/21 39/20 39/23 40/15 41/12 41/17 43/10 44/10 44/12 44/20 48/9 51/3 51/6

**area [3]** 10/10 18/16 21/25

**argument [1]** 7/9

**Arizona [1]** 16/22

**around [3]** 37/13 45/12 48/21

**arrest [2]** 53/17 56/7

**aside [1]** 27/15

**ask [18]** 7/11 13/6 16/25 17/4 19/8 20/19 20/20 20/21 30/19 31/1 36/25 42/22 48/7 50/24 52/1 52/2 56/1 56/10

**asked [23]** 4/18 6/10 9/10 18/7 18/9 25/1 26/19 27/6 35/8 35/13 35/25 38/11 41/7 45/12 48/8 49/10 53/7 53/8 54/20 55/12 55/20 55/25 56/1

**asking [7]** 28/17 29/16 29/17 32/12 36/3 47/8 54/4

**aspect [1]** 12/19

**asserting [1]** 55/13

**assessment [1]** 57/17

**asset [6]** 32/21 48/19 48/25 49/12 49/21 54/5

**assets [29]** 6/19 6/23 7/21 10/17 11/3 11/24 12/1 12/24 13/13 14/8 23/16 24/21 25/3 26/20 28/22 31/23 34/23 34/24 35/10 36/1 36/19 37/5 41/17 44/7 45/14 45/14 49/23 50/6 56/15

**ASSISTANT [2]** 1/21 10/20

**assisting [1]** 4/10

**Association [1]** 20/17

**assuming [1]** 24/6

**assure [1]** 9/4 11/23 13/21

# B

**attempted [1]** 49/22
**attempting [1]** 49/25
**attention [1]** 14/17
**attorney [17]** 5/24 9/3 10/9 10/9 10/14 10/20 11/2 16/19 17/8 17/9 17/16 29/17 30/21 35/4 35/8 35/9 48/12
**Attorney's [4]** 10/13 10/23 11/1 42/20
**attorneys [4]** 5/23 7/6 9/10 9/15
**authority [2]** 25/16 28/5
**avoid [2]** 48/23 53/13
**avoidance [1]** 5/20
**aware [4]** 43/10 43/11 44/3 49/21
**away [2]** 19/5 28/13

**back [5]** 18/10 18/10 18/20 19/6 19/8
**ballpark [1]** 37/17
**bank [15]** 39/5 39/12 40/10 41/8 41/11 41/13 41/16 41/17 41/20 42/9 44/20 44/21 44/23 48/14 49/1
**banking [1]** 40/21
**banned [2]** 45/1 45/3
**Bar [1]** 20/17
**Based [1]** 22/22
**bases [1]** 52/5
**basically [1]** 6/23
**basis [1]** 29/13
**be [66]**
**became [1]** 49/21
**because [20]** 4/20 7/11 12/25 18/22 20/7 20/17 20/22 30/3 36/3 37/18 38/18 44/1 45/9 47/16 49/9 49/20 49/25 50/23 51/22 57/17
**bed [1]** 46/18
**been [31]** 4/12 5/14 5/18 5/19 6/20 7/1 8/17 8/18 10/25 11/19 12/8 16/13 19/12 20/3 22/10 22/18 23/9 25/21 27/1 34/15 36/23 37/5 38/10 38/11 38/13 39/11 44/19 44/19 47/2 51/1 58/13
**before [20]** 1/9 8/1 14/24 14/25 19/15 22/22 23/14 23/25 24/18 28/18 28/25 29/7 48/16 48/16 48/17 50/6 50/7 50/20 55/5 56/20
**beginning [1]** 24/16
**begun [1]** 18/17
**behalf [5]** 4/14 16/7 33/6 33/22 33/22
**behavior [3]** 14/13 22/12 52/17
**being [10]** 4/19 5/8 5/10 16/16 28/19 29/23 30/25 50/21 50/25 53/18
**believable [1]** 47/5
**believe [10]** 7/3 7/7 9/19 10/18 10/19 11/19 41/10 44/5 47/2 52/18
**belong [1]** 49/9
**belonging [1]** 55/16
**belongs [1]** 49/2
**bench [1]** 9/15
**beneficiary [6]** 32/4 32/5 34/5 34/8 34/11 34/17
**benefit [3]** 32/25 33/2 35/9
**BENNETT [1]** 1/13
**best [14]** 6/4 6/12 7/5 7/7 7/10 15/3 16/3 25/17 27/25 29/12 30/4 30/7 37/9 41/5
**better [3]** 9/4 20/19 29/18
**between [2]** 16/8 30/18
**beyond [4]** 31/23 35/12 35/12 49/12

# Bible ... [1] 18/21
**big [1]** 36/3
**Boomer [1]** 39/18
**both [10]** 8/21 9/16 10/12 11/13 11/23 13/19 25/21 56/18 57/4 57/25
**bottles [6]** 18/12 18/19 19/5 19/14 20/6 55/16
**bottom [1]** 6/15
**bought [1]** 18/11
**box [1]** 46/19
**boxes [1]** 42/10
**branch [3]** 28/4 28/5 28/5
**break [1]** 17/15
**BRIDGE [3]** 1/4 4/4 31/24
**brief [2]** 30/12 43/2
**briefly [2]** 30/8 56/22
**bring [19]** 23/19 23/22 25/11 26/6 26/11 27/2 40/23 40/24 40/25 53/2
**bringing [1]** 27/24
**broad [1]** 39/3
**brother [1]** 36/10
**brought [3]** 14/17 18/22 20/13
**buddy [1]** 16/12
**building [1]** 22/5
**bumper [1]** 27/19
**Business [1]** 59/17
**busy [2]** 5/16 5/16
**buyer [1]** 49/20

# C

**Cadillac [4]** 22/17 22/25 27/19 52/12
**California [1]** 35/5
**call [2]** 40/21 58/4
**called [5]** 20/10 20/23 36/1 36/12 38/13
**came [2]** 5/21 26/17
**can [34]** 5/23 6/7 9/4 10/16 11/1 11/23 13/12 13/20 14/13 15/7 17/6 19/25 20/14 22/11 27/15 27/25 29/5 30/7 33/16 35/23 36/6 37/25 39/19 42/2 49/3 52/18 56/11 57/6 57/15 57/16 57/23 57/25 57/25 58/3
**can't [3]** 22/6 22/13 29/23
**cannot [4]** 6/16 17/9 28/14 33/17
**capable [1]** 10/6
**CAPITAL [4]** 1/4 4/4 31/24 34/22
**captain [1]** 11/12
**card [2]** 39/11 57/19
**cards [2]** 39/6 39/12
**care [4]** 20/2 23/1 36/16 38/19
**careful [2]** 16/11 42/22
**carefully [2]** 8/14 16/25
**case [18]** 1/4 4/3 5/21 7/7 8/16 8/17 8/21 9/9 9/11 10/17 15/4 16/21 16/22 31/25 44/8 48/16 52/13 53/21
**cases [2]** 10/25 39/19
**cash [4]** 8/11 14/22 27/18 42/3
**Cash's [2]** 22/17 52/12
**cause [10]** 14/3 18/5 20/24 22/3 22/19 25/23 52/6 54/4 54/10 55/19
**causing [1]** 14/18
**caution [9]** 4/24 5/9 8/25 14/24 16/2 27/23 28/18 30/13 53/8
**certain [2]** 14/18 25/12
**certainly [2]** 9/5 11/2
**CERTIFICATE [1]** 59/1
**certify [2]** 59/3 59/6

## C

chance [4] 14/12 15/19 26/14 55/23
changes [1] 57/17
characterization [1] 21/9
charge [2] 32/23 35/20
charges [2] 26/23 42/20
CHARLES [5] 1/7 1/18 4/4 4/9 54/12
cheated [2] 36/13 36/18
checked [2] 16/5 23/25
checking [2] 42/7 42/8
checks [1] 42/3
choice [5] 12/9 27/12 50/24 52/9 53/14
choose [1] 15/11
choosing [1] 10/4
chose [1] 13/14
chunk [1] 49/8
CIA [1] 28/1
cited [1] 8/8
citing [1] 25/15
civil [3] 5/4 10/21 54/5
claims [1] 10/17
clandestine [2] 33/11 33/13
clarify [1] 49/19
clear [7] 9/17 15/7 16/5 20/11 25/5 29/18 47/16
clearer [1] 6/16
Clearview [2] 34/25 37/6
clerk [1] 11/9
Clerk's [3] 22/15 52/21 56/11
clever [1] 21/4
client [1] 16/17
close [1] 29/8
closely [1] 31/7
coequal [1] 28/4
Coinbase [1] 46/15
collar [1] 10/14
collect [1] 6/18
collectible [1] 12/8
colloquy [3] 7/22 25/25 46/5
color [1] 23/13
comb [1] 7/20
combined [1] 41/17
come [4] 21/1 22/9 28/17 28/23
comes [2] 16/23 56/23
comfort [1] 8/22
comfortably [1] 51/23
coming [1] 13/11
command [2] 11/15 11/15
commend [1] 29/24
commercial [1] 10/9
Commission [1] 10/13
common [1] 6/9
communicated [1] 16/1
communications [1] 50/16
companies [1] 40/4
company [2] 36/12 51/14
compel [4] 23/15 25/10 54/12 54/18
compelled [1] 25/11
competent [3] 4/23 51/16 53/9
complete [5] 14/16 29/18 31/10 31/13 31/15
completed [1] 50/8
completely [1] 47/5
compliance [5] 23/10 24/22 25/1 25/17 31/13
compliant [1] 31/9
complied [1] 58/12
comply [15] 14/4 14/5 22/20 23/3 27/12 27/23 28/21 35/20 40/14 40/15 52/23 53/22 53/25 55/24 59/7
complying [1] 53/19
comprehensive [1] 40/4
computer [2] 2/12 58/1
conceding [1] 12/1
concerned [3] 47/13 50/23 57/12
concerning [2] 28/21 50/17
concerns [1] 9/8
conclude [1] 50/6
concluded [3] 20/10 48/17 48/17
conclusion [2] 21/25 22/15
conduct [6] 52/10 52/18 53/16 53/24 54/2 56/6
conducted [1] 55/3
conducting [2] 9/10 50/13
Conference [1] 59/8
confidential [1] 38/15
connection [4] 39/6 44/2 44/7 44/14
connections [3] 38/12 44/4 49/2
consequences [2] 38/22 51/17
consider [2] 14/25 52/9
consideration [2] 8/20 9/7
considered [1] 54/24
considering [3] 53/3 53/14 56/5
consistently [1] 28/16
conspiracies [1] 9/1
conspiracy [1] 9/1
Constitution [2] 6/9 16/23
Constitutional [2] 5/6 15/5
constructed [1] 8/14
consult [1] 30/11
contact [1] 57/2
contacts [2] 29/13 31/4
contempt [16] 5/2 5/25 26/15 27/12 28/20 50/24 51/20 52/14 53/5 53/18 53/19 54/5 56/4 56/9 57/23 58/6
continue [3] 35/22 37/8 37/25 53/12 57/13
contract [1] 37/19
contracts [1] 29/13
control [1] 6/23
cooperate [6] 5/22 6/6 13/1 13/1 13/21 13/21
cooperative [1] 12/9
corollary [1] 24/5
correct [29] 10/17 10/21 10/22 15/12 18/21 22/12 23/5 23/9 24/12 24/13 25/4 30/22 34/1 34/18 35/11 38/3 38/4 43/9 47/20 48/11 50/2 50/9 52/10 52/17 52/18 53/4 53/15 56/6 59/4
could [13] 16/2 18/9 19/4 19/5 19/5 19/7 20/25 21/16 29/22 37/7 41/6 46/22 51/23
couldn't [2] 33/15 37/21
counsel [10] 1/21 5/3 10/3 14/11 15/4 15/24 16/8 29/22 30/18 54/7
county [4] 19/12 20/17 56/8 56/17
couple [1] 5/14
court [43] 1/1 1/10 2/3 2/7 6/23 7/2 7/17 7/23 8/19 12/23 14/2 16/19 17/6 19/3 20/9 21/10 21/10 21/14 21/15 22/3 22/22 24/10 24/12 25/22 27/20 29/8 31/13 39/21 40/9 48/16 52/4 53/8 54/4 54/8 55/10 55/15 55/16
Court's [11] 8/15 9/6 23/9 23/10 28/21 31/12 52/24 53/20 54/1 54/5 55/2
Court-appointed [1] 16/19
court-ordered [1] 27/20
courthouse [5] 6/1 14/9 18/23 54/21 55/11
courtroom [3] 18/14 24/18 49/15
courts [1] 47/3
Courtyard [1] 18/14
covered [1] 52/4
created [1] 33/7
credibility [1] 41/10
credible [1] 21/17
credit [3] 39/11 39/12 57/19
Crescent [1] 2/3
crime [1] 42/17
criminal [5] 4/21 10/8 10/14 26/22 28/11
criminals [1] 46/4
crypto [1] 45/7
cryptocurrency [13] 23/16 42/13 42/18 45/6 45/10 45/20 45/23 46/11 46/14 46/18 46/21 47/6 47/9
CSR [5] 2/7 59/3 59/11 59/12 59/16
cure [1] 53/24
current [1] 22/22
currently [4] 26/22 32/5 41/18 51/3
custodians [1] 33/8
custody [2] 53/18 56/8
cut [1] 31/5
CV [1] 1/4 4/3

## D

dad [1] 23/25
Dallas [5] 1/15 2/4 10/10 10/23 13/12
Dallas/Fort [1] 10/10
dangerous [1] 46/4
daughter [2] 33/22 37/4
daughter's [1] 49/7
day [4] 28/8 33/15 54/7 59/9
days [2] 23/21 54/19
deal [2] 4/20 11/21
dealing [3] 16/13 26/4 26/10
deals [1] 14/6
dealt [2] 10/20 44/15
December [1] 59/9
decided [2] 9/2 9/8
decision [1] 28/19
decisions [1] 11/16
decline [1] 39/25
declined [1] 15/22
deeply [1] 22/7
defendant [11] 1/18 14/3 16/8 28/24 30/18 54/12 54/18 55/12 55/15 55/19 56/7
defendant's [2] 54/2 55/18
defendants [1] 28/11
defender [4] 1/21 4/23 6/11 53/9
Defenders [1] 15/3
defense [1] 10/9 10/14 11/14
denied [1] 54/8
deposed [1] 21/24
deposit [2] 42/10 46/19
deposition [47] 6/2 8/7 14/9 14/12 14/14 14/15 20/10 20/23 21/25 22/24 23/19 23/23 24/7 24/16 24/17 25/7

**D**

deposition... **[31]** 25/12 25/13 26/6 26/8 26/12 27/8 27/20 27/20 28/12 28/16 29/7 29/8 29/21 30/1 31/8 31/11 40/13 41/7 47/24 47/25 49/14 53/7 54/13 54/21 55/11 55/20 56/2 56/24 56/25 57/1 57/4
deputies **[1]** 58/14
Deputy **[2]** 57/15 57/18
describe **[2]** 14/13 39/8
described **[1]** 18/2
desire **[1]** 17/15
despite **[1]** 53/23
detailed **[3]** 31/15 36/4 36/5
determination **[1]** 52/6
determine **[8]** 6/19 6/24 11/3 11/24 12/24 35/17 35/18 57/16
determined **[2]** 8/15 8/20
DEVON **[2]** 1/21 15/2
diagnosed **[1]** 51/1
did **[30]** 7/12 10/6 11/10 18/2 18/3 18/5 19/8 19/8 20/7 22/19 23/22 27/2 27/3 27/4 27/5 27/6 27/7 30/3 38/15 41/5 41/8 43/12 43/13 43/14 46/11 46/17 46/20 50/9 55/4 55/6
didn't **[13]** 19/20 21/5 23/19 23/22 26/11 27/25 36/14 40/24 40/25 45/10 47/8 48/5 53/2
die **[1]** 34/14
different **[3]** 9/2 47/3 52/13
difficult **[1]** 29/23
difficulties **[1]** 13/10
direct **[2]** 10/24 29/18
direction **[1]** 9/2
directly **[1]** 31/11
disabuse **[1]** 45/13
disagree **[2]** 20/5 21/9
disclose **[5]** 31/3 38/24 39/1 41/12 41/13
disclosed **[1]** 35/15
disclosure **[1]** 28/21
discovery **[19]** 6/2 6/19 14/5 14/7 22/21 23/3 23/11 25/6 25/11 26/5 26/7 26/10 26/19 27/13 27/24 31/12 52/25 53/1 53/23
discuss **[6]** 24/23 37/22 38/17 50/12 50/15 50/18
Discussion **[2]** 16/8 30/18
discussions **[1]** 20/8
dish **[1]** 18/11
disobedience **[1]** 55/1
disposed **[2]** 31/22 49/11
distinctly **[1]** 20/18
DISTRICT **[5]** 1/1 1/2 1/10 1/22 59/13
disturbed **[1]** 22/7
diverted **[1]** 29/14
division **[3]** 1/3 10/21 59/14
DLA **[1]** 1/13
do **[79]**
docket **[4]** 4/21 5/16 24/23 24/24
document **[1]** 25/19
documented **[1]** 54/2
documenting **[1]** 55/7
documents **[13]** 25/12 25/13 26/5 26/11 26/11 27/2 27/14 27/24 40/17 54/14 54/20 55/21 57/5
does **[2]** 21/15 38/8

doesn't **[2]** 16/18 30/10
doing **[4]** 37/24 37/25 47/2 51/11
don't **[67]**
Donald **[1]** 45/9
done **[14]** 5/9 6/5 6/7 7/5 28/6 29/20 32/21 33/2 33/6 37/19 37/23 38/14 49/5 53/12
down **[11]** 13/11 19/11 20/18 21/18 22/15 42/10 50/20 52/1 52/21 56/10 56/16
draft **[2]** 14/11 30/4
drafted **[1]** 30/6
Drive **[1]** 1/18
drop **[1]** 56/11
due **[6]** 4/24 6/8 22/14 23/20 44/6 52/19
during **[4]** 17/9 28/16 41/7 56/2

**E**

E-Mail **[2]** 2/9 59/19
each **[1]** 26/9
easier **[1]** 20/20
eat **[1]** 21/1
ECF **[1]** 55/8
effective **[1]** 12/11
effectively **[5]** 12/23 12/23 13/18 49/4 52/14
effort **[1]** 22/20
efforts **[1]** 58/5
either **[3]** 14/14 21/17 41/24
else **[3]** 9/20 28/14 56/20
end **[4]** 6/3 6/6 8/12 36/14
enforcement **[2]** 10/21 54/8
engage **[2]** 7/22 9/1
ensure **[1]** 6/8
enter **[1]** 23/15
entered **[1]** 14/5
entire **[1]** 9/2
entities **[1]** 40/5
entitled **[6]** 6/9 6/18 6/18 48/9 58/4 59/5
entity **[1]** 42/2
Entry **[2]** 24/23 24/24
escorted **[1]** 21/21
especially **[1]** 4/20
established **[1]** 39/5
estate **[2]** 6/24 7/14
estimate **[1]** 37/9
et **[2]** 1/4 4/4
ethically **[1]** 57/12
evaluation **[1]** 51/10
evasive **[2]** 29/11 55/13
even **[7]** 6/10 6/10 8/6 22/6 28/3 36/25 53/10
ever **[6]** 21/11 38/5 39/4 45/20 46/17 51/1
every **[3]** 5/20 26/9 32/20
everyone **[1]** 16/3
everything **[2]** 6/7 19/9
evidence **[1]** 48/5
evidenced **[1]** 24/11
ex **[3]** 33/22 37/4 49/7
ex-wife **[3]** 33/22 37/4 49/7
exact **[1]** 43/6
example **[1]** 22/23
Exchange **[1]** 10/12
exchanges **[2]** 45/19 46/10

excuse **[2]** 23/15 24/24 28/1
executing **[2]** 47/20 48/15
executive **[1]** 28/4
exempt **[1]** 12/2
exhaustively **[1]** 28/12
expense **[1]** 17/10
experience **[4]** 10/12 11/13 29/22 34/15
Expires **[1]** 59/16
Explain **[1]** 33/4
express **[1]** 5/13
extent **[1]** 13/1
eye **[1]** 30/7

**F**

facetious **[1]** 50/21
facing **[1]** 26/22
fact **[4]** 8/23 22/7 44/5 51/9
failed **[5]** 14/4 42/24 52/6 55/12 56/2
failing **[1]** 53/22
failure **[7]** 14/6 14/8 27/12 52/23 53/6 55/19 55/21
fair **[1]** 48/18
faith **[6]** 14/4 22/20 53/22 55/13 55/20 56/3
family **[4]** 28/13 34/6 44/2 44/7
famous **[1]** 16/21
far **[3]** 6/20 30/14 57/11
Fargo **[6]** 44/24 44/25 45/1 45/1 45/3 48/14
FARRELL **[6]** 2/2 9/14 9/25 10/5 11/8 11/17
father **[2]** 34/9 36/10
FBI **[5]** 26/21 28/1 38/16 39/15 39/17
FBI/CIA **[1]** 28/1
FEDERAL **[3]** 1/21 4/23 15/3
fee **[1]** 57/16
feed **[1]** 9/1
feel **[1]** 51/15
fees **[1]** 59/6
few **[2]** 31/1 37/13
fiancee **[1]** 13/9
Fieldthorn **[1]** 1/18
Fifth **[1]** 15/20
file **[2]** 7/12 55/6
filed **[11]** 6/21 7/1 7/13 8/6 8/14 8/14 24/12 54/3 54/11 54/23 55/1
filings **[1]** 22/22
final **[1]** 28/19
finances **[1]** 37/16
financial **[4]** 29/11 31/14 40/5 40/10
find **[7]** 5/24 10/6 34/13 41/9 42/19 47/5 56/4
finds **[1]** 55/10
fine **[5]** 22/14 38/21 52/19 56/12 57/24
firm **[4]** 9/9 10/4 10/11 12/22
firms **[1]** 7/6
first **[4]** 5/3 14/23 22/17 52/13
five **[3]** 23/21 23/25 54/19
floor **[3]** 21/22 52/21 57/17
folks **[3]** 8/20 10/6 18/19
follow **[5]** 17/4 41/5 45/16 47/12 47/17
follow-up **[5]** 17/4 41/5 45/16 47/12 47/17
following **[2]** 8/7 52/11
food **[1]** 21/1
forbidding **[1]** 28/2

**F**

Force [6]  11/12 11/15 36/1 36/7 36/9 36/17
foregoing [2]  59/4 59/5
foreign [3]  37/11 38/6 38/12
forgiveness [2]  20/20 20/21
form [2]  38/13 38/15
formally [1]  15/2
format [1]  59/6
former [1]  10/19
FORT [11]  1/3 1/5 1/23 2/8 10/10 10/11 11/8 13/11 15/3 59/14 59/17
forthright [2]  11/11 11/22
forward [2]  8/9 9/13
found [2]  47/4 51/10
four [3]  18/11 20/8 32/13
frame [2]  23/7 45/24
frankly [5]  8/25 13/14 22/5 22/12 50/23
frequently [1]  29/14
frustrated [1]  29/24
full [1]  31/13
fully [1]  31/1
further [4]  42/23 50/19 55/7 59/6

**G**

gave [10]  18/11 18/13 18/15 18/19 19/23 23/24 23/24 45/9 55/13 55/23
gentlemen [7]  10/2 12/22 13/5 31/18 35/20 49/6 56/10
gentlemen that [1]  49/6
get [13]  5/4 6/15 8/12 25/6 27/8 27/25 30/6 41/6 45/13 45/14 47/13 53/11 57/6
give [9]  6/2 15/21 16/2 19/5 28/20 29/18 36/4 55/14 58/10
given [5]  8/25 21/17 37/19 53/23 56/16
giving [5]  12/13 36/5 46/5 49/6 49/7
glad [1]  11/6
go [12]  8/9 12/24 17/22 19/11 22/18 30/2 40/21 45/15 46/8 47/22 52/2 56/16
goes [1]  17/20
going [32]  5/1 5/2 5/3 6/6 6/12 7/11 10/24 11/25 12/2 16/20 20/11 25/3 27/1 27/15 27/18 27/19 27/22 31/4 33/9 38/24 38/25 39/1 45/17 47/13 52/2 52/20 52/22 53/5 53/16 53/16 56/25 58/2
gone [1]  49/20
good [13]  9/21 9/25 11/17 11/21 12/14 12/20 14/4 22/20 53/22 55/12 55/20 56/3 58/3
good-faith [1]  22/20
got [3]  28/9 41/19 45/8
gotten [2]  29/22 38/13
government [33]  14/23 15/1 17/10 18/18 19/4 22/13 25/16 28/4 29/13 31/4 32/3 32/6 33/3 33/6 37/10 37/11 37/15 37/23 38/12 39/2 39/4 39/4 39/15 39/16 39/23 43/14 43/16 43/22 45/12 49/2 49/4 50/13 52/15
governments [2]  38/6 38/12
grab [1]  17/24
gradually [1]  8/12
grandmother [2]  44/2 44/15
grandparents [1]  34/6
granted [5]  21/11 55/17 54/9 54/17 54/25
guess [3]  21/2 24/5 32/8
GUZMAN [4]  2/7 59/3 59/11 59/11

**H**

had [30]  5/16 7/3 14/5 14/12 14/20 15/19 18/12 18/12 20/10 20/13 20/23 23/14 24/1 24/3 26/19 29/18 33/21 43/21 44/2 44/7 45/23 46/10 46/15 46/18 46/21 46/23 47/6 47/9 47/10 52/12
Hal [3]  31/24 47/19 48/2
half [3]  22/6 28/10 36/11
hand [1]  29/1
handle [2]  40/20 40/21
handler [6]  39/14 39/15 39/17 43/14 43/17 44/3
handlers [1]  28/2
happen [1]  28/19
happened [2]  22/4 45/7
happy [10]  7/10 7/20 8/9 13/13 13/14 15/12 16/6 16/7 35/19 51/18
harassment [1]  26/18
hard [9]  30/5 45/19 46/2 46/10 46/17 46/21 47/1 47/6 47/9
has [31]  5/18 5/18 7/1 8/20 10/12 10/16 11/13 13/10 14/2 14/11 18/17 19/12 23/9 24/20 26/10 30/10 34/23 34/23 35/15 38/13 39/2 39/3 49/2 49/5 49/20 49/22 52/6 52/6 53/21 53/25 55/4
hate [2]  15/22 21/14
have [120]
haven't [7]  12/10 28/6 36/23 37/5 45/23 46/16 49/16
having [9]  8/13 10/25 14/1 20/25 22/2 22/3 22/5 52/4 53/14
he [61]
he'd [1]  21/1
he'll [1]  13/21
he's [13]  10/10 11/12 11/19 15/22 16/17 30/21 39/18 51/22 56/2 57/1 57/3 57/5 57/11
head [2]  11/5 46/23
healthcare [1]  51/4
healthy [1]  18/23
hear [4]  7/9 7/10 9/19 29/5
heard [4]  5/13 22/2 22/3 47/4
hearing [29]  1/9 4/13 5/18 6/17 7/3 8/13 9/12 12/11 14/1 17/20 20/24 22/15 23/4 23/18 24/1 26/17 44/6 52/7 52/7 52/20 53/25 54/10 54/14 54/16 54/23 55/3 55/6 55/24
held [8]  21/3 26/15 28/19 32/24 33/2 52/14 55/24 57/23
help [1]  44/15
her [6]  15/4 15/9 15/11 15/12 15/13 17/16
here [30]  4/19 4/24 5/2 5/8 5/10 5/14 6/11 9/22 10/10 10/11 11/8 12/11 13/19 15/3 16/16 20/12 22/9 23/1 28/3 28/9 30/25 31/19 36/2 49/15 51/17 51/18 53/9 54/21 55/11 58/10
hiding [1]  48/21
highest [1]  11/14

**Hill [2]**  48/9 48/14
him [24]  5/5 11/10 11/22 13/21 15/20 15/21 15/22 16/2 20/13 21/11 21/16 21/18 21/24 24/7 30/15 53/24 54/5 55/25 56/1 56/7 56/14 56/15 57/13 57/16
himself [3]  4/10 56/9 57/5
hired [2]  10/19 10/22
his [25]  4/14 5/6 14/7 14/8 15/20 15/21 21/12 23/16 23/16 23/25 24/21 27/19 30/21 53/24 54/13 54/21 55/11 55/14 55/19 55/21 55/21 55/22 56/9 56/11 56/15
history [1]  53/22
hold [6]  27/12 40/5 50/24 51/20 54/5 54/9
holding [2]  45/9 54/16
holdings [1]  23/17
home [1]  28/11
homeless [4]  18/13 18/15 18/19 19/23
honest [2]  11/11 11/22
honestly [1]  30/5
Honor [65]
Honor's [2]  25/10 25/18
HONORABLE [3]  1/9 11/9 11/9
hoping [1]  49/8
hotel [3]  18/11 19/6 19/8
hour [1]  56/16
hours [4]  18/24 26/24 28/8 29/6
how [12]  10/25 29/21 32/3 32/4 32/4 32/5 32/12 34/4 34/10 46/10 56/13 56/24

**I**

I'd [5]  7/10 8/10 13/11 20/12 40/21
I'll [12]  9/19 12/10 13/16 17/4 25/6 30/13 30/14 30/15 31/2 41/5 43/1 55/5
I'm [46]  5/3 6/14 10/24 13/2 13/13 15/12 15/18 16/6 16/6 16/11 16/12 16/22 19/11 19/15 19/19 24/6 27/11 29/17 30/2 31/10 31/18 32/12 32/23 32/23 34/8 35/19 36/3 36/5 38/22 38/24 42/16 42/20 43/4 47/12 48/6 50/21 50/21 50/22 50/23 50/25 51/18 51/19 52/1 52/8 57/7 57/11
I've [28]  4/12 5/16 5/23 5/24 6/7 6/10 9/3 9/8 9/9 13/19 14/12 16/13 17/11 18/2 26/8 29/6 38/11 38/13 41/19 44/19 44/19 47/2 47/3 47/4 53/10 53/10 55/25 55/25
idea [4]  12/14 12/20 46/13 58/3
ideal [1]  15/2
identify [6]  7/5 33/16 41/7 41/12 45/19 46/10
illegal [1]  38/14
illness [1]  51/1
imagine [1]  29/23
immediately [3]  22/14 52/20 57/22
impose [1]  52/19
imposing [1]  52/17
impression [1]  45/11
include [2]  34/5 37/7
Included [1]  25/13
includes [3]  26/5 26/6 52/25
including [1]  53/24
incrimination [1]  16/24
Indeed [4]  6/10 7/2 53/12 54/3

## I

**INDEX [1]** 2/13
**indicated [1]** 21/23
**individually [1]** 42/1
**individuals [4]** 11/24 13/19 33/7 38/11
**informant [2]** 38/16 39/6
**information [6]** 14/7 29/12 31/10
31/14 31/16 55/14
**informed [1]** 18/8
**instead [1]** 21/11
**intelligence [1]** 44/16
**intend [1]** 37/25
**intended [1]** 31/9
**intent [1]** 36/11
**interact [1]** 31/18
**interest [7]** 6/4 6/13 10/7 36/11 36/14
40/5 42/2
**interests [2]** 9/6 44/17
**intermediary [1]** 37/20
**interrogatories [11]** 14/7 22/23 23/16
24/2 24/4 25/9 25/18 27/4 27/5 54/13
54/19
**interrogatory [3]** 23/20 55/21 57/4
**interrupted [1]** 29/14
**interrupts [1]** 39/21
**intersects [1]** 44/17
**introduced [1]** 35/5
**investment [1]** 41/22
**involve [2]** 5/5 52/23
**involved [3]** 5/20 16/3 36/1
**involving [1]** 10/20
**is [97]**
**isn't [1]** 5/14
**issue [2]** 17/25 56/23
**issues [1]** 13/25
**it [97]**
**it's [24]** 5/4 6/6 6/12 8/17 9/17 9/21
13/10 16/18 18/4 20/14 20/15 20/17
20/20 21/4 25/2 25/21 26/14 35/15
35/17 37/19 44/17 48/19 57/13 58/13
**items [5]** 14/19 18/2 22/16 48/20 53/1
**its [3]** 16/19 46/3 55/6
**itself [2]** 14/16 48/10

## J

**jail [2]** 56/8 57/6
**Jeff [1]** 9/24
**JEFFREY [1]** 2/2
**Johnathan [1]** 39/18
**Johnny [5]** 8/11 14/22 22/17 27/18
52/12
**JOHNSON [62]**
**Johnson's [9]** 4/13 20/5 21/6 21/9
21/15 25/17 52/7 54/8 55/8
**joke [1]** 22/10
**JUDGE [6]** 1/10 9/25 14/19 21/21 22/6
24/18
**judgment [26]** 5/17 6/2 6/17 6/18 6/19
6/25 11/4 12/2 12/4 12/6 12/7 12/7
14/5 22/20 23/3 25/11 26/7 26/20
27/13 35/16 48/24 52/25 53/23 54/9
54/12 54/19
**Judicial [1]** 59/7
**judiciary [1]** 28/4
**JUDY [1]** 1/21
**jurors [1]** 14/21
**jury [9]** 14/19 15/1 18/1 19/15 21/19
21/22 21/23 22/7 52/16
**just [30]** 4/11 6/6 8/9 9/17 15/23 16/5
21/8 23/25 25/6 28/9 30/5 30/12 35/20
36/24 37/17 37/20 38/22 41/10 45/8
45/13 45/13 45/17 45/17 47/13 47/16
48/7 49/19 50/4 50/22 57/16
**JXC [2]** 43/3 48/13

## K

**keep [4]** 39/3 43/1 45/17 48/1
**kind [3]** 12/3 13/14 21/3
**kinds [1]** 33/14
**kitchen [1]** 18/10
**kitchenette [3]** 18/8 21/16 21/19
**know [44]** 4/19 7/6 11/2 11/10 11/22
13/2 19/16 20/16 21/8 28/9 29/21 30/3
31/3 32/7 32/11 32/16 32/18 32/22
33/14 33/18 33/19 33/20 34/4 34/9
34/10 34/16 36/21 36/24 37/12 37/18
37/20 40/2 41/9 41/10 43/3 43/19
45/22 46/12 46/22 47/6 51/5 56/13
56/14 58/4
**knowing [1]** 22/6
**knowledge [2]** 38/7 38/9
**known [3]** 9/3 11/8 13/19

## L

**laid [1]** 25/21
**Lambert [4]** 31/24 36/13 47/19 48/2
**laptop [1]** 47/10
**large [1]** 10/11
**largely [1]** 14/15
**last [12]** 4/19 5/13 6/16 7/3 23/4 23/14
26/17 28/9 28/20 41/3 44/6 44/9
**late [1]** 56/16
**later [2]** 5/1 9/21
**law [8]** 6/9 7/6 9/9 10/4 10/11 11/9
12/22 17/7
**lawyer [1]** 17/10
**least [13]** 4/7 4/20 5/13 6/5 7/10 11/10
20/10 22/11 45/23 52/9 52/18 53/4
53/15 56/5
**leave [2]** 20/25 56/17
**led [1]** 21/18
**left [4]** 12/9 47/11 50/23 52/8
**legal [3]** 8/16 53/9 58/10
**legislative [1]** 28/5
**Less [1]** 32/19
**let [15]** 4/17 4/17 4/22 13/2 13/16 17/3
17/15 19/13 30/2 30/13 31/1 35/22
37/8 48/7 52/1
**let's [7]** 8/11 13/24 17/25 22/18 25/23
39/3 48/7
**levels [1]** 11/14
**like [27]** 7/9 8/2 8/10 8/10 11/21 13/10
15/8 15/9 15/22 15/23 16/17 20/12
22/10 24/20 28/20 37/24 41/4 42/25
44/21 44/22 45/10 46/3 47/12 48/20
49/15 51/15 51/25
**limit [1]** 35/13
**limited [1]** 4/12
**lines [1]** 25/4
**list [3]** 40/4 41/15 44/22
**listed [1]** 12/13
**listen [3]** 6/14 16/25 31/7
**listening [2]** 47/1 52/8
**litigation [1]** 10/9
**little [2]** 7/3 23/13
**LLC [9]** 1/4 44/4 44/21 43/3 43/3 43/7
43/25 48/13 49/1
**LLP [1]** 1/13
**lockup [1]** 19/12
**long [5]** 24/14 25/25 28/10 47/11
56/13
**longer [1]** 39/10
**longtime [2]** 10/8 10/13
**look [4]** 9/5 10/16 11/3 29/8
**looking [1]** 45/11
**lot [15]** 5/15 8/23 18/23 44/17 45/13
45/14 46/4 46/4 46/24 47/3 47/4
**lots [1]** 45/5
**Lying [1]** 42/17

## M

**made [5]** 4/22 6/16 20/22 38/2 52/6
**mail [4]** 2/9 23/25 24/2 59/19
**mailed [1]** 24/3
**maintaining [1]** 10/7
**make [11]** 6/16 8/1 9/16 9/20 16/15
21/16 22/9 22/20 47/16 53/16 54/4
**making [1]** 50/21
**managed [1]** 28/11
**manners [1]** 33/14
**many [8]** 32/3 32/3 32/4 32/4 32/5
32/12 34/4 46/10
**MARK [1]** 1/9
**Marriott [1]** 18/14
**Marshal [3]** 52/20 53/17 56/7
**Marshals [1]** 56/13
**material [1]** 58/8
**matter [4]** 5/3 48/16 48/16 59/5
**matters [3]** 5/12 28/15 29/7
**may [5]** 13/6 15/15 15/16 30/8 57/9
**maybe [15]** 10/16 15/19 20/20 32/14
32/14 32/15 32/15 32/17 34/5 37/12
41/18 42/1 46/16 46/22 51/10
**me [41]** 4/17 4/20 5/13 6/5 7/10 11/10
12/16 13/2 13/3 15/2 15/13 16/19 17/3
18/22 19/13 19/21 23/15 24/24 25/3
26/14 27/25 29/18 31/1 32/10 32/12
33/21 35/5 35/17 35/22 35/25 36/14
37/3 37/8 40/21 45/11 45/13 47/1 47/8
48/7 49/15 52/1
**mean [4]** 35/6 35/7 38/8 56/24
**means [3]** 11/10 42/21 49/1
**meant [3]** 18/25 19/1 22/9
**mechanical [1]** 2/12
**media [1]** 21/6
**medications [1]** 51/8
**members [1]** 34/6
**men's [1]** 21/23
**mental [2]** 51/1 51/3
**mentally [1]** 51/16
**mentioned [1]** 20/25
**meritorious [1]** 7/2
**met [1]** 8/17
**method [1]** 14/22
**mguzman.csr [2]** 2/9 59/19
**microphone [1]** 29/4
**middle [1]** 54/17
**might [11]** 5/5 7/10 12/14 15/1 16/3
20/23 32/13 34/5 34/6 41/25 58/3
**million [6]** 5/17 6/17 35/16 37/13
37/14 38/2

**M**

**mine [4]** 18/8 19/9 33/10 48/24
**minimal [3]** 24/21 24/22 55/14
**Minimally [1]** 31/9
**minimum [2]** 21/1 25/2
**minute [1]** 30/12
**minutes [1]** 23/25
**Miranda [5]** 15/21 16/6 16/21 16/22 53/10
**missing [1]** 14/19
**misstating [2]** 44/9 44/12
**moment [2]** 27/8 51/8
**Monday [3]** 14/10 53/2 54/21
**money [7]** 33/8 33/10 37/10 38/5 38/11 46/24 57/20
**MONICA [5]** 2/7 29/5 59/3 59/11 59/11
**monthly [1]** 40/9
**months [5]** 11/20 12/5 16/13 51/10 58/13
**more [11]** 6/3 6/10 8/6 18/15 24/23 29/23 32/8 47/14 49/21 50/3 53/12
**morning [4]** 4/21 5/17 16/6 28/10
**most [2]** 10/6 29/25
**motion [19]** 5/4 6/22 7/1 7/12 8/2 8/5 8/14 14/2 24/25 25/10 54/3 54/8 54/9 54/11 54/15 54/17 54/24 55/1 55/7
**MOTIONS [1]** 1/9
**moved [2]** 23/14 31/22 49/11 49/16
**moving [2]** 34/3 48/20
**Mr [104]**
**Ms [11]** 4/10 4/17 4/18 4/23 15/2 15/19 16/15 17/15 30/19 56/19 57/11
**much [1]** 8/19
**mug [16]** 14/21 17/24 18/9 18/10 18/20 19/6 19/12 20/7 20/13 20/15 20/17 21/3 21/7 21/7 21/12 52/15
**mugs [1]** 55/16
**multiple [2]** 24/15 31/8
**must [1]** 50/5
**my [61]**
**myself [6]** 20/8 21/10 21/21 36/10 45/13 58/7

**N**

**name [7]** 41/8 41/13 41/25 42/1 43/16 43/19 44/21
**narratives [1]** 29/15
**Navy [1]** 44/16
**NCRA [1]** 59/12
**necessarily [1]** 33/13
**necessary [4]** 7/20 8/6 17/18 53/15
**necessitating [1]** 26/13
**need [15]** 5/24 7/16 7/22 9/19 9/21 9/21 15/13 25/25 27/21 27/22 36/21 50/6 50/7 56/14 58/5
**needing [1]** 5/5
**Neither [1]** 21/10
**never [9]** 19/7 23/18 44/19 44/19 46/21 47/9 47/13 48/4 49/17
**next [1]** 15/13
**nine [2]** 16/13 58/13
**no [59]** 1/4 7/15 7/19 7/22 7/24 7/25 8/4 8/7 8/13 9/4 12/9 12/17 13/4 13/13 15/7 15/10 15/16 17/19 18/9 18/22 20/24 21/20 23/9 24/3 27/11 32/1 35/24 36/19 37/24 39/10 40/6 40/7 41/21 42/4 42/5 42/6 42/12 42/14

**12/18** 43/21 46/6 46/13 46/20 46/20 47/21 48/22 49/5 50/23 51/2 51/3 51/7 51/9 52/9 53/14 53/25 55/1 57/12 59/12 59/12
**Nods [1]** 11/5
**noncompliance [2]** 55/8 55/18
**noncompliant [1]** 27/10
**none [1]** 46/7
**nonsense [1]** 29/15
**NORTHERN [1]** 1/2 1/22 59/13
**not [96]**
**note [5]** 4/11 12/10 29/10 30/14 55/5
**noted [1]** 24/15
**nothing [4]** 25/15 26/20 44/8 50/19
**notice [2]** 57/1 57/7
**noticed [1]** 14/9
**NOVEMBER [7]** 1/6 4/2 23/17 23/21 54/11 54/16 54/21
**now [8]** 5/3 6/22 8/19 13/24 29/6 31/14 40/15 57/16
**number [4]** 4/3 10/11 26/21 26/23 40/11 52/24 55/9
**numerous [1]** 53/23

**O**

**O'Connor [1]** 11/9
**O'Connor's [2]** 14/19 21/21
**oath [7]** 24/6 24/9 24/17 38/20 42/15 42/17 53/3
**object [4]** 7/4 7/11 49/7 55/4
**objected [2]** 8/18 12/10
**objecting [1]** 7/13
**objection [6]** 7/24 7/25 8/7 8/13 13/14 49/6
**objections [2]** 7/15 7/19
**obligation [1]** 57/12
**obstructive [5]** 14/15 26/9 28/16 30/3 53/13
**obviously [1]** 10/24
**Ocean [1]** 11/15
**October [1]** 54/3
**off [3]** 41/15 46/23 57/14
**office [8]** 10/13 10/23 11/1 22/15 24/1 42/20 52/21 56/11
**Officer [3]** 21/14 22/1 22/4
**officers [2]** 12/24 21/17
**Official [1]** 59/13
**oftentimes [1]** 33/7
**Oh [1]** 7/18
**OIA [1]** 38/13
**okay [49]** 4/8 4/17 5/6 7/16 7/22 8/10 8/12 12/18 13/17 13/22 13/23 15/14 15/17 16/13 17/3 17/19 17/23 18/4 19/10 19/17 23/7 25/20 27/10 27/17 30/16 30/24 31/7 31/21 32/2 34/19 37/2 37/8 38/13 39/2 39/8 40/2 40/8 40/19 41/3 41/6 44/13 50/3 52/2 52/3 57/18 57/22 58/11 58/15
**old [1]** 8/11
**one [26]** 5/1 8/11 8/11 9/4 15/2 16/18 17/10 18/7 19/21 21/17 21/18 23/2 23/4 28/20 30/16 32/13 32/14 32/15 34/9 39/14 42/5 46/16 47/14 50/4 52/24 53/11
**ongoing [1]** 39/20
**only [10]** 6/8 10/10 11/24 14/6 14/13 21/1 24/5 26/4 31/9 53/8

**operating [1]** 25/16
**operation [7]** 33/9 48/17 50/5 50/8 50/11 50/14 50/17
**operational [1]** 39/11
**opportunities [1]** 53/23
**opportunity [3]** 18/4 25/23 28/20
**options [2]** 18/23 18/23
**order [16]** 12/12 14/4 14/18 22/3 23/4 23/13 25/10 28/6 40/9 49/21 50/1 52/10 52/17 53/17 54/6 55/2
**ordered [14]** 6/1 14/3 22/18 23/21 25/14 26/11 27/13 27/14 27/20 27/23 28/15 40/12 54/18 55/19
**orders [14]** 23/2 23/10 25/18 26/6 27/11 28/21 31/12 52/24 53/20 54/1 55/8 55/24 56/6 58/12
**original [1]** 45/5
**other [21]** 6/13 12/9 18/15 27/12 28/14 32/10 33/15 34/6 35/22 39/15 39/23 40/10 41/20 41/25 42/5 50/23 50/24 52/10 52/23 53/14 54/7
**others [2]** 42/5 42/6
**otherwise [3]** 31/22 38/14 49/11
**Othram [8]** 35/1 37/6 43/8 44/1 47/18 48/2 48/10 49/9
**our [12]** 6/9 6/9 8/5 13/24 14/21 15/3 23/25 24/23 25/5 28/17 52/16 57/17
**out [28]** 4/24 6/24 8/25 9/5 9/12 12/11 12/24 14/24 16/2 20/22 21/6 25/21 27/22 27/25 28/8 28/9 28/18 29/23 30/6 30/13 34/14 36/14 39/19 42/3 49/8 52/5 53/8 57/6
**outset [1]** 24/16
**outside [2]** 18/13 18/14
**outstanding [4]** 5/17 19/25 23/2 25/19
**own [6]** 16/7 32/3 32/5 34/18 34/21 36/21
**owned [1]** 45/5

**P**

**p.m [2]** 1/7 4/2
**Pacific [1]** 11/15
**PAGE [1]** 3/2
**paid [1]** 14/20
**paper [1]** 46/2
**parents [1]** 34/6
**part [5]** 14/18 26/12 48/1 48/2 53/6
**partially [1]** 9/7
**participate [1]** 6/14
**past [2]** 4/25 22/5
**patience [2]** 6/3 29/24 56/19
**patient [1]** 16/12
**pay [5]** 52/22 56/11 57/16
**payable [2]** 22/14 52/19
**Pearl [1]** 1/14
**people [8]** 18/13 18/15 19/23 20/8 32/11 34/14 45/11 47/4
**per [2]** 33/10 40/15
**perfect [1]** 10/15
**perfectly [2]** 19/11 19/15
**perhaps [1]** 10/16
**perjured [1]** 42/19
**permission [5]** 4/13 20/20 20/21 21/11 22/16
**person [2]** 11/21 21/15
**person's [1]** 43/19
**personally [1]** 11/22 54/6

**P**

pertinent [1] 30/1
phone [3] 13/12 40/22 58/4
physically [1] 55/11
picked [1] 29/25
picture [1] 21/7
piece [5] 8/11 8/12 22/17 22/18 22/25
pieces [2] 52/13 52/23
Piper [1] 1/13
PITTMAN [2] 1/9 24/18
place [5] 14/9 26/18 42/25 53/17 56/7
placed [2] 35/10 46/18
places [1] 45/20
placing [2] 31/23 49/12
plan [1] 55/14
played [1] 11/7
please [11] 9/11 9/13 16/25 17/19 19/24 25/22 35/9 50/25 52/1 56/11 57/10
podium [2] 17/22 52/2
point [6] 1/4 4/3 12/15 23/3 31/24 46/16
pointed [1] 52/5
polite [1] 19/19
portfolio [1] 40/4
portion [2] 5/5 48/6
position [1] 48/8
possess [1] 46/11
possessed [1] 45/21
possible [6] 13/10 13/12 19/19 39/3 55/14 56/5
possibly [2] 5/5 6/7
post [13] 6/2 6/19 14/5 22/20 23/3 25/11 26/7 26/20 27/13 52/25 53/23 54/12 54/19
post-judgment [13] 6/2 6/19 14/5 22/20 23/3 25/11 26/7 26/20 27/13 52/25 53/23 54/12 54/19
posted [1] 21/7
powers [1] 12/13
precise [1] 49/22
preface [2] 31/2 47/2
prefer [4] 13/11 38/17 38/19 38/20
pregnant [1] 13/10
prepaid [1] 39/5
prepared [4] 31/15 31/20 40/15 41/12
prescribed [1] 59/7
present [3] 15/13 17/9 55/11
preservation [3] 48/19 48/25 49/21
preserved [3] 49/3 50/7 50/7
President [1] 45/9
pretty [2] 21/4 51/11
prevent [4] 47/19 47/22 48/3 48/14
previous [3] 5/18 18/12 23/20
previously [4] 6/5 18/7 42/24 43/24
Price [6] 2/3 9/9 9/24 10/1 10/4 11/20
print [1] 21/5
PRO [1] 1/18
probably [6] 4/19 6/12 12/20 13/20 26/24 49/22

problem [1] 51/24
proceedings [3] 2/12 58/16 59/5
proceeds [5] 43/8 44/1 48/1 48/9 48/15
process [5] 6/8 26/25 27/1 56/14 58/5
proclivity [1] 9/1
produce [8] 25/14 28/6 40/9 54/13 54/19 54/20 55/21 57/4
produced [2] 2/12 25/15
production [2] 25/18 40/11
professionals [1] 51/4
proof [1] 24/3
property [9] 14/23 15/1 17/25 18/18 19/4 22/14 52/15 53/4 55/22
proposed [1] 12/12
prosecution [1] 11/13
prosecutor [2] 10/8 11/13
protect [2] 8/21 8/22
protection [1] 54/6
provide [5] 29/12 31/10 31/15 53/9 57/1
provided [6] 17/10 24/3 39/5 39/11 40/3 40/8
providing [2] 27/13 57/7
psychiatric [1] 51/6
psychological [1] 51/10
public [5] 1/21 4/23 6/11 15/3 53/9
pun [1] 21/4
purely [1] 5/4
purge [5] 53/19 56/24 57/23 58/5 58/7
purges [2] 56/9 57/5
purpose [7] 4/12 31/23 36/11 47/19 47/25 48/13 49/12
pursuant [2] 31/4 40/11
pursue [1] 10/17
put [7] 11/17 15/23 23/1 27/15 27/18 35/20 53/10
putting [4] 36/11 36/14 48/19 49/3

**Q**

question [24] 13/6 17/4 19/25 26/9 32/11 32/23 33/15 33/25 35/16 35/17 36/2 37/21 38/2 40/1 41/3 43/18 45/25 46/9 47/7 47/14 48/8 48/12 49/10 49/22
questioning [1] 17/9
questions [40] 5/21 6/5 6/13 10/20 12/16 13/3 14/8 15/5 17/19 19/1 20/11 24/21 26/19 26/21 26/23 29/11 29/16 29/17 29/19 30/1 30/4 30/6 30/6 31/1 35/13 36/3 37/1 38/20 41/6 42/23 50/3 51/25 53/7 53/11 55/12 55/20 55/25 56/1 56/23 57/3
quickly [3] 15/8 15/15 26/1
quiet [3] 19/17 19/24 49/18
quip [1] 20/22
quite [5] 8/25 22/5 26/21 26/23 30/5
quoting [1] 31/11

**R**

radar [1] 36/13
raise [1] 28/25
rather [4] 15/8 26/12 35/17 46/5
reach [2] 31/23 49/12
read [7] 16/20 17/3 17/11 21/6 26/8 28/12 53/10
reading [1] 48/6

ready [3] 57/1 57/2 57/5
realize [1] 43/24
really [4] 16/11 16/11 34/13 50/22
reason [4] 11/7 26/12 43/25 44/6
reasons [1] 18/6
recall [3] 20/6 20/18 46/23
receive [1] 23/22
received [4] 24/1 37/10 37/14 38/5
receiver [27] 6/22 7/5 7/7 7/9 7/12 7/14 8/3 8/5 8/6 8/9 8/14 8/17 9/5 9/8 9/11 10/5 10/7 10/25 12/12 12/19 14/2 24/25 26/13 55/15 54/24 55/5 55/7
receivers [9] 2/2 12/14 12/21 13/3 13/11 49/5 51/23 56/13 58/8
receivership [4] 5/4 6/22 8/21 35/21
recently [1] 10/19
recess [1] 58/15
recollection [1] 20/7
recommendations [1] 8/8
record [12] 4/11 4/18 4/22 9/17 24/8 25/5 29/10 42/25 45/18 52/7 57/14 59/5
recoverable [2] 11/4 12/25
Reed [1] 11/9
referring [1] 42/20
reflect [2] 4/18 4/22
refuse [1] 43/18
refused [4] 12/25 29/12 30/14 57/11
refusing [4] 30/21 33/25 36/25 38/1
regarding [5] 14/7 16/21 16/22 28/14 31/14
regards [1] 8/3 14/1 52/24
related [1] 24/2
relationship [2] 26/21 26/22
release [1] 10/18
remain [3] 15/23 17/5 21/24
remainder [1] 17/20
remaining [1] 13/25
remove [1] 18/2
removed [2] 18/1 18/18
removing [1] 22/16
repeated [1] 53/22
repeatedly [4] 20/23 24/22 29/12 55/13
reported [2] 2/12 55/15
reporter [6] 2/7 20/9 21/10 24/10 39/21 59/13
REPORTER'S [1] 58/17
represent [2] 15/22 30/15
represented [1] 12/5
representing [1] 4/9
request [5] 4/22 25/14 40/11 40/14 40/15
requested [2] 24/13 26/11
requests [1] 25/19
required [4] 40/9 53/1 53/2 54/20
requirements [1] 8/16
requires [1] 31/13
respect [1] 8/23
respected [1] 10/14
respond [9] 20/2 23/8 28/15 53/1 54/12 54/25 55/12 55/19 56/2
response [6] 7/12 14/25 22/2 31/11 55/1 55/18
responses [4] 29/19 31/14 52/8 55/22
responsively [1] 31/2
Reston [1] 1/19

**R**

result [1] 6/21
resulting [1] 55/16
retired [1] 11/12
returned [2] 19/12 19/21
returns [1] 25/15
review [1] 14/12
reviewed [2] 8/13 29/21
reviewing [2] 29/6 52/6
rid [2] 45/8 45/14
right [16] 5/12 10/2 13/5 13/24 17/5
 17/8 25/21 29/1 29/4 30/24 31/21 36/7
 41/2 41/15 50/9 57/14
rights [10] 5/6 15/6 15/20 16/6 16/20
 16/22 16/23 17/1 17/11 53/10
risk [1] 57/17
Robbins [1] 10/23
Robert [1] 8/24
role [2] 43/21 43/23
room [15] 1/22 2/7 14/19 15/1 18/1
 18/11 19/9 21/19 21/22 21/23 21/23
 22/7 27/6 52/16 59/17
rooms [1] 21/23
rope [1] 6/3
rough [2] 14/11 24/11
RPR [3] 2/7 59/3 59/11
ruling [1] 8/1
rulings [1] 53/16
rush [1] 24/14

**S**

safe [2] 42/10 46/19
said [39] 5/18 7/2 13/18 14/22 14/24
 17/1 17/25 19/7 20/12 20/13 20/14
 20/15 20/15 20/16 20/23 21/7 21/11
 22/24 23/24 24/16 24/19 24/20 25/2
 25/2 25/3 26/8 26/10 26/17 29/6 30/10
 44/9 45/10 47/23 47/25 48/4 50/6 50/7
 52/12 55/4
sale [6] 43/8 44/1 47/18 47/19 48/1
 49/17
same [4] 19/14 24/17 30/4 54/7
sanction [4] 22/11 52/9 52/18 53/4
 53/15 55/17 56/5
sanctioned [1] 26/15
SANDERS [12] 1/21 4/10 4/17 4/18
 4/23 15/2 15/19 16/15 17/15 30/19
 56/19 57/11
Sanford [1] 57/15
sat [1] 51/9
Saturday [1] 23/21
saw [1] 10/18
say [13] 8/2 14/13 16/18 17/6 19/8
 21/8 28/14 33/24 44/18 46/6 48/5
 50/10 50/20
saying [5] 19/3 20/6 20/19 31/2 47/2
says [3] 20/13 20/14 21/2
scheduled [2] 54/14 56/25
scope [1] 35/12
se [2] 1/18 33/10
seat [6] 10/3 19/25 27/16 28/17 28/25
 29/3
second [5] 22/18 22/19 22/25 23/4
 49/10
Security [3] 10/12 21/14 22/4
see [2] 9/12 58/3
seeing [1] 51/3

seems [1] 22/19
seen [2] 4/25 47/3
self [1] 16/24
self-incrimination [1] 16/24
send [4] 13/13 58/8 58/8 58/9
sense [1] 51/16
sentencing [1] 28/10
seriously [1] 53/3
serve [5] 7/7 9/5 10/5 10/6 55/21
served [1] 10/10
service [1] 56/17
services [3] 15/11 15/13 57/11
set [14] 32/10 32/22 33/21 34/7 34/9
 35/2 35/4 35/9 36/9 36/10 43/7 43/12
 43/14 43/25
setting [1] 43/21
several [11] 5/12 5/23 11/1 11/20 12/5
 18/6 28/8 29/6 29/11 55/25 56/1
severe [6] 22/11 52/9 52/18 53/4
 53/15 56/5
shall [1] 44/18
she [2] 15/4 44/15
she's [1] 17/17
shenanigans [1] 5/15
Sheridan [1] 44/19
Shh [1] 49/18
shoebox [1] 46/19
shoes [2] 12/23 13/19
short [1] 43/2
shot [2] 21/3 21/7
should [6] 8/22 15/21 26/14 52/14
 56/25 58/12
shouldn't [1] 21/2
show [12] 4/23 14/3 18/4 20/24 22/2
 22/19 25/12 25/23 52/5 54/4 54/9
 55/19
showed [1] 14/19
shown [1] 53/21 53/25
sic [5] 7/20 36/25 48/9 48/14 53/4
side [1] 32/6
Signed [1] 59/9
signing [1] 12/12
silent [1] 17/5
simply [2] 5/9 26/16
since [5] 18/17 37/5 39/19 45/21
 45/23
sink [1] 18/9
sir [4] 13/8 21/20 28/25 45/25
sit [4] 19/15 54/13 54/20 57/1
six [3] 18/24 22/5 26/24
soap [1] 18/11
social [1] 21/6
some [20] 4/24 7/6 7/6 9/7 11/10
 12/15 18/11 18/13 18/22 21/1 25/15
 28/1 37/7 38/15 39/19 41/4 44/7 47/10
 51/22 53/16
somebody [4] 19/3 26/22 33/20 40/21
someone [1] 57/3
something [5] 25/3 28/2 32/20 34/5
 44/22
sometimes [1] 37/19
somewhere [1] 37/12
song [1] 8/11
sorry [3] 7/18 16/22 26/3
sort [2] 28/1 34/13
sound [1] 21/16
sounds [4] 15/22 16/17 48/20 49/14

souvenir [1] 20/12
spa [1] 18/25
space [1] 10/15
speak [4] 4/13 16/7 17/8 29/4
speaks [1] 14/16
special [1] 36/11
specifically [2] 20/15 27/23
spent [2] 28/10 29/6
spot [2] 15/23 47/1
staff [6] 10/16 10/25 19/4 21/10 21/15
 55/15
stand [12] 1/21 7/16 8/4 12/22 13/18
 25/22 28/18 28/23 28/24 53/11 57/14
 58/15
STAND-BY [1] 1/21
standby [3] 5/2 15/4 15/24
start [1] 51/14
started [1] 27/1
state [1] 44/17
stated [4] 30/5 31/8 40/13 41/8
statement [1] 23/9
statements [2] 20/5 40/9 40/11
STATES [12] 1/1 1/10 16/21 28/3
 37/10 37/15 37/23 38/3 39/2 53/17
 56/7 59/8
stay [2] 12/7 54/8
stayed [1] 5/18
staying [1] 18/15
steal [1] 19/20
stealing [2] 22/13 52/15
stenography [1] 2/12
step [3] 9/13 50/20 52/1
still [5] 10/7 15/18 22/23 39/20 51/24
stock [13] 34/25 35/1 37/6 37/7 43/8
 47/18 48/2 48/10 48/10 48/15 49/6
 49/8 49/9
stole [2] 15/1 55/16
stop [3] 26/2 26/18 57/10
stored [3] 45/21 46/11 46/13
stories [2] 6/14 38/23
story [4] 21/15 24/7 24/8 24/9
strategic [1] 11/16
Street [4] 1/14 1/22 2/7 59/17
study [1] 8/19
stuff [2] 46/3 46/3
subject [4] 6/24 12/1 26/7 35/16
submitted [2] 12/13 14/11
Subsequent [1] 54/23
Substack [1] 21/6
such [2] 53/18 56/8
suggested [1] 8/24
Suite [2] 1/14 2/4
suited [2] 7/8 9/5
summary [1] 25/17
supersede [1] 12/7
superseded [1] 5/19
supervise [1] 21/18
supplement [4] 8/5 24/23 24/24 55/6
support [1] 24/24
suppose [1] 20/19
supposed [4] 26/5 31/18 40/23 51/25
sure [7] 7/16 13/2 16/15 25/8 25/24
 29/4 37/16
swore [3] 24/6 24/7 24/17
sworn [2] 24/10 29/2
synthetic [1] 36/12
system [2] 6/10 36/13

**T**

**table [1]** 10/3

**take [32]** 5/1 5/3 5/6 5/13 6/23 8/10 8/22 13/24 14/9 14/23 17/15 17/25 18/8 19/5 19/6 19/8 20/14 20/17 22/6 26/18 28/11 28/17 28/25 30/15 38/11 43/8 44/1 49/8 52/21 57/16 57/22 58/5

**taken [7]** 14/21 18/12 18/12 28/8 29/8 56/21 58/2

**taking [1]** 22/24 28/12 53/3

**talk [3]** 27/19 34/13 39/19

**talking [4]** 15/18 25/6 33/11 43/4

**Tarrant [1]** 20/17

**task [5]** 29/23 36/1 36/7 36/9 36/17

**tax [1]** 25/15

**taxpayers [1]** 14/20

**Taylor [1]** 1/22

**tea [2]** 18/22 18/23

**technology [1]** 36/13

**Telephone [6]** 1/15 1/19 1/23 2/5 2/8 59/18

**tell [8]** 11/1 25/3 26/14 32/12 34/19 34/21 34/24 57/3

**telling [3]** 21/16 29/17 36/23

**ten [2]** 32/17 32/19

**tendency [1]** 19/16

**tentative [1]** 8/8

**Terry [1]** 11/10

**testified [2]** 43/25 44/5

**testify [1]** 47/4

**testimony [2]** 47/4 52/7

**TEXAS [11]** 1/2 1/5 1/15 1/22 1/23 2/4 2/8 42/9 59/12 59/13 59/17

**than [11]** 6/13 6/16 20/20 20/21 28/14 32/9 32/19 42/5 46/5 50/24 52/10

**thank [22]** 4/18 5/7 5/8 5/10 9/23 10/2 11/7 13/5 13/17 16/16 20/1 21/13 22/1 27/17 30/17 30/24 31/21 56/17 56/19 57/18 58/14 58/15

**that [273]**

**that's [34]** 10/22 12/8 21/8 22/10 22/17 23/6 24/3 24/11 25/4 25/8 26/25 28/2 28/3 31/4 32/22 33/6 33/15 34/15 37/17 38/21 40/2 41/2 41/18 41/18 42/7 42/8 43/5 44/22 47/23 48/11 48/18 49/4 50/2 50/9

**theft [2]** 14/23 55/22

**their [2]** 12/22 22/4

**them [40]** 12/3 12/15 13/2 13/13 13/14 13/15 13/16 16/6 17/3 17/11 17/13 18/2 18/13 18/19 19/5 23/21 23/22 23/24 24/3 27/6 27/6 30/5 31/1 31/23 32/22 33/18 33/19 33/21 38/21 40/24 40/25 41/1 41/15 41/17 48/3 48/21 48/23 49/12 53/13 57/3

**then [14]** 5/6 14/21 18/9 18/15 20/21 20/22 23/4 23/8 37/2 37/4 41/4 45/9 54/23 55/23

**then-President [1]** 45/9

**theories [1]** 9/2

**there [32]** 5/14 6/24 8/2 9/10 9/12 11/24 14/21 15/5 17/24 18/9 18/24 20/3 20/8 20/24 21/18 23/9 26/19 26/20 26/23 26/25 31/18 32/13 33/7 38/10 38/21 42/11 44/7 44/15 44/22 44/22 45/11 56/25

**there's [10]** 18/22 19/24 32/21 32/21

**therefore [2]** 53/14 56/4

**therein [1]** 12/13

**these [12]** 11/24 12/22 13/19 17/1 22/8 24/2 32/24 35/2 35/2 35/9 52/8 53/11

**they [15]** 12/2 12/2 12/3 13/18 13/22 13/18 19/7 19/8 32/10 33/8 34/25 35/4 37/7 45/12 50/7

**they're [7]** 6/18 7/20 9/12 11/25 33/2 35/1 39/10

**thing [9]** 4/19 11/6 12/3 14/13 16/18 21/1 27/25 34/13 52/13

**things [4]** 5/1 33/2 38/18 45/12

**think [31]** 4/6 6/4 7/10 7/19 8/6 15/1 16/3 16/4 18/24 20/14 22/11 22/12 22/13 24/22 27/21 29/25 32/12 33/1 33/2 33/9 34/8 35/23 37/6 43/5 44/21 45/1 46/3 46/15 50/25 57/2

**third [4]** 21/22 52/21 53/6 57/17

**this [89]**

**THOMPSON [25]** 1/13 4/6 8/1 12/13 12/16 20/2 22/3 23/2 25/22 26/10 27/21 29/14 29/20 35/13 35/25 40/3 41/4 42/23 45/15 46/8 48/12 52/8 56/1 56/18 58/9

**those [31]** 12/13 16/2 17/11 22/16 23/18 23/19 23/20 25/13 27/13 30/2 31/17 33/16 37/3 37/5 37/6 38/18 39/8 39/19 40/17 40/23 41/23 45/14 45/22 48/15 49/5 49/6 49/9 49/23 55/24 56/1 59/7

**though [1]** 30/24

**thought [2]** 10/15 11/20

**threatened [1]** 5/25

**threatening [1]** 54/6

**three [7]** 32/13 40/12 41/16 47/3 51/10 52/5 52/12

**through [7]** 5/22 7/20 29/22 30/2 37/19 49/17 49/20

**throughout [2]** 14/15 53/21

**Thus [2]** 6/20 55/3

**time [32]** 5/15 6/14 8/11 8/12 14/16 15/21 16/20 17/18 20/10 20/12 22/19 22/24 28/9 28/13 28/17 29/10 30/16 32/20 35/13 38/22 39/9 42/25 45/5 45/24 46/24 47/11 52/4 53/12 53/18 56/7 56/8 58/3

**times [6]** 5/14 5/23 5/25 24/15 31/8 38/10

**today [24]** 4/20 4/24 5/9 5/10 5/13 6/11 9/12 12/11 12/15 14/1 14/3 14/18 24/1 27/25 29/8 29/16 31/19 41/12 52/22 54/25 55/3 55/4 55/24 56/15

**today's [2]** 53/24 55/6

**together [2]** 23/1 26/17

**told [5]** 19/4 27/25 33/21 33/23 58/4

**too [3]** 11/2 11/21 16/4

**took [6]** 18/10 18/19 18/20 18/20 52/13 52/16

**top [1]** 46/23

**total [2]** 37/9 41/17

**totally [2]** 7/20 37/16

**touch [1]** 46/3

**touched [1]** 37/5

**towards [1]** 30/7

**transaction [3]** 48/1 48/13 49/20

**transcript [5]** 2/9 2/12 14/16 24/12 24/14 26/8 26/12 29/7 29/9 29/21 31/11 40/13 48/7 59/4 59/6

**transfer [1]** 49/22

**transferred [2]** 31/22 49/11

**transferring [1]** 48/23

**trial [4]** 12/6 18/17 28/10 54/17

**trip [1]** 18/25

**true [2]** 28/3 59/4

**Trump [1]** 45/9

**trust [16]** 32/6 34/11 34/17 34/18 34/21 34/22 35/9 35/10 35/22 35/25 36/1 36/7 36/9 36/17 36/20 37/4

**trustee [1]** 49/4

**trusts [8]** 32/3 32/4 32/24 33/7 33/16 34/4 35/2 35/3

**truthfully [1]** 19/1 37/21

**try [5]** 7/5 27/18 30/4 53/11 53/13

**trying [7]** 5/24 6/15 10/6 16/12 16/16 19/19 22/25

**turn [1]** 41/5

**Tweet [1]** 45/9

**two [18]** 5/22 9/10 9/16 12/14 12/22 18/13 18/15 23/2 23/10 23/15 27/11 32/9 32/13 32/14 32/15 34/23 35/20 52/23

**type [5]** 5/20 21/11 38/2 51/6 51/8

**typically [3]** 32/21 34/12 37/18

**U**

**U.S [12]** 10/13 10/20 10/23 11/1 33/6 38/12 42/20 44/17 45/12 49/2 49/4 52/20

**ultimately [1]** 36/14

**Umbra [2]** 36/12 37/7

**unanswered [1]** 30/1

**uncooperative [1]** 6/21

**uncredible [1]** 41/9

**under [12]** 6/9 15/20 16/21 16/23 24/6 24/9 25/16 38/20 41/17 42/15 42/17 45/10

**underlying [1]** 5/21

**underneath [1]** 46/18

**understand [13]** 17/1 17/11 17/14 31/5 35/6 35/14 42/15 42/16 46/25 47/7 51/16 51/19 51/21

**understanding [4]** 23/6 30/20 33/5 49/1

**understood [2]** 5/7 24/19

**undertook [1]** 22/8

**unfortunately [1]** 12/4

**UNITED [12]** 1/1 1/10 16/21 28/3 37/10 37/15 37/23 38/3 39/2 53/17 56/6 59/8

**unlawful [5]** 52/10 53/15 53/24 54/2 56/6

**unless [1]** 19/24

**Unlike [1]** 10/15

**unnamed [1]** 25/16

**unopposed [1]** 8/2

**unrelated [1]** 29/15

**unresponsive [3]** 14/14 26/9 28/16

**until [1]** 21/25 53/18 57/23

**up [40]** 4/23 5/1 5/3 5/6 5/13 13/24 14/19 14/23 15/8 17/4 17/25 21/3 21/18 22/9 22/24 25/12 28/23 32/10 32/22 33/21 34/7 34/9 35/3 35/4 35/9

## U

**up...** [15] 36/9 36/10 36/14 41/5 43/12 43/14 43/21 43/25 44/7 45/16 47/12 47/17 52/13 56/17 57/13
**us** [10] 1/13 23/7 32/8 33/16 34/19 34/21 34/24 36/23 39/8 46/5
**use** [5] 15/11 19/4 19/9 21/16 33/8
**used** [4] 17/6 24/22 46/3 46/16
**using** [2] 48/13 48/24
**usually** [1] 34/13

## V

**various** [5] 5/25 11/16 27/24 28/11 45/12
**Vedder** [6] 2/3 9/9 9/24 10/1 10/4 11/19
**vehicle** [1] 36/12
**versed** [1] 12/3
**version** [1] 22/4
**very** [18] 4/23 5/16 5/16 7/2 12/3 15/15 24/16 26/1 26/1 26/16 29/8 31/7 43/1 43/2 44/16 47/1 51/18 51/23
**video** [1] 48/5
**videographer** [1] 20/9
**violated** [1] 27/11
**violating** [1] 54/5
**violation** [1] 49/25
**Virginia** [1] 1/19
**visit** [7] 12/15 12/21 13/16 15/9 15/20 17/15 56/14
**VOL** [1] 3/2
**VOLUME** [1] 1/8
**voluntary** [2] 51/12 51/13
**vs** [4] 1/6 4/4 16/21 16/22

## W

**Wait** [1] 16/11
**waive** [2] 16/6 17/13
**walked** [1] 20/21
**wallets** [4] 45/20 46/2 46/2 46/10
**want** [21] 4/11 5/2 16/15 16/18 17/22 20/16 20/16 29/10 30/2 30/10 30/19 35/10 36/3 37/22 38/21 40/2 47/16 50/20 56/14 56/15 56/16
**wanted** [2] 4/20 26/24
**warned** [1] 12/5
**warnings** [2] 15/21 16/3
**was** [85]
**washed** [1] 18/20
**wasn't** [2] 20/11 47/22
**WASPs** [1] 34/12
**waste** [1] 14/16
**water** [9] 14/20 18/11 18/19 19/5 19/14 20/6 22/7 26/24 55/16
**waters** [1] 52/16
**way** [5] 11/17 30/4 37/19 48/18 56/10
**we** [26] 5/12 5/16 6/14 7/3 7/9 8/5 8/6 8/7 9/21 10/22 12/8 13/12 14/22 21/11 23/2 23/11 23/23 24/13 26/17 34/12 34/12 34/13 39/19 44/18 52/13 57/15
**we'll** [9] 5/6 8/4 8/12 17/16 23/8 27/8 57/14 57/22 58/3
**we're** [8] 5/1 8/9 22/4 22/25 25/5 26/4 27/15 27/19
**we've** [1] 4/25
**Webster** [4] 8/24 9/3 9/3 10/16
**week** [4] 7/4 23/14 23/14 28/10
**week-and-a-half-long** [1] 28/10
**welcome** [1] 5/11
**well** [29] 6/6 8/10 9/6 10/9 10/14 11/2 11/8 11/14 12/3 12/21 17/3 20/19 25/2 29/7 32/8 32/12 32/20 35/6 37/7 38/19 39/10 44/3 47/22 49/10 49/24 51/11 51/24 52/16 54/2
**well-documented** [1] 54/2
**well-known** [1] 11/8
**well-respected** [1] 10/14
**Wells** [6] 44/24 44/25 45/1 45/1 45/3 48/14
**went** [8] 5/22 9/2 18/10 26/23 27/20 29/20 35/8 49/17
**were** [38] 4/20 5/20 14/14 23/18 23/20 25/14 26/5 26/7 26/9 26/19 26/19 26/20 26/23 27/14 27/23 28/9 28/15 28/15 29/11 30/1 32/10 35/2 35/4 40/8 40/8 40/12 40/23 41/6 41/7 44/6 45/3 45/11 45/11 48/8 48/20 53/1 53/2 53/7
**what** [38] 6/4 6/19 6/24 11/24 11/25 12/24 12/25 22/4 23/1 23/24 25/1 27/20 28/19 29/20 29/23 29/25 30/20 41/22 42/22 43/4 43/16 44/9 44/21 45/7 47/23 49/4 50/5 50/11 50/13 58/3 58/5
**what's** [6] 6/24 11/4 11/4 33/9 37/9 49/24
**whatever** [1] 36/18
**whatsoever** [2] 40/5 43/23
**when** [24] 5/4 5/20 7/17 12/4 12/5 12/6 16/23 19/16 20/10 27/1 27/6 28/9 33/5 34/14 38/14 38/15 46/11 50/24 52/9 54/16 56/23 57/3 58/7 58/8
**where** [11] 11/12 12/8 18/14 21/22 21/24 26/19 45/9 45/20 46/10 46/13 49/3
**whether** [8] 34/10 34/16 35/15 36/16 47/6 52/14 56/15 56/16
**which** [14] 19/12 26/24 34/20 34/22 35/12 36/2 36/12 38/10 38/14 40/5 40/12 42/9 53/2 54/24
**while** [3] 10/7 55/10 55/13
**white** [1] 10/14
**white-collar** [1] 10/14
**who** [9] 4/5 8/24 31/18 33/8 33/20 33/23 39/13 39/17 45/11
**who's** [1] 26/22
**whole** [1] 49/8
**why** [16] 9/16 14/3 14/22 17/24 18/5 20/16 20/16 22/19 23/7 26/14 26/24 33/15 44/6 45/3 50/6 51/16
**wife** [3] 33/22 37/4 49/7
**will** [14] 4/6 7/19 9/8 9/10 12/12 13/2 15/4 17/6 17/10 17/15 21/2 28/19 33/24 57/2
**WILLENBURG** [4] 2/7 59/3 59/11 59/11
**WILLIAM** [1] 1/13
**willing** [2] 19/11 19/15
**willingness** [1] 53/25
**wish** [1] 51/21
**within** [2] 25/13 54/19
**without** [1] 22/16
**witness** [5] 28/18 28/23 29/2 30/9 30/10
**won't** [4] 12/2 59/12 50/15 50/18
**Woodlands** [1] 42/9
**Woodforest** [3] 40/10 41/17 42/9
**word** [2] 22/13 24/21
**words** [1] 48/24
**work** [10] 11/10 11/14 33/6 37/22 37/25 38/2 38/15 38/18 39/6 51/23
**worked** [4] 22/5 33/21 33/21 39/20
**working** [1] 39/24
**worst** [1] 20/25
**WORTH** [11] 1/3 1/5 1/23 2/8 10/10 10/11 11/8 13/11 15/3 59/14 59/17
**would** [35] 5/21 5/22 6/4 7/4 7/9 9/13 10/15 11/2 11/20 12/1 14/20 15/9 15/23 16/25 20/3 20/16 20/24 21/1 21/24 22/12 22/14 24/20 26/17 26/18 28/20 31/9 31/10 37/6 38/17 40/14 47/12 51/22 52/15 56/10 56/24
**wouldn't** [2] 20/24 32/22
**write** [1] 42/2
**written** [9] 14/7 22/21 23/11 25/6 26/4 26/10 27/24 52/25 55/1
**wrote** [1] 20/18
**Wyoming** [10] 43/3 43/7 43/25 44/2 44/4 44/6 44/14 44/16 48/13 49/1

## X

**Xavier** [1] 34/22

## Y

**yahoo.com** [2] 2/9 59/19
**yeah** [8] 27/9 33/14 37/2 42/8 44/25 47/15 48/25 57/8
**years** [7] 9/4 10/11 11/1 13/20 22/6 34/16 47/3
**yes** [29] 7/18 9/18 11/18 13/8 16/9 16/14 17/19 17/21 18/8 19/2 19/18 20/4 23/12 26/25 27/6 30/23 31/20 36/5 36/22 39/7 39/12 39/22 40/6 43/6 43/11 43/15 43/20 44/3 51/13
**yet** [1] 55/23
**you** [345]
**you'd** [4] 8/2 15/8 41/4 42/24
**you'll** [4] 10/3 56/14 57/23 58/4
**you're** [27] 5/11 6/9 9/21 19/3 25/2 29/16 31/3 31/19 33/25 34/10 34/16 36/25 37/19 38/1 38/20 42/15 46/25 47/1 47/13 49/15 51/15 51/16 51/24 51/25 52/21 58/2 58/4
**you've** [11] 5/13 5/14 6/14 12/25 22/18 27/11 27/24 37/14 37/23 38/2 42/19
**you-all** [2] 10/19 11/7
**your** [141]
**yours** [1] 20/15
**yourself** [5] 12/6 42/19 53/19 57/24 58/6

## Z

**zero** [3] 41/9 43/23 46/7
**zilch** [1] 46/7

ATTACHMENT 6

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC, ET AL.,

    Plaintiffs,

v.                                                    No. 4:24-cv-00988-P

CHARLES JOHNSON,

    Defendant.

## ORDER

The Court held a hearing on Plaintiffs' Motion for Appointment of a Receiver on Thursday, November 20, 2025, at 2:00 p.m. ECF No. 135. The Court also ordered Defendant to show cause at the hearing for failure to comply in good faith with post-judgment discovery and for stealing court property.

As also stated for reasons explained on the record at the hearing, the Court finds Defendant to be in civil contempt of court for failing to comply with post-judgment discovery and for stealing court property. Therefore, having considered the least severe sanction necessary to correct the misconduct, the Court **ORDERS** the United States Marshal to arrest Defendant and place him in custody until such a time that he purges himself of his contempt. Defendant has shown a repeated history of failing to comply in good faith with post-judgment discovery. Despite the numerous opportunities given for him to cure his misconduct—including at the most recent hearing—Defendant has shown no willingness to comply with the Court orders. In fact, Defendant has expressed a desire to defy the Court's orders.

Defendant's misconduct is well-documented. On October 28, 2025, Plaintiffs filed a Motion asking for a "Show Cause" hearing to hold Defendant in civil contempt for "violat[ing] the Court's asset-protection order" and "personally threaten[ing]" Plaintiff and Plaintiffs' counsel" among other allegations. ECF No. 115 at 3, 6. That same day, the Court

denied Defendant's motion to stay enforcement of the district court's judgment. ECF No. 117. The Court subsequently granted the Plaintiffs' Motion to hold a "Show Cause" hearing to address Defendant's conduct. ECF No. 118.

On November 6, 2025, Plaintiffs filed a Motion to Compel Defendant Charles Johnson to Respond to Post-Judgment Interrogatories, Sit for Deposition, and Produce Documents. ECF No. 119. The Court accordingly scheduled a hearing on the Motion. ECF No. 121. After holding the hearing on November 10, 2025, the Court granted Plaintiffs' Motion to Compel and ordered Defendant to answer Plaintiffs' post-judgment interrogatories within five days, produce requested documents, and sit for a deposition on Monday, November 17, 2025. ECF Nos. 129, 130.

Plaintiffs then filed the Motion for Appointment of Receiver. ECF No. 131. The Court ordered a response to the Motion by Wednesday, November 19, 2025. ECF No. 134. That response was never filed in defiance of the Court's order. The Court thus ordered the most recent hearing to be held on November 20, 2025. ECF No. 135. In the interim, Plaintiffs filed a Supplement to its Motion to Appoint Receiver documenting the Defendant's noncompliance with the Court's orders. ECF No. 136. While Defendant was physically present for the deposition, the Defendant failed to respond to the questions asked in good faith and repeatedly gave evasive answers while asserting that his plan was to give as minimal information as possible. ECF No. 136. Court staff additionally reported that Defendant stole a mug and water bottles belonging to the Court that same day. ECF No. 138.

In response to Defendant's noncompliance, the Court ordered Defendant to Show Cause for his failure to respond in good faith to the questions asked in the deposition, his failure to serve his interrogatory responses, his failure to produce requested documents, and his theft of court property. ECF No. 138.

The Court then gave Defendant—yet again—another chance to comply with the Court's orders at the hearing held on November 20, 2025. There, the Court and Plaintiffs' counsel asked Defendant similar

questions to those asked at the deposition. And again, the Defendant failed to respond in good faith to those questions.

Therefore, the Court finds the Defendant to be in civil contempt of court. Accordingly, considering the least severe sanction possible to correct the misconduct, the Court **ORDERS** Defendant to pay a $1000 fine to the Clerk of the Court due immediately to purge himself of his theft of government property. The Court also **ORDERS** the United States Marshal to arrest Defendant and place him in the custody of the Johnson County Jail until such a time as he purges himself of his contempt for his repeated failure to engage in post-judgment discovery in good faith.

**SO ORDERED** on this **20th day of November 2025.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE