How Joe Lonsdale Works For The Russians

 &( 1ẄB=·) 4-JK9:BJ

## Discussion about this post

Comments  Restacks

8IẄK= 9 ;FDD=EK$

**N Bear** 5=G )
Are you ready for the wars here in the States? Hopefully most foreigners will stay so we can send
on their way.

♡ LIKE     ⃝ REPLY

**Kristoffer O'Shaugnessy** 5=G (
You sure hate Russia.

♡ LIKE     ⃝ REPLY

P '%') . @9Iℂ=J 0F@EJFE ·3IẄM9:0 ·6=IDJ ·. Fℂℂℂ=:ẄAFE EFẄ;=
5L: JK9:B U K@= @FD= >FI ?I=9K ;LℂL

&' () *+(, $-.$/ 012(3(4)1*, $657O$8, +.$9(.:$: (1$<03(210=$$, $>.?@33.A=$BCDEFG
&' ()$* +$(, (-)).

&' ()$* +$(, (-)).
/012$345$* 563178$9:373:; O$:6$9<=50312$7>7:17?15@
A0:35B$C37356$D:63=:93$E; <=3F
G@D4$H5I 76F
D71176$D:>:6:; 0@

J; 51$HK/ L.MC/ G$N17:03:00F
>@
L.PHQ/N/+RHMG$+R$P$RGCAQMGEP$E/ L.NMGT$70B$U5=:V; O$PWX1; 255$Y5050:36$E; WW:3355F$D5050B7O36@

G; ¢Z[(-\9>\''' ]^\N\YS@
-
C:`O5B$MX=:1$&. F$&' ()@

&''()*+, -$. */$O. 1$23)4-

&' ( )*$+,$&-. /*-/0$1.)$&-. /*-/$+' 2$345( 0$6'77'*0$18O$9-5$: 7'4/;499,

+4/<'$=,$>--5)0$?*;)*$@A-/$1. -5/)$B$C'55$: ++C0$6'77'*0$18O$9)/<'/;*,

&' & ( )*+, -&$(. /+/(+$*+, $(), ')

: DE+$6,$F1¢CHI ?J0$E/4;)<$F;'';)*$>`K4*:5';)$&L<K),

56 $: 7'4/;499$&-)7$1.-(`*-/$. '*$947)<$'$(-:4/$;-$M-(N)$6)9)/<'/$>;)-5-N-74:'$+49)$G/`*L5'/M)$C-(N'/O$PQ>);+49)R$$;-N5-<LM)$<4*M-T)5O$4/$;. 4*$M4T4$7$M:4-/$)A4/K$7-/K%;)5($4*'U474;O$PQ+16R$$U))/94;*$L/<)5$/$)(N7-0)$$2)79'5)U)/94;$N7/K-T)5/)$$U0$;.)$?(N7-0)$$V)45)()/;/<*$;.:$>);+49)$$*C$(4;;)$PQ^?^`CR$$*5)$$4(N5-N)570$24;. -7<4/K(-5)$;. */$$4aW0[b]$N)5$(-/;. $4/$+16$U)/94;*$<-;. 4($U)M`L*)$9;9/$7)K)<70$55-/)L*$-99*);$9-5N)//4-/$$;94;*$$5)M)$M)4T);<, DMM-5<4/K$-$$7'4/;499&. -2)T)50&. )$M-(N74*. -2)T)50$55-9%. 4*$N/4*/$$4<$/-;$95(G$VD$$77-2)$$U0&. )$$*L(('50N7/$$<)*M54N)4/-$$K5/$$4*/94*)4/;$)550();-;*$$U)$-/:$$

App.395

WESTLAW

&'()')('+$, -(.//0$1/23045565676868$9O/: 4$: /$-=-/2<-0$'?$@6, A>>6BO$CBDEEF

&' (($) *$+, , --+.

>)9>*)8N$889$0*$. <*+$;1$+*>9<;8;91$49($$: *>-)8F*1$8*F>'9N**<$+*>9<;8;91<$G7;27$G*)*$. '8;F-8*'N$<27*+. '*+$89$0*@;1$91$$J -N a_3$\caa$Z$. )).-$?$$: 92$$V\da3$>$$\5

a

&'879. @7$87*$<>*2;(;2$+92. F*18<$87-8$87*$$)*Y. *<8<$(9)$)9>. 28;91$-1+$87*$<. 0>9*1-$<**1$-)*$+;<2. <<*+$;1$$F9)*$+*8-;'0*'9G3$-<$-$@*1*)-'$$>)9>9<;8;91$, ;-AA-$<9. @78$-''$: *>-)8F*18$+92. F*18<$;12. +;1@$-''$*F-;'$<-1+$987*)$$*'*28)91;2 +92. F*18<$$G;87;1$87*$$: *>-)8F*18$<9<<*<<;913$2. <89+N$3$$9)$2918)9'3$87-8$2912**)1$87*$$: *>-)8F*18$<$+*-';1@<$G;87$, ;-AA-$5. ))-$$?$$: 92$$V\da3$>$$UdX5

K7*$: *>-)8F*18-1+$M+9F3$0987$3*>)*<*18*+$0N$87*$<-F*$29. 1<*'$<-8$87*$$8;F*3$)*Y. *<8*+$-1+$$)*2*;P*+$8G9$[\]$*e8*1<;91<$49($8;F*$$G;87;1$$G7;27$89$)*<>91+$$, ;-AA-$$<+;<$29P*'$N$$$G;87$87$3. '8;F-8*'$-*+';*$+*-;<8;913$, ;-AA-$$+;<2. <<*<$87*$$+92. F*18$: *>-)8F*18$G-<9<**<<;91$$3&$9-+N$3$$9)$$+;<2. <<*<$G;87$87*$<. 8;91$+$-<<-;1+$<+$?$87-+;<$$?$-<<-;1+$87*$$<. 8;91$$V$$87*$4. 0>9*1-$$+. )87*)$$)*Y. *<8*+$<. 0>9*1-$$. <$$: *>-)8F*189$$$<+$*-<7$$++$<$87*$$<-F*$$J -N a_3$\caa$5

M+9F$90h*28*+89$<-''$9($$, ;-AA-$$)*Y. *<8<$(9)$$)*2*;P*+$$++$<$;1+$, 0>9<$$<. 9*($-'+$$?$$9F-;'$$$;+*18;<;-$+$92. F*18<$$)*Y. *<8*+$$++$<$;1+$$+*$<-1+$$9)+. 2*-1N$$92. F*18<$$)*Y. *<8*+$$++$<$;1+$$$+$$87*$<*$8G9$*'*28)91;2$++$F-8<$$: *>-)8F*189h*28*+89$$<-''$9($$, ;-AA-$$)*Y. *<8<$(9)$$)*2*;P*+$89$<. >*1+$1$1*$$[b]$$9($$87*$<8*1$[ac]$$2-8*@9);**<$9($$+92. F*18<$$: *>-)8F*189+$$2. +*<$;e8N$$[_c]$$$>-@*<4$9($$+92. F*18<$$)*Y. *<8*+$$++$<$;1+$$$+$$9$$$$++$<9$$L9$$$$V$$9($87*$$<. 0>9*1-$$5

57 $M1$&>);'$$Tc3$\caa3$$, ;-AA-$$&$$29. 1<*'$<**18$$$$P;-$$*F-;'$$$'3$-$*''8$*$$$$$$+*$$$$++$$$1*$$$*$$$*$$+$$*$$;1*$$$$$$+*$$$$$$$$$-$$$+$$+$$+$$+$

&'())('+$, -(.//O$1 /23O45$6$67$68$69O/: 4$: /$=-»/2<-O$'?$@6, A>>6BO$CBDEEF

&' (($) *$+, , --+.

-1+$29F>'"8*$)*<>91<*$89$+92. F*18$)*Y. *<8<$adV$<<. *+$89$M+9F$3-1+$89$2-8*@9);*<$ad_$-1+$^dac3$<*8$(9)87$;1$87*$<. 0>9*1-$&' ()*+)(', $<*)P*+$91$87*$: *>-)8F*18$Z$&<$89$2-8*@9)N$V$<*8$(9)87$;1$87*$<. 0>9*1-3$87*$F98;91$(. )87*)$<**I<$S-1$9)+*)$)*Y. :);1@$87*')*<>91<;0'*$9(((;2:-'$G;87$87*$$: *>-)8F*18$89$EF-I*$-1$9-$G)(;8$*1$2*)8(;2:2-8;91$)*0**@*)*-*)2$*1@*])*-);1@$87*')*<>91<;P*+92. F*18$<$7-P*$$O**1$*$9<8$9)$+*<8)9N*+$<;12*$$87*$$29FF*12*F*18$9($87*$'$8;@-8;91$Z$$W;1--'N3$, ;-AA-$<**I<$-1$-$G-)+$9($87*')*-91-0'*$-8$9)1*N&$<$('*<-1+*$e>*1*<$<$87-8$;$87-<;12. )))*+$;$1$O);1@;1@*$1*$1@$87*<$F98;91$5
$$U$

$$U$     01$<79)8$&, ;-AA-$<$29F>'-;18$;1$$8$<$F98;91$<$87-8$S$87*$: *>-)8F*18$$G-<$. 1-0'*$$[9)$. 1G;''';1@$8$89$)9+. 2*$-$<;1@*'*$18*)1)1-'$29FF. 1;2-8;91$F*F9)-1+. F$89$9$87*'$Z$&<$87-8$S$-F;1;-$87<)$8-$<-+$-$(-99$$+$-8F-I$. '8;>''*'$92-8;91$<$3*+*-8$<-+-*<+-+*+-(99-$$$+$9$3-8$1<;0'*$(9''9N$G-'*<$'8*<-+$S)*$-)79<+$$+$9$ 2918-28$G;87$987>')$$$(*+')-'$$-1+$<-8-8$<+$<**-F;1)9)3$87*$$91'N$+92. F*18$<)+. 2*$$*$G*)*$-$$<**28;9$$$($8$$9)$P*$$7$, 0'.; $<'N$+; <<*F; 1-8*$$89$$+*<. 8*;$*$$29. 1<*$('*$+)-8$$$-$+S*9$87$: $(D9. )8$39)$$$*1*')-8-+*-(91$$1-9)$): -$$)-5?$$: 92$$V\da3$<$$V5$

6991$<-(8*)$87*$$($;';1@$($9($, ;-AA-$<$$87$$987$8$F98;91$$89$$29F>'*''$N$3$M+9F$$F$$*1')'1*'$1*G$$+8$$9)''*<<87*$$*-2$9*$$89$$($$+<;<29P$$N*$$87-8;'$$<**87*$$F''N$$S$*Y. *<8*$+$5-1+$$)*2*;P*+-1$$$e-8*1<$; $91$9(($$8$$*$$*G*$$1$1$$1$$G;87:27$$89$$S)$<**9>'$$*$$),;-AA-$<$$F98;91$-1+$$$8$$*F'$$N$*</8$*$$7(**'N$+;<;)$9>9-</*)-+$$3$:1$N$S$Naa3$<$$aa$$S$K7*$$$: *>-)8F*18$$G7;27$$;<>$)*<"18'N$$S)*-$*+$*$$O$N$$<*>-)-8$29$$1<;$$2*$$$1<$3879G*P**$$)$+;$1$$+$$+$198$$)$*Y. *<8-1$$9($$8$$F*$$$8$$e$$891$$<$$+<;$$+9$(87$$89$$)$-$$$-$$8*5$

(18$, $1*1($94)4

8$%: ; (<+$(<$>3-; (?+), @$
R1+*)$$87*$$$W*+*)-')$'$?$. '*<9$$(D: P;'$. )92*+. )$$*$3. 1'*<$$87*$$29>'$$$*$<$$987*$$9($$G;$$<'$$F:8*+$$ON$-1$$9)$+*)$*+$$87*$$89$$$*9$$(9$$**$$-</2$$)N$$<$$+<-$$1$$+$$7$$+$$$$$G9$$8-$$1$$89$$$*$$$$$N$$(*$$<-$$<-$$N$$$<$(F-$$18-$8$$<$9$$$$$=$**-$$<$$-*$$N$)$$0$$6
9$$08-;1$$+<:29*$$+$$N$)*$$@*+$$7$$$9$$$*$$$$$$+$$$$*$$$G$$$*$$$$$**-</*+')*$$$N$

5F $$01$$87;$<$>9$$9<;8:91$$M+9F$$*$$e>'-;1$$87-$$8$<;1$$87*$$$9*$$$*$$*$$$*$$$$$$*$$$$9$$-$$$9$$$0$$1$$$$$9$$$$

App. 400

&'(')')('+$, -(.//0$1 /2304$5t$56767t$8t$9O/: 4$: /<$=-=>/2<-0$'?$@6, A>>6BO$CBDEEF

&' (($) *$+, , --+.

V

&<$198*+$-09P*3$87*$<. 0>9*1-$G-<$<*)P*+$. >91$87*$: *>-)8F*18$91$J -)27$a3$\caai$79G*P*)3$87*$: *>-)8F*18$+;+$198 >)9+. 2*$-1N$9Oh*28;91<$89$87-8$<. 0>9*1-$. 18;'$&>)'$'$\V3$\caa5

5I $&<$F*18;91*+$-09P*3$87*$<. 0>9*1-$+;')*28*+$89$87*$: *>-)8F*18<*$89. 8$8*1$[ac]$2-8*@9);*$<9($+92. F*18<$89$0*$>)9+. 2*+$5 E-27$2-8*@*9)N$;<$+;<2. <<*+$;1$+8*-8-;'*$0*''9G5

J6$%&KK$/(; C4+*'-$1H3; H$)+=+)+*; +$()$; (*; +) *$D3. LL. 9M

K7*$: *>-)8F*18$90h*28*+$89$87-8$<$2-8*@*9)N$9($+92. F*18<$91$87*@91$87*$0)9. 1+$87-8;8$;<$S9P*)0)9+-Z$O*2-. <*$;8$;12'. +*<$+92. F*18< ;1P9'P;1@$87*$&>)'*)$;9)$(*+)-'$$*$;8;91$;'$187*$E-<8*)1$: $;8;;289($$/9. ;<;-1-3=E7FF7$$8$G&2, $5UU^$W$T+$VVU$5[X87$D;)5\cc_]$$K7* : *>-)8F*18)*(. <*+$89$<>)9+. 2*$1N$<-$92. F*18$9$87;<$2-8*@*9)N$90*-. <*$>)9+. 2;1@$+92. F*18<$)*'-8*+$89$&>)'*)$*$$E-<8*)1 : ;<8);28*';8;@-8;91$SG9. '+$O*$<-$89*(($$3$$*$F*-1$+7. F-1$)*<9. )2*$<Z$-1$<O*2-. <*$87*$: *>-)8F*18$S291<;+*)-$*<87*$fE-<8*)1 : ;<8);28@$(*+*)-'$$*$;8;@-8;91;))*'*P-18$$89$87*$2-<*$*'* H$I' &£()IZ

K7*$. 1+*)<;@*1*+$($;1+<$87-8$87*$: *>-)8F*18<)*$*$*P-12N$90h*28;91$-2I <$F*<$;8$<8$7*$E-<8*)1)$1$: ;<8);28$;8;@-8;91$7-<$+;=;)28$$89)*$$*P-12* 89$87$;<$F-88*)$<$&>+;<2. <<*$$+92. F*18$;P-18*);28N$1$87*:$. 1+*)<8-1+$87-$$N$-a$T3$\cac3$, ;-AA-$&<>*2;(;2-''N$-''*@*<;1$87* >)*<*18$$. ;8$87-8<8$<*$(*+*)-'$$*$;8;@-8;91$N$87*$(9)$91$&<*+$87-8$87*$&>)'*))$. 5UU^$W$T+$VVU$5[X87$D;)5\cc_$$J$$E()0-87*$E-<8*)1$1$: ;<8);28$;8;@-8;91$3$G7;27$$1h9;1*+$9M9F$&<-88*)*+8*$$*$8-*$89$$89$$8$87-8$-8. 1291<8;8. 8;91-'')$&'; F-1-8;91*+$0)$;1$87*$ 2<*)0*<$$89$87*$(*+*)-'$$*$;8;@-8;91$G'879. 8$*$1N$$. <*<$*)<($;<<. *$>)9>9<*+$*$>0)*<8*8$$$+;828$'4Z

^

K7*$E-<8*)1)$1$: ;<8);28$&>)'*)$$90h*28;91$*$<$8$. '-)N$$***P-18$$8$2. '-)$$8$8$9$N$$%*$9>9$<$8$8)9$*7*$

&<$89$87*$: *>-)8F*18<9P*)0)9+. 2*<-$>)$87-1+-1+$. 1+;;9Nh*28;91$3$79G*P*)*$87*$$. 1+*)$$. 1+;')28$$+*<$

&'()')('+$, -(.//O$1 /23O456567666$9O/: 4$: /<$=-=/2<-O$'?$@6, A>>6BO$CBDEEF

&' (($) *$+, , --+.

aT

&'879. @7$, ;-AA-$)*Y. *<8*+$87-8$87*$: *>-)8F*18$O*9$9)+*)*+$89$29F>'N$G;87;1$8*1$[ac]$+-N<$87*$D9. )8$G;''$-''9G$87*
: *>-)8F*1$8-$'91@*)$$>*);9+$9(8G*18$N[\c]$+-N<$G;87;1$G7;27$89$29F>'N$

5b $Jb%&$$%$/(;C4+*'-$1H3;H$)+$k+;'$($)$; (*;+)*$. *, $4++'3*Q$. ''+*//+/$G, $. *, $$/(4+-'3; $$_O(C3-3. *. '$<)(/C;+)$($=$+. =((/P
1H3;H$1. -$. K-($. ''+*/+/$G, $$E/(4P$()$. *, $($=$'H+$<; <+;3=3;$&Q+*'-$($=$'H+$$>+<. )' 4+*'9M

J^%&$$%$)+; ()/-$;(*;+)*3*Q$'H+8C-. Q+$($+$K+<H(*++P$; +KKCK. )$<H(*+-P$<. Q+)-P$($)($'H+)$; (44C*3; . '3(*$$/+?3; +-$$-C+/
'($E/(4P$. */$+. ; H$($=$'H+$<; <+;3=3;$&Q+*'-$($=$'H+$<; <+;3=3;$&Q+*'9M

J6V%&*, $; . K+*/. )P$/, $$<K. **+)P$<H(*+$K(QP$)+4$3$4GC)-+4+*'$=()4P$. ?+K$=()4P$(?+)'34+$Q(QP$?+H3; $+H3; $-. Q+$$K(Q$(QP$()
('H+)$$/(;C4+*'$'$1H3;H$+-'+-=()'H$($H$. : 'C. K$P$<K. **+/P$($$3*'+*/+/$'3;'3(*$-$($=$$E/(4P$. */$+. ; H$($=$$'H$(=$'H+$<; <+;3=3;
&Q+*'-$(=$'H+$<; <+;3=3;$&Q+*'9M

K7*$. 1+*)<;@1*+$-@)**<$G;87$87*$: *>-)8F*18$<$9Oh*28;91$87-8$87*$$-09P*$2-8*@9;*)*;*<$-}*$9P*}'N$O)9-+$;1$87-8$87*$N$2918-;1$19$8$; F *
';F:8-8;91$<$-1+$)*Y. *<$8$-$1. F O*)9($9+92. F*18<-8$8-$)$'$;1''N$;))***P-1889$87;<$';8;-8-8-9;1$G$$879. @7$, ;-AA-$$2918*1+<$87-8$87*
-09P*$)*Y. *<$8-$)'$87*$$91'N$G$-N$89$89$87*$: *>-)8F*18$G-<$91'N$K*$879. @7$, ;-AA-$$2918*1+<$8 F*$$9(*<$87;<$');9-+$$F;8;2. F ;$-0;*-$-$;91
)@78;@<$-1+$)*Y. *<$8-$)'$89$; 9F ;*<$89$1+9<$87;<$89$2918*+$.

App. 405

WESTLAW

App.409

56786

App.417

[illegible]

&' ( ) " +, $-.$/0110+2' $310+04$$6) 7$8, 9 ) "7, : $0+$: .<=99.>: $?@ABCD

7778$Q (" : >; -3 ( "
  5 [ $=@<$-. , $7@<, K@(AK$<, *2@A2$$62+@<A, R2$B, 8@AM$ >@-{@A$-@
: @DC, '$$L@8l$TUV$(2$;  P／O?&L$(A$C*<-$*AM$L&ON&L$(A$C*<-0

N-$(2$2@$6PL&P&L0

&>>$Q3' . '3 ( "-

O@-$P, C@<-, M$(A$=0BQCC0\M3$bc [ Z$E 4$[T [ bUbU

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

App.420

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-00988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD WITH EVIDENCE OF
DEFENDANT'S FALSE STATEMENTS**

Plaintiffs Point Bridge Capital and Hal Lambert (together, "Plaintiffs") respectfully submit this Motion to Supplement the Record with Evidence of Defendant's False Statements and Misconduct.

**INTRODUCTION**

Plaintiffs respectfully submit this supplemental submission to highlight Defendant Charles Johnson's deepening and documented pattern of obstruction and dishonesty. The evidence now before this court—drawn from a recent federal hearing and Johnson's own public posting about his travels—confirms what the Plaintiffs have argued from the outset: Johnson is not merely careless or slow. He is willful, evasive, and operating with contempt for his discovery obligations and the judicial process generally. Court intervention is necessary.

During a discovery and sanctions hearing on April 2, 2025 in the Southern District of New York, Judge Katherine Polk Failla repeatedly called out Johnson's misconduct before sanctioning him. Johnson had falsely claimed that agents from the Department of Homeland Security had instructed him not to comply with discovery. After personally contacting DHS, Judge Failla

1

App.422

concluded, "You gave me names. I went to the top people at DHS, and they said they do not exist."
(*See* Transcript, *Johnson v. Clearview AI, Inc.*, No. 1:23-cv-2441 (S.D.N.Y. Apr. 2, 2025),
(hereinafter, "Tr.") Ex. A at 25:9-10, Appx. 034). She called out Johnson's conduct and observed:
"Sir, I'm not nearly as stupid as you take me to be." (*Id.* at 24:2, Appx. 033). The Court noted that
it had "tried to talk to [prior counsel]. They tried to tame his baser instincts and to check his more
racist and anti-Semitic impulses. I've given him second, third, and fourth chances," and concluded
flatly: "Mr. Johnson does not care" and noting his "complete refusal to comply with my orders in
this case." (*Id.* at 58:25-59:5, Appx. 067-68).

Against that backdrop, Johnson tells this Court he is medically unable to travel. But the
facts say otherwise. In the weeks and months surrounding that claim, Johnson moved freely—from
a court hearing in New York, to restaurants in Washington, D.C., to the San Diego Zoo, to a
leisurely Easter weekend in Boston. On March 30, 2025, he even posted a photograph of himself
behind the wheel of a convertible. The steering wheel is unmistakably visible, reflected in the
lenses of his sunglasses and he is seated in the front-left driver's side seat. The photo was taken
just two days before his scheduled court appearance in New York on April 2—a hearing he entered
twenty minutes late, offering a perfunctory "sorry" and blaming his tardiness on Fuchs' disease.
The court, unimpressed, responded that he was "[n]ot looking very sorry." (Tr. 2:5-16, Appx. 011).
This is not the conduct of someone who is immobile. It is the conduct of someone who is evasive,
which the travels below highlight:

- He appeared in court in New York City on January 8 and again on April 2.

- He posted from the San Diego Zoo on January 28.

- He attended the National Prayer Breakfast in Washington, DC, on February 6.

- He posted a photo of himself driving a car on March 30, with the steering wheel
  clearly reflected in his sunglasses.

App.423

- He posted Easter greetings from Boston, including photos from walking tours on April 20-21.

Johnson's conduct is not accidental, and it is not isolated. It is strategic, sustained, and corrosive to the administration of justice. The relief Plaintiffs seek through their motion to compel—third-party oversight and appropriate sanctions—is not only justified. It is long overdue.

Finally, Plaintiffs want to emphasize that they are in no way implying that current counsel for Johnson, Carter Boisvert, has any involvement or responsibility in Johnson's misconduct. In all interactions with counsel, Mr. Boisvert has been honest and candid and fully met the standards set forth in *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (en banc) (per curiam).

### A.     Johnson's statements in the S.D.N.Y. show he can't be trusted—only court-appointed oversight and sanctions will compel compliance

As part of their motion to compel, Plaintiffs have asked the Court to appoint a neutral third-party vendor—at Johnson's expense—to review his electronic devices and accounts for responsive documents. That request is not just reasonable; it is necessary. Johnson cannot be relied upon to conduct that review himself, or even with the assistance of counsel. Plaintiffs made that point in their initial submission. Since then, the need for independent oversight has only grown. Plaintiffs have now obtained the transcript of Johnson's statements to the court in litigation pending in the Southern District of New York, where his refusal to engage meaningfully in discovery was made plain. That record has only sharpened the urgency of the relief Plaintiffs seek. What follows are specific examples, drawn from the April 2 hearing, of Johnson's refusal to engage in discovery, his repeated misrepresentations, and overall lack of respect for the judicial process—all which he made while represented by counsel.

App.424

➢ **Johnson falsely claimed he was instructed by DHS agents not to comply with discovery.**
Court's response:
- "You gave me names. I went to the top people at DHS, and they said they do not exist." (Tr. 25:9-10, Appx. 034 ).

- "[N]either one was a DHS agent. One was not employed in any capacity at DHS. . . . And the other was the equivalent of a security guard. He's not an agent of DHS and certainly would not have the power to be a handling agent." (Tr. 25:15-21, Appx. 034).

➢ **Johnson accused the Court of participating in a "scam."**
Court's response:
- "You've accused me of using my office to perpetrate a scam against you. That seems bad." (Tr. 23:21-23, Appx. 032).
- "Sir, I'm not nearly as stupid as you take me to be. . . . I'm not part of anyone's scam." (Tr. 24:2-4, Appx. 033).

➢ **Johnson refused to respond to his counsel's request to assist with discovery, even after a court order**
Defense Counsel:
- "I sent all the [discovery] documents, the original demands from [opposing] counsel and your order, and so forth, to my client. I never received a response, Judge." (Tr. 39:12-14, Appx. 048 ).

Court's Response:
- "Hmm, that seems bad." (Tr. 39:15, Appx. 048).

➢ **Johnson and his counsel admitted they had not searched for documents even though search terms had been agreed to**
Court's response:
- "Everything is already due. There's no excuse for this not to have been produced. . . . "[R]ight now you're in complete violation of my order." (Tr. 33:24-34:3, Appx 042-43),

The record from the April 2, 2025 hearing before Judge Failla leaves no doubt: Johnson cannot be trusted to comply with discovery obligations, to search his own files, or to engage in this process with good faith. And that was in a federal case where Johnson was represented by an experienced attorney. Even under professional supervision, he admitted that no search had been conducted, refused to assist his attorney in complying with discovery, misled the Court, and defied court orders without remorse.

App.425

There is no reason—none—to believe the situation will improve here. Johnson is now either proceeding pro se or on his third lawyer in this matter. The revolving door of counsel, coupled with his established pattern of deception and evasion, makes clear that the Court cannot rely on Johnson to self-police. The only path forward that protects the integrity of this case is the one Plaintiffs have proposed: a neutral third-party vendor, operating under court authority, must be tasked with the collection and review of Johnson's documents. Nothing short of that will ensure compliance, fairness, and truth.

**B.    Johnson's apparent fabrications about the severity of his medical condition reinforces the need for sanctions and court-appointed oversight.**

Johnson now tells this Court that a "debilitating medical condition" makes it "impossible" for him to travel or appear in person, citing a note from a Houston-based doctor—despite a prior affidavit where Johnson swore he never lived in Texas during the relevant time period of this case. *See* Ex. B, Appx. 078; ECF 14-2). But his own social media posts tell a different story—and cast serious doubt on the truthfulness of that claim. Johnson's claim that he is medically unable to travel cannot be reconciled with his own conduct. Since making that representation to the Court, Johnson has documented a series of trips—often in real time—on social media. These posts depict him traveling across the country, attending events, dining out, and, in at least one instance, driving a car. They form a sustained pattern of mobility inconsistent with the representations Johnson has made to this Court, which reinforces the need for third-party oversight and sanctions. These examples, shown below, are not isolated incidents.

App.426

**January 7, 2025:** Johnson posts photo at the Yerevan Restaurant in Washington, DC.[1]



**January 8, 2025**: Johnson appears at hearing before Judge Failla in New York City.

**January 28, 2025**: Johnson posts a photo of himself at The San Diego Zoo.[2]



---

[1] https://substack.com/@charlesjohnson/note/c-84960277
[2] https://substack.com/@charlesjohnson/note/c-89246607

App.427

**February 6, 2025**: Johnson attends National Prayer Breakfast in Washington, DC and posts about it on February 11, 2025[3]



---

[3] https://charlesjohnson.substack.com/p/at-the-national-prayer-breakfastand

**March 30, 2025**: Johnson posts a Substack Note: "Nothing like the Drive Back" with an image of himself in the driver's side seat with the steering wheel visible as a reflection in his sunglasses.[4]





**April 2, 2025**: Johnson appears before Judge Failla in New York City.

**April 15, 2025**: Johnson makes a Substack post suggesting he resides in Washington, DC noting "I'm once again trapped in the Imperial Capital."[5]

---

[4] https://substack.com/@charlesjohnson/note/c-104669202
[5] https://charlesjohnson.substack.com/p/president-trumps-tariffs-tell-the

App.429

**April 20, 2025**: Johnson posts "Happy Easter from my hometown."[6] Johnson grew up in the Boston area.[7]



---

[6] https://substack.com/@charlesjohnson/note/c-110557522

[7] https://www.politico.com/magazine/story/2014/12/charles-johnson-a-digital-darth-vader-113522/ ("Charles Johnson grew up down the street from the home of Massachusetts Gov. Deval Patrick and attended prep school at the elite Milton Academy.")

**April 21, 2025**: Johnson makes two posts indicating he is in the Boston Massachusetts area. One of himself at Mt. Auburn Cemetery in Cambridge, Massachusetts,[8] and a second at the Granary Burying Ground in Boston, and a picture of himself with a "Boston by Foot"[9] walking tour sticker.





**App.431**

**CONCLUSION**

Johnson's misrepresentations are not harmless errors. They are deliberate falsehoods aimed at evading discovery and undermining this Court's authority. Plaintiffs respectfully request that the Court supplement the record with this evidence, grant their motion to compel, impose appropriate sanctions, and appoint a third-party vendor to ensure compliance with discovery obligations that Johnson has repeatedly and willfully ignored.

Dated: May 7, 2025                                 Respectfully submitted,

                                                   /s/ Will Thompson
                                                   Will Thompson
                                                   DLA PIPER LLP (US)
                                                   Will Thompson
                                                   State Bar No. 24094981
                                                   will.thompson1@us.dlapiper.com
                                                   1900 N. Pearl Street
                                                   Dallas, Texas 75201
                                                   Telephone: (406) 546-5587

                                                   COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with counsel for the defendant, Carter Boisvert. Mr. Boisvert was not opposed to supplementing the record and was previously aware of the relief that Plaintiffs seek.

                                                   /s/ Will Thompson
                                                   Will Thompson

---

[8] https://substack.com/@charlesjohnson/note/c-110969323. Based on information from findagrave.com, the headstone for Charles Marden Brockunier, which Johnson is posing in front of, is located at the Mount Auburn Cemetery in Cambridge, Massachusetts. (*See* https://www.findagrave.com/memorial/259053093/charles-marden-brockunier; Thompson Declaration, Ex. 1 at ¶5).

[9] https://substack.com/@charlesjohnson/note/c-110902832

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, a true and correct copy of the foregoing document was filed electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Will Thompson*
Will Thompson

App.433

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **Case No. 4:24-cv-00988-P** |
| | § | |
| **Charles Johnson,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**APPENDIX IN SUPPORT OF PLAINTIFFS' FIRST MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") submit this Appendix in Support of their Motion to Supplement the Record with Evidence of Defendant's False Statements and Misconduct.

| Exhibit No. | Description | Appendix Page Range |
|---|---|---|
| **1** | Declaration of Will Thompson, dated May 7, 2025. | Appx. 001 – Appx. 008 |
| **A** | Copy of the April 2, 2025 transcript in the matter, *Johnson v. Clearview AI, Inc.*, No. 1:23-cv-02441 (S.D.N.Y. Jan. 16, 2025). | Appx. 009 – Appx. 076 |
| **B** | PDF of Image attachment to Charles Johnson April 29, 2025 email | Appx. 077 – Appx. 078 |
| **C** | Copy of Charles Johnson Email to the Court, dated April 29, 2025 | Appx. 079 – Appx. 080 |
| **F** | Copy of an email, titled "Ready to play in the majors yet?" | Appx. 087 – Appx. 090 |

App.435

Dated: May 7, 2025

Respectfully submitted,

/s/ *Will Thompson*
Will Thompson
DLA PIPER LLP (US)
Will Thompson
State Bar No. 24094981
will.thompson1@us.dlapiper.com
1900 N. Pearl Street
Dallas, Texas 75201
Telephone: (406) 546-5587

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on this day May 7, 2025 via the Court's CM/ECF system to all counsel of record.

/s/ *Will Thompson*
Will Thompson

App.436

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **Case No. 4:24-cv-00988-P** |
| | § | |
| **Charles Johnson,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## <u>DECLARATION OF WILL THOMPSON</u>

I, Will Thompson, declare as follows. I am an attorney admitted to the State Bar of Texas and this Court and a partner at the law firm of DLA Piper LLP. I am attorney of record for the plaintiffs in the above captioned action. I am over the age of twenty-one years and am not a party to this action. I have personal knowledge of the facts set forth in this declaration.  I declare under penalty of perjury that the facts stated in this document are true and correct.

1.    Exhibit A attached hereto is a true and correct copy of the April 2, 2025 hearing transcript in the matter *Johnson v. Clearview AI, Inc.*, No. 1:23-cv-2441 (S.D.N.Y. Apr. 2, 2025). I did not obtain this document until after the plaintiffs' motion to compel was filed.

2.     Exhibit B attached hereto is an image attachment from an email that Charles Johnson sent on Tuesday, April 29, 2025, copying the undersigned and copying among others, Pittman_orders@txnd.uscourts.gov .

3.    Exhibit C attached hereto is a true and correct copy of "Plaintiffs served their First Set of Requests for Production" in this matter, which were served on January 31, 2025.

4.    The pictures included in the Plaintiff's motion were downloaded from Johnson's social media and are unaltered in any way. Those pictures, along with their URLs, are included below.

https://substack.com/@charlesjohnson/note/c-84960277



https://substack.com/@charlesjohnson/note/c-89246607



App. 003
App. 439

https://charlesjohnson.substack.com/p/at-the-national-prayer-breakfastand

**Charles Johnson's Thoughts and Adventures**

## At the National Prayer Breakfast...and In Conversation and in Solidarity with My Middle East Christian Friends

And a much needed discussion of the "Jesus We Haven't Heard Yet"

CHARLES JOHNSON
FEB 11, 2025

♡ 17    💬 2    ⟳ 2                                          Share



Massad Boulos, President Trump's special advisor on Arab and Middle Eastern Affairs

App. 004
App. 440

https://charlesjohnson.substack.com/p/president-trumps-tariffs-tell-the





App. 005
App. 441

https://substack.com/@charlesjohnson/note/c-110557522"



https://substack.com/@charlesjohnson/note/c-110969323



https://substack.com/@charlesjohnson/note/c-110902832



Appx. 007
App. 443

5.     Based on information from findagrave.com, the headstone for Charles Marden Brockunier, which Johnson is posing in front of, is located at the Mount Auburn Cemetery in Cambridge, Massachusetts. (*See* https://www.findagrave.com/memorial/259053093/charles-marden-brockunier).

My name is Will Thompson, my date of birth is November 20, 1982, and my business address is 1900 N. Pearl Street Dallas, Texas 75201, and USA. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on May 7, 2025.


_____*/s/ Will Thompson*_____
Will Thompson

# Exhibit A

F43WJohC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   CHARLES JOHNSON,

 4                  Plaintiff,

 5           v.                            23 Civ. 2441 (KPF)

 6   CLEARVIEW AI, INC., et al.,

 7                  Defendants.
                                           Conference
 8   ------------------------------x
                                           New York, N.Y.
 9                                         April 2, 2025
                                           12:20 p.m.
10
     Before:
11
                    HON. KATHERINE POLK FAILLA,
12
                                           District Judge
13

14                        APPEARANCES

15   BERNARD V. KLEINMAN
          Attorney for Plaintiff
16
     GORDON REES SCULLY MANSUKHANI LLP
17        Attorneys for Defendants
     BY:  MALLORY J. BENNER
18        RONALD A. GILLER

19

20

21

22

23

24

25
```

F43Wjohc

```
 1              (Case called)
 2              THE COURT:  Mr. Johnson, is there something wrong with
 3     the courtroom that causes the need to wear sunglasses, sir?
 4              MR. JOHNSON:  Yes.  I have Fuchs disease, your Honor.
 5              THE COURT:  All right.  Does that explain why you were
 6     20 minutes late for the conference today?
 7              MR. JOHNSON:  It does.  I got the last train after
 8     meeting with some people, and got the last train and got here.
 9     And it's very hard to see in New York.  It's a very difficult
10     city to navigate when you're not from here, especially with bad
11     vision.
12              THE COURT:  This conference has been scheduled for a
13     while.  There's really no reason for you to be this late for
14     it, sir.
15              MR. JOHNSON:  OK.  Sorry.
16              THE COURT:  Not looking very sorry.
17              All right.  Mr. Kleinman, I'm taking appearances now.
18              MR. KLEINMAN:  I'm sorry.  Bernard Kleinman, on behalf
19     of Mr. Johnson.
20              THE COURT:  All right.  Thank you.
21              MR. KLEINMAN:  Thank you, Judge.
22              THE COURT:  Mr. Giller and Ms. Benner.
23              MS. BENNER:  Good afternoon, your Honor.  Mallory
24     Benner, from Gordon Rees on behalf of defendant Clearview.
25              THE COURT:  Thank you so much.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
 1              MR. GILLER:  Good afternoon, Judge.  Ron Giller, also
 2     on behalf of the defendant.
 3              THE COURT:  Thank you.
 4              As between the two of you, to whom should I be
 5     directing my questions?
 6              MS. BENNER:  Me, your Honor.
 7              THE COURT:  Thank you so much.
 8              Can I ask you to remain standing, Ms. Benner.
 9              Ms. Benner and then Mr. Kleinman as well, thank you.
10              Ms. Benner, there are three issues on the docket for
11     today.
12              MS. BENNER:  Correct, your Honor.
13              THE COURT:  And the first is the issue of sanctions.
14              MS. BENNER:  Correct.
15              THE COURT:  And the second is the issue of discovery.
16              MS. BENNER:  Correct.
17              THE COURT:  And the third is the issue of a possible
18     motion to dismiss.
19              MS. BENNER:  Correct, your Honor.
20              THE COURT:  From your perspective, is there anything
21     else that I should be addressing with the parties today?
22              MS. BENNER:  No, your Honor.
23              THE COURT:  Mr. Kleinman, sir, from your perspective,
24     are there other things I should have on the agenda today?
25              MR. KLEINMAN:  My client wishes to make a statement,
```

F43WJohC

```
 1    as he has in the past.

 2              Of the three issues that you mentioned, those are the

 3    three legal issues that I think are before the Court -- my

 4    request to file a 12(b)(1) motion and the two discovery issues,

 5    Judge.

 6              THE COURT:  OK.  And your client wishes to make a

 7    statement when, sir?

 8              MR. JOHNSON:  As soon as possible.

 9              MR. KLEINMAN:  As soon as possible.  Now or when we're

10    done, Judge.

11              THE COURT:  All right.  I'll let him do it now.

12              Please bring the microphone closer to you, sir --

13              MR. JOHNSON:  Sure.

14              THE COURT:  Go ahead, Mr. Johnson.

15              MR. JOHNSON:  Do you need me to stand, or be seated's

16    fine?

17              THE COURT:  I'll let you be seated if you're having

18    difficulty --

19              MR. JOHNSON:  Thank you.

20              THE COURT:  -- with your vision and other things.

21              MR. JOHNSON:  Yes.  So thank you for your attention

22    today, and please accept my apologies.  It's been a lot, this

23    whole -- this whole thing has been a lot.

24              So since we last saw one another, a lot of things have

25    happened at Clearview.
```

App. 013

App. 449

```
1            THE COURT:  I'm going to ask you to slow down just so
2    the court reporter and I --
3            MR. JOHNSON:  Oh, of course.
4            THE COURT:  Thank you.
5            MR. JOHNSON:  Yeah.  Sorry.  Sorry.
6            THE COURT:  Yes.
7            MR. JOHNSON:  So since we last saw one another, a lot
8    of things have happened at Clearview, which, to my mind,
9    substantiate that I'm not a cofounder of the company.  The CEO
10   has abruptly departed, and I'm sure you're aware of the recent
11   judicial ruling in Illinois that makes it appear that I'm not
12   and likely was never involved in the company beyond as a mere
13   investor.  It really doesn't matter what I think my role within
14   the company is because if I were a shareholder, wouldn't I be
15   included among the list of people responsible for Clearview's
16   malfeasance, like in the Illinois case?  But I'm not included
17   on that list.  So I'd like your Honor's judgment on this matter
18   because it's a bit -- it's a bit confusing, to be honest, to
19   have one courtroom going in one direction and another going in
20   another.
21           So, you know, I've gone through a lot of things over
22   the years.  I've had a lot of conversations with people about
23   this case.  And after a lot of consultation, I think it's clear
24   that Clearview was right not to see me as a cofounder.  I mean
25   its real cofounders told The Washington Post, and many other
```

 1    reporters for that matter, that I was never involved in the

 2    company.  And that's not strictly true.

 3            THE COURT:  Slow down, please.

 4            MR. JOHNSON:  Oh, sure.  Forgive me.

 5            That's not strictly true, because I was a shareholder

 6    and I did help the company raise money.  But I did that on

 7    certain expectations that were not really true.  They're not

 8    really borne out.  And I think that explains -- just, like,

 9    logically I think that explains why I wasn't really able to

10    sell the products, because the agreement that we had really

11    wasn't really a real agreement.  So I'm left with one of two

12    conclusions:  Either I am a cofounder, in which case I should

13    be included on that list of people responsible for Clearview's

14    malfeasance, which would be really terrible for me given that I

15    had no role in the day-to-day operations of the company.

16            THE COURT:  Slow down, please, sir.  Thank you.

17            MR. JOHNSON:  Sure.

18            Or I'm not one.  And then it raises a lot of questions

19    about, you know, the -- my own communications with the company,

20    because if I'm -- you know, if I'm communicating with the

21    company based upon wrong assumptions, or some might even say

22    lies, about my status within the company, then it's really

23    unfair to the people who I've communicated with because they're

24    being compounded in that lie.  You see?

25            So does that make sense?

```
 1              THE COURT:  Well, in part.  I want you to understand
 2   what you think it does for this case, sir.
 3              MR. JOHNSON:  Well, I think it's extremely -- it makes
 4   it either makes it extremely complicated or extremely simple,
 5   so -- obviously that's up to your Honor's judgment, but you did
 6   ask me my opinion.
 7              THE COURT:  No, I didn't.
 8              MR. JOHNSON:  Oh, sorry.
 9              THE COURT:  Let me be more specific.
10              MR. JOHNSON:  Yeah, sure.
11              THE COURT:  Your counsel advised me that you wished to
12   speak to me.
13              MR. JOHNSON:  Yes.
14              THE COURT:  I have let you speak to me.
15              MR. JOHNSON:  Yes.
16              THE COURT:  You've spoken about an Illinois case that
17   is not my case.
18              MR. JOHNSON:  Yes, ma'am.
19              THE COURT:  You've spoken about the possibility or the
20   concern about inconsistent findings, perhaps, among the courts.
21              MR. JOHNSON:  Yes.
22              THE COURT:  And I want to understand why you are
23   speaking to me this morning about the Illinois case and why you
24   are speaking to me this morning about the topics on which
25   you're speaking.  I'm imagining that there's going to be "and
```

F43WjohC

```
 1    therefore, X."
 2             MR. JOHNSON:  Oh, OK.
 3             THE COURT:  So --
 4             MR. JOHNSON:  Sure.
 5             THE COURT:  And therefore, what?
 6             MR. JOHNSON:  And therefore, it seems to me that the
 7    judge in the Illinois case -- this case came out a few days
 8    ago.  It's fairly lengthy.  I finished it last night, finished
 9    reading it last night.
10             I think the logic of that case means that I'm not a
11    cofounder, and so if I'm not a cofounder, then certainly I
12    can't enter into promises with people or business relationships
13    with people if I'm not a cofounder.  Right?  Just logically.
14             MR. KLEINMAN:  Judge, if I may intercede here for a
15    moment?
16             THE COURT:  Yes, sir.
17             MR. KLEINMAN:  Thank you, your Honor.
18             I think also I wasn't aware of this Illinois case, and
19    I haven't read the decision.
20             THE COURT:  Were you aware that your client was going
21    to speak about it this morning?
22             MR. KLEINMAN:  Yes, I was.  OK?
23             THE COURT:  OK.
24             MR. KLEINMAN:  I have not read the decision, but I
25    mean there's also -- if there was a decision in Illinois, in
```

```
 1   the district court, that found that Mr. Johnson was not a

 2   founder or not a principal of Clearview, then there are

 3   questions that I would need to look into -- whether the

 4   contract that he executed with Clearview, which is the basis

 5   for this litigation, whether he even had the capacity to enter

 6   that contract, and if he did not have the capacity to enter

 7   that contract, then I don't know.  There may be questions about

 8   whether there would be a basis for him breaching the contract

 9   because he never had that capacity to begin with.  So I mean

10   I'm working kind of in the blind here, Judge.

11           THE COURT:  Yes.

12           MR. KLEINMAN:  I think maybe we all are.  But I don't

13   know what that decision was, and I'm not sure how it would

14   impact this litigation.  When I raised the issue --

15           THE COURT:  Just one moment, please, sir.

16           MR. KLEINMAN:  Yeah, sure.

17           THE COURT:  Obviously your client's claims are

18   withdrawn.  It wouldn't change them.  They're not being

19   reinstated.  What you're suggesting, sir, is it would impact

20   the resolution of the counterclaims.

21           MR. KLEINMAN:  Absolutely, Judge, because that's

22   purely based -- the only claim there was breach of contract.

23   There's no other claim in that counterclaim.  It's a one-count

24   breach of contract.  If my client never had the capacity to

25   enter that contract to begin with, then there's no way he could
```

F43WJOHC

```
 1   have breached the contract, because from the beginning, the

 2   contract would have been void *ab initio*.  But I don't know.  I

 3   haven't briefed this.  I don't know what the law is.  I don't

 4   know if the law is different in Illinois or New York, or

 5   wherever.  But I just -- I'm just raising this as an issue that

 6   is -- just came upon me, and I just, just want to just give you

 7   some sense of what my position may be.  OK?

 8             THE COURT:  Sir --

 9             MR. KLEINMAN:  I'm not committing myself.

10             THE COURT:  No.  That's obvious.  Yes.

11             All right.  Thank you.

12             Mr. Johnson, was there something you wanted --

13             MR. JOHNSON:  Yes.  It's terribly confusing, because

14   if -- if your Honor is not in agreement with the other judge,

15   whom I don't know -- I've never sat before her; I've never

16   spoken to her.  If, if you're in conflict, I don't know what to

17   do, your Honor.

18             THE COURT:  All right.

19             MR. JOHNSON:  I mean it's very confusing, and I've

20   been trying to figure it out.  And it leads to stress, which

21   triggers Fuchs.  So this is why I'm kind of stuck here, if that

22   makes sense.

23             THE COURT:  I understand.

24             MR. JOHNSON:  OK.

25             THE COURT:  I understand that that's your position.
```

App. 019
App. 455

F43Wjohc

 1   Thank you.

 2              Ms. Benner, do you want to be heard on this issue?

 3              MS. BENNER:  Yes, your Honor.

 4              THE COURT:  OK.

 5              MS. BENNER:  Your Honor --

 6              THE COURT:  And I'll ask you the same thing.  For

 7   court reporter and judge, everyone please speak slowly and

 8   clearly because the courtroom acoustics are horrible.  Thank

 9   you.

10              MS. BENNER:  Thank you, your Honor.

11              THE COURT:  Thank you.

12              MS. BENNER:  I mean, first and foremost, this is not

13   before the Court.  This is the first time we're hearing of

14   this.

15              THE COURT:  Are you aware of this decision?

16              MS. BENNER:  No, your Honor.

17              THE COURT:  And I am not either.  I have not read it,

18   because Mr. Johnson doesn't seem to realize I have 300 cases of

19   my own, and therefore, I'm not focusing on the decisions of

20   other judges.  But certainly I will look into it.  Had I been

21   advised, perhaps, before this moment, I would have looked at

22   it.  So you don't know whether it applies or doesn't apply or

23   how it applies to this case.

24              MS. BENNER:  No, your Honor, but at the same time, you

25   know, it's our position that it would be irrelevant anyway.

F43WjohC

```
 1    This is a contract between the parties that Mr. Johns entered
 2    into in his individual capacity.  There's no reference to his
 3    status as a cofounder or, you know, his involvement with
 4    Clearview in the contract.  It clearly states that he's --
 5             THE COURT:  Slow down, please.
 6             MS. BENNER:  It clearly states that he's entering into
 7    the contract in his individual capacity.  So we don't see how
 8    it's relevant whether or not he's a cofounder and how that has
 9    an impact on the counterclaims in this case.
10             THE COURT:  All right.  I understand that.  And I'm
11    sure the folks at the front table hold a different view, and I
12    understand Mr. Johnson's view is one of trying to prevent
13    inconsistent findings, which I do understand.
14             All right, Mr. Johnson, sir, you know the most about
15    this case than any of this.  What is the caption of the case,
16    please?  Do you know the name of the case, the Illinois case?
17             MR. JOHNSON:  I'm unfamiliar, but it's Judge Coleman,
18    is the woman's --
19             THE COURT:  All right.
20             MR. JOHNSON:  It's Sharon Coleman, and it's *ACLU v.*
21    *Clearview*.
22             THE COURT:  *ACLU v. Clearview*.
23             MR. JOHNSON:  It's a Northern District of Illinois,
24    and I've read it twice.  I'm not a lawyer.  I -- you know, I
25    took common law, barely.  You know, I don't know.  Forgive me.
```

App. 021
App. 457

F43WJoHC

```
 1              THE COURT:  But, sir, you have an attorney.

 2              MR. JOHNSON:  Yeah, for -- obviously.  But I've had it

 3      looked at by a lot of friends who are attorneys and I've had

 4      it -- I mentioned it to Bernie the other day.  It just came out

 5      a few days ago, your Honor.  There's a lot of things going on

 6      in it, from what I understand.  It's been written about a lot

 7      in the media and analyzed, so it's --

 8              THE COURT:  I guess what's confusing to me, sir -- and

 9      of course, we'll find the case and be looking at it -- is how

10      the ACLU would be filing a lawsuit as to which your status or

11      not as a cofounder would matter.

12              MR. JOHNSON:  Oh.  This is why, your Honor.  This is,

13      as I understand it, and forgive me if I'm mistaken, but this is

14      what I understand of it.

15              So the company is in trouble for a number of

16      malfeasance issues when it comes to breaking the law in terms

17      of privacy, being generally dishonest, some might even say

18      lying about other --

19              THE COURT:  You realize everything you say, sir,

20      brings you closer and closer to sanctions.

21              MR. JOHNSON:  I'm well aware.  I'm just repeating what

22      is in -- from my interpretation of what's there.

23              THE COURT:  I'm not sure the word "malfeasance" is

24      there.  Is that in the decision?

25              MR. JOHNSON:  I think it is, your Honor, but I'm not
```

F43Wjohc

```
 1   100 percent sure.

 2             THE COURT:  OK.  We'll be looking for it.

 3             MR. JOHNSON:  Maybe we should all read the decision

 4   and come back.  Or I don't know, but --

 5             THE COURT:  All I'm saying is be careful how you

 6   interpret things.

 7             MR. JOHNSON:  OK.  So let me -- can I step back a

 8   second?

 9             THE COURT:  Please.

10             MR. JOHNSON:  OK.  So if it is true that a company --

11   this is hypothetically.  If a company is in trouble with

12   violating certain aspects of the law and certain aspects of

13   being truthful, then it stands to reason logically that they

14   might be not truthful in other matters as well.  And maybe one

15   of those things that they're truthful on is whether or not I

16   was actually even able to enter into that contract in the first

17   place.

18             Do you follow my logic?

19             THE COURT:  I do, sir, except once again, I can see a

20   world, a hypothetical, in which a lawsuit is brought against

21   Clearview but not against its founders.  And therefore, I'm not

22   sure that that lawsuit resolves fully and finally the issue of

23   who the founders are or resolves the issue of your capacity to

24   contract as a cofounder of Clearview.  But your colleagues at

25   the back table said to me that you entered into the contract in
```

App. 023

App. 459

F43WjohC

1   your individual capacity.

2           MR. JOHNSON:  Right, but based upon the assumption

3   that I was, in fact, a cofounder.

4           THE COURT:  But if it doesn't say that, I don't know

5   why -- that's what they're saying, and I'll have to look at the

6   contract --

7           MR. JOHNSON:  Yes.

8           THE COURT:  -- is that it was done, again, in your

9   individual capacity.

10          Just one moment, please, because I'm looking at it

11   right now.

12          The decision is *In Re Clearview AI Inc. Consumer*

13   *Privacy Litigation*.  I see it's Northern District of Illinois,

14   case No. 21 Civ. 135, document 631, issued March 20, 2025.  I

15   don't mean to make folks wait here, but let me just look at

16   this for a moment, please.

17          It is a class action settlement.  In this action,

18   Mr. Ton-That and Mr. Schwartz are listed as the cofounders, and

19   Mr. Johnson is not listed as a defendant in this.

20          The word "malfeasance" is nowhere found.

21          MR. JOHNSON:  Forgive me.

22          THE COURT:  Ms. Noriega, could I trouble you to print

23   out a copy for the front table and the back table, please.

24          I won't make you all read it, but I'm glancing at this

25   right now.  What I understand this to be, and I could be proven

App. 024
App. 460

F43WJoHC

```
 1    wrong, is this is a final settlement of a class action.  It's
 2    the fairness hearing and the inquiry that one makes as part of
 3    the settlement of a class action.  I don't know, but I would be
 4    surprised if there are actually findings about misconduct on
 5    the part of Clearview, because often, class actions of this
 6    type -- and it's about access to biometric data.  Certainly I'm
 7    not seeing anything about foreign powers having an influence in
 8    this, but to me, it's the fairness inquiry that I do when I do
 9    a class action settlement.
10          For those of you who do not do these things, there are
11    factors regarding the fairness of the settlement and then there
12    are also factors regarding the fairness of an attorney's fee
13    award.  That's what I'm seeing.  I'm not sure.
14          MR. JOHNSON:  As I -- if I --
15          THE COURT:  Thank you, sir.
16          Mr. Johnson, I'm not sure it is dispositive of the
17    issue of whether you were or were not a cofounder.  I just
18    don't know that.  But OK.
19          We're talking about the same decision; yes, sir?
20          MR. JOHNSON:  Yes, we are.
21          THE COURT:  All right.  I understand, and I'll give
22    everyone a copy.  I don't think -- it might impact
23    Mr. Kleinman's discussion with me about the motion to dismiss
24    he wants to file.  Maybe.  I don't know, but we'll talk about
25    that.
```

Case 4:24-cv-00988-P   Document 50-1   Filed 05/07/25   Page 26 of 83   PageID 780

F43WJohC

```
 1              Let's move on to some other things.  Mr. Johnson,
 2     again, do I have everything you wanted to tell me about this
 3     case?
 4              MR. JOHNSON:  Yes, ma'am.
 5              THE COURT:  OK.
 6              MR. JOHNSON:  If I may, just one final point, if
 7     that's possible?
 8              THE COURT:  Yes, sir.
 9              MR. JOHNSON:  Well, it follows -- as I understand it,
10     this is a very unusual, novel application of the law.  And from
11     what I read online about it -- forgive me.  I'm -- again, I'm
12     not an attorney.  You know, from -- but from what I understand,
13     and I've even taken it to, as I said, other attorneys and they,
14     too, are kind of -- that it's a very novel application of rules
15     around biometrics and tort law or in terms of class actions.
16     And you'll notice that in this particular case, from what I
17     understand, and I could be wrong about this -- again, I'm not
18     an attorney, but from what I understand, is that it's a very
19     novel case, and so because of that, I'd like to have it looked
20     at even more, given what implications it may have for this
21     case.  And it seems to me that it likely would have some
22     applications to this case, because it seems likely that the two
23     cofounders -- I think they're named defendants in this, but I
24     could be wrong on that.
25              THE COURT:  OK.
```

App. 026
App. 462

F43wjohc

1          MR. JOHNSON:  And if they are, then it raises a lot of

2    interesting questions about this case and about how other

3    things are going to be paid for and, you know, all that.

4          THE COURT:  But there is no admission of fault by

5    Clearview in this case.  Correct?

6          MR. JOHNSON:  I don't know.

7          THE COURT:  I don't see one.  It's a settlement, but I

8    don't see that there's an admission of liability.  I don't see

9    that Clearview's saying we did wrong, and so I'm not sure.

10         I think we should stop at the moment hypothesizing at

11   the moment about how it might impact this case until everybody

12   gets to read it carefully, including the judge.  You are of the

13   view that it might or indeed that it does.  Your attorney would

14   like to know.  The folks at the back table would also like to

15   know.  I'm not sure, therefore, that it's useful to talk about

16   its applicability today --

17         MR. JOHNSON:  Sure.

18         THE COURT:  -- because I'm not going to take a break

19   to have us read it.  So let's move on with other things.

20         MR. JOHNSON:  Thank you, your Honor.

21         THE COURT:  All right.

22         Ms. Benner, returning to you, please, on the issue of

23   sanctions, I have the letters that I have, and I don't

24   really -- if more has happened, I guess I want to know.  If

25   more has not happened, I want the briefest of arguments,

```
 1       because you've already given it to me in writing, and I don't
 2       want to waste everyone's time just repeating what's already in
 3       writing, not to suggest time is being wasted.
 4               Go ahead, Ms. Benner.
 5               MS. BENNER:  Sure, your Honor.
 6               As far as we know, since our submissions, there hasn't
 7       about this anything else that's brought to our attention, so as
 8       of now, that's all we have.  But with that, I know your Honor's
 9       well aware, as we discussed at our prior conference, the Court
10       has inherent authority to issue sanctions for bad faith conduct
11       in this case.  And here, plaintiff is clearly acting in bad
12       faith.  He's intentionally violating court orders by placing
13       false harassing statements about defendants as well as defense
14       counsel.
15               THE COURT:  Is my only basis inherent authority, or do
16       I have anything from the Rules of Civil Procedure?
17               MS. BENNER:  Your Honor --
18               THE COURT:  I'm just asking.  I don't know.  I'm
19       asking this, and this isn't a rhetorical question.  I don't
20       know that this is a situation where Rule 37 would come into
21       play because it's somehow related to discovery.
22               Your view is it's inherent power.
23               MS. BENNER:  Your Honor, with respect to these
24       statements, I believe it's just on the basis of inherent
25       authority, but there is the issue of sanctions for failure to
```

F43Wjohc

```
1    comply with discovery that we'd like to address, as I'm sure
2    your Honor will address later in this hearing.  But for the
3    purposes of just these statements, we're just going off of
4    inherent authority at this point.
5             THE COURT:  All right.  In the Rule 37 context, there
6    is a case that I know of -- that is, Agiwal, and that tells me
7    to consider the willfulness of the noncompliance, the efficacy
8    of lesser sanctions, the duration of noncompliance and the
9    warning of consequences of noncompliance.
10            In the inherent powers context, is the analysis
11   different?
12            MS. BENNER:  It's the same, your Honor.
13            THE COURT:  It's the same.  OK.
14            All right.  So is that it on the issue of sanctions?
15   I didn't mean to cut you off.
16            MS. BENNER:  No, no.  It's OK, your Honor.
17            The only thing I just would like to note is I think
18   your Honor made very clear, especially with comments about
19   defense counsel, your Honor had told plaintiff, in person, that
20   any comments about defense counsel, no matter how benign, the
21   Court would take as a threat to intimidate and undermine the
22   Court's orders.  And despite that being clear two months ago,
23   plaintiff did just that, and the comments were far from benign,
24   as I'm sure your Honor saw.
25            So we're here again today to request sanctions.  This
```

F43WjOHC

1    conduct has gone on for two years now, and despite multiple

2    warnings, in-person conferences, at this point we think there's

3    nothing left to do but to issue sanctions in this case.

4         THE COURT:  All right.

5         Mr. Kleinman, you disagree.

6         MR. KLEINMAN:  Well, I think as far as the issue about

7    any comments that Mr. Johnson may have made, I'm not sure if

8    any of them go beyond the point of him merely expressing

9    opinions which have already been made by third parties, like

10   Bloomberg Business, and so forth, about Clearview.  I don't

11   recall if there were any specific comments about Mr. Giller

12   or --

13        THE COURT:  "Giller is really mad that I've been very

14   politely but very firmly refusing to be gagged by him and his

15   firm.  What part of 'I won't be gagged when I'm whistle-blowing

16   about a corrupt foreign-backed company' do you not get?  God,

17   take the L, man."

18        MR. KLEINMAN:  Take the what, Judge?

19        THE COURT:  "Take the L," the loss.

20        MR. KLEINMAN:  Oh, oh.  OK.

21        THE COURT:  Take the L.

22        MR. KLEINMAN:  Oh, I'm not --

23        THE COURT:  You've got to be in on --

24        MR. KLEINMAN:  -- up on the colloquialism.

25        THE COURT:  That's to Mr. Giller; that's directed to

F43WJOHC

```
 1    him.
 2              MR. KLEINMAN:  That is directed to Mr. Giller, but I
 3    don't know if it's --
 4              THE COURT:  "You should really withdraw from the case
 5    with what's left of your reputation, but I think we both know
 6    why you can't do that."
 7              MR. KLEINMAN:  You know, it's -- it's, it's not
 8    something that I -- that I would ever do.  Or it's not
 9    something that a lot of people would do, but I think at the
10    same time, it's merely a party to the litigation venting some
11    frustration, and I don't know that there is any --
12              THE COURT:  "Is Mr. Giller trying to throw the kitchen
13    sink at me now?  Perhaps on behalf of a foreign government?
14    Gosh, I really hope not."
15              On behalf of a foreign government?
16              MR. KLEINMAN:  Well, I don't know if he quite said it
17    that way, Judge.  OK?  I still -- I can read it, but I don't
18    know the --
19              THE COURT:  Oh, please.
20              MR. KLEINMAN:  -- intonation and so forth.
21              THE COURT:  Don't.  Don't.  Don't.
22              MR. KLEINMAN:  I just think --
23              THE COURT:  To use your client's expression, "take the
24    L."
25              MR. KLEINMAN:  All right.
```

F43WjohC

```
 1              MR. JOHNSON:  Your Honor, if I may?

 2              THE COURT:  No.  You've said so much, sir.

 3              MR. JOHNSON:  Forgive me.

 4              MR. KLEINMAN:  No, but I don't know that those

 5    statements actually merit a, some type of a sanction, and if

 6    there was a sanction, I think there should be a -- sanctions

 7    should be given in a, different levels:  If you violate this

 8    sanction --

 9              THE COURT:  Agreed.

10              MR. KLEINMAN:  -- then you're, you know, you're going

11    to get one whack.  If you violate this sanction, then you're

12    going to get 18 whacks, and a third sanction, you'll get heel

13    holed.

14              THE COURT:  Sir, we don't use that.  OK?

15              Also, your client accused me of being part of a scam.

16              MR. KLEINMAN:  Sorry, Judge?

17              THE COURT:  And he's shaking his head now.  He

18    believes me to be part of a scam.

19              MR. JOHNSON:  It's not your Honor's fault.  It's -- if

20    I may?

21              THE COURT:  No.  You've made your point, sir.  You've

22    accused me of using my office to perpetrate a scam against you.

23    That seems bad.  No.  That's OK.  That's what you wrote.

24              MR. JOHNSON:  To be precise about it, if I can, a scam

25    that you may not be necessarily -- you may be the victim of it
```

F43WJoHC

```
 1    as well as I was.
 2              THE COURT:  Sir, I'm not nearly as stupid as you take
 3    me to be.  I myself do not feel as though I've been misled by
 4    the defense team.  I'm not part of anyone's scam.
 5              MR. JOHNSON:  Sure, but your Honor, we have many cases
 6    now that are coming out -- you have Theranos, of Biome, of
 7    WireCard -- in which counsel will sue.  People are talking
 8    openly and publicly about fraudulent conduct on behalf of
 9    companies, and this is becoming a routine thing.  It's
10    something that's talked about all the time at the SEC, and it's
11    a real concern, and so --
12              THE COURT:  Mr. Johnson, where are your DHS agents?
13    They don't exist.
14              MR. JOHNSON:  Your Honor, there's -- I believe, your
15    Honor -- and I checked on this -- there's over 300, 400 Alex
16    Rodriguezes in the Department of Transportation alone.  And in
17    fact, I did --
18              THE COURT:  You gave me Department of Homeland
19    Security.
20              MR. JOHNSON:  I did.
21              THE COURT:  There was one.  One, sir.
22              MR. JOHNSON:  Well, this is what he told me after he
23    and I spoke after this court proceeding last time.  But I'm
24    happy to give the phone number again, and you're free to call
25    him.
```

F43WJOHC

```
 1              THE COURT:  He's not a real DHS agent.  He's only --
 2              MR. JOHNSON:  No.  No.
 3              THE COURT:  One of them doesn't work for DHS.  The
 4      other one is effectively a security guard at an office.
 5              MR. JOHNSON:  No, your Honor.  That's not -- that's
 6      incorrect.  And I will tell you, and I'm happy to -- we can put
 7      them on the phone, you know.
 8              THE COURT:  Oh, no.  I don't trust them enough to talk
 9      to them on the phone.  You gave me names.  I went to the top
10      people in DHS, and they said they do not exist.
11              MR. JOHNSON:  I don't think that's --
12              THE COURT:  I went to DHS.
13              MR. JOHNSON:  OK.
14              THE COURT:  Sir, speaking of people being misled, it
15      may well be you, but the two names you gave to me, one was
16      not -- neither one was a DHS agent.  One was not employed in
17      any capacity at DHS.
18              MR. JOHNSON:  Yes.
19              THE COURT:  And the other was the equivalent of a
20      security guard.  He's not an agent of DHS and certainly would
21      not have the power to be a handling agent.
22              MR. JOHNSON:  I don't think that's correct, your
23      Honor, but I'm happy to -- I'm sure it will come out, given
24      that this is all on the record.
25              THE COURT:  All right.
```

1          Mr. Kleinman, anything else you wish to say, sir?

2          MR. KLEINMAN:  No, Judge.

3          THE COURT:  Thank you so much.

4          Ms. Benner, anything in reply?  It's fine if there

5    isn't at this time.

6          MS. BENNER:  Your Honor, just one comment I'd like to

7    make.

8          Just the fact that, you know, Mr. Kleinman had made a

9    comment that these could be Mr. Johnson's opinion, his

10   statements.  But your Honor made it clear, this is a court

11   order, not to make any statements about Mr. Giller, and

12   Mr. Johnson violated the court order.  So in the interest of

13   the fairness of this litigation and ensuring judicial integrity

14   for this process, Mr. Johnson shouldn't be allowed to violate

15   court orders.

16         THE COURT:  All right.  Thank you.

17         Ms. Benner or Mr. Kleinman, who wants to speak on the

18   issue of discovery first?

19         MR. KLEINMAN:  Ms. Benner can, Judge.

20         THE COURT:  OK.

21         Ms. Benner, I believe the last thing I did was issue

22   an order that said that Mr. Johnson had to comply with his

23   discovery obligations.  So where are we?

24         MS. BENNER:  That is correct, your Honor, and since

25   then we have received nothing.

F43WjohC

1        THE COURT:  And so my last order was, I believe,

2   according to my notes, March 13 --

3        MS. BENNER:  Correct.

4        THE COURT:  -- is that correct?

5        All right.  Now let me understand where the parties

6   are right now.  There was agreement as to search terms, but the

7   search term review has not been conducted.

8        MS. BENNER:  Correct.

9        THE COURT:  From your perspective, what else are you

10  anticipating?

11       MS. BENNER:  Your Honor, we also -- plaintiff was

12  supposed to give us supplemental responses to answers to

13  interrogatories, the written RPFs, the RFAs, all of which --

14       THE COURT:  Slow down, please.  Thank you.

15       MS. BENNER:  Sorry.

16       -- all of which were outlined in your January 16

17  order.  So essentially all of the discovery that was ordered

18  was not complied with.

19       THE COURT:  All right.

20       Mr. Kleinman.

21       MR. KLEINMAN:  Well, as far as the search terms, I

22  received search terms from counterclaimants' counsel, and I did

23  respond to those.  OK?  And I have questions about whether they

24  were too broad or some of them were just too general, and I

25  don't think any resolution was finally made as to what those

1   search terms should be.

2          THE COURT:  Why I'm confused, sir, is that in the

3   defense's letter of March 7, 2025, the note I have is that the

4   parties reached agreement on the search terms but that there

5   was an issue about performing the actual searches.

6          MR. KLEINMAN:  Well, that too, also, the performing

7   the searches.  But there are questions that I had raised about

8   some of the search terms that had not been resolved, as far as

9   I'm aware.

10          THE COURT:  Oh, excuse me, because I had been told

11   that they have been resolved.

12          Just one moment, please, sir.

13          MR. KLEINMAN:  Sure.

14          THE COURT:  Thank you.

15          You'll excuse me while I fight with my computer.

16          Sir, docket entry 68, I believe, March 7, 2025, letter

17   from Mr. Giller and Ms. Benner, in the second paragraph:

18          "The parties conferred and have agreed upon a set of

19   search terms for plaintiff to use in searching for relevant

20   discovery.  However, plaintiff is now refusing to conduct these

21   searches."

22          I don't believe he ever wrote in a letter saying,

23   wrong, Failla, we do not have agreement.  So I've been

24   proceeding for the last month on the understanding that there

25   was agreement.

1           MR. KLEINMAN:  No --

2           THE COURT:  Are you telling me there's not?

3           MR. KLEINMAN:  -- anything indicating that the terms

4    were agreed upon.

5           THE COURT:  But you did receive this letter --

6           MR. KLEINMAN:  Yes, I did.

7           THE COURT:  The letter I did.

8           MR. KLEINMAN:  Yes.

9           THE COURT:  OK.  Let me imagine then that the search

10   terms have been agreed upon, because I wasn't told otherwise.

11          MR. KLEINMAN:  I'm sorry to interrupt.  Yeah, that's

12   fine.  We can say that that's the question.  I think the

13   question was more about actually effectuating those search

14   terms --

15          THE COURT:  Agreed.

16          MR. KLEINMAN:  -- was more the issue.  I know you

17   issued an order, and I think you boldfaced it, that it was

18   defendants' responsibility to make those -- search -- to fund

19   that deep search.

20          THE COURT:  Hold on.  Hold on.

21          MR. KLEINMAN:  Well, I may be paraphrasing.

22          THE COURT:  Right, but --

23          MR. KLEINMAN:  Look at memo endorsed.  I think it's on

24   ECF 80.

25          THE COURT:  Sir, I'm looking at my endorsement of the

F43WJohC

```
 1    13th of March.  It says, "plaintiff is ordered to comply with
 2    the Court's January 16, 2025, order.  Further, the Court finds
 3    absolutely no basis for defendants to be forced to retain an
 4    ESI vendor."
 5            MR. KLEINMAN:  That's what I'm talking about, Judge.
 6            THE COURT:  Yes, but that's the point.  That means you
 7    have to do it.  They don't have to pay for it.  It's got to
 8    come from you.
 9            MR. KLEINMAN:  I understand that, Judge.
10            THE COURT:  OK.  All right.
11            MR. KLEINMAN:  Well, I understand that, Judge.  It's
12    got to come from the defendant Johnson.  Got it.
13            THE COURT:  No, sir.  No, sir.  There's a single
14    plaintiff, who is your client, and a single set of defendants,
15    who are the folks at the back table.  So you had to comply and
16    they don't have to pay for it.
17            Now, I'm fine if you agree to let them set up a
18    separate team to review it so you don't have to.  I believe
19    that's what they offered to do, but I want to understand how
20    this is going -- who is going to do this review?  Because it
21    was supposed to be done by the 14th of March.
22            MR. KLEINMAN:  Right, and hasn't been done.  I
23    don't -- I mean if there is a separate team, then -- I mean
24    I've dealt with this, for example, in the U.S. Attorney's
25    Office, where there's a Chinese Wall created.
```

F43WJohC

1          THE COURT:  Yes.

2          MR. KLEINMAN:  And they observe, that separate team

3     has to observe certain requirements.  And I haven't gone over

4     the details with Mr. Johnson, so I'm sure that that is a

5     possibility.  OK?

6          THE COURT:  Mr. Giller's giving me a strange face, so

7     I don't want to misstate what they said to me.  Give me a

8     moment, please.

9          "Alternatively, if plaintiff's counsel would prefer to

10    send us the hard drive, we will conduct the agreed-to

11    searches."

12         I understood that to be with a taint team in place.  I

13    did not think that Mr. Giller and/or Ms. Benner were going to

14    be doing the searches.

15         MR. KLEINMAN:  I didn't -- I don't -- I can't make any

16    assumptions.

17         THE COURT:  No, of course.

18         MR. KLEINMAN:  OK?

19         THE COURT:  What I'm saying, sir, is we're here

20    together, and somehow this material has to be reviewed and it

21    has to be produced.  You or your client has to do it.

22         MR. KLEINMAN:  OK.

23         THE COURT:  The question is how are you going to do

24    it?  And if the issue is you want to do it -- and we can talk

25    to your friends at the back table and see if they would put a

F43WJoHC

 1    taint team in place.  Or if you just want to spend nights and

 2    weekends doing it yourself, that's fine by me, but it's got to

 3    be done.

 4         MR. KLEINMAN:  If you counted on me to do it, Judge,

 5    this case would go on a long time.

 6         THE COURT:  No, no.  You think that, but I have ways.

 7         Mr. Giller, perhaps I'm misconstruing your facial

 8    expression, sir.  When you said that you would accept the hard

 9    drive and do the searches, what then did you mean?

10         MR. GILLER:  Your Honor, I apologize if my facial

11    expressions expressed anything other than disbelief to counsel,

12    not from your Honor.

13         What we meant is if they're refusing to do the

14    searches that you've now ordered them to do twice, we would

15    take the hard drive and the entirety of the database and do the

16    searches ourselves.  We are not offering to pay anybody to do

17    it, because we shouldn't have to, and we're not offering to

18    have a separate team of people do it at my firm.

19         We are the ones with knowledge of the case and

20    involved in the case.  If we have to because there's no other

21    way, because they're refusing to comply, then we'll do it.

22         THE COURT:  I understand that.  What I'm saying is --

23         Mr. Kleinman, it has to be done.  Right?  And I'm

24    trying to figure out how it can be done.  I'm uncomfortable,

25    given that there may be attorney-client privileged information

F43WjoHC

1    going to you two in the back, but I believe you could teach

2    somebody else in your firm to run searches with the terms and

3    to print out the responsive documents and to exclude the

4    attorney-client privileged stuff.  I think you could do that.

5    Is it a pain?  Absolutely.  Would it get done?  Yes.

6              MR. GILLER:  Your Honor, if that's what the Court

7    directs, obviously we'll comply.

8              THE COURT:  Well, what are my options?  What are my

9    options?

10             Mr. Kleinman, what else is there to do?

11             MR. KLEINMAN:  If my client can end up hiring a

12   third-party ESI firm to search using those search terms, I

13   assume that would be acceptable.  I don't see any reason why

14   not.

15             THE COURT:  That would be acceptable.  Yes, but I

16   thought the point was that there were financial constraints --

17             MR. KLEINMAN:  There are financial constraints,

18   obviously.

19             THE COURT:  OK.  But he's still willing to do that?

20             MR. KLEINMAN:  I believe that it depends upon what the

21   cost would be, but I did not have a discussion with him and

22   might recommend that at the Court's direction.

23             THE COURT:  Mr. Kleinman, it's already due.

24   Everything is already due.  There's no excuse for this not to

25   have been produced.  So I don't know.  I feel like it's a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F43Wj0hC

1    little late in the day for him to be saying maybe he should

2    consider it and have a third-party ESI.  Give me other options,

3    because right now you're in complete violation of my order.

4              MR. KLEINMAN:  I understand that, Judge.

5              My client said that he would be willing to -- he will

6    hire an ESI firm and that they will get the documents, the

7    drive that I received from Alston & Bird, and they will use the

8    search terms that were agreed upon and provide that discovery.

9              THE COURT:  Let me please ask this, and I'm asking

10   this of both sides.  This idea of these ESI firms, it's not

11   something I did in practice and it's not something I've seen as

12   a judge.  Are we talking about contract attorneys?

13             MR. KLEINMAN:  No, no.

14             THE COURT:  Are we talking about tech wizards?  What

15   is the ESI -- I don't know what their competence is to do this.

16             MR. KLEINMAN:  The firms, I've dealt with a firm like

17   this in a case in California, where they got massive amounts of

18   emails and documents.  They were given these search terms and

19   then they produced the documents in a manner, and format that

20   would be acceptable under the federal rules.  This is what they

21   do for a living.

22             THE COURT:  Of course, sir.  How do you make sure that

23   privileged information isn't disclosed?  Do you get the first

24   cut?

25             MR. KLEINMAN:  Yeah.

Appx. 043
App.479

```
 1              THE COURT:  Does it go to you first?

 2              MR. KLEINMAN:  Right.  They would give me the first

 3      cut.  I would review it, make sure it didn't include any

 4      documents -- part of the instructions would be, for example,

 5      that any communications between Mr. Johnson and his prior

 6      counsel and Mr. Johnson and myself would obviously be excised,

 7      because they'd be subject to privilege.  But any

 8      communications, for example, that fit within -- they were

 9      parameters of emails between Mr. Johnson and Mr. Ton, for

10      example.  OK?  Where there was -- they were not privileged, but

11      those would be available.  Those would be provided.

12              THE COURT:  All right.

13              Ms. Benner, your response.

14              MR. GILLER:  If I may, your Honor?

15              THE COURT:  Sir.

16              MR. GILLER:  First, we're interested to hear that they

17      now agree that there were these search terms, because there

18      weren't.

19              THE COURT:  Well, as far as I'm concerned, I've

20      already told Mr. Kleinman it's too late to tell me there wasn't

21      agreement.

22              MR. GILLER:  OK.  I just have two things about what

23      was just said.

24              One is we would like the ability to know in advance

25      which ESI firm they're proposing, and we're not going to object
```

F43WjohC

```
 1   to any -- any of a number of companies that do this for a
 2   living.  We work with many different companies.  I don't have
 3   any preference.  I just want to make sure it's a legitimate
 4   company that does discovery ESI for a living.  That's my only
 5   request with respect to that, that it's not some type of
 6   business that does something else and is doing this as a favor
 7   or a friend, or something else.
 8           That's my first point.  My second point --
 9           THE COURT:  No, no.  We'll take your first point.
10           Mr. Kleinman, any objection?
11           MR. KLEINMAN:  Mr. Giller has said that his firm's
12   dealt with a number of ESI third parties that do this.  If he
13   wants to provide me with three or four that his firm has used,
14   we can eliminate that problem.  I'm not asking my
15   brother-in-law or my wife to do this.
16           THE COURT:  OK.
17           MR. KLEINMAN:  I don't know if that was the inference,
18   but I did ask --
19           THE COURT:  No, no.  There was no inference.  There
20   are firms he knows and firms he doesn't know.  I'm sure he can
21   give you a list of many firms.
22           MR. GILLER:  Judge, this afternoon, I'll send an email
23   with three names.
24           MR. JOHNSON:  I would not feel comfortable with that,
25   your Honor.  I would like to use whatever the standard one that
```

1    is used by the courts.

2              THE COURT:  There is no standard one.

3              MR. JOHNSON:  If there's a list of them, I think the

4    list should be jointly provided.

5              THE COURT:  By whom, sir?

6              MR. JOHNSON:  By us and by opposing counsel.

7              THE COURT:  Mr. Kleinman may know the one he used in

8    California.

9              Do you remember it, sir?

10             MR. KLEINMAN:  Well, I remember the individual.  I

11   remember the individual I dealt with.  I mean I'd have to get

12   back in touch with him, and if he's still doing this.  They've

13   been doing this for a long time.  This firm's been doing this

14   for a long time.

15             THE COURT:  Mr. Johnson, I'm confused.  Your counsel

16   suggested, requested the three.  Now you're saying no.

17             MR. JOHNSON:  No, no.  With respect, your Honor, I'm

18   sure there's lots of firms that do that.  I'm not, I do not

19   feel comfortable with having opposing counsel make that list of

20   firms.  I'm happy to use standard firms that are out there that

21   are maybe not the list that Mr. Giller provides.  But I'm happy

22   to -- you know, I'm sure that there are ones that are out there

23   that may not necessarily be on his list.  There could be 10,

24   20, 30, 40 firms.  I'd like to do some research before I'm

25   comfortable agreeing to any firm.

```
 1              THE COURT:  Then, Mr. Kleinman, Mr. Giller will get a

 2    right of first refusal.  You'll have to tell him who it is, and

 3    if it's not a firm that was considered to be reputable, he'll

 4    oppose and you'll bring it to me and I'll decide.

 5              MR. KLEINMAN:  Your Honor, I will provide that list to

 6    Mr. Giller, and if anything -- the same thing as choosing a

 7    mediator, an arbitrator.

 8              THE COURT:  Right.

 9              MR. KLEINMAN:  You get three.  You choose one of them,

10    the one that you agree upon.  That's the one you use.

11              THE COURT:  Yes, I still think Mr. Giller should send

12    a list, if he would indulge me, because it might help the

13    process.

14              MR. KLEINMAN:  Yeah, Judge.  In fact, it probably will

15    help the process, because if it's a large firm that I've dealt

16    with in the past or I'm familiar with, then -- you know, I

17    mean, I don't think I would have a problem with it.

18              THE COURT:  All right.  But we know it's not your

19    brother-in-law.  Thank you.

20              MR. KLEINMAN:  No, it's not.

21              THE COURT:  Mr. Giller, what's your second point?

22              MR. GILLER:  My second point is just with respect to

23    privileged materials, your Honor.  I would just ask that if

24    they're going to claim documents that are found using the

25    search terms, that they provide us with a privilege log at the
```

F43WJohC

```
 1   same time.
 2              THE COURT:  Agreed.  Anything that's removed will have
 3   to be logged.  Yes, I agree with that.
 4              MR. GILLER:  Thank you, your Honor.
 5              THE COURT:  All right.  That's the discovery -- well,
 6   partly.
 7              Mr. Kleinman, that only gets us to the issue about the
 8   production of ESI for which the search terms are hits.  What
 9   about the supplemental responses to the interrogatories, the
10   requests for admission, the requests for production?
11              MR. KLEINMAN:  I sent that request.  I sent the -- I'm
12   sorry.  I sent the -- I sent all the documents, the original
13   demands from Clearview's counsel and your order, and so forth,
14   to my client.  I never received a response, Judge.
15              THE COURT:  Hmm, that seems bad.
16              All right.  You do understand -- you do understand,
17   sir, because I know you've been here before; I know you've been
18   in this courthouse for decades -- that court orders should be
19   followed, right?  You know that.
20              MR. KLEINMAN:  Yes, I do.
21              THE COURT:  Yes.  Why can't my orders be followed,
22   sir?
23              MR. KLEINMAN:  I'm just the lawyer, Judge.
24              THE COURT:  No, no, sir.  Ultimately you're on the
25   hook for this.  Where are these responses, sir?
```

1      MR. KLEINMAN:  I asked my client to provide responses.

2   He did not provide the responses.

3      THE COURT:  But is it not on you to cajole him, to

4   pressure him, to persuade him?

5      MR. KLEINMAN:  I sent him more than one email

6   reminding him of his obligation, Judge.

7      THE COURT:  OK.  So this is the basis for sanctions

8   under Rule 37.  OK.  I understand.  I just think it's

9   unfortunate.  OK.  Thank you.

10      Mr. Kleinman, actually, before you sit down, I think

11   we're moving now to the third topic, which is your motion to

12   dismiss.

13      Sir, I've understood, and I recently had to look into

14   this for another matter, that a statement in a pleading of an

15   amount in controversy in excess of $75,000 is presumptively

16   correct.  So I don't know how you'd be able to rebut that

17   presumption in a 12(b)(1) context.  Separately, I'd like you,

18   please, to respond to your adversary's contention that, in

19   fact, their compulsory counterclaim receives supplemental

20   jurisdiction by being a compulsory counterclaim.

21      MR. KLEINMAN:  May I address those?

22      THE COURT:  You may, please.  Thank you.

23      MR. KLEINMAN:  OK.

24      Merely stating and pleading what's in 1332(a) is not

25   sufficient under the cases that have been cited in this

Case 4:24-cv-00988-P    Document 50-1    Filed 05/07/25    Page 50 of 83    PageID 804

F43WJohC

1    circuit, Judge.

2              THE COURT:  The case that I'm looking at, sir, is

3    *Scherer v. Equitable Life Insurance Society of the United*

4    *States*, 347 F.3d 394 (2d Cir. 2003), that a statement of an

5    amount in controversy in excess of $75,000, there's a

6    rebuttable presumption of a good faith representation.

7              MR. KLEINMAN:  Judge.  If I can quote, it says, the

8    party invoking the jurisdiction of the federal court has the

9    burden of proving that it appears to a reasonable probability

10   that the claim is in excess of the statutory jurisdictional

11   amount, *Security Plans Inc. v. Cuna Mutual Insurance*, 769 F.3d

12   807, 814 (2d Cir. 2014).  Where the plaintiff alleges damages

13   in a sum that exceeds the sum or value established by --

14             THE COURT:  Slow down.  For court reporter and judge,

15   please slow down.

16             MR. KLEINMAN:  I'm sorry.

17             THE COURT:  Thank you.

18             MR. KLEINMAN:  "Where the plaintiff alleges damages in

19   a sum that exceeds the sum or value established by 28 U.S.C.

20   Section 1332(a), exclusive of interests and costs and is

21   lacking in additional details to support this assertion, it

22   constitutes a conclusory reference to 28 U.S.C. Section 1332(a)

23   and fails to adequately establish that the amount in

24   controversy exceeds $75,000."  That's *Dawkins v. Carmack*, 2023

25   U.S. Dist. LEXIS 35313 (S.D.N.Y. Mar. 2, 2023).

1          I have three other cases that say exactly the same

2     thing -- that merely repeating that it will exceed 75,000 is

3     not sufficient under the statute.  Otherwise, everyone would be

4     in this courthouse.  You won't have 300 cases, you'll have

5     3,000, because people will realize all they need to do is

6     regurgitate the statute.

7          THE COURT:  Of course, but I think one of those cases

8     that you were suggesting said if it was reasonably apparent

9     from the face of the complaint that the damages were in

10    excess --

11         MR. KLEINMAN:  They're both --

12         THE COURT:  They're going to suggest that want more

13    than $75,000 in damages for their counterclaims.

14         MR. KLEINMAN:  I have no doubt they want more than

15    75,000.

16         THE COURT:  I understand what you're saying.  Could

17    you turn, please, to their argument that their counterclaim is

18    a compulsory counterclaim, and therefore, I have supplemental

19    jurisdiction.

20         MR. KLEINMAN:  Well, first of all, their compulsory

21    counterclaim is based on Rule 13, and since there is no more

22    claim for my client, I don't know that Rule 13 applies anymore,

23    because his claim was completely dismissed.

24         THE COURT:  There are multiple cases at page 2 of

25    their letter of March 20, 2025, showing that I retain

```
 1    supplemental jurisdiction even if plaintiff's claims are
 2    dismissed.
 3            MR. KLEINMAN:  Also, Judge, there is -- if you read
 4    their complaint, their counterclaim complaint --
 5            THE COURT:  Yes.
 6            MR. KLEINMAN:  -- the only time they mention damages
 7    that they suffered is in their conclusory statement that it
 8    exceeded $75,000.  They don't say we lost business.  They don't
 9    say that we lost a contract with XYZ.  They merely say that it
10    will be proven later on.  And Judge, you know what rules are.
11    The issue of subject matter jurisdiction can be raised at any
12    time at all.  There's, I believe, case law that says even after
13    verdict you can raise it, because if the Court doesn't have
14    jurisdiction, the Court doesn't have jurisdiction to begin
15    with.
16            THE COURT:  Yes.
17            MR. KLEINMAN:  And if look at their complaint, there's
18    no place in this complaint where they say as a result of
19    Mr. Johnson's breaching the contract clauses, we lost a
20    contract with ABC or something else happens specific that
21    caused our damages in excess of $75,000.  And I, too, Judge,
22    have been in front of cases with a number of district court
23    judges, and with all due respect, Judge --
24            THE COURT:  Oh, please don't ever say that.
25            MR. KLEINMAN:  Sure.
```

1          THE COURT:  That usually is going to be followed by
2     something suggesting a lack of respect.
3          Just finish.  Go ahead, sir.
4          MR. KLEINMAN:  With all due respect, Judge, I had a
5     case recently in front of Judge Matsumoto, and the question
6     arose about my client satisfying the jurisdictional amount.
7     And she said, well, I'm not going to rule on that, but
8     Mr. Kleinman, you'd better provide me with some proof or some
9     offer of proof that the amount actually exceeded your client's,
10    that the damages exceeded that, and my client had to provide
11    some documentary proof to Judge Matsumoto that, in fact, the
12    amount could exceed 75,000.
13         We have nothing whatsoever that's been offered here.
14    And remember, all that's here is the, all that's here is the
15    breach of contract claim.  There's nothing else.  There's no
16    defamation, nothing else.
17         THE COURT:  There is a defamation claim.
18         MR. KLEINMAN:  That was withdrawn.
19         THE COURT:  That was withdrawn.
20         MR. KLEINMAN:  That was withdrawn.  The amended
21    complaint only has and the two clauses that are cited are the
22    disclosure of the wind-down agreement and the clause about
23    impugning the company, and so forth.  Well, there's no evidence
24    that says that, in the complaint that says as a result of
25    Mr. Johnson's actions, which they delineated with 20 or 30

F43WJohC

```
 1    paragraphs, the -- you know, the Butte, Montana, police

 2    department didn't sign a contract with us or we were refused

 3    entry to some trade fair.  Nothing at all.  It's completely --

 4    it's completely guesswork.  It's not even guesswork.  They're

 5    just throwing that in in order to invoke the jurisdiction of

 6    this court.

 7              And Judge, I don't even know if they would have enough

 8    jurisdictional amount to prove, to be in Civil Court at 111

 9    Centre Street, because all it is is that we did this and we

10    lost business and that business exceeds $75,000.  Well, in the

11    meantime, this is costing everybody a lot of time and money --

12    your time, the Court's time, my client's time and money, their

13    client's time and money.  And there actually may be no damages

14    at all, and all I'm saying is I wish to be able to make that

15    motion in front of the Court.  And if they can't provide any

16    proof that they have or any plausible explanation as to how my

17    client's actions exceeded $75,000 in damages -- that doesn't

18    include attorney's fees, as you know -- then the case should be

19    dismissed.  And there's other courthouses they can go to.  They

20    can go to 60 Centre Street or 111, you know, or go to Small

21    Claims Court, but there's a lot of other places besides this

22    building and your Honor.

23              THE COURT:  All right.  Thank you.

24              MR. KLEINMAN:  Thank you, Judge.

25              THE COURT:  And the back table, Ms. Benner.
```

F43WJohC

```
 1            MS. BENNER:  Your Honor, I just would like to focus

 2    back on that first argument that we made in our letter, that

 3    the fact that this counterclaim is a compulsory counterclaim

 4    and that the Court can retain supplemental jurisdiction to hear

 5    this counterclaim even though plaintiff's claims are dismissed.

 6    As we've cited numerous case law from this circuit in our

 7    letter, this is something that clearly can happen here, so I

 8    think the fact that plaintiff has kind of disregarded this

 9    argument should be considered by the Court, because that would

10    be dispositive of this motion in and of itself.

11            Moving on to plaintiff's second argument, that we've

12    not properly pled diversity jurisdiction under the law, first,

13    Mr. Kleinman focused specifically on the counterclaims action,

14    but he neglected to say that the Court can look at other

15    documents as well.  In our initial disclosures, which we

16    included as an exhibit to our premotion letter, defendants

17    specifically stated that based on Mr. Johnson's breaches, they

18    suffered damage, harm to client relationships, investors.  So

19    when you take that in combination with the allegations in the

20    complaint, where defendants make numerous examples and include

21    exhibits of statements that Mr. Johnson made that did violate

22    the wind-down agreement, clearly the amount in controversy has

23    been pled.

24            I also want to frame for the Court, too, the

25    position --
```

F43WJohC

```
 1              THE COURT:  I want to pause for a second.
 2              Mr. Kleinman is contemplating a 12(b)(1) motion.
 3   You're suggesting that this would not be a facial 12(b)(1)
 4   motion but fact-based 12(b)(1) motion, where I can consider not
 5   merely the complaint but rather other things.
 6              MS. BENNER:  Yes, your Honor.
 7              THE COURT:  I see.
 8              MS. BENNER:  Under Second Circuit law, we found that
 9   the Court can consider other things as well on this motion.
10              THE COURT:  All right.  Thank you.
11              Please continue.
12              MS. BENNER:  Sure.  So I think it's important to frame
13   with the Court, too, the positions of the parties here.  We're
14   not talking about a small mom-and-pop shop here, where
15   plaintiff may have made a few comments to, maybe, some small
16   local news outlets or to people on the street.  Clearview is a
17   massive company that's known worldwide.  They contract with --
18   actually, almost all of their clients are governmental
19   agencies, police forces.  And you have plaintiff, who was, you
20   know, going around telling people that he was a cofounder,
21   making these disparaging false statements about the company
22   that clearly have the potential to cause significant damage to
23   the company.  You know, someone who maybe doesn't know the
24   company's history or Mr. Johnson's involvement could take his
25   comments at face value, saying, oh, you know, this gentleman
```

Case 4:24-cv-00988-P    Document 50-1    Filed 05/07/25    Page 57 of 83    PageID 811

F43WjoHC

```
 1   who is a cofounder is saying that this is a criminal

 2   corporation, the CEO is lying, you know, the company's not well

 3   run, a whole slew of things.  So I think that is important to

 4   take into consideration in this counterclaim.

 5          Mr. Kleinman also talks about how defendants did not

 6   name any, you know, specific harm in this case, that any

 7   investors lost or business opportunities, but I think it's

 8   important to note that, as I said before, my client's contracts

 9   are with government agencies.  Their business is highly

10   confidential.  This isn't information that we would put in a

11   public pleading or discuss at a public hearing.  This

12   information would be exchanged under a confidentiality order in

13   the course of discovery.  And as your Honor know, we're in the

14   thick of discovery.  We haven't engaged in any depositions, no

15   experts.  So you know, at this time --

16          THE COURT:  There is no confidentiality order between

17   the parties as of this moment.

18          MS. BENNER:  We did enter into one.

19          THE COURT:  There was?  With the Alston & Bird firm or

20   with Mr. Kleinman?

21          MS. BENNER:  No.  With Mr. Kleinman.  I believe that

22   was filed with the Court, your Honor.

23          THE COURT:  All right.  I heard you say it would be

24   exchanged with a confidentiality stip, basically, but I thought

25   there was one.  OK.  Thank you.
```

F43WJoHC

```
 1                Go ahead.

 2                MS. BENNER:  There is one in this case.

 3                So that's also a reason why that information was not

 4     included in the pleading.  But as your Honor said at the

 5     beginning, you know, the defendant's burden for a pleading

 6     under diversity and the amount in controversy is hardly an

 7     onerous burden.  All they have to show --

 8                THE COURT:  Slow down, please.  Thank you.

 9                MS. BENNER:  -- is a reasonable probability that the

10     claims made 75,000, and we clearly have done so here.

11                THE COURT:  All right.  Thank you.

12                Mr. Kleinman.

13                MR. KLEINMAN:  Yes.  Couple of things, Judge.

14                THE COURT:  Yes.

15                MR. KLEINMAN:  In the initial Rule 26(a) disclosures,

16     the 26(a)(1)(A)(iii), computation of damages, all I got from

17     defendants' firm was defendants are seeking damages due to

18     plaintiff's breach of the wind-down agreement as set forth in

19     defendants' counterclaim.  Damages are based on harm to

20     reputation as well as harm to business and client

21     relationships.  Defendants have sustained damages exceeding

22     $75,000.  However, the exact amount of damages are unknown at

23     this time."

24                So in other words, the exact amount could be less than

25     75,000, because they're unknown.
```

F43WJoHC

```
 1            THE COURT:  Except they said we don't know what it is,
 2     we just know it's more than 75,000.
 3            MR. KLEINMAN:  Right.  We don't know what it is, but
 4     we think it's above 75,000.  OK?
 5            THE COURT:  All right.
 6            MR. KLEINMAN:  Also, as far as the argument that
 7     Clearview has secret agreements with other parties and they may
 8     have lost business, they could have filed anything under seal
 9     with the Court that would show that they've lost business as a
10     result of this.  Nothing was presented.
11            THE COURT:  Sir, when you file your motion, they may
12     choose to do just that.
13            MR. KLEINMAN:  They may.  I agree.
14            THE COURT:  I want you to understand the skepticism
15     with which I'm viewing your motion.  I can't stop you from
16     making it, sir, but I think they have a very strong argument
17     with respect to the compulsory counterclaim argument.  But OK.
18            MR. KLEINMAN:  We'll see.
19            THE COURT:  Go ahead.
20            MR. KLEINMAN:  I'm sorry, Judge.
21            THE COURT:  That's fine.
22            MR. KLEINMAN:  I just want to finish my argument.  OK?
23            There's case law that repeatedly says that allegations
24     of damages, including conclusory statements that, quote, they
25     have suffered damages in the form of litigation and trial
```

F43Wjohc

1    expenses and loss of income and damages to be set forth in the

2    future are insufficient.  *Maitland v. LAN*, 2017 U.S. Dist.

3    LEXIS 40467, Eastern District of New York.

4         Also, as far as the issue about supplemental

5    jurisdiction, in *Cohen v. Postal Holdings*, 873 F.3d 394, 399,

6    Second Circuit discussion discussing Section 1367, said that

7    supplemental jurisdiction is only available if the Court

8    originally had jurisdiction.  If you had no jurisdiction at the

9    very beginning of this case, then their counterclaim can't

10   bootstrap itself if their damages aren't less than $75,000.

11        THE COURT:  I don't think they dispute that.  Are you

12   suggesting that your complaint, or is this going back --

13        MR. KLEINMAN:  Well, he has no complaint anymore.

14        THE COURT:  Please.  That argument doesn't work.

15        MR. KLEINMAN:  OK.

16        THE COURT:  The argument is if I did have it, if I had

17   jurisdiction when your client filed his complaint, then the

18   fact that the complaint was withdrawn doesn't deprive me of

19   jurisdiction.

20        I thought you were going elsewhere.  What I thought

21   you were going to say was given all the uncertainty about this

22   Illinois decision, maybe your client didn't actually have a

23   jurisdictionally filed the complaint.  I just don't think

24   that's going to work.  But I understand that that might make

25   its way into your argument; that's where I thought you were

1    going.

2            MR. KLEINMAN:  Yeah.  I haven't read the decision in

3    Illinois.  OK?

4            THE COURT:  Yes.

5            MR. KLEINMAN:  So I mean that is another issue.  It

6    would be, I think, something that would be -- it might be a

7    12(b)(1) because -- also, it's on the merits; it would be a

8    12(b)(6), I guess, that he didn't have authority to sign the

9    contract to begin with, so if he had no authority to sign the

10   contract -- but that's a matter -- I haven't looked into the

11   issue, so I don't want to be bound.

12           THE COURT:  You haven't read the decision yet.  I

13   understand.

14           MR. KLEINMAN:  I haven't read the decision, and I want

15   to research the law.

16           THE COURT:  I hear you, sir.  I cannot stop you from

17   filing this motion.

18           MR. KLEINMAN:  I appreciate that fact, Judge.  OK?

19   Because I don't make any assumption that judges can't do

20   anything.  OK?  You could make an order, and then I got to

21   follow it.  OK?  And honestly if you had done that, I would

22   have asked for permission of the 1292 to file an appeal with

23   the Second Circuit, because I really do feel, Judge, that their

24   complaint was drafted so that it does not satisfy 1332(a).

25   Merely saying our damages exceed $75,000 is -- does not satisfy

Case 4:24-cv-00988-P    Document 50-1    Filed 05/07/25    Page 62 of 83    PageID 816

F43Wjohc

1    the statute and that if a motion under 12(b)(1) is made -- and

2    I've had this before, maybe not before your Honor, but you've

3    said a lot of other judges, and I like to say, just show me a

4    little more.  I'm not asking for the Encyclopedia Britannica,

5    but just show me something that shows that there might've been

6    a loss.  Was there a contract canceled?  Did you get kicked --

7    this case in front of Judge Matsumoto, my client showed me the

8    contract's canceled and that the other issue -- it's happened

9    in state court also, because I had a case in the, across, in

10   front of, in Brooklyn, OK, Brooklyn Supreme, where there, as

11   you probably know, they really never look at jurisdictional

12   amount; you just have to plead it.  But I mean the issue was

13   raised, and I had to show to the judge that, wait a second, my

14   client has had contracts canceled, you know, as a result of the

15   actions of the plaintiff.  And the judge said OK.  So

16   sufficient basis to show that his damages exceeded $50,000.

17          So I'm not asking for a lot here, Judge, but if they

18   don't have anything that they can show, then it's purely

19   conclusory, and I don't think that this Court has jurisdiction.

20   And I think that we can all move on, the Court, myself and my

21   adversaries, to another court.  Or as my client has offered

22   multiple times to settle this case.

23          THE COURT:  All right.  Thank you very much.

24          MR. KLEINMAN:  Thank you, Judge.  Thank you for the

25   time, Judge.

1          THE COURT:  Absolutely.  I want to hear the full

2     expression of your arguments, and I certainly haven't prejudged

3     them, because I don't do that.  I do want to go back, though,

4     because I'm still bothered by the discovery issue.

5          Ms. Benner, you heard me speaking with Mr. Kleinman.

6     You heard him say where things are with respect to what I'll

7     call the supplemental responses category.

8          What do you want?  And I say that as a declarative

9     statement; there's no emotion in it whatsoever.  What is it

10    that you want?  Do you want him to be sanctioned monetarily?

11    Do you want a default judgment?  Do you want me to find that he

12    has admitted everything in these documents?  What is it that

13    you're seeking, please?

14          MS. BENNER:  Sure, your Honor.

15          I mean the bare minimum, we definitely would like our

16    fees for having to come to the Court now on multiple occasions

17    to deal with these issues.  As your Honor knows, we spent

18    significant time on these issues a few months ago.  We've had

19    to write your Honor multiple times.  We're here again on this

20    issue.  So at a minimum we would definitely like our fees paid.

21          We also would like the answer stricken.  We believe at

22    this point the plaintiff knows what his discovery obligations

23    were.  Your Honor was very clear.  The order was clear.  After

24    we had a little bit of a dispute about him complying with the

25    order, we wrote your Honor.  Your Honor again ordered him to

F43WJoHC

```
 1    comply, and he still hasn't complied.  And after we discussed
 2    it today and now he's open to using an ESI vendor, but this
 3    could have been resolved months ago without the need for your
 4    Honor.  But that's what we suggested, that he go to see an ESI
 5    vendor to get these documents searched, and he didn't.
 6    Unfortunately, then we had to come to court again to get any
 7    sort of resolution on this.  So for those reasons --
 8              THE COURT:  You want his answer stricken, his answer
 9    to your counterclaims?
10              MS. BENNER:  Correct.
11              THE COURT:  All right.  I hear the words.  I
12    understand that.  All right.  Anything else?  I don't mean to
13    cut you off.
14              MS. BENNER:  No, your Honor.
15              THE COURT:  Mr. Kleinman, tell me why that's crazy.
16              MR. KLEINMAN:  Well, I think striking the answer would
17    be really egregious because it would remove from my client any
18    attempt to defend this action.  OK?  And I think that, again,
19    if your Honor, and it was deemed decided I filed my motion and
20    you decide that you deny it, OK, and whatever other
21    jurisdictional, whatever other procedural issues I might follow
22    as a result of that, and this does go through discovery and
23    there is a trial.  And I just don't think, Judge, that they're
24    going to be able to show that they have the damages that they
25    wish to sustain.  So I think that striking his answer is really
```

App. 064
App. 500

Case 4:24-cv-00988-P    Document 50-1    Filed 05/07/25    Page 65 of 83    PageID 819
F43WJoHC

1    egregious and goes beyond what's necessary here.

2              THE COURT:  What is necessary, sir?

3              MR. KLEINMAN:  Well --

4              THE COURT:  There was a deadline.  You've clearly

5    blown past it.  You know that you have, and you haven't yet

6    given me a good excuse.

7              MR. KLEINMAN:  I haven't given you a good excuse,

8    Judge, no.  No.

9              I mean I could beg the Court's indulgence for an

10   additional ten days in which to respond, but that's entirely --

11   because that violates -- that's in violation -- well, that's

12   not in violation of the Court's order, but that currently

13   there's a violation of the Court's order, but that's --

14             THE COURT:  I want to know how all depositions are

15   going to be done on or before April 11.  That's not going to

16   happen.

17             MR. KLEINMAN:  No.

18             THE COURT:  No, because there's no discovery, because

19   it hasn't been produced.

20             MR. KLEINMAN:  Right.  And I don't know how that would

21   take place on or before April 11.  And I haven't -- I think I

22   may have received a notice, the EBT notice, but there was no

23   date on it.  So I mean it's obviously not going to take place.

24             THE COURT:  Right, but that also seems bad.

25             My point, sir, is I do not know how to get you and

F43WjohC

```
 1    your client to comply with my orders.  I don't.  That's where

 2    we are.

 3              MR. KLEINMAN:  OK.

 4              THE COURT:  All right.  We've been here a while.  I

 5    need about five or ten minutes, because we have a couple of

 6    issues and I want to actually give you some decisions on these

 7    issues.  So I'm going to ask for your patience for about five

 8    or ten minutes.  My apologies to madam court reporter that

 9    we're still here.  Sorry.

10              Let me ask friends at the front table to order this

11    transcript.  I'll be back as soon as I can.  If you need to

12    stretch your legs in the five minutes, you can.

13              Thank you.

14              (Recess)

15              THE COURT:  There are three issues for me to discuss

16    this afternoon, and I will discuss them in the order that we've

17    been talking about them, beginning with the issue of sanctions.

18              I've talked to the parties about the *Agiwal* case.

19    I've talked to counsel about the bases that I have, inherent

20    powers I have and other bases for sanctions here that I'm being

21    asked to impose based on inherent powers.  And as I'm about to

22    describe, I will be imposing sanctions for the recent postings

23    of Mr. Johnson.

24              Let me say this.  What I haven't really considered is

25    the exchange with the reporter, because I don't know precisely
```

F43WJOHC

```
 1   what was published.  I believe it's behind a pay wall.  And
 2   while there are some unfortunate comments, I don't have enough
 3   to think that it is worthwhile.  But let me back up a moment
 4   and talk about the issues that I've been wrestling with or at
 5   least considering in the context of sanctions.
 6            Mr. Kleinman has very wisely and consistently
 7   discussed First Amendment issues, and I have thought about that
 8   at some length.  And that is why I have been as careful as I
 9   have in the past.  But the First Amendment does not foreclose
10   defamatory statements or court sanctions for them.  It does not
11   protect against false statements to me, hate speech.  And I do
12   believe it gives way when the statements are being used, as
13   they are here, to subvert and undermine the remaining
14   litigation before me.  And to suggest, with no evidence and no
15   basis in reality, that somehow the litigation that Mr. Johnson
16   commenced is itself part of a broader scheme to silence
17   Mr. Johnson, in which this Court has been co-opted by the other
18   side to silence him, I think that's just ridiculous.  I'm not
19   going to stand by and let Mr. Johnson poison the well of this
20   case, the jury pool and other things, by misstating what's
21   happening here.
22            This case is in bad enough shape because of his
23   conduct.  The record is also clear that I've repeatedly tried
24   to prevent Mr. Johnson from digging himself into deeper holes.
25   I tried to talk to Alston & Bird.  They tried to tamp his baser
```

F43WjoHC

1   instincts and to check his more racist and anti-Semitic

2   impulses.  I've given him second, third, fourth chances.  I've

3   tried to be as direct as I could.  I've required in-person

4   appearance precisely so that I can tell him what is of concern

5   to me.  Mr. Johnson does not care, and I've made clear today my

6   continuing frustration with plaintiff's complete refusal to

7   comply with my orders in this case.

8          Talking first about the first article, which I believe

9   was posted on February 20, it makes clear Mr. Johnson's

10  willfulness because he begins by explaining his lack of

11  intention from the start to abide by my orders.  He made that

12  first clear in the first paragraph by discussing it and

13  directing it to me.  He claims that it is because the public

14  has a right to know what is going on.  But there's a decided

15  absence of any evidence of malfeasance, as he calls it.  And

16  therefore, there's not much whistle-blowing going on here.

17  There is just innuendo and invective.  There's a decrying of

18  Mr. Lambert.  There's a decrying of Clearview's public

19  relations representative.  There's a suggestion that I'm

20  somehow part of a scam.

21          Then there are quotes from a biometric update article

22  that repeats what I believe to be a wholly refuted statement,

23  that somehow you have handling agents who were operating at the

24  behest of DHS.  Basically that whole article just sort of

25  throws out names, throws out some rumors and attempts to

F43WjoHC

```
 1      connect dots that cannot logically be connected.  But even then
 2      I warned plaintiff.  I told him to adhere to my order.  But did
 3      he?  No, of course not.
 4              There's the March 5 article, and that's just a
 5      complete return to old habits.  Somehow a conversation about
 6      Turkey became a declination of Mr. Giller, and to announce "I
 7      won't be gagged when I'm whistle-blowing" is a wonderful
 8      statement except for the absolute absence of evidence of
 9      whistle-blowing.  More than that, even if there were problems
10      with Clearview, and of course, I've seen no evidence of same,
11      there's absolutely no basis to go after Mr. Giller in the
12      article.
13              As you can tell from my discussions with Mr. Kleinman,
14      I especially loved the "take the L" comment, because that was
15      just A list projection.  Mr. Johnson is either lying to me or
16      has been misled to an embarrassing degree about the information
17      he is receiving about Clearview.  There's more mudslinging.
18      There's no point.  There certainly is not proof of the foreign
19      influence that you ascribe to Mr. Giller.
20              So my problem has been that there has been just
21      consistent violation of my orders over a period of months
22      despite written warnings, despite oral warnings.  And
23      therefore, unfortunately, my efforts to do something less than
24      sanctions have not worked, and sanctions are warranted.
25              With respect to the first article, which again, I
```

F43WJohC

1    believe, is dated February 20, I am imposing a monetary

2    sanction of $2,000 to be paid to defendants within 30 days.  I

3    would consider halving that amount if the posting were removed

4    from SubStack, but I'm not pushing for its removal.  I'm happy

5    to sanction him on that basis.

6           With respect to the March 5 posting, which came after

7    another warning from the Court, I am imposing a sanction of

8    $5,000 to be paid to defendants within 30 days.  And I want to

9    make clear if there are additional postings that violate my

10   prior orders, the next set of penalties will be substantially

11   higher and almost certainly will involve a default judgment

12   against Mr. Johnson on the counterclaims or the striking of the

13   answer or some equivalent.  The case will end.

14          With respect to the issue of discovery, I am again

15   just devastated because we had so many discussions.  I wrote

16   that order myself, and I thought it was pretty clear.  But

17   apparently it could not be abided by.

18          Mr. Kleinman, I will take your generous offer of ten

19   additional days from today -- I'll give you two weeks from

20   today, so ten business days -- to respond to the supplemental

21   requests of the parties.

22          With respect to the ESI schedule, I will reset that

23   schedule as follows:

24          May 16 is the date for the production of all documents

25   and discovery and for the production of the logs.

F43WjohC

1           June 6 is the date by which depositions are to be

2    completed.

3           Again, let me say this on the discovery issues.

4           Under Rule 37, I am well within my rights to impose

5    sanctions here.  I will do it in this manner:

6           If there are further violations of the discovery

7    schedule that I have just set, I will impose a monetary

8    sanction on plaintiff, if he is responsible for the discovery

9    violations, that approximate what I believe the legal fees are

10   for all of these discovery issues.  And as well I will strike

11   the answer or I will enter a default judgment.  That is, I

12   don't want to say a certainty because I don't like to box

13   myself in, but it is a near certainty that further discovery

14   violations and further violations of my orders will result in

15   default against Mr. Johnson in this case, because I've run out

16   of things that I can do to get him to abide by my orders.

17          That leaves us now with the 12(b)(1) motion.

18          Mr. Kleinman, I will, of course, let you file it, and

19   I will consider it very carefully, because you and I both will

20   be looking at the Illinois decision.  My very thoughtful law

21   clerk, who has reviewed the decision while we've all been

22   talking -- because this conference has been that long -- is of

23   the view that it doesn't impact any of our matters, but we'll

24   find out.  Maybe.  Perish the thought, she could be wrong.  I

25   doubt it, but she could be wrong.  I will let you submit that

F43WJoHC

```
 1    motion, sir.

 2             I just want to tell my friends at the back table, I

 3    don't know what the motion's going to look like.  And yes, I

 4    will want a response from you, but I will understand if your

 5    response is "see our premotion letter" or that it's just a cut

 6    and paste of your premotion letter into another brief with a

 7    few more sentences.  I'll let him file it.  I'll let you

 8    respond as you see fit.  I don't know.  I need to see what is

 9    submitted, but I'm just saying if you believe that a shorter

10    response is warranted, I will accept your shorter response.

11             Mr. Kleinman, sir, what time would you like to file

12    your motion papers, sir?

13             MR. KLEINMAN:  I think I could have my motion filed by

14    the 11th of April, Judge.

15             THE COURT:  OK.

16             MR. KLEINMAN:  I would like to get this issue resolved

17    as quickly as possible.

18             THE COURT:  Of course.

19             OK.  Thank you, sir.

20             MR. KLEINMAN:  And -- oh, sorry.

21             THE COURT:  I was just going to ask for the

22    opposition.  Was there something you wanted to say before I do

23    that?

24             MR. KLEINMAN:  No, no, no.  I mean I would assume

25    that -- I mean three weeks is the normal, but I don't know how
```

1    much time, if they're just going to cut and paste their

2    letter --

3              THE COURT:  Of course.  I don't know.  They, of

4    course, don't know what you're writing so they don't know what

5    they're responding to.  But let me ask Ms. Benner.

6              Ms. Benner, how much time do you need to respond?

7    Three weeks?  May 2?

8              MS. BENNER:  Three weeks, your Honor.

9              THE COURT:  May 2.

10             And then May 9 for reply, Mr. Kleinman.

11             MR. KLEINMAN:  One week?  Yeah, that's not a problem,

12   Judge.

13             THE COURT:  OK.  That's the motion to dismiss

14   schedule.

15             All right.  Mr. Kleinman, sir, from your perspective,

16   is there anything that I have failed to address in today's

17   conference?

18             MR. KLEINMAN:  I don't believe so.

19             Just is there a date that you're going to want

20   everybody to come back, or do you want to wait and see what

21   happens, or what?

22             THE COURT:  When I get the motion papers is when I

23   think I'd be setting the next conference, sir.  I have some

24   dates here already.  I've got dates for your motion to dismiss.

25   I've got dates for discovery.

F43WjoHC

```
 1             MR. KLEINMAN:  Right.
 2             THE COURT:  And we'll probably do another order just
 3    to get that out there in writing.
 4             In terms of seeing the parties again, I think I'd like
 5    to have the motion to dismiss fully briefed.  And I'm going to
 6    tell myself that there will be no problems in discovery so we
 7    won't have to have you in for a conference on discovery
 8    violations.
 9             MR. KLEINMAN:  Your mouth to God's ears.
10             THE COURT:  Mr. Kleinman, just before you sit down,
11    sir, is there anything that I have said this afternoon that is
12    in any way unclear?
13             MR. KLEINMAN:  No.  I believe that your schedule and
14    your decision is clear.  I understand it.  I might take
15    exception to the sanctions, but that's certainly within your
16    purview as an Article III judge to make that determination.  I
17    do take exception on behalf of my client to the sanctions.
18             THE COURT:  OK.  Understood.  Thank you.
19             Ms. Benner, have I omitted anything that you wanted me
20    to address this afternoon?
21             MS. BENNER:  No, your Honor.  Thank you.
22             THE COURT:  And is there anything about any of the
23    decisions that I've made this afternoon that is unclear to you
24    or to Mr. Giller?
25             MS. BENNER:  No, your Honor.
```

App.510
App. 074

Case 4:24-cv-00988-P   Document 50-1   Filed 05/07/25   Page 75 of 83   PageID 829

F43Wjohc

```
 1              THE COURT:  OK.

 2              MR. KLEINMAN:  I'm sorry to interrupt, Judge.  I have

 3    a brief question.

 4              THE COURT:  Please, sir.

 5              MR. KLEINMAN:  On just a practical level, how would my

 6    client pay the sanction?  I mean do you know how that is --

 7              THE COURT:  I think it would be a check going to the

 8    firm.  Mr. Giller will accept a check.

 9              Mr. Giller, how would your client like to receive this

10    money, or do you want to have that talk off-line with

11    Mr. Kleinman?

12              MR. GILLER:  Any way other than bags of cash, your

13    Honor, would be fine.

14              THE COURT:  Mr. Kleinman.

15              MR. KLEINMAN:  I didn't understand.

16              THE COURT:  Any way other than bags of cash.

17              MR. KLEINMAN:  I won't respond to that.

18              THE COURT:  No, of course you won't.

19              Mr. Kleinman, speak to Mr. Giller.  He'll give you

20    whatever instructions you will need.

21              MR. JOHNSON:  Your Honor --

22              THE COURT:  Mr. Johnson.

23              MR. JOHNSON:  If it's possible, I'd like to say

24    something very quickly.  Is that --

25              THE COURT:  Sir, yes.
```

F43WjohC

```
 1              MR. JOHNSON:  So, I just want to, you know, apologize
 2    to the public and to the Court for being involved with this in
 3    the first place.
 4              THE COURT:  All right.
 5              MR. JOHNSON:  I was stupid and wrong about a lot of
 6    things in this case and about this company, and I should never
 7    have filed, should never have gotten involved in this company.
 8    And if I were a normal person I wouldn't have found myself in
 9    this place in the first place, and I'd like that apology to be
10    on the record.
11              When I started this, I was pretty young, and I hope
12    age brings wisdom, but I know the Court's time is limited and I
13    know that every second I take on these stupid mistakes of my
14    own, that that's something that is addressed by other people.
15    And so I want to apologize.
16              THE COURT:  Thank you, sir.  It is on the record.
17              MR. JOHNSON:  Thank you.
18              THE COURT:  All right.  Go forth, everyone.
19              Thank you very much.
20              (Adjourned)
21
22
23
24
25
```

App. 076

App. 512

# Exhibit B

Appx. 077
App.513

**HOUSTONIAN MEDICAL ASSOCIATES**
THE CENTER FOR PREVENTION
123 North Post Oak Lane Ste 420
Houston, TX 77024
(713) 680-2611

April 28, 2025

Re: Charles Johnson
DOB: 10/22/1988

To Whom It May Concern:

My patient, Charles Johnson, has an exacerbation of a debilitating medical condition that makes it impossible for him to travel. I respectfully request that he be excused from reporting for his scheduled court date between May and and August of 2025.

My recommendation is for: no travel between May and August 2025.

Thank you for your timely consideration in this matter. If you have any further questions regarding the care of this patient, please do not hesitate to contact me at (713) 680-2611.

Sincerely,

John C Matocha MD

# Exhibit C

## Will Thompson

| | |
|---|---|
| **From:** | Charles Johnson <charles@traitwell.com> |
| **Sent:** | Tuesday, April 29, 2025 2:35 AM |
| **To:** | Thompson, Will |
| **Cc:** | Pittman_Orders@txnd.uscourts.gov; Faulkner, Sherry; Bernie Kleinman |
| **Subject:** | Re: Proposed Order FW: Activity in Case 4:24-cv-00988-P Point Bridge Capital, LLC v Johnson Motion to Compel |
| **Attachments:** | IMG_4144.jpeg |

⚠️ **EXTERNAL MESSAGE**

Judge Pittman,

There are several problems with that order — several of the accounts mentioned either aren't germane or are inaccessible.

These matters were already handled elsewhere as my counsel can confirm.

Plaintiff is suing me in New York through Clearview and a lot of the material offered here would be duplicative. We are signing an agreement with a service provider to provide ediscovery.

I'll also be submitting a doctor's note that I cannot travel. I am happy to be available through Zoom or other electronic means. I have attached that doctor's note.

I will also need additional time to secure local counsel. I request additional time.

Opposing counsel is also conflicted here from representing Plaintiff. My family trusts already employ DLA Piper where opposing counsel works.

In the New York case my counsel filed a motion to dismiss which is before the judge there.

I believe there is also a motion to dismiss which is before your Honor as well.

Finally, Plaintiff also was recently affected by the ruling of yet another federal judge in Illinois which made him as a board officer responsible.

Your Honor has requested that we do meditation but given that Plaintiff is subject to considerable damages it's unclear he has the resources.

Please advise,
Charles Johnson
617 429 4718

Sent from Proton Mail for iOS

On Mon, Apr 28, 2025 at 18:28, Thompson, Will <will.thompson1@us.dlapiper.com> wrote:

Judge Pittman, Attached is the word version of the proposed order submitted in conjunction with Plaintiffs' First Motion to compel. The defendant, Charles Johnson, is copied on this email.


Best,


Will


Will Thompson
Partner
_____


**From:** ecf_txnd@txnd.uscourts.gov <ecf_txnd@txnd.uscourts.gov>
**Sent:** Monday, April 28, 2025 5:13 PM
**To:** Courtmail@txnd.uscourts.gov
**Subject:** Activity in Case 4:24-cv-00988-P Point Bridge Capital, LLC v Johnson Motion to Compel


⚠ EXTERNAL MESSAGE

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**


If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

App.517

**U.S. District Court**

**Northern District of Texas**

**Notice of Electronic Filing**

The following transaction was entered by Thompson, William on 4/28/2025 at 5:12 PM CDT and filed on 4/28/2025

| | |
|---|---|
| **Case Name:** | Point Bridge Capital, LLC v Johnson |
| **Case Number:** | 4:24-cv-00988-P |
| **Filer:** | Hal Lambert |
| | Point Bridge Capital, LLC |
| **Document Number:** | 43 |

**Docket Text:**
**First MOTION to Compel *Production of Documents* filed by Hal Lambert, Point Bridge Capital, LLC with Brief/Memorandum in Support. (Attachments: # (1) Proposed Order) (Thompson, William)**

**4:24-cv-00988-P Notice has been electronically mailed to:**

Bernard Kleinman (Terminated)    attrnylwyr@yahoo.com

David Lattimore Evans    evansdavidl@msn.com

Lawrence J Friedman    lfriedman@fflawoffice.com, lfpara@fflawoffice.com, lfsec@fflawoffice.com

William Bennett Thompson    will.thompson1@us.dlapiper.com, sherry.faulkner@us.dlapiper.co, sherry.faulkner@us.dlapiper.com

William Carter Boisvert    cboisvert@fflawoffice.com, nalmaleh@fflawoffice.com

**4:24-cv-00988-P The CM/ECF system has NOT delivered notice electronically to the names listed below. The clerk's office will serve notice of court Orders and Judgments by mail as required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se litigant has filed with the court. The clerk's office will not serve paper documents on behalf of an attorney/pro se litigant.**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1004035775 [Date=4/28/2025] [FileNumber=16270416-0] [ad3046ad2b2562975ef73931b09db03aaf65d8e580fd5db09aeca7843947875332 93bec5bf6678507d72669308130f812a064ae5398456bde45bf7e22f2fda6b]]

**Document description:**Proposed Order

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1004035775 [Date=4/28/2025] [FileNumber=16270416-1] [9b36a4590a08a3d1bb44f27aacc73515ab7689e98d02ccaf2693a6d53c005afc84 d5f4a5f485056df890251d8fc1a2cb26156e303c45d2cef6770fb920342d3d]]

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

App. 083
App. 519

# EXHIBIT 11

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**POINT BRIDGE CAPITAL, LLC,
ET AL.,**

      **Plaintiffs,**

**v.**                                           **No. 4:24-cv-00988-P**

**CHARLES JOHNSON,**

      **Defendant.**

## ORDER

Before the Court are Defendant's Counsel's Unopposed Motion to Withdraw (ECF No. 41); and Plaintiffs' Motion to Compel (ECF No. 43). For the reasons stated on the record at the May, 8, 2025 hearing, the Motion to Withdraw is **GRANTED**;[1] and the Motion to Compel is **GRANTED in part**.[2] Specifically, it is **ORDERED** that:

1) Within 7 days of the date of this order, Plaintiffs will submit (a) the search terms to be run against Defendant Johnson's accounts and devices and (b) a protocol to ensure that privileged communications are excluded. Johnson may object to the search terms and protocol, but he must carry the burden of demonstrating why the search terms or protocol is not appropriate. Johnson shall pay the costs of the collection and production.

---

[1]As discussed at the hearing, Defendant shall be required to attend the May 28, 2025 mediation in person and pay the mediation fee. Additionally, Defendant's former counsel is **ORDERED** to produce the file and any other relevant documents, including the scheduling order in this case, to Defendant within 14 days.

[2]At the hearing, the preservation of documents was discussed. The Court reminds the Parties of their obligation under the rules to not only ensure that documents are not intentionally destroyed but also to ensure that potentially response documents are preserved.

App.521

2) No later than 21 days after the date of this order, Johnson shall Search the following email addresses and messaging platforms for responsive documents based on search terms that the Plaintiffs provide.

- charlesjohnsonwork@protonmail.com

- chuckwalla1022@gmail.com

- charlescarlislejohnson@gmail.com

- charles@traitwell.com

- Signal

- Telegram

- Instagram

- Substack

3) Johnson must re-activate his X account to search for responsive posts and messages;

4) Johnson must produce all responsive documents in a usable format, including complete email productions with metadata intact;

5) Johnson must supplement his written responses in compliance with Rule 34(b)(2)(C), including identifying what documents have been withheld and what sources have been searched; and

**SO ORDERED** on this **8th day of May 2025.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

App.522

# EXHIBIT 12

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF TEXAS

3                 FORT WORTH DIVISION

4   POINT BRIDGE CAPITAL, LLC    )    CASE NO. 4:24-CV-00988-P
    ET AL                        )
5                                )
                                 )    FORT WORTH, TEXAS
6   vs.                          )
                                 )    MAY 8, 2025
7   CHARLES JOHNSON              )    1:30 P.M.

8                         VOLUME 1
                  TRANSCRIPT OF MOTION HEARINGS
9            BEFORE THE HONORABLE MARK T. PITTMAN
             UNITED STATES DISTRICT COURT JUDGE
10

11  **A P P E A R A N C E S:**

12  FOR THE PLAINTIFF:      WILLIAM BENNETT THOMPSON
                            DLA Piper, LLP US
13                          1900 N. Pearl Street
                            Suite 2200
14                          Dallas, Texas  75201
                            Telephone:  214.743.4500
15

16  FOR THE DEFENDANT:      WILLIAM CARTER BOISVERT
                            Friedman & Feiger, LLP
17                          17304 Preston Road
                            Suite 300
18                          Dallas, Texas  75252
                            Telephone:  512.538.5788
19

20  COURT REPORTER:         MONICA WILLENBURG GUZMAN, CSR, RPR
                            501 W. 10th Street, Room 310
21                          Fort Worth, Texas  76102
                            Telephone:  817.850.6681
22                          E-Mail:  mguzman.csr@yahoo.com

23

24  Proceedings reported by mechanical stenography, transcript
    produced by computer.
25

## <u>INDEX</u>

                                          PAGE   VOL.

Appearances. ...............................3      1


Motion to Withdraw

      By Mr. Boisvert .......................4      1

Court's Ruling ............................6      1

Attorney Excused ..........................6      1


Comments by the Court ......................6      1


Motion to Compel

Court's Tentative Ruling ..................13      1

      By Mr. Thompson .......................15      1

      By Mr. Johnson .......................16      1

Court's Ruling............................26      1


Discussion Regarding Reactivation of Accounts

      By Mr. Thompson .......................27      1

      By Mr. Johnson .......................29      1

      By Mr. Thompson .......................31      1


Proceedings Adjourned .....................33      1


Reporter's Certificate ....................34      1

<div align="center">

**P R O C E E D I N G S**

*(May 8, 2025, 1:30 p.m.)*

</div>

1
2
3      *THE COURT:*  We're here in the matter of Point Bridge

4  Capital, LLC, et al vs. Charles Johnson, this is Cause Number

5  4:24-CV-988-P.

6           I'll begin with plaintiff, would you tell me who you

7  are and who you represent?

8      *MR. THOMPSON:*  Good afternoon, Your Honor.  Will

9  Thompson on behalf of the plaintiffs, Point Bridge Capital and

10  Hal Lambert.  And Mr. Lambert is sitting with me at the

11  counsel table.

12      *THE COURT:*  All right.

13      *MR. BOISVERT:*  Good afternoon, Your Honor.  Carter

14  Boisvert on behalf of defendant, Charles Johnson.  Mr. Johnson

15  is here as well, as ordered by the Court.

16      *THE COURT:*  Thank you, sir.  Mr. Johnson, thank you

17  for being here today.

18           The first motion I'd like to take up is the motion

19  that was filed on behalf of the -- tell me how you pronounce

20  your last name.  Boisvert?

21      *MR. BOISVERT:*  Boisvert, Your Honor.

22      *THE COURT:*  Boisvert, on behalf of your firm to

23  withdraw in this case.  I see that it's been consented to by

24  Mr. Johnson.  But always, out of an abundance of caution, I do

25  like to have these done in person and on the record, just to

1    notify the plaintiff *(sic)* what his obligations are, should I

2    allow you to withdraw from the case.

3              So, Mr. Boisvert, if you'd like to present your

4    request at this time, I'm happy to hear it.

5              *MR. BOISVERT:*  Yes, Your Honor.

6              We filed a motion to withdraw in this case.  We

7    believe there's --

8                   *(Court Reporter interrupts)*

9              *MR. BOISVERT:*  Oh, I'm sorry.

10             *THE COURT:*  That's fine.  If you wouldn't mind, it's

11   easier for us.

12             *MR. BOISVERT:*  Yes, Your Honor.

13             We believe there's good cause for this Court to

14   grant the motion to withdraw under the Rules of Professional

15   Conduct 1.15(b)(5) through (b)(7), that permits a lawyer to

16   withdraw from representing a client if the client fails

17   substantially to fulfill an obligation to the lawyer regarding

18   the lawyer's services, including an obligation to pay the

19   lawyer's fee as agreed, and is given reasonable warning that

20   the lawyer would withdraw unless the obligation is fulfilled.

21             *THE COURT:*  Have to pay your lawyer, Mr. Johnson.

22             How do you feel about the request for your lawyer to

23   withdraw?

24             *MR. JOHNSON:*  No objection, Your Honor.

25             *THE COURT:*  Okay.

1          *MR. JOHNSON:* And if I may, I think they've done a

2     good job and it's not a -- it's not a personal matter.

3          *THE COURT:* Well, I would advise, if you owe them

4     anything that you pay those amounts, because they may very

5     well be coming after you for those amounts.

6          Do you understand?

7          *MR. JOHNSON:* I do, Your Honor.

8          *THE COURT:* I am happy to grant the motion to

9     withdraw.

10         The only thing that I do need to advise you, is that

11    you make efforts within the next 14 days to deliver your file,

12    if you haven't already, to Mr. Johnson.

13         Have any of those efforts been made, sir?

14         *MR. JOHNSON:* They have, Your Honor.

15         *THE COURT:* I'm directing that at your attorney.

16         *MR. JOHNSON:* Sorry.

17         *MR. BOISVERT:* Yes, Your Honor.  We'll make sure he

18    has the complete file as soon as possible, but within 14 days.

19         *THE COURT:* Particularly a copy of the scheduling

20    order in this case.  There's a mediation that's coming up.

21         *MR. BOISVERT:* Yes, Your Honor.  I have provided

22    that already.

23         *THE COURT:* You let him know -- I believe there may

24    be a mediation that's already been scheduled on the 28th?

25         *MR. BOISVERT:* That's correct.

**App.528**

1      *THE COURT:*  All right.  I will grant the motion to

2      withdraw, and I'll be including those caveats that we just

3      went over in that motion.

4              So, you're free to leave.

5      *MR. BOISVERT:*  Okay.  Thank you, Your Honor.

6      *THE COURT:*  Mr. Johnson, a couple of things before

7      we address the motion to compel.  I've been an attorney now

8      for about 26 years; I've been a judge for 12 at three

9      different courts.  And I've got to tell you, if I were in a

10     lawsuit I would want to be represented by an attorney.  I

11     don't care if it's a traffic ticket or if it's a case of the

12     highest magnitude.

13             Now, you don't have to be represented by an

14     attorney, but that's the advice I'm giving you.  I believe it

15     was Benjamin Franklin that said something to the effect that a

16     -- it might have been Abraham Lincoln, I don't know, I can't

17     remember now, it's been one of those days -- but something to

18     the effect that an attorney who represents himself -- or a

19     person who represents himself has a fool for a client.

20     *MR. JOHNSON:*  That may be true, Your Honor, in this

21     case as well.  If I may --

22     *THE COURT:*  No.  You need to be quiet until I ask

23     you to speak, okay?

24     *MR. JOHNSON:*  Yes, sir.

25     *THE COURT:*  You may find that I am not as patient as

1  Judge Failla in the Southern District of New York.  So, don't

2  try me, okay?

3          *MR. JOHNSON:*  I will not, Your Honor.

4          *THE COURT:*  Okay.  So, let me advise you of a few

5  things.  I have one of the busiest dockets in the country here

6  in Fort Worth, you may or may not know that.  We are the

7  largest district in the entire country populationwise with

8  only two active Federal judges.

9          So, I know that you're not from here, but if I was

10  going to point you to other districts in the State of Texas

11  that only had two active Federal judges, I would point you to

12  Beaumont Division and the Tyler Division of the Eastern

13  District of Texas, population of the Fort Worth Division is

14  more than ten times those divisions.

15          We frequently run numbers monthly, in both the civil

16  and criminal context, three times the number of filings as the

17  average active Dallas judge.  Now, I tell you this, not to

18  complain about my workload, but rather to let you know that we

19  are very busy.  I don't want you to think that that means that

20  we take a long time to do things; in fact, it's just the

21  opposite.

22          The last numbers that I saw from our Clerk's Office

23  said that the average time for a civil case to be tried in the

24  Fort Worth Division, and I'm saying this from the date of

25  filing -- I'm probably going to mess these numbers up -- from

1    the date of the filing of the complaint until the trial, is

2    less than two years, I believe.  In the Dallas Division, it's

3    about 33 months.  So, it's about 16 months versus 33 months to

4    get rid of cases over here.

5            On the criminal side, it's even more stark.  I

6    believe we're about five to six months on criminal cases, and

7    the Dallas Division, I think the last numbers I saw was -- it

8    was in the 30s as well.

9            So, we are very busy.  And as a result of that, we

10   tend to run things very quickly.  Because if we don't, the

11   cases get too much and I can't keep up with the workload.  So,

12   I don't have time for a lot of shenanigans.

13           MR. JOHNSON:  Understood, Your Honor.

14           THE COURT:  Okay.  Don't speak unless I ask you to,

15   okay?

16           So, when I see cases like this, I see what appears

17   to me that you've been served with discovery requests that you

18   haven't answered, I see efforts to, what appears to me, to

19   avoid coming to a hearing -- and I understand the eye

20   infirmary (sic) that you're suffering from -- but,

21   unfortunately, we don't have the ability to do Zoom hearings

22   here, nor is it the practice here in Fort Worth.  So, that's

23   not an option.

24           We frequently accommodate folks with all sorts of

25   disabilities.  I have had folks that have been here that have

1    been paraplegic, and we've been able to satisfy that.  During

2    the COVID-19 pandemic, this division conducted more

3    face-to-face trials than any other division in the entire

4    United States.  Indeed, the summer of COVID of 2020, we

5    sentenced over 200 criminal defendants live and in person.

6            So, we will do what we can to accommodate you.  But

7    you are a case in Federal court, and you are going to have to

8    comply with those rules.  And frankly, based on what I have

9    seen in response to your declaration, the photographs that are

10   in the record that are pointed out in the appendix that I've

11   just granted plaintiff leave, as well as what I have pointed

12   out in my order -- that would be the photograph that you

13   posted of yourself traveling to London back in November of

14   last year -- I just have a hard time believing you can't make

15   it down; indeed, you're here today.

16           Are you going to withdraw that request or do we need

17   to go into that any further?

18           *MR. JOHNSON:*  I can withdraw that request, Your

19   Honor.  But I am -- if I may?  I'm here against the advice of

20   my -- both my physician and my family.

21           *THE COURT:*  Well, why didn't you have your physician

22   show up today to tell me that?

23           *MR. JOHNSON:*  Well, in part, it was because it was a

24   relatively short window.  One of my physicians is doing

25   missionary work.  And the other, who was doing a kindness to

```
 1    me, couldn't make it in time.

 2              THE COURT:  Okay.  So --

 3        MR. JOHNSON:  If I may, Your Honor?

 4        THE COURT:  No, you may not.

 5        MR. JOHNSON:  Okay.

 6        THE COURT:  So, are you withdrawing your request?

 7        MR. JOHNSON:  I will if that's what Your Honor

 8    requests.

 9        THE COURT:  No, that's not what I'm asking.  I'm

10    saying, are you withdrawing your request, yes or no?

11        MR. JOHNSON:  Yes, sir.

12        THE COURT:  Okay.  Then you will be expected to

13    appear in person.  And, of course, if there needs to be

14    something else, you think there's an emergency matter, as I

15    would do with any other defendant, in this case that I need to

16    take up, I'll be happy to take that up.  But you can't use

17    your condition as an excuse not to appear in person.

18              I've been doing this for a long time, I've seen

19    what's in the record.  It appears that you're perfectly able

20    to travel.  But if you have a physician that would have been

21    able to show up today and tell me otherwise, I would have

22    certainly been happy to hear from him.  But as far as I'm

23    concerned, you do have the ability to travel.

24              So, you're going to be proceeding pro se; is that

25    right?  Do you have any intention of hiring another attorney?
```

1          *MR. JOHNSON:*  I would request additional time to

2     find an attorney.  But, if necessary, we can proceed pro se.

3          *THE COURT:*  Well, I would encourage you to try to

4     find an attorney.  But whether you have an attorney or not,

5     you're still subject to the same rules that anyone else is.

6          *MR. JOHNSON:*  Of course.

7          *THE COURT:*  And we don't have an ability to appoint

8     you an attorney in the meantime in a civil case.  You don't

9     have a right, under the Constitution, to an attorney in a

10    civil matter.

11         And I just want to say, I've read the transcript and

12    the orders that have been issued by the New York judge.  I

13    hope we don't have that kind of thing going on here.

14         *MR. JOHNSON:*  We will not, Your Honor.

15         *THE COURT:*  So, you have a mediation scheduled with

16    Judge Evans on the 28th.

17         *MR. JOHNSON:*  Yes, sir.

18         *THE COURT:*  I'm assuming you're going to go to that.

19         *MR. JOHNSON:*  That's the intention, sir.

20         *THE COURT:*  You're planning on going to that and

21    showing up in person?

22         *MR. JOHNSON:*  I am.

23         *THE COURT:*  You better pay his mediation fee or

24    you'll be subject to getting in trouble from me.

25         Do you understand that?

App.534

1        *MR. JOHNSON:*  I do.

2        *THE COURT:*  Have you paid him yet?

3        *MR. JOHNSON:*  I have not.

4        *THE COURT:*  Okay.  Well, I know, based on your

5   representations here in court, that you'll be doing that.

6        Same thing goes for my plaintiffs in this case.  Are

7   you-all prepared to go to mediation with Judge Evans?

8        *MR. THOMPSON:*  Yes, Your Honor.

9        *THE COURT:*  Have you paid your fee?

10       *MR. THOMPSON:*  Yes.  We have paid the fee, Your

11   Honor.

12       *THE COURT:*  Okay.  So, the law requires me to

13   liberally interpret pleadings that are filed by pro se.  But

14   as I said, you still have an obligation to comply with the

15   rules.

16       And I've seen what is possibly emerging as a pattern

17   with you, Mr. Johnson.  I initially had to issue some show

18   cause orders early on in this case regarding what I saw to be

19   violations of the local rules, specifically violations as to

20   whether you can use an out-of-district counsel here in Fort

21   Worth.

22       Our rules are very explicit.  83.10 of our rules

23   does require that you have to have local counsel.  So, if you

24   are looking for an attorney, you need to find someone that's

25   in the Northern District of Texas.  Now, that can be a

1    Dallas-based attorney, it can be a Fort Worth-based attorney,

2    but you are going to have to find one that's here local.

3           It's perfectly fine if you'd like to be represented

4    by someone back in New York, where I believe you're from, but

5    they'll need to engage a local counsel here as well.

6           Part of the reason why we do that is for the reasons

7    I've previously talked about.  We tend to run things very

8    differently than they do in Dallas, just because we're a lot

9    busier.  The judges here also tend to be much more stringent

10   when it comes to enforcing our rules.

11          If you get bored on the way home, you might want to

12   google a judge by the name of John H. McBryde, he was my

13   predecessor.  I don't want you to think that I would do

14   anything different from what he would have done.

15          So, I've had a chance to review the motion to

16   compel, and I'm prepared to grant it.  Perhaps not all of the

17   relief that's being sought, Mr. Johnson, but you do have an

18   obligation to produce these amounts.  Boilerplate objections

19   are not going to fly here, they're just going to get you in

20   trouble and get you sanctioned.

21          But I am willing to give you some time to respond to

22   these.  I'm not willing at this point to get a third party to

23   basically find this information for you.  I believe it's my

24   obligation to give you one chance to try to find it.  But I am

25   going to be keeping you on a pretty short leash.  That's my

1   tentative findings.

2          I wonder, at the end of the day, based on what I've

3   seen, whether Point Bridge Capital has any means or method to

4   ever collect any type of funds from you, should they win in

5   this case.  But that's not the point and I'm not the lawyer

6   advising Mr. Lambert.

7          But Abraham Lincoln used to give a speech to new

8   lawyers back in the 1850s, and he used to say, quite

9   frequently, that the winner oftentimes in litigation is the

10  real loser when it comes to time, fees.  I think you're

11  sophisticated enough to know what I'm talking about.  Time,

12  fees, trouble.

13         And I see a pattern here that -- of someone that

14  appears that they might not want to participate, that I may

15  have to police time and time again with contempt findings and

16  the like.  I've been doing this for a long time, I don't have

17  the time or the patience, Mr. Johnson.  I also don't have the

18  time or the patience for people going on their Twitter and

19  Substack, and et cetera like that, and saying stuff about the

20  Court or the lawsuit; that will get you in trouble, too.

21         *MR. JOHNSON:*  Understood.

22         *THE COURT:*  So, we need to be truthful in our

23  dealings with each other and the Court.  When it comes to

24  participating in a lawsuit you have an obligation, whether

25  you're an attorney or not, to cooperate.  And if you don't

1  cooperate, you get in front of me where you get held in

2  contempt and you have to go down to the Johnson County Jail

3  until you can purge yourself of the contempt.

4         Do you understand?

5         *MR. JOHNSON:* Yes, sir.  I do.

6         *THE COURT:*  And like I said, you might want to just

7  read about Judge McBryde at the airport.

8         But that's my tentative rulings as far as the motion

9  to compel.  I would be hopeful, if you want to take care of

10  this as soon as possible and there are any merit to these

11  allegations, you take that into consideration as you go to the

12  mediation.

13         The Honorable David Evans is conducting the

14  mediation, but he continues to be a state administrative

15  judge.  He's the chief presiding judge of the Eighth

16  Administrative Region.  He's not somebody that you would want

17  to be less than truthful with or play games with.  He holds

18  the same title that I do.  And if you find a local attorney to

19  represent you, hopefully they'll give you the same advice.

20         Do I need to hear any argument, counsel?

21         *MR. THOMPSON:*  Just, if I understand, Your Honor's

22  considered our motion.  The one thing I would just, before we

23  break today, to get on the record, a request would be an

24  agreement from Mr. Johnson, I think pursuant to Rule 5, that

25  he'll accept electronic service, given that he's pro se.  We

1    had that agreement previously with his counsel.  And given

2    that Mr. Johnson is -- you know, we don't know where he's

3    living, where he's spending time.  We know he's online.  We

4    think that would be most efficient.

5         THE COURT:  I'm assuming you don't have any

6    objection to receiving matter electronically, presumably by

7    email; is that correct, Mr. Johnson?

8         MR. JOHNSON:  No, sir.

9         THE COURT:  All right.

10         MR. THOMPSON:  Thank you, Your Honor.

11         THE COURT:  Do you understand, Mr. Johnson, that

12    after today's hearing I will be entering an order granting the

13    motion to compel?

14         MR. JOHNSON:  I do, Your Honor.  But if I may?

15         THE COURT:  Yeah.

16         MR. JOHNSON:  I have a short -- a short sort of

17    issue here that I think needs to be addressed by Your Honor.

18         THE COURT:  Why don't you stand up at the podium and

19    it will be your opportunity to speak.

20         MR. JOHNSON:  Yes, sir.  Thank you for your time

21    this honor -- or today, Your Honor.  I was familiar that your

22    court was one of the most busiest in the country, and I want

23    to be mindful of that and be -- be as helpful as I can for

24    these proceedings.

25         As you're well aware, there are several cases in

1    which defendant -- which plaintiff and I are in.  In the New

2    York case, there's an issue where, effectively, we have a

3    situation in which the judge is ruling on a motion to dismiss

4    in that case.  And as the plaintiff is the CEO of that

5    company, of Clearview AI, that company was recently hit by yet

6    another judge with one of the largest violations of personal

7    protected information in the history of our country.

8    Something like a quarter-of-a-billion dollars in reparations

9    against them by Judge Sharon Coleman.

10            So, as you might imagine, I'm a little leery about

11    giving information that involves my brother, my ex-wife, my

12    daughter to -- to plaintiff.  So, I would like to figure out a

13    way to -- to provide material that is -- that protects my

14    personally protected information.

15            THE COURT:  One of the things that the proposed

16    order that plaintiffs have provided indicates that you'll --

17    they will submit the terms -- search terms to be run against

18    your accounts and devices and a certain protocol.  I would

19    assume that they would only seek information relevant to the

20    case.

21            MR. JOHNSON:  I would --

22            THE COURT:  They don't really have a good argument

23    where they can get into information about your children or

24    ex-wife unrelated to the allegations in the case.

25            Does that make sense?

1          *MR. JOHNSON:*  No, Your Honor.

2          *THE COURT:*  You can also enter a confidentiality

3    agreement with them that says that if something is considered

4    confidential or marked confidential by the parties, that the

5    parties will agree that it cannot be shared.

6          *MR. JOHNSON:*  That's true.

7          But there is a history here of wanton disregard for

8    people's personally protected information, like in the

9    Clearview case.  And I have no reason to expect -- I mean,

10   this -- all of this today, just on a motion to compel, is

11   quite lavishly produced.

12         And so, when we think about when we deal with

13   plaintiff, you know, there's a history here of extreme

14   statements, there's a history here of casual disregard for

15   people's personally protected information.  And they may

16   breach it without even knowing.  I mean, we've had cases in

17   the Clearview case of hacking against my accounts.  This is --

18   you know, this is not a crazy idea.

19         And so, I am a little concerned, both about

20   potentially the source of the capital to retain -- to retain,

21   you know, plaintiff's attorney, and I am concerned about my --

22   my family's personal protected information.  All that said, I

23   have no objections to complying with, you know, reasonable

24   requests.

25         *THE COURT:*  Well, I think what I would do -- not to

1    give you legal advice, because I'm not allowed to do that, but

2    I would consider -- both sides consider entering in some sort

3    of a confidentiality agreement, so you have some recourse with

4    me if you have some personal information that you feel has

5    been divulged out there that needs recourse.

6         MR. JOHNSON:  Sure.  But, Your Honor, I -- in the

7    case of the Clearview case, that was an action that I brought.

8    And given the account -- given that plaintiff is the co-CO of

9    that company, he also controls that case.

10        THE COURT:  Do you think you're going to be able to

11   find an attorney?  Because it's -- stuff that happened in

12   another case is really not before me.  I understand your

13   concerns, but you have to comply with these discovery

14   requests.

15        MR. JOHNSON:  I have no objection to complying.

16        THE COURT:  Do you understand you're walking into a

17   bear trap?  And if you don't comply with these, I'm probably

18   going to be forced to enter a default judgment against you.

19        MR. JOHNSON:  I do, Your Honor.

20        THE COURT:  And if you wouldn't have shown up today,

21   I probably would have done that as a sanction.

22        MR. JOHNSON:  I do understand that, Your Honor.

23        THE COURT:  I just don't have the time to police

24   this.  And I'm not doing this because your case is any more or

25   less important than any others that I have.  But the matters

1    that you're asking me about today are something where I feel

2    you would really benefit from the advice of an attorney.

3           Something that you may want to consider when you

4    leave here today, you might want to take an Uber over to the

5    Tarrant County Bar Association.  They can provide you with

6    some resources of some local attorneys that might be able to

7    help you.

8           But the problem with being a pro se -- and again,

9    this would apply to me, if I were in your shoes -- you're

10   swimming in waters where there are a lot of sharks and you

11   have to be very careful or you're going to get bit.

12          *MR. JOHNSON:*  I understand, Your Honor.  If I may --

13          *THE COURT:*  I would want to have that guy Quint on

14   Jaws to take care of me.

15          *MR. JOHNSON:*  Yes.  I understand, Your Honor.

16          *THE COURT:*  But the stuff that you're bringing up, I

17   can only deal with what's in front of me --

18          *MR. JOHNSON:*  I also --

19          *THE COURT:*  -- the case or controversy in front of

20   me.

21          So, if you have any concerns about information that

22   you don't feel is relevant to some of these responses, you

23   need to pick up the phone and call the attorney representing

24   Mr. Lambert.  We don't get anywhere in this field by avoiding

25   answering questions.  We don't get anywhere by not returning

1   Mr. Thompson's phone calls, emails, et cetera.

2          The only way that we can get this to a resolution is

3   for you to pick up the phone and say, Mr. Thompson, I've

4   reviewed X request, I believe that it's still objectionable, I

5   don't want to turn over any information that would be personal

6   protected information.

7          *MR. JOHNSON:*  Yes.  And there's another issue here,

8   Your Honor, as well.

9          *THE COURT:*  Okay.  Go ahead.

10         *MR. JOHNSON:*  They're asking for all my

11  communications with Federal law enforcement.  As far as I'm

12  aware, I have no objection to my communications with Federal

13  law enforcement being made public.  I have always served my

14  country whenever I've been asked, so I have zero objection to

15  that.  But I do think that they should just ask Federal law

16  enforcement to turn over that material.

17         *THE COURT:*  Well, they're in a lawsuit with you, and

18  the allegations are that you represented yourself as an asset

19  to Federal agencies.

20         Now, in my years of working with Federal agencies

21  and working on matters of the highest level at the Justice

22  Department Securities and Exchange Commission and other

23  Federal agencies, is that folks that do work with law

24  enforcement don't typically go around saying that they are

25  confidential agents or informants or assets.  Because if you

1    tell that to a lot of people, you're not a very valuable

2    asset.  So, this was unusual when I saw that.  Typically, if

3    we're working in that capacity, we don't like going around and

4    telling people that or you won't be an asset for very long.

5            So, I think you need to produce this information.

6    Looks like the previous judge here represented that you had

7    been told by DHS agents not to produce the information, and

8    the judge made a determination there were no such agents you

9    were working with.

10           So, if you don't have the information, you need to

11   let them know that, too.  But they will get to the bottom of

12   it.  And I'm assuming if you don't give them any information,

13   they will go to whatever agencies you said you worked for to

14   try to get it.

15           *MR. JOHNSON:*  I have no objection to them doing

16   that.

17           *THE COURT:*  Well, they need to try to get it from

18   you first, okay?

19           *MR. JOHNSON:*  Sure.

20           *THE COURT:*  And, you know, you would have to make

21   some sort of showing.  But believe me, if you believe you have

22   information that is protected by -- is classified, top secret,

23   or higher, and you're going to be producing that, I would

24   suggest that you contact the agency.

25           And typically the way it works, at least my

1  experience when I was at the Justice Department, is someone

2  from the U.S. Attorney's Office will show up and make that

3  argument on whatever agency's behalf.  But if you don't have

4  it, you need to say you don't have it.

5          *MR. JOHNSON:*  I understand.

6          *THE COURT:*  But the entire crux of the lawsuit, at

7  least as the way I understand it, Mr. Thompson, were there

8  were representations made that Mr. Johnson was an intelligence

9  asset or a law enforcement asset; is that right?

10          *MR. THOMPSON:*  That's part of it, Your Honor.

11          *THE COURT:*  Yeah.  So, that goes to the crux of the

12  lawsuit.

13          *MR. JOHNSON:*  Sure.

14          I have one more issue, Your Honor.

15          *THE COURT:*  Yes, sir.

16          *MR. JOHNSON:*  I think there's also an issue here of

17  a First Amendment issue.  So, this lawsuit stems from a RICO

18  complaint.  But I've been charged with no crime, I don't even

19  have a speeding ticket, parking ticket to my name.

20          *THE COURT:*  Well, there's a claim called civil RICO.

21  And this is why you need to get an attorney.  Because if you

22  feel like you have a good argument under the First Amendment,

23  that everything you were doing was protected by your rights

24  under the First Amendment, they can make that motion for you

25  or you can make that motion when it comes to the summary

1   judgment stage.

2           *MR. JOHNSON:*  Yes.  I understand, Your Honor.

3   But if --

4           *THE COURT:*  I can't do that here.

5           *MR. JOHNSON:*  I understand.  But if I may, I think

6   the case stems here -- is becoming a defamation claim, and I

7   just want to apologize to Your Honor.  Because, effectively,

8   the reason we're here, in my view, is that I embarrassed

9   plaintiff.

10          And I was well within my legal rights to talk about

11  things that he had told me, I was well within my legal rights

12  to write what I've read -- or what I've written.  I am a

13  journalist; I've written books, I've written articles.  And so

14  some of the communications that they're asking for are issues

15  that are -- they're communications that are protected with

16  sources.  And I will -- I do intend to make these First

17  Amendment arguments as time goes on.

18          *THE COURT:*  All right.  Well, I will take that up at

19  a later time.

20          What I would encourage you to do -- and I'm not

21  talking about any of the merits of plaintiffs' claims against

22  you -- but if you believe that you have a valid counterclaim

23  on any of these points, it's best for you to find an attorney.

24  I am not making any prior judgments, I am just telling you

25  from years of experience.  You are walking a tightrope over a

1    moat and there are sharks on both sides of the moat.

2            Now, you may get across the tightrope.  You may be

3    like Philippe Petit when he went between the World Trade

4    Center and everything is going to come out great on the other

5    side.  But if it were me, I would want to have an attorney out

6    there representing me to keep me from falling in with the

7    sharks.

8            MR. JOHNSON:  I appreciate that, Your Honor.  But --

9            THE COURT:  So, I would highly encourage you to see

10   if you can locate someone.  And if you don't have the funds to

11   do it, believe it or not there are groups out there that do it

12   for free.

13           MR. JOHNSON:  I appreciate that.

14           THE COURT:  You seem to present yourself as someone

15   being very connected.  I bet you know at least one attorney

16   you might want to talk to and say, Buddy, I am in a heck of a

17   spot, I've got this Judge down in Fort Worth that likes to

18   move very fast, and he's indicated to me that it would be a

19   good idea if I get an attorney.  I know that I can represent

20   myself, but I'd just feel better if I could engage you and you

21   could do this for me.

22           That's part of our obligation as attorneys, to do

23   pro bono and donate our time to good causes.  So, that might

24   be a resource for you.  That's why I think it might be a good

25   idea for you to head over to the Fort Worth Tarrant County Bar

1    Association.  I don't know the address of it, but I bet you

2    can look it up on your phone.  And they'll have a list of

3    resources.

4           And as I said, if you don't have the funds for it,

5    you can even use things -- like, there's a First Amendment

6    Clinic over at the Texas A&M Law School.  You might get some

7    really smart law students to help you.  But while it's

8    perfectly acceptable to represent yourself, it's easy to get

9    into trouble.

10           MR. JOHNSON:  I understand, Your Honor.

11           THE COURT:  And certainly if I wanted my interests

12    represented before the upcoming mediation, and that's in

13    20 days, I would want somebody there with me, somebody that

14    can make a filing on your behalf.

15           And as I said, if you don't have money to pay them,

16    that's fine; try to choose an alternative route and maybe you

17    can get somebody to do it for you for free.  Obviously that

18    presents some interesting issues that an attorney may well

19    jump at to help you.

20           Unless there's anything further, I will have an

21    order out on the motion to compel and we'll go from there.

22           Anything else, gentlemen?

23           MR. THOMPSON:  Your Honor, we made a request with a

24    third party vendor because we had concerns about spoliation.

25    I know Your Honor is not taking it up, but something we're

 1 | concerned about.

 2 |     *THE COURT:*  I understand.  I think that I need to

 3 | give him a chance to try to comply.

 4 |     *MR. THOMPSON:*  Understood, Your Honor.

 5 |     *THE COURT:*  I think if I didn't, that the Fifth

 6 | Circuit would reverse me.  So, I need to -- the Fifth Circuit

 7 | has admonished when it comes to sanctions that we try to

 8 | decide the least severe to try to correct the behavior in

 9 | front of us.

10 |     This is the first time Mr. Johnson has ever appeared

11 | in front of me.  And I'll also state this, I had fully

12 | anticipated that he would not show up today, so I'm just glad

13 | that he's here.

14 |     *MR. THOMPSON:*  And, Your Honor, we're comfortable

15 | with your ruling and everything.  We know that you've reviewed

16 | all the materials.

17 |     *THE COURT:*  You had also asked that -- and my lawyer

18 | has reminded me of this, that I instruct Mr. Johnson to

19 | reactivate his X account.

20 |     *MR. JOHNSON:*  I don't think that's possible, Your

21 | Honor.  But if it is, I'm happy to do it.

22 |     *MR. THOMPSON:*  Your Honor, may I approach on that?

23 | I have some materials from his Substack that might answer this

24 | or inform.

25 |     *THE COURT:*  Have you shown these to Mr. Johnson?

1        *MR. THOMPSON:*  I have a copy for him right now.

2        *THE COURT:*  Let's let him look at those before I

3    take it up.

4        *MR. THOMPSON:*  Sure.  I printed this out this

5    morning.

6            May I approach your clerk?

7        *THE COURT:*  Yes, sir.

8            *(Attorney approaches the bench)*

9        *MR. THOMPSON:*  This was taken from Mr. Johnson's

10   Substack, because we thought there might be a question about

11   whether he has the ability to go reactivate his account.  I

12   believe on a Substack he said that Elon Musk had deactivated

13   his account or banned it.  That was based on his idea that he

14   thought that Elon Musk was funding the lawsuit, because my

15   prior firm did work for Mr. Musk.

16           I'm not a Twitter expert, but just based on this

17   screenshot it says, you deactivated your account, there's a

18   button that says that you can restore it.

19       *MR. JOHNSON:*  Yeah, that's not --

20       *MR. THOMPSON:*  Again, Your Honor --

21       *THE COURT:*  Please don't interrupt.  I'll let you

22   respond, Mr. Johnson.

23           Go ahead, Mr. Thompson.

24       *MR. THOMPSON:*  Your Honor, we understand that your

25   motion to compel is going to address him to search for

App.551

1  responsive documents.  And we think that this is probably

2  covered, but we just wanted to bring this to light, because it

3  is, I think, a -- could maybe save some time going forward.

4       *THE COURT:*  Okay.  Mr. Johnson, what's been

5  presented to the Court appears to be a printout that indicates

6  that it may have been you that deactivated your account back

7  on 12/30 of 2024.

8       *MR. JOHNSON:*  Yes, that's incorrect.

9       *THE COURT:*  Okay.

10      *MR. JOHNSON:*  If I may, Your Honor?

11      *THE COURT:*  Yes, sir.  You need to stand when you

12  address the Court.

13      *MR. JOHNSON:*  Oh, forgive me.

14       As of last night, when I looked -- when I reviewed

15  the material before coming here, they asked for my account --

16  my Twitter account.  It's not possible to restore it.  I did

17  try to do it last night, just to see if I could actually

18  comply with it.

19       In addition, one of the things they asked me for is

20  a Substack -- or, excuse me, a Signal message.  But they were

21  unspecific as to which message, which system I would use,

22  which phone.  So, I think, what we have here --

23      *THE COURT:*  Well, I think the problem that they have

24  is you went and represented on your Substack that when you

25  were sued by Mr. Lambert that you had possession of all the

```
1    texts, Signal messages, tweets, XXX, et cetera, and now you're
2    saying you don't have those.  So --
3              MR. JOHNSON:  That was my --
4              THE COURT:  -- can you understand that they might be
5    a little bit perturbed?
6              MR. JOHNSON:  I can appreciate that, Your Honor.
7    But Signal is a deleting message system.
8              THE COURT:  I'm vaguely familiar with that.  I guess
9    the response would be, Why did you say that on your Substack?
10             MR. JOHNSON:  At the time, I had a number of
11   messages that would comply with it, but I was not keeping it
12   around for a long time.  It is a deleting message system.
13             THE COURT:  Well, I will be --
14             MR. JOHNSON:  After a month or two months --
15             THE COURT:  Let me stop you.  I will be ordering you
16   today -- once you're in litigation it's against the rules to
17   destroy anything, that's called spoliation of the evidence and
18   that can get you in big trouble.
19             MR. JOHNSON:  Of course.
20             THE COURT:  Okay.  So, part of my order will be that
21   you're not to destroy anything that's out there.  And I don't
22   know about Twitter, I think I'm going to be ordering you to
23   restore it.  And if you can't restore it, you need to tell
24   them that answer and we'll go from there.
25             MR. JOHNSON:  No objection to that.  And there's
```

1   another email address as well there that I don't have access

2   to.

3           THE COURT:  Then you need to tell them that, okay?

4           MR. JOHNSON:  I will.  Thank you, Your Honor.

5           MR. THOMPSON:  Just really briefly on the Signal, I

6   don't want to litigate the granular details.

7           In Judge Failla's order from January 16th of this

8   year on -- it's in the record here, it's the appendix to the

9   motion to compel, it's docket entry 44, appendix 020.

10          In the order, she brought up the Signal issue, the

11  issue of missing Signal messages, and she noted that plaintiff

12  made misstatements and omissions to the Court regarding the

13  message deleting capabilities of the Signal platform.  I think

14  that stems from the fact that he, you know, purged them,

15  didn't have them in such a form that they could be retained

16  when his lawsuit in New York had been pending for roughly two

17  years.  Again, I don't want to get into the granular details

18  of it, I just want to --

19          THE COURT:  And I don't either.  As I told

20  Mr. Johnson, I can only deal with what's in front of me.

21          MR. THOMPSON:  I agree.

22          THE COURT:  But, you know, I have to give him a

23  chance to see if he can comply.

24          MR. THOMPSON:  I understand.

25          THE COURT:  Or I would get in trouble.  You

1    understand?

2              But I will say this, you're -- I can tell from the

3    pleadings, you're very interested in politics.  Is that fair

4    to say, politics and power?  Yes?

5              *MR. JOHNSON:*  Yeah, sure.  I guess.

6              *THE COURT:*  It's not a trick question.

7              There was a famous -- you're probably familiar with

8    an author by the name of Robert Caro, I bet.

9              *MR. JOHNSON:*  Yes, sir.

10             *THE COURT:*  Familiar with his book on Robert Moses

11   and Lyndon Johnson, that series?

12             *MR. JOHNSON:*  I am.

13             *THE COURT:*  Well, the second book in the series

14   deals largely with a famous case that took place on the second

15   floor of this courthouse back in 1948.  Then Representative

16   Johnson was in a heated election lawsuit with Governor Coke

17   Stevenson.

18             Did you know that took place downstairs?

19             Did you know that as a result of that lawsuit and

20   87 votes found in ballot box number 13 down in Alice, Texas,

21   President Johnson went on to go to the senate, and later

22   became senate majority leader, vice president and president?

23             Certainly one of the most impactful presidential

24   administrations in the history of our country.  President

25   Johnson had a famous saying, he used to always say when he

1  heard certain stories that he didn't find to be believable, he

2  would say, Don't urinate on my leg and tell me it's raining.

3         So, Mr. Johnson, be careful.  Don't urinate on my

4  leg, because I won't like it.

5         Do you understand?

6         *MR. JOHNSON:*  Yes, sir.

7         *THE COURT:*  Anything else?

8         *MR. THOMPSON:*  No, Your Honor.

9         *THE COURT:*  All right.  Like I said, on your way

10 home read about Judge McBryde.  And you might want to stop off

11 by the Tarrant County Bar Association.  We have many fine

12 attorneys here.  Although you don't have to pick somebody from

13 Fort Worth, it's usually best to try to find somebody from

14 Fort Worth because they're more familiar with the differences

15 between the two divisions.

16        All right.  We'll stand in recess.

17

18              *(Proceedings Adjourned)*

19

20

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2

3          I, Monica Willenburg Guzman, CSR, RPR, certify

4    that the foregoing is a true and correct transcript from

5    the record of proceedings in the foregoing entitled matter.

6          I further certify that the transcript fees format

7    comply with those prescribed by the Court and the Judicial

8    Conference of the United States.

9          Signed this 12th day of May, 2025.

10

11                          /s/Monica Willenburg Guzman
                            Monica Willenburg Guzman, CSR, RPR
12                          Texas CSR No. 3386
                            NCRA No. 32278
13                          Official Court Reporter
                            The Northern District of Texas
14                          Fort Worth Division

15

16   CSR Expires:        7/31/2025

17   Business Address:   501 W. 10th Street, Room 310
                         Fort Worth, Texas  76102
18
     Telephone:          817.850.6681
19
     E-Mail Address:     mguzman.csr@yahoo.com
20

21

22

23

24

25

MR. BOISVERT: [9] 3/13 3/21 4/5 4/9
4/12 5/17 5/21 5/25 6/5
MR. JOHNSON: [67]
MR. THOMPSON: [19] 3/8 12/8 12/10
15/21 16/10 23/10 26/23 27/4 27/14
27/22 28/1 28/4 28/9 28/20 28/24 31/5
31/21 31/24 33/8
THE COURT: [90]

**/**

**/s/Monica [1]** 34/11

**0**

**020 [1]** 31/9

**1**

**1.15 [1]** 4/15
**10th [1]** 1/20 34/17
**12 [1]** 6/8
**12/30 [1]** 29/7
**12th [1]** 34/9
**13 [1]** 32/20
**14 [2]** 5/11 5/18
**16 [1]** 8/3
**16th [1]** 31/7
**17304 [1]** 1/17
**1850s [1]** 14/8
**19 [1]** 9/2
**1900 [1]** 1/13
**1948 [1]** 32/15
**1:30 [2]** 1/7 3/2

**2**

**20 [1]** 26/13
**200 [1]** 9/5
**2020 [1]** 9/4
**2024 [1]** 29/7
**2025 [4]** 1/6 3/2 34/9 34/16
**214.743.4500 [1]** 1/14
**2200 [1]** 1/13
**26 [1]** 6/8
**28th [2]** 5/24 11/16

**3**

**30 [1]** 29/7
**300 [1]** 1/17
**30s [1]** 8/8
**310 [2]** 1/20 34/17
**32278 [1]** 34/12
**33 [2]** 8/3 8/3
**3386 [1]** 34/12

**4**

**44 [1]** 31/9
**4:24-CV-00988-P [1]** 1/4
**4:24-CV-988-P [1]** 3/5

**5**

**501 [2]** 1/20 34/17
**512.538.5788 [1]** 1/18

**7**

**7/31/2025 [1]** 34/16
**75201 [1]** 1/14
**75252 [1]** 1/18
**76102 [2]** 1/21 34/17

**8**

**817.850.6681 [2]** 1/21 34/18
**83.10 [1]** 12/22
**87 [1]** 32/20

**A**

**ability [4]** 8/21 10/23 11/7 28/11
**able [5]** 9/1 10/19 10/21 19/10 20/6
**about [24]** 4/22 6/8 7/18 8/3 8/3 8/6
13/7 14/11 14/19 15/7 17/10 17/23
18/12 18/19 18/21 20/1 20/21 24/10
24/21 26/24 27/1 28/10 30/22 33/10
**Abraham [2]** 6/16 14/7
**abundance [1]** 3/24
**accept [1]** 15/25
**acceptable [1]** 26/8
**access [1]** 31/1
**accommodate [2]** 8/24 9/6
**account [8]** 19/8 27/19 28/11 28/13
28/17 29/6 29/15 29/16
**accounts [3]** 2/18 17/18 18/17
**across [1]** 25/2
**action [1]** 19/7
**active [3]** 7/8 7/11 7/17
**actually [1]** 29/17
**addition [1]** 29/19
**additional [1]** 11/1
**address [7]** 6/7 26/1 28/25 29/12 31/1
34/17 34/19
**addressed [1]** 16/17
**Adjourned [1]** 33/18
**administrations [1]** 32/24
**administrative [1]** 15/14 15/16
**admonished [1]** 27/7
**advice [5]** 6/14 9/19 15/19 19/1 20/2
**advise [3]** 5/3 5/10 7/4
**advising [1]** 14/6
**after [3]** 5/5 16/12 30/14
**afternoon [2]** 3/8 3/13
**again [4]** 14/15 20/8 28/20 31/17
**against [7]** 9/19 17/9 17/17 18/17
19/18 24/21 30/16
**agencies [4]** 21/19 21/20 21/23 22/13
**agency [1]** 22/24
**agency's [1]** 23/3
**agents [3]** 21/25 22/7 22/8
**agree [2]** 18/5 31/21
**agreed [1]** 4/19
**agreement [4]** 15/24 16/1 18/3 19/3
**ahead [2]** 21/9 28/23
**AI [1]** 17/5
**airport [1]** 15/7
**al [2]** 1/4 3/4
**Alice [1]** 32/20
**all [14]** 3/12 6/1 8/24 12/7 13/16 16/9
18/10 18/22 21/10 24/18 27/16 29/25
33/9 33/16
**allegations [3]** 15/11 17/24 21/18
**allow [1]** 4/2
**allowed [1]** 19/1
**already [3]** 5/12 5/22 5/24
**also [8]** 13/9 14/17 18/2 19/9 20/18
23/16 27/11 27/17
**alternative [1]** 26/16
**Although [1]** 33/12
**always [3]** 3/24 21/13 32/25
**am [13]** 5/8 6/25 9/19 11/22 13/21

13/24 18/19 18/21 21/24 24/24 24/24
25/16 32/12
**Amendment [5]** 23/17 23/22 23/24
24/17 26/5
**amounts [3]** 5/4 5/5 13/18
**another [5]** 10/25 17/6 19/12 21/7
31/1
**answer [2]** 27/23 30/24
**answered [1]** 8/18
**answering [1]** 20/25
**anticipated [1]** 27/12
**any [18]** 5/13 9/3 9/17 10/15 10/25
14/3 14/4 15/10 15/20 16/5 19/24
19/25 20/21 21/5 22/12 24/21 24/23
24/24
**anyone [1]** 11/5
**anything [7]** 5/4 13/14 26/20 26/22
30/17 30/21 33/7
**anywhere [2]** 20/24 20/25
**apologize [1]** 24/7
**appear [2]** 10/13 10/17
**appeared [1]** 27/10
**appears [5]** 8/16 8/18 10/19 14/14
29/5
**appendix [3]** 9/10 31/8 31/9
**apply [1]** 20/9
**appoint [1]** 11/7
**appreciate [3]** 25/8 25/13 30/6
**approach [2]** 27/22 28/6
**approaches [1]** 28/8
**are [31]** 3/7 4/1 7/6 7/19 8/9 9/7 9/7
9/9 9/10 9/16 10/6 10/10 12/6 12/13
12/22 12/24 13/2 13/19 15/10 16/25
17/1 20/1 20/10 21/18 21/24 24/14
24/15 24/15 24/25 25/1 25/11
**argument [4]** 15/20 17/22 23/3 23/22
**arguments [1]** 24/17
**around [5]** 21/24 22/3 30/12
**articles [1]** 24/13
**ask [6]** 6/22 8/14 21/15
**asked [4]** 21/14 27/17 29/15 29/19
**asking [4]** 10/9 20/1 21/10 24/14
**asset [5]** 21/18 22/2 22/4 23/9 23/9
**assets [1]** 21/25
**Association [3]** 20/5 26/1 33/11
**assume [1]** 17/19
**assuming [3]** 11/18 16/5 22/12
**attorney [27]** 5/15 6/7 6/10 6/14 6/18
10/25 11/2 11/4 11/4 11/8 11/9 12/24
13/1 13/1 14/25 15/18 18/21 19/11
20/2 20/23 23/21 24/23 25/5 25/15
25/19 26/18 28/8
**Attorney's [1]** 23/2
**attorneys [3]** 20/6 25/22 33/12
**author [1]** 32/8
**average [2]** 7/17 7/23
**avoid [1]** 8/19
**avoiding [1]** 20/24
**aware [2]** 16/25 21/12

**B**

**back [5]** 9/13 13/4 14/8 29/6 32/15
**ballot [1]** 32/20
**banned [1]** 28/13
**Bar [3]** 20/5 25/25 33/11
**based [7]** 9/8 12/4 13/1 13/1 14/2
13/16 28/16

**basically** [1] 13/23
**be** [57]
**bear** [1] 19/17
**Beaumont** [1] 7/12
**became** [1] 32/22
**because** [16] 5/4 8/10 9/23 13/8 19/1
  19/11 19/24 21/25 23/21 24/7 26/24
  28/10 28/14 29/2 33/4 33/14
**becoming** [1] 24/6
**been** [23] 3/23 5/13 5/24 6/7 6/8 6/16
  6/17 8/17 8/25 9/1 9/1 10/18 10/20
  10/22 11/12 14/16 16/5 21/14 22/7
  23/18 29/4 29/6 31/16
**before** [7] 1/9 6/6 15/22 19/12 26/12
  28/2 29/15
**begin** [1] 3/6
**behalf** [6] 3/9 3/14 3/19 3/22 23/3
  26/14
**behavior** [1] 27/8
**being** [5] 3/17 13/17 20/8 21/13 25/15
**believable** [1] 33/1
**believe** [14] 4/7 4/13 5/23 6/14 8/2 8/6
  13/4 13/23 21/4 22/21 22/21 24/22
  25/11 28/12
**believing** [1] 9/14
**bench** [1] 28/8
**benefit** [1] 20/2
**Benjamin** [1] 6/15
**BENNETT** [1] 1/12
**best** [2] 24/23 33/13
**bet** [3] 25/15 26/1 32/8
**better** [1] 11/23 25/20
**between** [2] 25/3 33/15
**big** [1] 30/18
**billion** [1] 17/8
**bit** [2] 20/11 30/5
**Boilerplate** [1] 13/18
**BOISVERT** [6] 1/16 3/14 3/20 3/21
  3/22 4/3
**bono** [1] 25/23
**book** [2] 32/10 32/13
**books** [1] 24/13
**bored** [1] 13/11
**both** [5] 7/15 9/20 18/19 19/2 25/1
**bottom** [1] 22/11
**box** [1] 32/20
**breach** [1] 18/16
**break** [1] 15/23
**BRIDGE** [4] 1/4 3/3 3/9 14/3
**briefly** [1] 31/5
**bring** [1] 29/2
**bringing** [1] 20/16
**brother** [1] 17/11
**brought** [2] 19/7 31/10
**Buddy** [1] 25/16
**busier** [1] 13/9
**busiest** [2] 7/5 16/22
**Business** [1] 34/17
**busy** [2] 7/19 8/9
**button** [1] 28/18

**C**

**call** [1] 20/23
**called** [2] 23/20 30/17
**calls** [1] 21/1
**can** [28] 9/6 9/18 11/2 12/20 12/25

**13/1 15/3 16/23 17/23 18/2 20/5 20/17
  21/2 23/24 23/25 29/10 25/19 26/2
  26/5 26/14 26/17 28/18 30/4 30/6
  30/18 31/20 31/23 32/2
**can't** [6] 6/16 8/11 9/14 10/16 24/4
  30/23
**cannot** [1] 18/5
**capabilities** [1] 31/13
**capacity** [1] 22/3
**capital** [5] 1/4 3/4 3/9 14/3 18/20
**care** [3] 6/11 15/9 20/14
**careful** [2] 20/11 33/3
**Caro** [1] 32/8
**CARTER** [2] 1/16 3/13
**case** [28] 1/4 3/23 4/2 4/6 5/20 6/11
  6/21 7/23 9/7 10/15 11/8 12/6 12/18
  14/5 17/2 17/4 17/20 17/24 18/9 18/17
  19/7 19/7 19/9 19/12 19/24 20/19 24/6
  32/14
**cases** [6] 8/4 8/6 8/11 8/16 16/25
  18/16
**casual** [1] 18/14
**cause** [3] 3/4 4/13 12/18
**causes** [1] 25/23
**caution** [1] 3/24
**caveats** [1] 6/2
**Center** [1] 25/4
**CEO** [1] 17/4
**certain** [2] 17/18 33/1
**certainly** [3] 10/22 26/11 32/23
**CERTIFICATE** [1] 34/1
**certify** [2] 34/3 34/6
**cetera** [3] 14/19 21/1 30/1
**chance** [4] 13/15 13/24 27/3 31/23
**charged** [1] 23/18
**CHARLES** [3] 1/7 3/4 3/14
**chief** [1] 15/15
**children** [1] 17/23
**choose** [1] 26/16
**Circuit** [2] 27/6 27/6
**civil** [5] 7/15 7/23 11/8 11/10 23/20
**claim** [2] 23/20 24/6
**claims** [1] 21/1
**classified** [1] 22/22
**Clearview** [4] 17/5 18/9 18/17 19/7
**clerk** [1] 28/6
**Clerk's** [1] 7/22
**client** [3] 4/16 4/16 6/19
**Clinic** [1] 26/6
**co** [2] 19/8 19/8
**co-CO** [1] 19/8
**Coke** [1] 32/16
**Coleman** [1] 17/9
**collect** [1] 14/4
**come** [1] 25/4
**comes** [5] 13/10 14/10 14/23 23/25
  27/7
**comfortable** [1] 27/14
**coming** [4] 5/5 5/20 8/19 29/15
**Commission** [1] 21/22
**communications** [4] 21/11 21/12
  24/14 24/15
**company** [3] 17/5 17/5 19/9
**compel** [9] 2/12 6/7 13/16 15/9 16/13
  18/10 26/21 28/25 31/9
**complain** [1] 7/18
**complaint** [2] 8/1 23/18

**complete** [1] 5/18
**comply** [9] 9/8 12/14 19/13 19/17 27/3
  29/18 30/11 31/23 34/7
**complying** [2] 18/23 19/15
**computer** [1] 1/24
**concerned** [4] 10/23 18/19 18/21 27/1
**concerns** [3] 19/13 20/21 26/24
**condition** [1] 10/17
**Conduct** [1] 4/15
**conducted** [1] 9/2
**conducting** [1] 15/13
**Conference** [1] 34/8
**confidential** [3] 18/4 18/4 21/25
**confidentiality** [2] 18/2 19/3
**connected** [1] 25/15
**consented** [1] 3/23
**consider** [3] 19/2 19/2 20/3
**consideration** [1] 15/11
**considered** [2] 15/22 18/3
**Constitution** [1] 11/9
**contact** [1] 22/24
**contempt** [3] 14/15 15/2 15/3
**context** [1] 7/16
**continues** [1] 15/14
**controls** [1] 19/9
**controversy** [1] 20/19
**cooperate** [2] 14/25 15/1
**copy** [2] 5/19 28/1
**correct** [4] 5/25 16/7 27/8 34/4
**could** [5] 25/20 25/21 29/3 29/17
  31/15
**couldn't** [1] 10/1
**counsel** [6] 3/11 12/20 12/23 13/5
  15/20 16/1
**counterclaim** [1] 24/22
**country** [6] 7/5 7/7 16/22 17/7 21/14
  32/24
**County** [4] 15/2 20/5 25/25 33/11
**couple** [1] 6/6
**course** [3] 10/13 11/6 30/19
**court** [16] 1/1 1/9 1/20 3/15 4/8 4/13
  9/7 12/5 14/20 14/23 16/22 29/5 29/12
  31/12 34/7 34/13
**Court's** [1] 2/16
**courthouse** [1] 32/15
**courts** [1] 6/9
**covered** [1] 29/2
**COVID** [1] 9/2 9/4
**COVID-19** [1] 9/2
**crazy** [1] 18/18
**crime** [1] 23/18
**criminal** [4] 7/16 8/5 8/6 9/5
**crux** [2] 23/6 23/11
**CSR** [5] 1/20 34/3 34/11 34/12 34/16
**CV** [2] 1/4 3/5

**D**

**Dallas** [7] 1/14 1/18 7/17 8/2 8/7 13/1
  13/8
**Dallas-based** [1] 13/1
**date** [2] 7/24 8/1
**daughter** [1] 17/12
**David** [1] 15/13
**day** [2] 14/2 34/9
**days** [4] 5/11 5/18 6/17 26/13
**deactivated** [3] 28/12 28/17 29/6
**deal** [3] 18/12 20/17 31/20

**D**

**dealings [1]** 14/23
**deals [1]** 32/14
**decide [1]** 27/8
**declaration [1]** 9/9
**defamation [1]** 24/6
**default [1]** 19/18
**defendant [4]** 1/16 3/14 10/15 17/1
**defendants [1]** 9/5
**deleting [3]** 30/7 30/12 31/13
**deliver [1]** 5/11
**Department [2]** 21/22 23/1
**destroy [2]** 30/17 30/21
**details [2]** 31/6 31/17
**determination [1]** 22/8
**devices [1]** 17/18
**DHS [1]** 22/7
**did [5]** 28/15 29/16 30/9 32/18 32/19
**didn't [4]** 9/21 27/5 31/15 33/1
**differences [1]** 33/14
**different [2]** 6/9 13/14
**differently [1]** 13/8
**directing [1]** 5/15
**disabilities [1]** 8/25
**discovery [2]** 8/17 19/13
**Discussion [1]** 2/18
**dismiss [1]** 17/3
**disregard [1]** 18/7 18/14
**district [9]** 1/1 1/2 1/9 7/1 7/7 7/13 12/20 12/25 34/13
**districts [1]** 7/10
**division [10]** 1/3 7/12 7/12 7/13 7/24 8/2 8/7 9/2 9/3 34/14
**divisions [2]** 7/14 33/15
**divulged [1]** 19/5
**DLA [1]** 1/12
**do [43]**
**docket [1]** 31/9
**dockets [1]** 7/5
**documents [1]** 29/1
**does [2]** 12/23 17/25
**doing [8]** 9/24 9/25 10/18 12/5 14/16 19/24 22/15 23/23
**dollars [1]** 17/8
**don't [48]**
**donate [1]** 25/23
**done [4]** 3/25 5/1 13/14 19/21
**down [4]** 9/15 15/2 25/17 32/20
**downstairs [1]** 32/18
**During [1]** 9/1

**E**

**E-Mail [2]** 1/22 34/19
**each [1]** 14/23
**early [1]** 12/18
**easier [1]** 4/11
**Eastern [1]** 7/12
**easy [1]** 26/8
**effect [2]** 6/15 6/18
**effectively [2]** 17/2 24/7
**efficient [1]** 16/4
**efforts [3]** 5/11 5/13 8/18
**Eighth [1]** 15/15
**either [1]** 31/19
**election [1]** 32/16
**electronic [1]** 15/25
**electronically [1]** 16/6

**Elon [2]** 28/12 28/14
**else [4]** 10/14 11/5 26/22 33/7
**email [2]** 16/7 31/1
**emails [1]** 21/1
**embarrassed [1]** 24/8
**emergency [1]** 10/14
**emerging [1]** 12/16
**encourage [3]** 11/3 24/20 25/9
**end [1]** 14/2
**enforcement [5]** 21/11 21/13 21/16 21/24 23/9
**enforcing [1]** 13/10
**engage [2]** 13/5 25/20
**enough [1]** 14/11
**enter [2]** 18/2 19/18
**entering [2]** 16/12 19/2
**entire [3]** 7/7 9/3 23/6
**entitled [1]** 34/5
**entry [1]** 31/9
**et [5]** 1/4 3/4 14/19 21/1 30/1
**Evans [3]** 11/16 12/7 15/13
**even [4]** 8/5 18/16 23/18 26/5
**ever [2]** 14/4 27/10
**everything [3]** 23/23 25/4 27/15
**evidence [1]** 30/17
**ex [2]** 17/11 17/24
**ex-wife [2]** 17/11 17/24
**Exchange [1]** 21/22
**excuse [2]** 10/17 29/20
**expect [1]** 18/9
**expected [1]** 10/12
**experience [2]** 23/1 24/25
**expert [1]** 28/16
**Expires [1]** 34/16
**explicit [1]** 12/22
**extreme [1]** 18/13
**eye [1]** 8/19

**F**

**face [2]** 9/3 9/3
**fact [2]** 7/20 31/14
**Failla [1]** 7/1
**Failla's [1]** 31/7
**fails [1]** 4/16
**fair [1]** 32/3
**falling [1]** 25/6
**familiar [5]** 16/21 30/8 32/7 32/10 33/14
**family [1]** 9/20
**family's [1]** 18/22
**famous [3]** 32/7 32/14 32/25
**far [3]** 10/22 15/8 21/11
**fast [1]** 25/18
**Federal [9]** 7/8 7/11 9/7 21/11 21/12 21/15 21/19 21/20 21/23
**fee [4]** 4/19 11/23 12/9 12/10
**feel [6]** 4/22 19/4 20/1 20/22 23/22 25/20
**fees [3]** 14/10 14/12 34/6
**Feiger [1]** 1/16
**few [1]** 7/4
**field [1]** 20/24
**Fifth [2]** 27/5 27/6
**figure [1]** 17/12
**file [2]** 5/11 5/18
**filed [3]** 3/19 4/6 12/13
**filing [3]** 7/25 8/1 26/14

**filings [1]** 7/16
**find [12]** 6/25 11/2 11/4 12/24 13/2 13/23 13/24 15/18 19/11 24/23 33/1 33/13
**findings [2]** 14/1 14/15
**fine [4]** 4/10 13/3 26/16 33/11
**firm [2]** 3/22 28/15
**first [8]** 3/18 22/18 23/17 23/22 23/24 24/16 26/5 27/10
**five [1]** 8/6
**floor [1]** 32/15
**fly [1]** 13/19
**folks [3]** 8/24 8/25 21/23
**fool [1]** 6/19
**forced [1]** 19/18
**foregoing [2]** 34/4 34/5
**forgive [1]** 29/13
**form [1]** 31/15
**format [1]** 34/6
**FORT [15]** 1/3 1/5 1/21 7/6 7/13 7/24 8/22 12/20 13/1 25/17 25/25 33/13 33/14 34/14 34/17
**forward [1]** 29/3
**found [1]** 32/20
**Franklin [1]** 6/15
**frankly [1]** 9/8
**free [3]** 6/4 25/12 26/17
**frequently [3]** 7/15 8/24 14/9
**Friedman [1]** 1/16
**front [6]** 15/1 20/17 20/19 27/9 27/11 31/20
**fulfill [1]** 4/17
**fulfilled [1]** 4/20
**fully [1]** 27/11
**funding [1]** 28/14
**funds [3]** 14/4 25/10 26/4
**further [3]** 9/17 26/20 34/6

**G**

**games [1]** 15/17
**gentlemen [1]** 26/22
**get [27]** 8/4 8/11 13/11 13/19 13/20 13/22 14/20 15/1 15/1 15/23 17/23 20/1 20/24 20/25 21/2 22/11 22/14 25/5 25/9 27/9 29/16 26/6 26/8 26/17 30/18 31/17 31/25
**getting [1]** 11/24
**give [8]** 13/21 13/24 14/7 15/19 19/1 22/12 27/3 31/22
**given [5]** 4/19 15/25 16/1 19/8 19/8
**giving [2]** 6/14 17/11
**glad [1]** 27/12
**go [13]** 9/17 11/18 12/7 15/2 15/11 21/9 21/24 22/13 26/21 28/11 28/23 30/24 32/21
**goes [3]** 12/6 23/11 24/17
**going [22]** 7/10 7/25 9/7 9/16 10/24 11/13 11/18 11/20 13/2 13/19 13/19 13/25 14/18 19/10 19/18 20/11 22/3 22/23 25/4 28/25 29/3 30/22
**good [9]** 3/8 3/13 4/13 5/2 17/22 23/22 25/19 25/23 25/24
**google [1]** 13/12
**got [2]** 6/9 25/17
**Governor [1]** 32/16
**grant [4]** 4/14 5/8 6/1 13/16
**granted [1]** 9/11

**G**

**granting [1]** 16/12
**granular [2]** 31/6 31/17
**great [1]** 25/4
**groups [1]** 25/11
**guess [2]** 30/8 32/5
**guy [1]** 20/13
**GUZMAN [4]** 1/20 34/3 34/11 34/11

**H**

**hacking [1]** 18/17
**had [16]** 7/11 8/25 12/17 13/15 16/1
  18/16 22/6 24/11 26/24 27/11 27/17
  28/12 29/25 30/10 31/16 32/25
**Hal [1]** 3/10
**happened [1]** 19/11
**happy [5]** 4/4 5/8 10/16 10/22 27/21
**hard [1]** 9/14
**has [8]** 5/18 6/19 14/3 19/4 27/7 27/10
  27/18 28/11
**have [93]**
**haven't [2]** 5/12 8/18
**he [19]** 5/17 13/12 13/14 14/8 15/14
  15/17 19/9 24/11 25/3 27/12 28/11
  28/12 28/13 31/14 31/23 32/25 32/25
  33/1 33/1
**he'll [1]** 15/25
**he's [8]** 15/15 15/16 15/25 16/2 16/3
  16/3 25/18 27/13
**head [1]** 25/25
**hear [3]** 4/4 10/22 15/20
**heard [1]** 33/1
**hearing [2]** 8/16 16/12
**hearings [1]** 1/8 8/21
**heated [1]** 32/16
**heck [1]** 25/16
**held [1]** 15/1
**help [3]** 20/7 26/7 26/19
**helpful [1]** 16/23
**here [35]**
**higher [1]** 22/23
**highest [2]** 6/12 21/21
**highly [1]** 25/7
**him [8]** 5/23 10/22 12/2 27/3 28/1 28/2
  28/25 31/22
**himself [2]** 6/18 6/19
**hiring [1]** 10/25
**his [10]** 4/1 11/23 16/1 27/19 27/23
  28/11 28/13 28/13 31/16 32/10
**history [5]** 17/7 18/7 18/13 18/14
  32/24
**hit [1]** 17/5
**holds [1]** 15/17
**home [2]** 13/11 33/10
**honor [50]**
**Honor's [1]** 15/21
**HONORABLE [2]** 1/9 15/13
**hope [1]** 11/13
**hopeful [1]** 15/9
**hopefully [1]** 15/19
**how [2]** 3/19 4/22

**I**

**I'd [2]** 3/18 25/20
**I'll [5]** 3/6 6/2 10/16 27/11 28/21
**I'm [28]** 4/4 4/9 5/15 6/14 7/24 7/25
  9/19 10/9 10/9 10/22 11/18 13/16
  13/22 14/5 14/11 16/5 17/10 19/1
  19/17 19/24 21/11 22/12 24/20 27/12
  27/21 28/16 30/8 30/22
**I've [20]** 6/7 6/8 6/9 9/10 10/18 10/18
  11/11 12/16 13/7 13/15 14/2 14/16
  21/3 21/14 23/18 24/12 24/12 24/13
  24/13 25/17
**idea [4]** 18/18 25/19 25/25 28/13
**imagine [1]** 17/10
**impactful [1]** 32/23
**important [1]** 19/25
**including [2]** 4/18 6/2
**incorrect [1]** 29/8
**indeed [2]** 9/4 9/15
**INDEX [1]** 2/1
**indicated [1]** 25/18
**indicates [2]** 17/16 29/5
**infirmary [1]** 8/20
**inform [1]** 27/24
**informants [1]** 21/25
**information [18]** 13/23 17/7 17/11
  17/14 17/19 17/23 18/8 18/15 18/22
  19/4 20/21 21/5 21/6 22/5 22/7 22/10
  22/12 22/22
**initially [1]** 12/17
**instruct [1]** 27/18
**intelligence [1]** 23/8
**intend [1]** 24/16
**intention [2]** 10/25 11/19
**interested [1]** 32/3
**interesting [1]** 26/18
**interests [1]** 26/11
**interpret [1]** 12/13
**interrupt [1]** 28/21
**interrupts [1]** 4/8
**involves [1]** 17/11
**is [53]**
**issue [9]** 12/17 16/17 17/2 21/7 23/14
  23/16 23/17 31/10 31/11
**issued [1]** 11/12
**issues [2]** 24/14 26/18
**it [58]**
**it's [26]** 3/23 4/10 5/2 5/2 6/11 6/11
  6/17 7/20 8/2 8/3 8/5 13/3 13/23 19/11
  21/4 24/23 26/7 26/8 29/16 30/16 31/8
  31/8 31/9 32/6 33/2 33/13

**J**

**Jail [1]** 15/2
**January [1]** 31/7
**Jaws [1]** 20/14
**job [1]** 5/2
**John [1]** 13/12
**JOHNSON [29]** 1/7 3/4 3/14 3/14 3/16
  3/24 4/21 5/12 6/6 12/17 13/17 14/17
  15/2 15/24 16/2 16/7 16/11 23/8 27/10
  27/18 27/25 28/22 29/4 31/20 32/11
  32/16 32/21 32/25 33/3
**Johnson's [1]** 28/9
**journalist [1]** 24/13
**judge [19]** 1/9 6/8 7/1 7/17 11/12
  11/16 12/7 13/12 15/7 15/15 15/15
  17/3 17/6 17/9 22/6 22/8 25/17 31/7
  33/10
**judges [3]** 7/8 7/11 13/9
**judgment [2]** 19/18 24/1
**judgments [1]** 24/24

**Judicial [1]** 34/7
**jump [1]** 26/19
**just [23]** 3/25 6/2 7/20 9/11 9/14 11/11
  13/8 13/19 15/6 15/21 15/22 18/10
  19/23 21/15 24/7 24/24 25/20 27/12
  28/16 29/2 29/17 31/5 31/18
**Justice [2]** 21/21 23/1

**K**

**keep [2]** 8/11 25/6
**keeping [2]** 13/25 30/11
**kind [1]** 11/13
**kindness [1]** 9/25
**know [26]** 5/23 6/16 7/6 7/9 7/18 12/4
  14/11 16/2 16/2 16/3 18/13 18/18
  18/21 18/23 22/11 22/20 25/15 25/19
  26/1 26/25 27/15 30/22 31/14 31/22
  32/18 32/19
**knowing [1]** 18/16

**L**

**Lambert [5]** 3/10 3/10 14/6 20/24
  29/25
**largely [1]** 32/14
**largest [2]** 7/7 17/6
**last [6]** 3/20 7/22 8/7 9/14 29/14 29/17
**later [2]** 24/19 32/21
**lavishly [1]** 18/11
**law [8]** 12/12 21/11 21/13 21/15 21/23
  23/9 26/6 26/7
**lawsuit [11]** 6/10 14/20 14/24 21/17
  23/6 23/12 23/17 28/14 31/16 32/16
  32/19
**lawyer [7]** 4/15 4/17 4/20 4/21 4/22
  14/5 27/17
**lawyer's [2]** 4/18 4/19
**lawyers [1]** 14/8
**leader [1]** 32/22
**leash [1]** 13/25
**least [4]** 22/25 23/7 25/15 27/8
**leave [3]** 6/4 9/11 20/4
**leery [1]** 17/10
**leg [2]** 33/2 33/4
**legal [3]** 19/1 24/10 24/11
**less [3]** 8/2 15/17 19/25
**let [7]** 5/23 7/4 7/18 22/11 28/2 28/21
  30/15
**Let's [1]** 28/2
**level [1]** 21/21
**liberally [1]** 12/13
**light [1]** 29/2
**like [18]** 3/18 3/25 4/3 8/16 13/3 14/16
  14/19 15/6 17/8 17/12 18/8 22/3 22/6
  23/22 25/3 26/5 33/4 33/9
**likes [1]** 25/17
**Lincoln [2]** 6/16 14/7
**list [1]** 26/2
**litigate [1]** 31/6
**litigation [2]** 14/9 30/16
**little [3]** 17/10 18/19 30/5
**live [1]** 9/5
**living [1]** 16/3
**LLC [2]** 1/4 3/4
**LLP [2]** 1/12 1/16
**local [6]** 12/19 12/23 13/2 13/5 15/18
  20/6
**locate [1]** 25/10

**L**

London [1] 9/13
long [5] 7/20 10/18 14/16 22/4 30/12
look [2] 26/2 28/2
looked [1] 29/14
looking [1] 12/24
Looks [1] 22/6
loser [1] 14/10
lot [4] 8/12 13/8 20/10 22/1
Lyndon [1] 32/11

**M**

made [6] 5/13 21/13 22/8 23/8 26/23 31/12
magnitude [1] 6/12
Mail [2] 1/22 34/19
majority [1] 32/22
make [11] 5/11 5/17 9/14 10/1 17/25 22/20 23/2 23/24 23/25 24/16 26/14
making [1] 24/24
many [1] 33/11
MARK [1] 1/9
marked [1] 18/4
material [3] 17/13 21/16 29/15
materials [2] 27/16 27/23
matter [6] 3/3 5/2 10/14 11/10 16/6 34/5
matters [2] 19/25 21/21
may [27] 1/6 3/2 5/1 5/4 5/23 6/20 6/21 6/25 7/6 7/6 9/19 10/3 10/4 14/14 16/14 18/15 20/3 20/12 24/5 25/2 25/2 26/18 27/22 28/6 29/6 29/10 34/9
maybe [2] 26/16 29/3
McBryde [3] 13/12 15/7 33/10
me [37]
mean [2] 18/9 18/16
means [2] 7/19 14/3
meantime [1] 11/8
mechanical [1] 1/24
mediation [8] 5/20 5/24 11/15 11/23 12/7 15/12 15/14 14/26 12
merit [1] 15/10
merits [1] 24/21
mess [1] 7/25
message [5] 29/20 29/21 30/7 30/12 31/13
messages [3] 30/1 30/11 31/11
method [1] 14/3
mguzman.csr [2] 1/22 34/19
might [15] 6/16 13/11 14/14 15/6 17/10 20/4 20/6 25/16 25/23 25/24 26/6 27/23 28/10 30/4 33/10
mind [1] 4/10
mindful [1] 16/23
missing [1] 31/11
missionary [1] 9/25
misstatements [1] 31/12
moat [2] 25/1 25/1
money [1] 26/15
MONICA [4] 1/20 34/3 34/11 34/11
month [1] 30/14
monthly [1] 7/15
months [5] 8/3 8/3 8/3 8/6 30/14
more [7] 7/14 8/5 9/2 13/9 19/24 23/14 33/14
morning [1] 28/5
Moses [1] 32/10

most [3] 16/4 16/22 32/23
motion [22] 1/8 2/9 2/12 3/18 3/18 4/6 4/14 5/8 6/1 6/3 6/7 13/15 15/8 15/22 16/13 17/3 18/10 23/24 23/25 26/21 28/25 31/9
move [1] 25/18
Mr [32] 3/10 3/14 3/16 3/24 4/3 4/21 5/12 6/6 12/17 13/17 14/6 14/17 15/24 16/2 16/7 16/11 20/24 21/1 21/3 23/7 23/8 27/10 27/18 27/25 28/9 28/15 28/22 28/23 29/4 29/25 31/20 33/3
much [2] 8/11 13/9
Musk [3] 28/12 28/14 28/15
my [36]
myself [1] 25/20

**N**

name [4] 3/20 13/12 23/19 32/8
NCRA [1] 34/12
necessary [1] 11/2
need [19] 5/10 6/22 9/16 10/15 12/24 13/5 14/22 15/20 20/23 22/5 22/10 22/17 23/4 23/21 27/2 27/6 29/11 30/23 31/3
needs [3] 10/13 16/17 19/5
new [6] 7/1 11/12 13/4 14/7 17/1 31/16
next [1] 5/11
night [2] 29/14 29/17
no [19] 1/4 4/24 6/22 10/4 10/9 10/10 16/8 18/1 18/9 18/23 19/15 21/12 22/8 22/15 23/18 30/25 33/8 34/12 34/12
NORTHERN [3] 1/2 12/25 34/13
not [41]
noted [1] 31/11
notify [1] 4/1
November [1] 9/13
now [9] 6/7 6/13 6/17 7/17 12/25 21/20 25/2 28/1 30/1
number [4] 3/4 7/16 30/10 32/20
numbers [1] 7/15 7/22 7/25 8/7

**O**

objection [7] 4/24 16/6 19/15 21/12 21/14 22/15 30/25
objectionable [1] 21/4
objections [2] 13/18 18/23
obligation [8] 4/17 4/18 4/20 12/14 13/18 13/24 14/24 25/22
obligations [1] 4/1
Obviously [1] 26/17
off [1] 33/10
Office [2] 7/22 23/2
Official [1] 34/13
oftentimes [1] 14/9
Oh [2] 4/9 29/13
okay [18] 4/25 6/5 6/23 7/2 7/4 8/14 8/15 10/2 10/5 10/12 12/4 12/12 21/9 22/18 29/4 29/6 30/20 31/3
omissions [1] 31/12
once [1] 30/16
one [13] 6/17 7/5 9/24 13/2 13/24 15/22 16/22 17/6 17/15 23/14 25/15 29/19 32/23
online [1] 16/3
only [5] 5/10 7/8 7/11 17/19 20/17 21/2 31/20

opportunity [1] 16/18
opposite [1] 7/21
option [1] 8/23
order [8] 5/20 9/12 16/12 17/16 26/21 30/20 31/7 31/10
ordered [1] 3/15
ordering [2] 30/15 30/22
orders [2] 11/12 12/18
other [7] 7/10 9/3 9/25 10/15 14/23 21/22 25/4
others [1] 19/25
otherwise [1] 10/21
our [10] 7/22 12/22 12/22 13/10 14/22 15/22 17/7 25/22 25/23 32/24
out [12] 3/24 9/10 9/12 12/20 17/12 19/5 25/4 25/5 25/11 26/21 28/4 30/21
owe [1] 5/3

**P**

p.m [2] 1/7 3/2
PAGE [1] 2/2
paid [3] 12/2 12/9 12/10
pandemic [1] 9/2
paraplegic [1] 9/1
parking [1] 23/19
part [5] 9/23 13/6 23/10 25/22 30/20
participate [1] 14/14
participating [1] 14/24
Particularly [1] 5/19
parties [2] 18/4 18/5
party [2] 13/22 26/24
patience [2] 14/17 14/18
patient [1] 6/25
pattern [2] 12/16 14/13
pay [5] 4/18 4/21 5/4 11/23 26/15
Pearl [1] 1/13
pending [1] 31/16
people [3] 14/18 22/1 22/4
people's [2] 18/8 18/15
perfectly [3] 10/19 13/3 26/8
Perhaps [1] 13/16
permits [1] 4/15
person [6] 3/25 6/19 9/5 10/13 10/17 11/21
personal [5] 5/2 17/6 18/22 19/4 21/5
personally [2] 17/14 18/8 18/15
perturbed [1] 30/5
Petit [1] 25/3
Philippe [1] 25/3
phone [3] 20/23 21/1 21/3 26/2 29/22
photograph [1] 9/12
photographs [1] 9/9
physician [3] 9/20 9/21 10/20
physicians [1] 9/24
pick [3] 20/23 21/3 33/12
Piper [1] 1/12
PITTMAN [1] 1/9
place [2] 32/14 32/18
plaintiff [11] 1/12 3/6 4/1 9/11 17/1 17/4 17/12 18/13 19/8 24/9 31/11
plaintiff's [1] 18/21
plaintiffs [3] 3/9 12/6 17/16
plaintiffs' [1] 24/21
planning [1] 11/20
platform [1] 31/13
play [1] 15/17
pleadings [2] 12/13 32/3

# P

**Please [1]** 28/21
**podium [1]** 16/18
**point [8]** 1/4 3/3 3/9 7/10 7/11 13/22
14/3 14/5
**pointed [2]** 9/10 9/11
**points [1]** 24/23
**police [2]** 14/15 19/23
**politics [2]** 32/3 32/4
**population [1]** 7/13
**populationwise [1]** 7/7
**possession [1]** 29/25
**possible [4]** 5/18 15/10 27/20 29/16
**possibly [1]** 12/16
**posted [1]** 9/13
**potentially [1]** 18/20
**power [1]** 32/4
**practice [1]** 8/22
**predecessor [1]** 13/13
**prepared [2]** 12/7 13/16
**prescribed [1]** 34/7
**present [2]** 4/3 25/14
**presented [1]** 29/5
**presents [1]** 26/18
**president [4]** 32/21 32/22 32/22 32/24
**presidential [1]** 32/23
**presiding [1]** 15/15
**Preston [1]** 1/17
**presumably [1]** 16/6
**pretty [1]** 13/25
**previous [1]** 22/6
**previously [2]** 13/7 16/1
**printed [1]** 28/4
**printout [1]** 29/5
**prior [2]** 24/24 28/15
**pro [6]** 10/24 11/2 12/13 15/25 20/8
25/23
**probably [5]** 7/25 19/17 19/21 29/1
32/7
**problem [2]** 20/8 29/23
**proceed [1]** 11/2
**proceeding [1]** 10/24
**proceedings [4]** 1/24 16/24 33/18
34/5
**produce [3]** 13/18 22/5 22/7
**produced [2]** 1/24 18/11
**producing [1]** 22/23
**Professional [1]** 4/14
**pronounce [1]** 3/19
**proposed [1]** 17/15
**protected [9]** 17/7 17/14 18/8 18/15
18/22 21/6 22/22 23/23 24/15
**protects [1]** 17/13
**protocol [1]** 17/18
**provide [2]** 17/13 20/5
**provided [2]** 5/21 17/16
**public [1]** 21/13
**purge [1]** 15/3
**purged [1]** 31/14
**pursuant [1]** 15/24

# Q

**quarter [1]** 17/8
**question [2]** 28/10 32/6
**questions [1]** 20/25
**quickly [1]** 8/10
**quiet [1]** 6/22

**Quint [1]** 20/13
**quite [2]** 14/8 18/11

# R

**raining [1]** 33/2
**rather [1]** 7/18
**reactivate [1]** 27/19 28/11
**Reactivation [1]** 2/18
**read [4]** 11/11 15/7 24/12 33/10
**real [1]** 14/10
**really [5]** 17/22 19/12 20/2 26/7 31/5
**reason [3]** 13/6 18/9 24/8
**reasonable [2]** 4/19 18/23
**reasons [1]** 13/6
**receiving [1]** 16/6
**recently [1]** 17/5
**recess [1]** 33/16
**record [6]** 3/25 9/10 10/19 15/23 31/8
34/5
**recourse [2]** 19/3 19/5
**regarding [4]** 2/18 4/17 12/18 31/12
**Region [1]** 15/16
**relatively [1]** 9/24
**relevant [2]** 17/19 20/22
**relief [1]** 13/17
**remember [1]** 6/17
**reminded [1]** 27/18
**reparations [1]** 17/8
**reported [1]** 1/24
**REPORTER [3]** 1/20 4/8 34/13
**REPORTER'S [1]** 33/19
**represent [4]** 3/7 15/19 25/19 26/8
**representations [2]** 12/5 23/8
**Representative [1]** 32/15
**represented [7]** 6/10 6/13 13/3 21/18
22/6 26/12 29/24
**representing [3]** 4/16 20/23 25/6
**represents [2]** 6/18 6/19
**request [10]** 4/4 4/22 9/16 9/18 10/6
10/10 11/1 15/23 21/4 26/23
**requests [4]** 8/17 10/8 18/24 19/14
**require [1]** 12/23
**requires [1]** 12/12
**resolution [1]** 21/2
**resource [1]** 25/24
**resources [2]** 20/6 26/3
**respond [2]** 13/21 28/22
**response [2]** 9/9 30/9
**responses [1]** 20/22
**responsive [1]** 17/25
**restore [4]** 28/18 29/16 30/23 30/23
**result [2]** 8/9 32/19
**retain [2]** 18/20 18/20
**retained [1]** 31/15
**returning [1]** 20/25
**reverse [1]** 27/6
**review [1]** 13/15
**reviewed [3]** 21/4 27/15 29/14
**RICO [2]** 23/17 23/20
**rid [1]** 8/4
**right [10]** 3/12 6/1 10/25 11/9 16/9
23/9 24/18 28/1 33/9 33/16
**rights [3]** 23/23 24/10 24/11
**Road [1]** 1/17
**Robert [2]** 32/8 32/10
**Room [2]** 1/20 34/17
**roughly [1]** 31/16

**route [1]** 26/16
**RPR [3]** 1/20 34/3 34/11
**Rule [1]** 15/24
**rules [9]** 4/14 9/8 11/5 12/15 12/19
12/22 12/22 13/10 30/16
**ruling [2]** 17/3 27/15
**Ruling.............................26 [1]** 2/16
**rulings [1]** 15/8
**run [4]** 7/15 8/10 13/7 17/17

# S

**said [10]** 6/15 7/23 12/14 15/6 18/22
22/13 26/4 26/15 28/12 33/9
**same [4]** 11/5 12/6 15/18 15/19
**sanction [1]** 19/21
**sanctioned [1]** 13/20
**sanctions [1]** 27/7
**satisfy [1]** 9/1
**save [1]** 29/3
**saw [4]** 7/22 8/7 12/18 22/2
**say [10]** 11/11 14/8 21/3 23/4 25/16
30/9 32/2 32/4 32/25 33/2
**saying [6]** 7/24 10/10 14/19 21/24
30/2 32/25
**says [3]** 18/3 28/17 28/18
**scheduled [2]** 5/24 11/15
**scheduling [1]** 5/19
**School [1]** 26/6
**screenshot [1]** 28/17
**se [5]** 10/24 11/2 12/13 15/25 20/8
**search [2]** 17/17 28/25
**second [2]** 32/13 32/14
**secret [1]** 22/22
**Securities [1]** 21/22
**see [8]** 3/23 8/16 8/16 8/18 14/13 25/9
29/17 31/23
**seek [1]** 17/19
**seem [1]** 25/14
**seen [4]** 9/9 10/18 12/16 14/3
**senate [2]** 32/21 32/22
**sense [1]** 17/25
**sentenced [1]** 9/5
**series [2]** 32/11 32/13
**served [2]** 8/17 21/13
**service [1]** 15/25
**services [1]** 4/18
**several [1]** 16/25
**severe [1]** 27/8
**shared [1]** 18/5
**sharks [3]** 20/10 25/1 25/7
**Sharon [1]** 17/9
**she [2]** 31/10 31/11
**shenanigans [1]** 8/12
**shoes [1]** 20/9
**short [4]** 9/24 13/25 16/16 16/16
**should [3]** 4/1 14/4 21/15
**show [5]** 9/22 10/21 12/7 23/2 27/12
**showing [1]** 11/21 22/21
**shown [2]** 19/20 27/25
**sic [2]** 4/1 8/20
**side [2]** 8/5 25/5
**sides [2]** 19/2 25/1
**Signal [7]** 29/20 30/1 30/7 31/5 31/10
31/11 31/13
**Signed [1]** 34/9
**sir [14]** 3/16 5/13 6/24 10/11 11/17
11/19 15/5 16/8 16/20 23/15 28/7

**sir... [3]** 29/11 32/9 33/6
**sitting [1]** 3/10
**situation [1]** 17/3
**six [1]** 8/6
**smart [1]** 26/7
**some [14]** 12/17 13/21 19/2 19/3 19/4 20/6 20/6 20/22 22/21 24/14 26/6 26/18 27/23 29/3
**somebody [6]** 15/16 26/13 26/13 26/17 33/12 33/13
**someone [6]** 12/24 13/4 14/13 23/1 25/10 25/14
**something [8]** 6/15 6/17 10/14 17/8 18/3 20/1 20/3 26/25
**soon [2]** 5/18 15/10
**sophisticated [1]** 14/11
**sorry [2]** 4/9 5/16
**sort [3]** 16/16 19/2 22/21
**sorts [1]** 8/24
**sought [1]** 13/17
**source [1]** 18/20
**sources [1]** 24/16
**Southern [1]** 7/1
**speak [3]** 6/23 8/14 16/19
**specifically [1]** 12/19
**speech [1]** 14/7
**speeding [1]** 23/19
**spending [1]** 16/3
**spoliation [2]** 26/24 30/17
**spot [1]** 25/17
**stage [1]** 24/1
**stand [3]** 16/18 29/11 33/16
**stark [1]** 8/5
**state [3]** 7/10 15/14 27/11
**statements [1]** 18/14
**STATES [4]** 1/1 1/9 9/4 34/8
**stems [3]** 23/17 24/6 31/14
**stenography [1]** 1/24
**Stevenson [1]** 32/17
**still [3]** 11/5 12/14 21/4
**stop [2]** 30/15 33/10
**stories [1]** 33/1
**Street [3]** 1/13 1/20 34/17
**stringent [1]** 13/9
**students [1]** 26/7
**stuff [3]** 14/19 19/11 20/16
**subject [2]** 11/5 11/24
**submit [1]** 17/17
**Substack [7]** 14/19 27/23 28/10 28/12 29/20 29/24 30/9
**substantially [1]** 4/17
**such [2]** 22/8 31/15
**sued [1]** 29/25
**suffering [1]** 8/20
**suggest [1]** 22/24
**Suite [2]** 1/13 1/17
**summary [1]** 23/25
**summer [1]** 9/4
**sure [6]** 5/17 19/6 22/19 23/13 28/4 32/5
**swimming [1]** 20/10
**system [3]** 29/21 30/7 30/12

**T**

**table [1]** 3/11
**take [10]** 3/18 7/20 10/16 10/16 15/9
**taken [1]** 28/9
**taking [1]** 26/25
**talk [2]** 24/10 25/16
**talked [1]** 13/7
**talking [2]** 14/11 24/21
**Tarrant [3]** 20/5 25/25 33/11
**Telephone [4]** 1/14 1/18 1/21 34/18
**tell [11]** 3/6 3/19 6/9 7/17 9/22 10/21 22/1 30/23 31/3 32/2 33/2
**telling [2]** 22/4 24/24
**ten [1]** 7/14
**tend [3]** 8/10 13/7 13/9
**tentative [2]** 14/1 15/8
**terms [2]** 17/7 17/17
**TEXAS [13]** 1/2 1/5 1/14 1/18 1/21 7/10 7/13 12/25 26/6 32/20 34/12 34/13 34/17
**texts [1]** 30/1
**than [6]** 7/14 8/2 9/3 13/8 15/17 19/25
**thank [6]** 3/16 3/16 6/5 16/10 16/20 31/4
**that [207]**
**that's [26]** 4/10 5/20 5/24 5/25 6/14 8/22 10/7 10/9 11/19 12/24 13/2 13/17 13/25 14/5 15/8 18/6 23/10 25/22 25/24 26/12 26/16 27/20 28/19 29/8 30/17 30/21
**their [1]** 14/18
**them [11]** 5/3 17/9 18/3 22/11 22/12 22/15 26/15 30/24 31/3 31/4 31/15
**Then [3]** 10/12 31/3 32/15
**there [20]** 5/23 10/13 15/10 16/25 18/7 19/5 20/10 22/8 23/7 25/1 25/6 25/11 25/11 26/13 26/21 28/10 30/21 30/24 31/1 32/7
**there's [14]** 4/7 4/13 5/20 10/14 17/2 18/13 18/14 21/7 23/16 23/20 26/5 26/20 28/17 30/25
**these [12]** 3/25 7/25 13/18 13/22 15/10 16/24 19/13 19/17 20/22 24/16 24/23 27/25
**they [23]** 5/4 5/14 13/8 14/4 14/14 17/17 17/19 17/22 17/23 18/15 20/5 21/15 21/24 22/11 22/13 22/17 23/24 29/15 29/19 29/20 29/23 30/4 31/15
**they'll [3]** 13/5 15/19 26/2
**they're [6]** 13/19 21/10 21/17 24/14 24/15 33/14
**they've [1]** 5/1
**thing [4]** 5/10 11/13 12/6 15/22
**things [9]** 6/6 7/5 7/20 8/10 13/7 17/15 24/11 26/5 29/19
**think [26]** 5/1 7/19 8/7 10/14 13/13 14/10 15/24 16/4 16/17 18/12 18/25 19/10 21/15 22/5 23/16 24/5 25/24 27/2 27/5 27/20 29/1 29/3 29/22 29/23 30/22 31/13
**third [2]** 13/22 26/24
**this [50]**
**THOMPSON [5]** 1/12 3/9 21/3 23/7 28/23
**Thompson's [1]** 21/1
**those [10]** 5/4 5/5 5/13 6/2 6/17 7/14 9/8 28/2 30/2 34/7
**thought [2]** 28/10 28/14
**three [2]** 6/8 7/16
**through [1]** 4/1/5
**ticket [3]** 6/1 23/19 23/19
**tightrope [2]** 24/25 25/2
**time [26]** 4/4 7/20 7/23 8/12 9/14 10/1 10/18 11/1 13/21 14/10 14/11 14/15 14/15 14/16 14/17 14/18 16/3 16/20 19/23 24/17 24/19 25/23 27/10 29/3 30/10 30/12
**times [2]** 7/14 7/16
**title [1]** 15/18
**today [12]** 3/17 9/15 9/22 10/21 15/23 16/21 18/10 19/20 20/1 20/4 27/12 30/16
**today's [1]** 16/12
**told [3]** 22/7 24/11 31/19
**too [3]** 8/11 14/20 22/11
**took [2]** 32/14 32/18
**top [1]** 22/22
**Trade [1]** 25/3
**traffic [1]** 6/11
**transcript [5]** 1/8 1/24 11/11 34/4 34/6
**trap [1]** 19/17
**travel [2]** 10/20 10/23
**traveling [1]** 9/13
**trial [1]** 8/1
**trials [1]** 9/3
**trick [1]** 32/6
**tried [1]** 7/23
**trouble [7]** 11/24 13/20 14/12 14/20 26/9 30/18 31/25
**true [6]** 6/20 18/6 34/4
**truthful [2]** 14/22 15/17
**try [11]** 7/2 11/3 13/24 22/14 22/17 26/16 27/3 27/7 27/8 29/17 33/13
**turn [2]** 21/5 21/16
**tweets [1]** 30/1
**Twitter [4]** 14/18 28/16 29/16 30/22
**two [6]** 7/8 7/11 8/2 30/14 31/16 33/15
**Tyler [1]** 7/12
**type [1]** 14/4
**typically [3]** 21/24 22/2 22/25

**U**

**U.S [1]** 23/2
**Uber [1]** 20/4
**under [4]** 4/14 11/9 23/22 23/24
**understand [22]** 5/6 8/19 11/25 15/4 15/21 16/11 19/12 19/16 19/22 20/12 20/15 23/5 23/7 24/2 24/5 26/10 27/2 28/24 30/4 31/24 32/1 33/5
**Understood [3]** 8/13 14/21 27/4
**unfortunately [1]** 8/21
**UNITED [4]** 1/1 1/9 9/4 34/8
**unless [3]** 4/20 8/14 26/20
**unrelated [1]** 17/24
**unspecific [1]** 29/21
**until [3]** 6/22 8/1 15/3
**unusual [1]** 22/2
**up [21]** 3/18 5/20 7/25 8/11 9/22 10/16 10/16 10/21 11/21 16/18 19/20 20/16 20/23 21/3 23/2 24/18 26/2 26/25 27/12 28/3 31/10
**upcoming [1]** 26/12
**urinate [2]** 33/2 33/3
**us [3]** 1/12 4/11 27/9
**use [4]** 10/16 12/20 26/5 29/21
**used [2]** 14/7 14/8 32/25

**usually [1]** 33/13

**V**

**vaguely [1]** 30/8
**valid [1]** 24/22
**valuable [1]** 22/1
**vendor [1]** 26/24
**versus [1]** 8/3
**very [12]** 5/4 7/19 8/9 8/10 12/22 13/7 20/11 22/1 22/4 25/15 25/18 32/3
**vice [1]** 32/22
**view [1]** 24/8
**violations [3]** 12/19 12/19 17/6
**VOL [1]** 2/2
**VOLUME [1]** 1/8
**votes [1]** 32/20
**vs [2]** 1/6 3/4

**W**

**walking [2]** 19/16 24/25
**want [22]** 6/10 7/19 11/11 13/11 13/13 14/14 15/6 15/9 15/16 16/22 20/3 20/4 20/13 21/5 24/7 25/5 25/16 26/13 31/6 31/17 31/18 33/10
**wanted [2]** 26/11 29/2
**wanton [1]** 18/7
**warning [1]** 4/19
**was [26]** 3/19 6/15 7/9 8/7 8/8 9/23 9/23 9/25 13/12 16/21 16/22 17/5 19/7 22/2 23/1 23/8 23/23 24/10 24/11 28/9 28/13 28/14 30/3 30/11 32/7 32/16
**waters [1]** 20/10
**way [6]** 13/11 17/13 21/2 22/25 23/7 33/9
**we [48]**
**we'll [4]** 5/17 26/21 30/24 33/16
**we're [7]** 3/3 8/6 13/8 22/3 24/8 26/25 27/14
**we've [2]** 9/1 18/16
**well [25]** 3/15 5/3 5/5 6/21 8/8 9/11 9/21 9/23 11/3 12/4 13/5 16/25 18/25 21/8 21/17 22/17 23/20 24/10 24/11 24/18 26/18 29/23 30/13 31/1 32/13
**went [4]** 6/3 25/3 29/24 32/21
**were [10]** 6/9 20/9 22/8 22/9 23/7 23/8 23/23 25/5 29/20 29/25
**what [18]** 4/1 8/16 8/18 9/6 9/8 9/11 10/7 10/9 12/16 12/18 13/14 14/2 14/11 18/25 24/12 24/12 24/20 29/22
**what's [4]** 10/19 20/17 29/4 31/20
**whatever [2]** 22/13 23/3
**when [18]** 8/16 13/10 14/10 14/23 18/12 18/12 20/3 22/2 23/1 23/25 25/3 27/7 29/11 29/14 29/14 29/24 31/16 32/25
**whenever [1]** 21/14
**where [8]** 13/4 15/1 16/2 16/3 17/2 17/23 20/1 20/10
**whether [5]** 11/4 12/20 14/3 14/24 28/11
**which [6]** 17/1 17/1 17/3 29/21 29/21 29/22
**while [1]** 26/7
**who [5]** 3/6 3/7 6/18 6/19 9/25
**why [6]** 9/21 13/6 16/18 23/21 25/24 30/9

**wife [2]** 17/11 17/24
**will [23]** 3/8 6/1 7/3 9/6 10/7 10/12 11/14 14/20 16/12 16/19 17/17 18/5 22/11 22/13 23/2 24/16 24/18 26/20 30/13 30/15 30/20 31/4 32/2
**WILLENBURG [4]** 1/20 34/3 34/11 34/11
**WILLIAM [2]** 1/12 1/16
**willing [2]** 13/21 13/22
**win [1]** 14/4
**window [1]** 9/24
**winner [1]** 14/9
**withdraw [12]** 2/5 3/23 4/2 4/6 4/14 4/16 4/20 4/23 5/9 6/2 9/16 9/18
**withdrawing [2]** 10/6 10/10
**within [4]** 5/11 5/18 24/10 24/11
**without [1]** 18/16
**won't [2]** 22/4 33/4
**wonder [1]** 14/2
**work [3]** 9/25 21/23 28/15
**worked [1]** 22/13
**working [4]** 21/20 21/21 22/3 22/9
**workload [2]** 7/18 8/11
**works [1]** 22/25
**World [1]** 25/3
**WORTH [15]** 1/3 1/5 1/21 7/6 7/13 7/24 8/22 12/21 13/1 15/17 25/25 33/13 33/14 34/14 34/17
**Worth-based [1]** 13/1
**would [43]**
**wouldn't [2]** 4/10 19/20
**write [1]** 24/12
**written [3]** 24/12 24/13 24/13

**X**

**XXX [1]** 30/1

**Y**

**yahoo.com [2]** 1/22 34/19
**Yeah [4]** 16/15 23/11 28/19 32/5
**year [2]** 9/14 31/8
**years [5]** 6/8 8/2 21/20 24/25 31/17
**yes [22]** 4/5 4/12 5/17 5/21 6/24 10/10 10/11 11/17 12/8 12/10 15/5 16/20 20/15 21/7 23/15 24/2 28/7 29/8 29/11 32/4 32/9 33/6
**yet [2]** 12/2 17/5
**York [5]** 7/1 11/12 13/4 17/2 31/16
**you'd [2]** 4/3 13/3
**you'll [3]** 11/24 12/5 17/16
**you're [27]** 6/4 7/9 8/20 9/15 10/19 10/24 11/5 11/18 11/20 13/4 14/10 14/25 16/25 19/10 19/16 20/1 20/9 20/11 20/16 22/1 22/23 30/1 30/16 30/21 32/2 32/3 32/7
**you've [2]** 8/17 27/15
**you-all [1]** 12/7
**your [83]**
**yourself [5]** 9/13 15/3 21/18 25/14 26/8

**Z**

**zero [1]** 21/14
**Zoom [1]** 8/21

# EXHIBIT 13

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC, ET AL.,

    **Plaintiffs,**

v.                                                      No. 4:24-cv-00988-P

CHARLES JOHNSON,

    **Defendant.**

## ORDER TO SHOW CAUSE

On May 8, 2025, the Court held a hearing on Counsel for Defendant's Motion to Withdraw. ECF No. 54. At the hearing, and in the subsequent order on the motion, the Court informed Mr. Johnson that he would be expected to attend the scheduled mediation in person and to pay for his part of the mediation fee. *See* ECF Nos. 52 at 1 n.1; 55 at 11 (The Court: "You better pay his mediation fee or you'll be subject to getting in trouble from me. Do you understand that?" Mr. Johnson: "I do."). It has come to the Court's attention that despite being warned, in a written order and at the hearing, that Mr. Johnson would be subjected to sanctions for failing to pay for or participate in the mediation, Mr. Johnson did neither. In fact, the mediator canceled the mediation because Mr. Johnson failed to provide any of the information or documents requested by the mediator and failed to pay his portion of the mediation fee. Consequently, the Court finds it appropriate to **SET** a show cause hearing on this issue for **Thursday, June 5, 2025, at 1:30 p.m.**, in the fourth-floor courtroom of the Eldon B. Mahon United States Courthouse. Mr. Johnson shall come prepared to **SHOW CAUSE** as to why he should not be sanctioned for failing to comply with the Court's orders and participate in this litigation.

    **SO ORDERED** on this **21st day of May 2025.**

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

# EXHIBIT 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-00988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR FURTHER RELIEF AND NOTICE OF DEFENDANT
JOHNSON'S NON-COMPLIANCE WITH COURT'S MAY 8, 2025**

**INTRODUCTION**

Plaintiffs submit this Notice to document Defendant Charles Johnson's deliberate and total failure to comply with the Court's May 8, 2025 Order ("Order"). (ECF No. 52.) That Order required Johnson to conduct searches using terms Plaintiffs provided, reproduce documents with intact metadata, reactivate and search his X account, and supplement his discovery responses in accordance with Rule 34. (ECF No. 52(1)-(5).) Johnson did none of it. Instead, Johnson chose to grandstand—turning his noncompliance into a public spectacle for his followers. He leaked Plaintiffs' search terms—materials never filed publicly—to a political ally and defender, sparking press inquiries to Plaintiffs about the search terms.

After the Court's May 29th deadline for compliance passed, Johnson hosted a live chat on his Substack platform and made clear that his noncompliance was not inadvertent—it was the plan. "It's an honor to pay sanctions for expressing my viewpoint," he told his audience. He admitted the case was going "exactly as I want," and explained:

App.569

Let's say—hypothetically—that I knew who was really backing the lawsuit against me and that I wanted the judges in both cases [the N.D. Tex. And S.D.N.Y.] to be adverse to me to create the impression that it was me against the system.

(Johnson May 31, 2025 Live Chat, Ex. A at Appx. 011.)

Then he added: "It's called leadership." (*Id.*)

This is not garden-variety non-compliance. It is a strategy of obstruction, calculated to avoid accountability while recasting the litigation as a political spectacle. Johnson has made clear—in his own words—that he prefers the consequences of obstruction over the obligation to produce documents and answer for his conduct. And this is not an isolated incident. In parallel proceedings in the Southern District of New York, Judge Failla recently issued a show cause order after finding that Johnson "willfully continues to fail to comply with discovery obligations, and worse yet, continues to make demonstrably false statements about his purported communications with federal government employees." Johnson's pattern of obstruction has persisted there despite prior monetary sanctions. It is now continuing here in the Northern District of Texas.

Johnson does not view his disregard for the judicial process as problematic. It is a badge of honor he wears for his followers. And it is squarely at odds with the Court's authority and the orderly administration of justice.

**DISCUSSION**

I.    **Detailed Timeline of Johnson's Non-Compliance**

➢ May 15, 2025: Plaintiffs Provide Search Terms, a Protocol for Handling Privileged Information, and Link to N.D. Tex. Protective Order

On May 15, 2025, Plaintiffs timely served Mr. Johnson with their proposed search terms, a protocol for handling privileged information, instructions for the production format, and a path forward to address any of Johnson's privacy issues. (Exhibit B, Appx. 019-28)

App.570

First, the protocol for handling privileged materials explained that any vendor performing the document search could flag and exclude privileged communications before production. Johnson was also reminded of his obligation to log withheld documents in accordance with Rule 26(b)(5).

Second, Plaintiffs specified the format in which responsive documents were to be produced. The instruction emphasized the need to preserve metadata and ensure usability—a requirement that mirrored the Court's directive and avoided disputes about incomplete or technically deficient productions.

Finally, in response to Mr. Johnson's prior concerns about personal privacy, Plaintiffs included a link to the Northern District of Texas's model protective order and offered to negotiate a stipulated order in substantially similar form. Plaintiffs stated that they were open to entering into a mutually agreed-upon order to safeguard any sensitive personal or confidential information.

This was a comprehensive, good-faith effort to ensure that Mr. Johnson had the tools, guidance, and legal protections necessary to comply with the Court's Order.

> ➤ May 16, 2025: Johnson Responds by Email and Indicates Noncompliance

Johnson responded by email to Plaintiffs' letter. He did not agree to run the search terms. He did not identify any specific burdens or propose any modifications or take issue with any specific term. Instead, he stated that "I'm not going to be turning over material that is First Amendment protected and/or involves communications with law enforcement."[1] (Johnson May 16, 2025 email to W. Thompson, Ex. C at Appx. 032).

---

[1] Johnson raised the temporal scope of the requests, stating "you haven't identified a date. What window are we talking about here?" Plaintiffs noted that the discovery requests provided a specific time period of January 1, 2019 to the present. (Johnson May 16, 2025 email to W. Thompson, Ex. C at Appx. 031.)

App.571

Johnson did not explain what specific materials he believed were protected or confidential. He did not assert any recognized privilege under Rule 26(b)(5), offer to produce a privilege log, or commit to a good-faith review. He simply declared, without qualification, that he would not be turning over that material

> ➤ May 21, 2025: Plaintiffs Clarify that First Amendment and Law Enforcement Claims Do Not Excuse Compliance

The next business day, Plaintiffs responded to Johnson's email, explaining that his refusal to produce documents based on vague assertions of First Amendment protection or law enforcement communications was inconsistent with the Court's May 8 Order. Plaintiffs reiterated that the Order requires Johnson to run the searches and collect responsive documents. Plaintiffs also reminded Johnson that he had raised these same First Amendment and law enforcement concerns, but that the Court had already addressed them. (*See* Ex. D, Transcript of May 8, 2025 Hearing, Appx. 112-13.) Johnson did not respond to Plaintiffs' correspondence.

> ➤ May 23, 2025: Show Cause Order Issued in the S.D.N.Y for Johnson's Obstruction:

Judge Failla wrote that Johnson "willfully continues to fail to comply with discovery obligations, and worse yet, continues to make demonstrably false statements about his purported communications with federal government employees." The court noted "the seriousness of [his] violations of his discovery obligations, the extended period of time over which these discussions have taken place, and the lack of effectiveness of prior efforts, including monetary sanctions." (*Johnson v. ClearviewAI*, No. 23-cv-2441, ECF No. 93 (May 23, 2025), Ex. E, Appx. 113.)

> ➤ May 29, 2025: Johnson Misses Court Deadline Without Explanation or Effort

Despite the Court's clear instructions, Mr. Johnson did not conduct the required searches, did not attempt to reactivate his X account, and did not supplement his written discovery responses.

App.572

## II.    Ignoring the Court's Order, Johnson Tries to Spin Himself as a Martyr—Leaking the Search Terms, Pushing Conspiracies, and Declaring "It's an honor to pay sanctions for expressing my viewpoint"

Over the span of roughly three weeks, Johnson leaked the Court-ordered search terms, cast himself publicly as a political target, and declared it "an honor to pay sanctions." What he did not do was comply with the Order. The timeline below makes clear where he focused his energy—and what he chose to ignore.

➢ May 16, 2025: Johnson Leaks Search Terms to Social Media Commentator and Johnson Defender:

The day after Plaintiffs served the letter containing the search terms, political commentator Jordan Arthur Bloom—a public ally and regular defender of Johnson—published a Substack post describing the search terms and speculating that Elon Musk was behind the lawsuit. (Arthur Bloom Substack May 16, 2025, Ex. F at 136-136-2.)[2] Johnson never responded when Plaintiffs asked if he "Circulat[ed] . . . Plaintiffs' Search Term Letter to Journalists and Social Media Posters," an inquiry that specifically mentioned Arthur Bloom.  (Ex. C at Appx. 030.)

➢ May 20, 2025: Wall Street Journal Reporter Contacts Plaintiff Lambert and References Search Terms:

A Wall Street Journal reporter contacted Plaintiff Hal Lambert and asked whether Elon Musk was funding the litigation. (Ex. G, Declaration of Hal Lambert at ¶3, Appx. 138). The

---

[2] This article can also be found at https://substack.com/home/post/p-163745554 (last visited June 4, 2025).

questions reflected detailed familiarity with the search terms, confirming that the leak had reached national media.

> May 31, 2025: Johnson Hosts Live Chat, Says "It's an honor to pay sanctions" and states that he "wanted the judges in both cases to be adverse to me."

Two days after missing his Court-ordered discovery deadline, Johnson hosted a public live chat on his Substack platform. He used the platform not to explain or excuse his noncompliance—but to frame it as deliberate and strategic. He spoke openly and repeatedly about this case. He did not deny his failure to comply with the Court's May 8 Order. In fact, he celebrated his non-compliance. He told his audience:

- "It's an honor to pay sanctions for expressing my viewpoint." (Ex. A, Appx. 011)

- The lawsuit was going "exactly as I want" and admitted that he had engineered the optics of the litigation to serve a broader narrative. (*Id.*)

- "I wanted the judges in both cases [the N.D. Tex. And S.D.N.Y.] to be adverse to me to create the impression that it was me against the system" (*Id.*)

- Even losing the case would make him "an American legend" (*Id.*)

- Plaintiffs' discovery requests are "a disinformation op." (*Id.* at Appx. 017.)

Johnson also pressed a theory that Elon Musk was behind the lawsuit and cited the undersigned counsel's prior affiliations with Quinn Emanuel and DLA Piper as supposed evidence of a coordinated campaign against him. He speculated that this Court would agree with his view, stating: "It's quite unfortunate that Elon Musk's law firm has decided to back Lambert but it's also quite alright. I see it for what it is and I suspect so, too, will Judge Pittman." (Ex. A, Appx. 013)

As further "proof" of Musk's involvement, Johnson advanced a convoluted syllogism: that Musk is Mormon or has ties to Mormonism; that John Quinn, the founder of Quinn Emanuel, was "a Utah Mormon" and "lives in Pasadena which is where a lot of Mormons" live, and finally that the undersigned counsel "hails from Western Montana, a sort of Mormon stronghold." (Charles

Johnson, *The Souls of Mormonfolk: Elon Musk, Jeff Flake and the Future of American Aerospace and the Mountain West*, Substack, (Nov. 2, 2024), Ex. H at Appx. 158). Following Johnson's inflammatory statements, Plaintiffs sent him a letter warning him to cease such conduct. (*See* Dec. 31, 2024 Letter to Johnson, referencing a tweet where Johnson said, "I'm told that Elon Musk instructed John Quinn, who is a Mormon . . . through Quinn Emanuel, to sue me on behalf of Hal Lambert and the Chinese interests."), Ex. I at Appx. 162.)

Johnson's May 31 live chat, among other things, shows that he never intended to comply with the Order. He viewed his noncompliance as a feature, not a bug to his legal strategy. He is using defiance, obfuscation, and obstruction not as a temporary tactic, but as a badge of honor—something to display to his audience as proof of victimhood and principle. Faced with the prospect of answering for his conduct and revealing its full scope, he has chosen instead to embrace the consequences of disobedience, so long as he can recast them as evidence of persecution. That is not litigation strategy. It is contempt.

## CONCLUSION

Johnson has made clear—through both action and admission—that he has no intention of complying with this Court's discovery Order. Johnson cannot hide behind the fact that he is pro-se defendant struggling to comply. He is a serial litigant who claims to be extremely wealthy (ECF No. 11). This lawsuit comes after he had twice filed lawsuit against the Plaintiffs that were both dismissed, and his order to show cause pending in the S.D.N.Y. is over counterclaims in a lawsuit he initiated and where his claims were also dismissed.

Plaintiffs respectfully submit that re-ordering his compliance is no longer sufficient. At this stage, the Court should require Mr. Johnson to surrender the relevant devices and accounts to a neutral third party for immediate collection and review, using the Plaintiffs' search terms and pay all the costs that Plaintiffs have incurred in seeking discovery from him in this case.

App.575

While a default judgment may ultimately be warranted, it is not sufficient to fully redress the harm in this case. This litigation concerns a coordinated scheme that extends beyond Johnson himself. His discovery is critical to uncovering the full scope of that scheme, the extent of the harm inflicted, and the identities of those involved—including, but not limited to, the named co-conspirator in this action, Gator Greenwill.

The integrity of the discovery process and the Court's authority are both at stake. Mr. Johnson has already demonstrated that he will not comply voluntarily. Plaintiffs respectfully request that the Court impose measures sufficient to ensure full and immediate compliance—starting with neutral, third-party execution of the Court's own Order.

Dated: June 4, 2025                          Respectfully submitted,

                                             /s/ Will Thompson
                                             Will Thompson
                                             DLA PIPER LLP (US)
                                             State Bar No. 24094981
                                             will.thompson1@us.dlapiper.com
                                             1900 N. Pearl Street
                                             Dallas, Texas 75201
                                             Telephone: (406) 546-5587

                                             COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2025, a true and correct copy of the foregoing document was filed electronically using the CM/ECF system.

                                             /s/ Will Thompson
                                             Will Thompson

App.576

# EXHIBIT 15

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**POINT BRIDGE CAPITAL, LLC, ET AL.,**

    Plaintiffs,

v.                                                    **No. 4:24-cv-00988-P**

**CHARLES JOHNSON,**

    Defendant.

## ORDER

This Court previously set a hearing for June 5, 2025, at 1:30 p.m. ECF No. 57. The hearing was set for Defendant Charles Johnson to show cause as to why he should not be sanctioned for failing to comply with the Court's orders and participate in this litigation. *Id.*

On June 4, 2025, Plaintiffs filed a Motion for Further Relief and Notice of Defendant Johnson's Non-Compliance with the Court's May 8, 2025, Order. ECF No. 58. Having considered the Plaintiffs' Motion, the Court hereby **SETS** the Motion for hearing at the same time as the previously set hearing on **June 5, 2025, at 1:30 p.m.**

Therefore, Mr. Johnson shall come prepared to **SHOW CAUSE** for the following: (1) failure to provide information or documents requested by the mediator; (2) failure to pay his portion of the mediation fee; (3) noncompliance with his discovery obligations as discussed in Plaintiffs' Motion.

**SO ORDERED** on this **5th day of June 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE

App.578

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **Case No. 4:24-cv-00988-P** |
| | § | |
| **Charles Johnson,** | § | |
| *Defendant* | § | |
| | § | |
| | § | |

## <u>ORDER</u>

On this day, the Court Considered Plaintiff's Motion for Further Relief And Notice of Defendant Johnson's Non-Compliance with Court's May 8, 2025 (the "Motion"). Having considered the Motion relevant docket entries, and applicable law, the Court **GRANTS** the Motion.

- Defendant Charles Johnson shall, within **seven (7) days** of this Order, surrender all devices, accounts, and sources of electronically stored information identified in the May 8, 2025 Order (ECF No. 52) to a **neutral third-party vendor** agreed upon by the parties or, if no agreement is reached within those seven days, Plaintiff shall submit the issue to the Court with **ten (10) days** of this Order.

- The third-party vendor shall conduct searches using the Plaintiffs' May 15, 2025 search terms and collect all responsive documents. The vendor shall apply a privilege filter in accordance with the protocol previously provided by Plaintiffs and shall produce to Plaintiffs all non-privileged responsive documents.

- Defendant shall bear all costs of the vendor's collection, processing, and production efforts.

App.580

- Defendant shall also supplement his written discovery responses in compliance with Rule 34(b)(2)(C) within **ten (10) days** of this Order, identifying all sources searched, documents withheld, and the basis for any objections or privilege assertions.

- Defendant shall bear all fees and costs that Plaintiffs incurred in seeking all discovery in this case. Within **fourteen (14) days** of this order, Plaintiffs shall submit an itemized request for fees and costs

- To ensure compliance with these Order, the Court **SETS** an additional hearing on the matter for **June 19, 2025, at 2:00 pm**. Should it be discovered that Defendant Charles Johnson failed to comply with this Order, the Court will exercise its authority under 18 U.S.C. § 401, and Mr. Johnson **WILL** be arrested by the United States Marshals and held in custody until such time as he fully complies with the Court's Order and purges his contempt.

**SO ORDERED on this the 5th day of June 2025**.

Hon. Mark T. Pittman
United States District Judge

App.581

# EXHIBIT 17

1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF TEXAS

3                  FORT WORTH DIVISION

4   POINT BRIDGE CAPITAL, LLC    )    CASE NO. 4:24-CV-00988-P
    ET AL                        )
5                                )
                                 )    FORT WORTH, TEXAS
6   vs.                          )
                                 )    JUNE 18, 2025
7   CHARLES JOHNSON              )    2:20 P.M.

8                        VOLUME 1
               TRANSCRIPT OF SHOW CAUSE HEARING
9            BEFORE THE HONORABLE MARK T. PITTMAN
              UNITED STATES DISTRICT COURT JUDGE

10

11  **A P P E A R A N C E S:**

12  FOR THE PLAINTIFF:     WILLIAM BENNETT THOMPSON
                           DLA Piper, LLP US
13                         1900 N. Pearl Street
                           Suite 2200
14                         Dallas, Texas  75201
                           Telephone:  214.743.4500
15
    PRO SE DEFENDANT:      CHARLES JOHNSON
16                         1624 Fieldthorn Drive
                           Reston, Virginia  20194
17                         Telephone:  617.429.4718

18                         JOSHUA SMITH RHODES
                           DEVON JUDY SANDERS
19                         ASSISTANT FEDERAL PUBLIC DEFENDER
                           NORTHERN DISTRICT OF TEXAS
20                         819 Taylor Street, Room 9A10
                           Fort Worth, Texas  76102
21                         Telephone:  817.978.2753

22  COURT REPORTER:        MONICA WILLENBURG GUZMAN, CSR, RPR
                           501 W. 10th Street, Room 310
23                         Fort Worth, Texas  76102
                           Telephone:  817.850.6681
24                         E-Mail:  mguzman.csr@yahoo.com

25  Proceedings reported by mechanical stenography, transcript
    produced by computer.

1                           <u>**INDEX**</u>

2                                        PAGE   VOL.

3   Appearances ................................3     1

4

5   Miranda Rights Given .......................5     1

6

7   Discussion with the Court ..................6     1

8

9   Comments by the Court .....................10     1

10

11  Discussion with the Court .................11     1

12

13  Comments by the Court .....................14     1

14

15  Court's Ruling ............................15     1

16

17  Proceedings Adjourned .....................19     1

18

19  Reporter's Certificate ....................20     1

20

21

22

23

24

25

**P R O C E E D I N G S**

*(June 18, 2025, 2:20 p.m.)*

     *THE COURT:* All right. The next matter before the Court is the matter of Point Bridge Capital, LLC vs. Charles Johnson, this is Case Number 4:24-CV-988-P.

     We are here today on a motion *(sic)* that the Court had entered requiring Mr. Johnson to provide some information, that he's been twice ordered to do. And if he didn't provide that information, it was threatened that he would be held in contempt or face other sanctions by the Court; and that necessitated this hearing.

     Who do I have for the plaintiffs, Point Bridge Capital and Mr. Lambert?

     *MR. THOMPSON:* Good afternoon, Your Honor. Will Thompson for the plaintiffs, Point Bridge Capital and Mr. Lambert. And Mr. Lambert is with me at counsel table.

     *THE COURT:* All right. Thank you.

     And the Court has taken upon itself, due to the nature of this case, to appoint our public defender to help represent you with any criminal aspects of this case, Mr. Johnson.

     So, I need to do a couple of things. Number one, Mr. Johnson, state your full name on the record, identifying yourself --

     *DEFENDANT JOHNSON:* Sure.

| | |
|---|---|
| 1 | *THE COURT:*  -- here in the courtroom. |
| 2 | *DEFENDANT JOHNSON:*  Charles Carlisle Johnson. |
| 3 | *THE COURT:*  And don't interrupt me, or you're not |
| 4 | going to like it, all right? |
| 5 | *DEFENDANT JOHNSON:*  Yes, sir. |
| 6 | *THE COURT:*  And again, out of abundance of caution, |
| 7 | the Court thought it was necessary to make sure we don't |
| 8 | trample on any of the Constitutional rights of Mr. Johnson, I |
| 9 | have appointed two of our very capable public defenders to |
| 10 | represent you for any criminal act -- aspects of this case, |
| 11 | when it comes to holding you in contempt and whether I need to |
| 12 | jail you until you purge yourself of that contempt. |
| 13 | So, I'm ordering that Ms. Devon Sanders and |
| 14 | Mr. Joshua Rhodes, of our Public Defender's Office, be |
| 15 | appointed to represent you here at the hearing. |
| 16 | Would you-all enter your appearance, please? |
| 17 | Mr. Rhodes and Ms. Sanders, state your name for us. |
| 18 | *MR. RHODES:*  Joshua Rhodes for Mr. Johnson, Your |
| 19 | Honor. |
| 20 | *MS. SANDERS:*  And Devon Sanders on behalf of |
| 21 | Mr. Johnson as well. |
| 22 | *THE COURT:*  All right.  Have either of you or both |
| 23 | of you got a chance to visit with Mr. Johnson? |
| 24 | *MS. SANDERS:*  Yes, Your Honor. |
| 25 | *THE COURT:*  I don't know if I want to regurgitate |

```
1   the entire record in this case, but we've had a lot of issues

2   getting Mr. Johnson to comply with the Court's orders;

3   although he sure seems to make a lot of hay about them on his

4   various Substacks and internet postings and social media after

5   he leaves.

6        He's also got into a lot of trouble with the Judge

7   up in New York for not complying with her orders.  I know that

8   my very competent defense counsel have explained just how busy

9   we are over here and we don't like a lot of shenanigans.

10       Mr. Johnson, I don't know if you want to speak or do

11  you want to have your attorney speak for you.  I gave you your

12  Miranda warnings, I believe, at the last hearing, and I know

13  that you've probably been instructed on those, but I'll give

14  them to you again.

15       You do have the right to remain silent.  Anything

16  you say can and will be used against you in a court of law.

17  You have a right to speak with an attorney.  And you have a

18  right to have attorney present during questioning.  If you

19  cannot afford a lawyer, one will be provided for you at

20  Government expense.

21       I give you those warnings because I don't want you

22  to commit perjury; which it's a crime to do so.  But I do need

23  to ask you some questions under oath.  Now, what I'm

24  considering today would be civil contempt, not criminal

25  contempt.
```

1         The law provides that the Court has the option of

2    holding someone in civil contempt and holding them, in this

3    case, in our Johnson County jail until you're able to purge

4    yourself of the contempt.  It's a separate matter as to

5    whether you're able to answer my questions truthfully.

6    Because if you commit perjury, that in itself is a different

7    matter, that's a Federal crime, which you can be charged and

8    held in criminal contempt for that.

9         So, raise your right hand for me.

10              *(Defendant sworn)*

11         *THE COURT:*  All right.  Let me ask you a few

12    questions.

13         Have you provided the information that you were

14    supposed to to the third-party vendor?

15         *DEFENDANT JOHNSON:*  I have not, Your Honor.

16         *THE COURT:*  Okay.  Why didn't you do that?

17         *DEFENDANT JOHNSON:*  I recently instructed my

18    attorney in the other case to file an affidavit saying that I

19    was unable to afford E-discovery.  And it seems to me, that I

20    would be in violation -- if I couldn't afford it in one case,

21    I probably couldn't afford it in the other.  And --

22         *THE COURT:*  And you took it upon yourself to make

23    that decision without coming and telling me; is that correct?

24         *DEFENDANT JOHNSON:*  I did, Your Honor.

25         *THE COURT:*  Does that seem like a wise decision?

1          It almost seems like you want to have yourself
2    thrown in jail.
3          *DEFENDANT JOHNSON:*  It does not seem like a wise
4    decision, but it was a decision that I made.
5          *THE COURT:*  Well, I feel like we're on the tenth
6    verse of the same song here.
7          What are we on, Mr. Thompson, is this our third or
8    fourth hearing to impose sanctions to get these basic
9    discovery documents?
10          *MR. THOMPSON:*  Yes, Your Honor.
11          *THE COURT:*  What number are we on?
12          *MR. THOMPSON:*  I think we're on our third hearing
13    and multiple show cause orders.
14          *THE COURT:*  Nothing has been produced?
15          *MR. THOMPSON:*  No.  Let me just amend that, Your
16    Honor.  Prior to the plaintiffs filing their first motion to
17    compel, we did get sort of a thousand pages of duplicate
18    emails from the Gmail.  But since -- since Your Honor's
19    orders, nothing has been produced, Mr. Johnson has not engaged
20    with me.
21          I do want to say, I think he forwarded four or five
22    emails, but that was -- nothing has happened since our prior
23    hearing on June 5.  In our submission, I think we sent four or
24    five, six emails to him; he has not responded.
25          *THE COURT:*  Is that correct, Mr. Johnson?

1        *DEFENDANT JOHNSON:*  That is, Your Honor.

2        I have no objection to complying with discovery.  I

3    just don't think that --

4        *THE COURT:*  I've heard that twice, and you haven't

5    done anything.

6        *DEFENDANT JOHNSON:*  If I may, Your Honor?

7        *THE COURT:*  And you're giving me an illegitimate

8    excuse, all right?  The time is up.  I've ordered you twice to

9    do it.

10        *DEFENDANT JOHNSON:*  Your Honor --

11        *THE COURT:*  I don't have the patience for this.

12        *DEFENDANT JOHNSON:*  I did not receive a --

13        *THE COURT:*  You sat here and told me you made the

14    decision to comply with my order.

15        *DEFENDANT JOHNSON:*  No, Your Honor.  If I may?

16        *THE COURT:*  Briefly.

17        *DEFENDANT JOHNSON:*  Briefly.

18        I did not receive a cost estimate for the discovery

19    until, I think, Friday.  And the cost estimate that was

20    provided to me from the third-party vendor has no limit, has

21    no cap on the cost associated with it.  And that seems, to me,

22    to be rather -- rather crazy.  I mean, I --

23        *THE COURT:*  Well, you're involved in litigation,

24    which means you have to comply with my orders.  If you can't

25    financially do so, then you can choose not to defend the

1  lawsuit.

2  *DEFENDANT JOHNSON:*  I intend to do just that on the

3  mediation on the 23rd.

4  *THE COURT:*  I'm sorry, what does that have to do

5  with the cost of tea in China?  I'm talking about the order

6  before the Court.

7  *DEFENDANT JOHNSON:*  Yes, I understand, Your Honor.

8  So --

9  *THE COURT:*  And -- that you did not comply with.

10  *DEFENDANT JOHNSON:*  Your Honor --

11  *THE COURT:*  I entered an order that you comply with

12  it, whether you made a decision as to whether you could afford

13  it or not is irrelevant.

14  Do you understand?

15  *DEFENDANT JOHNSON:*  I do.

16  *THE COURT:*  So, you told me you made a conscious

17  decision, because you thought it might be too expensive not to

18  comply with my order that I've twice ordered you to do

19  something; is that correct?

20  *DEFENDANT JOHNSON:*  No, Your Honor.

21  It's -- the decision I made was made earlier, after

22  my attorney in the other case had filed something with the New

23  York court saying that I was unable to afford the rather high

24  discovery costs in that case.  So, I didn't want to be in a

25  situation in which I was saying I could afford it in the one

1  case and not the other.

2           So, what I suggest, Your Honor -- I have no

3  objection to the rather overbroad, kind of crazy research

4  terms.  They can -- they can comb through everything they

5  want, they can go to it, as long as a fishing expedition as

6  they see fit; I just don't want to have to pay for it.  And I

7  think that's --

8           *THE COURT:*  Sorry.  I ordered you to pay for it.

9  You don't have a choice in the matter.

10          If you don't like my decision, you can file a writ

11 of mandamus with the Fifth Circuit and see if they disagree

12 with me.  But I'm guessing they'll look at the record of all

13 the times you haven't been compliant with the Court's explicit

14 orders, and they'll probably agree with me.

15          You are becoming a drain on my resources, a drain on

16 the plaintiffs' resources.  Now I've had to use Government

17 resources to appoint two public defenders to advise you, and I

18 can assure you they have a heavy workload, too.  The two

19 marshals that are present that are prepared to take you under

20 arrest, are also going to have to take you down to the Johnson

21 County jail, which is about a two-hour round trip for them,

22 and that doesn't include booking you in.

23          So, you are a drain on the resources of everyone

24 else, and you continue to make these excuses which are not

25 valid.  So I'm left with a situation, what is the least severe

1    sanction that I can impose to try to get you to comply with

2    the orders?

3            I've also been informed by the mediator in this

4    case, Judge Evans, that shortly before the hearing today, you

5    did submit a mediation position paper; that was also in

6    violation of the orders, you were ordered to produce that

7    earlier.

8            I'm losing my patience.  This is a pattern of trying

9    to avoid the Court orders, making up excuses.  I don't have

10   patience for this anymore.

11           So, I'm trying to find a way to get you to comply.

12   Monetary sanctions don't work on you, admonishments don't work

13   on you.  The only tool that I can think of that might possibly

14   work, would be holding you until you purge yourself of your

15   contempt.  Which means you providing the information that's

16   twice been ordered for you to do related to the search terms.

17           Another choice that I have is, based on your

18   conduct, is just simply striking your pleadings and we go to

19   trial.

20           Are you prepared to go to trial and prove up your

21   damages, Mr. Thompson?

22           *MR. THOMPSON:*  Your Honor, no.

23           *THE COURT:*  No?

24           *MR. THOMPSON:*  No.  I mean, we need to know --

25           *THE COURT:*  Do you have to have this information to

1  prove up your damages?

2            MR. THOMPSON:  In part, yes, Your Honor.  And I'll

3  explain briefly why.  Part of this is we need to know the

4  scope of all the defamatory stuff he spread, how many

5  investors of Mr. Lambert --

6            THE COURT:  You don't -- you don't think that

7  Mr. Lambert and his colleagues and witnesses can prove up what

8  your damages are?

9            MR. THOMPSON:  I think we can -- we're just

10 scratching the tip of the surface, Your Honor.

11           THE COURT:  Well, had enough to file a lawsuit.

12           MR. THOMPSON:  Absolutely, Your Honor.  And we have

13 sufficient -- but we're just trying to understand what the

14 scope --

15           THE COURT:  You're never going to get this

16 information from him.  You're never going to get it.

17           MR. THOMPSON:  Your Honor --

18           THE COURT:  The only thing you're going to be able

19 to get is you're going to be able to get a judgment for

20 several million dollars, which you can prove up, and then go

21 and chase him.

22           And I can hold him in prison from now until Jesus

23 comes back, and I bet you're not going to get it.  This guy

24 does nothing but flaunt the Court's orders.  This Judge up in

25 New York, I don't know how she stands this.  It's beginning to

1    become a drain on my resources.  I'm giving you an opportunity
2    to get everything you want.
3            So now I need to consider how many days it's going
4    to take you to purge yourself of the contempt.  Are you
5    prepared to purge yourself of the contempt and provide all
6    that information today?
7            *DEFENDANT JOHNSON:*  I am, Your Honor.
8            *THE COURT:*  So you have all your devices ready?
9            *DEFENDANT JOHNSON:*  I have my cell phone, Your
10   Honor.  But my computer is at home.
11           *THE COURT:*  Okay.  And your home --
12           *DEFENDANT JOHNSON:*  And I'm happy to -- I understand
13   that Mr. Thompson --
14           *THE COURT:*  How fast can you have it flown down here
15   and given over to the third-party vendor?
16           *DEFENDANT JOHNSON:*  I don't know anyone that would
17   do that for me.
18           *THE COURT:*  Okay.  Well, you're going to have to try
19   to get that done between now and the next few days, because
20   you're about to be in jail.
21           *DEFENDANT JOHNSON:*  I understand that.
22           *THE COURT:*  And you'll stay in jail until you do
23   that.
24           My deputies, tell me, how long is it going to take
25   to process him in and get him down to Johnson County?

1    *THE MARSHAL:*  It will probably take an hour to

2    process him, Your Honor, and then another hour to get Johnson

3    up here for transport, and an hour down.

4    *THE COURT:*  Okay.  Let me take a break, and we'll

5    try to figure out the best way out of this.

6    *(Short recess taken)*

7    *THE COURT:*  The Court's back on the record in the

8    matter of Point Bridge Capital vs. Charles Johnson.  Y'all can

9    be seated.

10    The Court, after much deliberation, has tried to

11    determine what the best way to get compliance with the Court's

12    orders would be, what's the least severe sanction that I can

13    do to ensure a compliance.

14    I'll be quite frank with you, Mr. Johnson, based on

15    the material that's been submitted to me in support of some of

16    these pleadings, I think you want to get thrown in jail, I

17    really do, I think you want to be seen as a martyr.

18    You've been given every opportunity to comply with

19    my orders, and you refuse to do so.  I've got some news for

20    you, you're just a litigant like everybody else.  You cannot

21    continue wasting our time.  I don't want to throw you in jail,

22    and then you just tweet and make yourself a martyr, et cetera,

23    et cetera.

24    I think the best way, after having read the

25    affidavit that you filed up in the New York case, is to do the

1    following:  That would be to strike your pleadings, which

2    means you're not going to be allowed to put on a defense based

3    on your noncompliance with the Court orders.  I think that

4    this is the only thing that's going to be able to really get

5    the ball moving in this case.

6            If I were to throw you in jail, I would also run the

7    possibility of thwarting my colleague in New York's ability to

8    enforce her sanctions orders against you; several of those

9    remain pending.

10           You have admitted, at one of the earlier hearings,

11   that you had already begun destroying some of the evidence

12   that is responsive to plaintiffs' request.  I think, even if I

13   sent the marshals with you to New York to get your computer,

14   or Boston, or wherever, I'm sorry, I don't remember where

15   you're from, they would probably find most of the pertinent

16   information has already been destroyed or erased.

17           I don't believe anything you tell the Court.  Your

18   word cannot be trusted.  And this is not based on what I've

19   observed today, it's been a pattern over the last six months,

20   it's been a pattern in the New York case.  I have seen

21   multiple times where you've given the same excuses, the same

22   admonishments were given by the Court, I have no reason to

23   trust anything that you tell me.

24           I am left with no other choice than to strike your

25   pleadings.  I am ordering the parties to continue with the

1  mediation to occur in front of the Honorable David Evans on

2  Monday.  And I know the Judge will tell me if you-all are able

3  to reach any type of accommodation.  I'm not positive you

4  will, but I do want to give you an opportunity to try to

5  settle the case.

6        I'm also moving up the trial date.  We'll conduct

7  our trial in this case on Monday, July the 14th of 2025, at

8  9:00 a.m, at which time Point Bridge Capital can put on their

9  case and prove their damages.  The best thing for you-all is

10  to get your final judgment and move on; get ahead of who else

11  is out there.

12        Until this individual, I think, is brought up on

13  charges, Federal or state criminal charges, this type of

14  behavior is not going to change, okay?

15        *MR. THOMPSON:*  Understood, Your Honor.

16        *THE COURT:*  I also believe that it would be

17  beneficial for you-all to go to your mediation in front of

18  Judge Evans; you never know.

19        I do think that you are entitled to your attorney

20  fees; you've asked for them as part of the motion that led us

21  here today.  Would you like to prove up your attorney fees?

22  Because I will be ordering Mr. Johnson to pay those as part of

23  a sanction in this case.

24        *MR. THOMPSON:*  Yes, Your Honor.

25        And one point on that.  Tomorrow is our deadline to

1    submit the previous fees we were seeking.  If we could just

2    have one more week and we'll file one consolidated submission

3    on that.

4           *THE COURT:*  I'd like to have both of those by

5    Friday.  I'm ready to be done with this.

6           *MR. THOMPSON:*  Your Honor, we'll submit one single

7    submission -- consolidated submission on Friday.

8           *THE COURT:*  I want it by Friday.

9           *MR. THOMPSON:*  No problem.

10          *THE COURT:*  As soon as I get it, you're going to be

11   ordered to pay all of the attorney fees that plaintiffs have

12   incurred to bring these various motions.  And if you don't pay

13   those, you will be held in contempt.

14          So, I'm going to give you a date certain, once I

15   sign that order, for you to sign *(sic)* those.  So, you'll be

16   given a double whammy.  Not only have I struck your pleadings

17   so you cannot put on your defenses, but you will be subject to

18   paying those attorney's fees.  And if you don't, at that point

19   I will be holding you in contempt until you purge yourself,

20   and I'll be jailing you until you pay those.

21          But I'm not going to make you a martyr here today.

22   We're going to move on with this case, and then they'll get

23   their judgment against you, and they'll chase you from now

24   until the end of time until you pay it.

25          All right.  Any questions for me?

1      *MR. THOMPSON:*  No, Your Honor.

2      *DEFENDANT JOHNSON:*  No, Your Honor.

3      *THE COURT:*  All right.  I look forward to seeing

4  everybody on the 14th of July, at which time we'll be

5  conducting our trial in this case.

6        Ms. Sanders and Mr. Rhodes, thank you for your time

7  and attention and for volunteering to come over and represent

8  Mr. Johnson.  As always, you went above and beyond the call of

9  duty.

10        My marshals, thank you deputies for coming up here

11  today.  And we may need you again; so we'll let you know at

12  the next hearing if we have one.  Thank you, gentlemen.

13      *MR. RHODES:*  Your Honor, if I may, before we go off

14  the record.  Would you prefer, because we were appointed for

15  the limited purpose of today's hearing, for us to file a

16  motion to withdraw as counsel?

17      *THE COURT:*  I was just going to enter an electronic

18  order dismissing you, so you-all don't have to join us in

19  spending yet even more wasteful time and money and effort that

20  the United States Government could be using elsewhere.  So let

21  us do that for you.  Thank you all.

22      *MR. RHODES:*  Thank you, Your Honor.

23      *MS. SANDERS:*  Thank you, Your Honor.

24      *THE COURT:*  We'll see you at the next criminal

25  docket.

1        *MR. RHODES:*  I'm sure it will be sooner than we
2   prefer.
3        *THE COURT:*  I'm sure you're right.  Thank you.
4        All right.  Thank you, Mr. Thompson.
5        *MR. THOMPSON:*  Thank you, Your Honor.
6            *(Proceedings Adjourned)*
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    REPORTER'S CERTIFICATE

2

3        I, Monica Willenburg Guzman, CSR, RPR, certify

4   that the foregoing is a true and correct transcript from

5   the record of proceedings in the foregoing entitled matter.

6        I further certify that the transcript fees format

7   comply with those prescribed by the Court and the Judicial

8   Conference of the United States.

9        Signed this 25th day of June, 2025.

10

11                         /s/Monica Willenburg Guzman
                           Monica Willenburg Guzman, CSR, RPR
12                         Texas CSR No. 3386
                           NCRA No. 32278
13                         Official Court Reporter
                           The Northern District of Texas
14                         Fort Worth Division

15

16  CSR Expires:        7/31/2025

17  Business Address:   501 W. 10th Street, Room 310
                        Fort Worth, Texas  76102
18
    Telephone:          817.850.6681
19
    E-Mail Address:     mguzman.csr@yahoo.com
20

21

22

23

24

25

DEFENDANT JOHNSON: [24]
MR. RHODES: [4]  4/18 18/13 18/22 19/1
MR. THOMPSON: [16]  3/14 7/10 7/12 7/15 11/22 11/24 12/2 12/9 12/12 12/17 16/15 16/24 17/6 17/9 18/1 19/5
MS. SANDERS: [3]  4/20 4/24 18/23
THE COURT: [47]
THE MARSHAL: [1]  14/1

/

/s/Monica [1]  20/11

1

10th [2]  1/22 20/17
14th [1]  16/7 18/4
1624 [1]  1/16
18 [2]  1/6 3/2
1900 [1]  1/13

2

20194 [1]  1/16
2025 [5]  1/6 3/2 16/7 20/9 20/16
214.743.4500 [1]  1/14
2200 [1]  1/13
23rd [1]  9/3
25th [1]  20/9
2:20 [2]  1/7 3/2

3

310 [2]  1/22 20/17
32278 [1]  20/12
3386 [1]  20/12

4

4:24-CV-00988-P [1]  1/4
4:24-CV-988-P [1]  3/5

5

501 [2]  1/22 20/17

6

617.429.4718 [1]  1/17

7

7/31/2025 [1]  20/16
75201 [1]  1/14
76102 [3]  1/20 1/23 20/17

8

817.850.6681 [2]  1/23 20/18
817.978.2753 [1]  1/21
819 [1]  1/20

9

9:00 [1]  16/8
9A10 [1]  1/20

A

a.m [1]  16/8
ability [1]  15/7
able [6]  6/3 6/5 12/18 12/19 15/4 16/2
about [4]  5/3 9/5 10/21 13/20
above [1]  18/8
Absolutely [1]  12/12
abundance [1]  4/6
accommodation [1]  16/3

act [1]  4/19
Address [2]  20/17 20/19
Adjourned [1]  19/6
admitted [1]  15/10
admonishments [2]  11/12 15/22
advise [1]  10/17
affidavit [2]  6/18 14/25
afford [7]  5/19 6/19 6/20 6/21 9/12 9/23 9/25
after [4]  5/4 9/21 14/10 14/24
afternoon [1]  3/14
again [3]  4/6 5/14 18/11
against [3]  5/16 15/8 17/23
agree [1]  10/14
ahead [1]  16/10
AL [1]  1/4
all [20]  3/3 3/17 4/4 4/16 4/22 6/11 8/8 10/12 12/4 13/5 13/8 16/2 16/9 16/17 17/11 17/25 18/3 18/18 18/21 19/4
allowed [1]  15/2
almost [1]  7/1
already [2]  15/11 15/16
also [7]  5/6 10/20 11/3 11/5 15/6 16/6 16/16
although [1]  5/3
always [1]  18/8
am [3]  13/7 15/24 15/25
amend [1]  7/15
another [2]  11/17 14/2
answer [1]  6/5
any [5]  3/20 4/8 4/10 16/3 17/25
anymore [1]  11/10
anyone [1]  13/16
anything [4]  5/15 8/5 15/17 15/23
appearance [1]  4/16
appoint [2]  3/19 10/17
appointed [3]  4/9 4/15 18/14
are [15]  3/6 5/9 7/7 7/11 10/15 10/19 10/19 10/20 10/23 10/24 11/20 12/8 13/4 16/2 16/19
arrest [1]  10/20
ask [2]  5/23 6/11
asked [1]  10/20
aspects [2]  3/20 4/10
ASSISTANT [1]  1/19
associated [1]  8/21
assure [1]  10/18
attention [1]  4/10
attorney [8]  5/11 5/17 5/18 6/18 9/22 16/19 16/21 17/11
attorney's [1]  17/18
avoid [1]  11/9

B

back [2]  12/23 14/7
ball [1]  15/5
based [4]  11/17 14/14 15/2 15/18
basic [1]  7/8
be [34]
because [6]  5/21 6/6 9/17 13/19 16/22 18/14
become [1]  13/1
becoming [1]  10/15
been [12]  3/8 5/13 7/14 7/19 10/13 11/3 11/16 14/15 14/18 15/16 15/19 15/20
before [5]  1/9 3/3 9/6 11/4 18/13

beginning [1]  12/25
begun [1]  15/1
behalf [1]  4/20
behavior [1]  16/14
believe [5]  5/12 15/17 16/16
beneficial [1]  16/17
BENNETT [1]  1/12
best [4]  14/5 14/11 14/24 16/9
bet [1]  12/23
between [1]  13/19
beyond [1]  18/8
booking [1]  10/22
Boston [1]  15/14
both [2]  4/22 17/4
break [1]  14/4
BRIDGE [6]  1/4 3/4 3/12 3/15 14/8 16/8
briefly [3]  8/16 8/17 12/3
bring [1]  17/12
brought [1]  16/12
Business [1]  20/17
busy [1]  5/8

C

call [1]  18/8
can [18]  5/16 6/7 8/25 10/4 10/4 10/5 10/10 10/18 11/1 11/13 12/7 12/9 12/20 12/22 13/14 14/8 14/12 16/8
can't [1]  8/24
cannot [4]  5/19 14/20 15/18 17/17
cap [1]  8/21
capable [1]  4/9
CAPITAL [6]  1/4 3/4 3/13 3/15 14/8 16/8
Carlisle [1]  4/2
case [22]
cause [2]  1/8 7/13
caution [1]  4/6
cell [1]  13/9
certain [1]  17/14
CERTIFICATE [1]  20/1
certify [2]  20/3 20/6
cetera [2]  14/22 14/23
chance [1]  4/23
change [1]  16/14
charged [1]  6/7
charges [2]  16/13 16/13
CHARLES [5]  1/7 1/15 3/4 4/2 14/8
chase [2]  12/21 17/23
China [1]  9/5
choice [3]  10/9 11/17 15/24
choose [1]  8/25
Circuit [1]  10/11
civil [2]  5/24 6/2
colleague [1]  15/7
colleagues [1]  12/7
comb [1]  10/4
come [1]  18/7
comes [2]  4/11 12/23
coming [2]  6/23 18/10
commit [2]  5/22 6/6
compel [1]  7/17
competent [1]  5/8
compliance [2]  14/11 14/13
compliant [1]  10/13
comply [10]  5/2 8/14 8/24 9/9 9/11 9/18 11/1 11/11 14/18 20/7

**C**

**complying** [2]  5/7 8/2
**computer** [3]  1/25 13/10 15/13
**conduct** [2]  11/18 16/6
**conducting** [1]  18/5
**Conference** [1]  20/8
**conscious** [1]  9/16
**consider** [1]  13/3
**considering** [1]  5/24
**consolidated** [2]  17/2 17/7
**Constitutional** [1]  4/8
**contempt** [13]  3/10 4/11 4/12 5/24 5/25 6/2 6/4 6/8 11/15 13/4 13/5 17/13 17/19
**continue** [3]  10/24 14/21 15/25
**correct** [4]  6/23 7/25 9/19 20/4
**cost** [4]  8/18 8/19 8/21 9/5
**costs** [1]  9/24
**could** [4]  9/12 9/25 17/1 18/20
**couldn't** [2]  6/20 6/21
**counsel** [3]  3/16 5/8 18/16
**County** [3]  6/3 10/21 13/25
**couple** [1]  3/22
**court** [19]  1/1 1/9 1/22 3/4 3/6 3/10 3/18 4/7 5/16 6/1 9/6 9/23 11/9 14/10 15/3 15/17 15/22 20/7 20/13
**Court's** [5]  5/2 10/13 12/24 14/7 14/11
**courtroom** [1]  4/1
**crazy** [2]  8/22 10/3
**crime** [2]  5/22 6/7
**criminal** [6]  3/20 4/10 5/24 6/8 16/13 18/24
**CSR** [5]  1/22 20/3 20/11 20/12 20/16
**CV** [2]  1/4 3/5

**D**

**Dallas** [1]  1/14
**damages** [4]  11/21 12/1 12/8 16/9
**date** [2]  16/6 17/14
**David** [1]  16/1
**day** [1]  20/9
**days** [2]  13/3 13/19
**deadline** [1]  16/25
**decision** [9]  6/23 6/25 7/4 7/4 8/14 9/12 9/17 9/21 10/10
**defamatory** [1]  12/4
**defend** [1]  8/25
**DEFENDANT** [2]  1/15 6/10
**defender** [2]  1/19 3/19
**Defender's** [1]  4/14
**defenders** [2]  4/9 10/17
**defense** [2]  5/8 15/2
**defenses** [1]  17/17
**deliberation** [1]  14/10
**deputies** [2]  13/24 18/10
**destroyed** [1]  15/16
**destroying** [1]  15/11
**determine** [1]  14/11
**devices** [1]  13/8
**DEVON** [3]  1/18 4/13 4/20
**did** [6]  6/24 7/17 8/12 8/18 9/9 11/5
**didn't** [3]  3/8 6/16 9/24
**different** [1]  6/6
**disagree** [1]  10/11
**discovery** [5]  6/19 7/9 8/2 8/18 9/24
**dismissing** [1]  18/18
**DISTRICT** [5]  1/1 1/2 1/9 1/19 20/13

**DIVISION** [3]  1/3 20/14
**DLA** [1]  9/12
**do** [27]
**docket** [1]  18/25
**documents** [1]  7/9
**does** [4]  6/25 7/3 9/4 12/24
**doesn't** [1]  10/22
**dollars** [1]  12/20
**don't** [24]
**done** [3]  8/5 13/19 17/5
**double** [1]  17/16
**down** [4]  10/20 13/14 13/25 14/3
**drain** [4]  10/15 10/15 10/23 13/1
**Drive** [1]  1/16
**due** [1]  3/18
**duplicate** [1]  7/17
**during** [1]  5/18
**duty** [1]  18/9

**E**

**E-discovery** [1]  6/19
**E-Mail** [2]  1/24 20/19
**earlier** [3]  9/21 11/7 15/10
**effort** [1]  18/19
**either** [1]  4/22
**electronic** [1]  18/17
**else** [3]  10/24 14/20 16/10
**elsewhere** [1]  18/20
**emails** [3]  7/18 7/22 7/24
**end** [1]  17/24
**enforce** [1]  15/8
**engaged** [1]  7/19
**enough** [1]  12/11
**ensure** [1]  14/13
**enter** [2]  4/16 18/17
**entered** [2]  3/7 9/11
**entire** [1]  5/1
**entitled** [2]  16/19 20/5
**erased** [1]  15/16
**estimate** [2]  8/18 8/19
**et** [3]  1/4 14/22 14/23
**Evans** [3]  11/4 16/1 16/18
**even** [2]  15/12 18/19
**every** [1]  14/18
**everybody** [2]  14/20 18/4
**everyone** [1]  10/23
**everything** [2]  10/4 13/2
**evidence** [1]  15/11
**excuse** [1]  8/8
**excuses** [3]  10/24 11/9 15/21
**expedition** [1]  10/5
**expense** [1]  5/20
**expensive** [1]  9/17
**Expires** [1]  20/16
**explain** [1]  12/3
**explained** [1]  5/8
**explicit** [1]  10/13

**F**

**face** [1]  3/10
**fast** [1]  13/14
**FEDERAL** [3]  1/19 6/7 16/13
**feel** [1]  7/5
**fees** [6]  16/20 16/21 17/1 17/11 17/18 20/6
**few** [2]  6/11 13/19
**Fieldthorn** [1]  1/16

**Fifth** [1]  10/11
**figure** [1]  14/5
**file** [5]  6/18 10/10 12/11 17/2 18/15
**filed** [2]  9/22 14/25
**filing** [1]  7/16
**final** [1]  16/10
**financially** [1]  8/25
**find** [2]  11/11 15/15
**first** [1]  7/16
**fishing** [1]  10/5
**fit** [1]  10/6
**five** [2]  7/21 7/24
**flaunt** [1]  12/24
**flown** [1]  13/14
**following** [1]  15/1
**foregoing** [2]  20/4 20/5
**format** [1]  20/6
**FORT** [6]  1/3 1/5 1/20 1/23 20/14 20/17
**forward** [1]  18/3
**forwarded** [1]  7/21
**four** [2]  7/21 7/23
**fourth** [1]  7/8
**frank** [1]  14/14
**Friday** [4]  8/19 17/5 17/7 17/8
**front** [2]  16/1 16/17
**full** [1]  3/23
**further** [1]  20/6

**G**

**gave** [1]  5/11
**gentlemen** [1]  18/12
**get** [21]
**getting** [1]  5/2
**give** [4]  5/13 5/21 16/4 17/14
**given** [5]  13/15 14/18 15/21 15/22 17/16
**giving** [2]  8/7 13/1
**Gmail** [1]  7/18
**go** [6]  10/5 11/18 11/20 12/20 16/17 18/13
**going** [18]  4/4 10/20 12/15 12/16 12/18 12/19 12/23 13/3 13/18 13/24 15/2 15/4 16/14 17/10 17/14 17/21 17/22 18/17
**Good** [1]  3/14
**got** [3]  4/23 5/6 14/19
**Government** [3]  5/20 10/16 18/20
**guessing** [1]  10/12
**guy** [1]  12/23
**GUZMAN** [4]  1/22 20/3 20/11 20/11

**H**

**had** [6]  3/7 5/1 9/22 10/16 12/11 15/11
**hand** [1]  6/9
**happened** [1]  7/22
**happy** [1]  13/12
**has** [11]  3/18 6/1 7/14 7/19 7/19 7/22 7/24 8/20 8/20 14/10 15/16
**have** [39]
**haven't** [2]  8/4 10/13
**having** [1]  14/24
**hay** [1]  5/3
**he** [7]  3/8 3/9 5/3 5/5 7/21 7/24 12/4
**he's** [2]  3/8 5/6
**heard** [1]  8/4
**hearing** [10]  1/8 3/11 4/15 5/12 7/8

## H

**hearing... [5]** 7/12 7/23 11/4 18/12 18/15
**hearings [1]** 15/10
**heavy [1]** 10/18
**held [3]** 3/9 6/8 17/13
**help [1]** 3/19
**her [2]** 5/7 15/8
**here [11]** 3/6 4/1 4/15 5/9 7/6 8/13 13/14 14/3 16/21 17/21 18/10
**high [1]** 9/23
**him [7]** 7/24 12/16 12/21 12/22 13/25 13/25 14/2
**his [2]** 5/3 12/7
**hold [1]** 12/22
**holding [5]** 4/11 6/2 6/2 11/14 17/19
**home [2]** 13/10 13/11
**Honor [32]**
**Honor's [1]** 7/18
**HONORABLE [2]** 1/9 16/1
**hour [4]** 10/21 14/1 14/2 14/3
**how [6]** 5/8 12/4 12/25 13/3 13/14 13/24

## I

**I'd [1]** 17/4
**I'll [4]** 5/13 12/2 14/14 17/20
**I'm [18]** 4/13 5/23 9/4 9/5 10/12 10/25 11/8 11/11 13/1 13/12 15/14 16/3 16/6 17/5 17/14 17/21 19/1 19/3
**I've [7]** 8/4 8/8 9/18 10/16 11/3 14/19 15/18
**identifying [1]** 3/23
**illegitimate [1]** 8/7
**impose [2]** 7/8 11/1
**include [1]** 10/22
**incurred [1]** 17/12
**INDEX [1]** 2/1
**individual [1]** 16/12
**information [8]** 3/7 3/9 6/13 11/15 11/25 12/16 13/6 15/16
**informed [1]** 11/3
**instructed [2]** 5/13 6/17
**intend [1]** 9/2
**internet [1]** 5/4
**interrupt [1]** 4/3
**investors [1]** 12/5
**involved [1]** 8/23
**irrelevant [1]** 9/13
**is [30]**
**issues [1]** 5/1
**it [30]**
**it's [7]** 5/22 6/4 9/21 12/25 13/3 15/19 15/20
**itself [2]** 3/18 6/6

## J

**jail [9]** 4/12 6/3 7/2 10/21 13/20 13/22 14/16 14/21 15/6
**jailing [1]** 17/20
**Jesus [1]** 12/22
**JOHNSON [23]**
**join [1]** 18/18
**JOSHUA [3]** 1/18 4/14 4/18
**JUDGE [6]** 1/9 5/6 11/4 12/24 16/2 16/18
**judgment [3]** 12/19 16/10 17/23

**Judicial [1]** 20/7
**JUDY [1]** 1/18
**July [2]** 16/7 18/4
**JUNE [4]** 1/6 3/2 7/23 20/9
**just [12]** 5/8 7/15 8/3 9/2 10/6 11/18 12/9 12/13 14/20 14/22 17/1 18/17

## K

**kind [1]** 10/3
**know [11]** 4/25 5/7 5/10 5/12 11/24 12/3 12/25 13/16 16/2 16/18 18/11

## L

**Lambert [5]** 3/13 3/16 3/16 12/5 12/7
**last [2]** 5/12 15/19
**law [2]** 5/16 6/1
**lawsuit [2]** 9/1 12/11
**lawyer [1]** 5/19
**least [2]** 10/25 14/12
**leaves [1]** 5/5
**led [1]** 16/20
**left [2]** 10/25 15/24
**let [5]** 6/11 7/15 14/4 18/11 18/20
**like [10]** 4/4 5/9 6/25 7/1 7/3 7/5 10/10 14/20 16/21 17/4
**limit [1]** 8/20
**limited [1]** 18/15
**litigant [1]** 14/20
**litigation [1]** 8/23
**LLC [2]** 1/4 3/4
**LLP [1]** 1/12
**long [2]** 10/5 13/24
**look [2]** 10/12 18/3
**losing [1]** 11/8
**lot [4]** 5/1 5/3 5/6 5/9

## M

**made [6]** 7/4 8/13 9/12 9/16 9/21 9/21
**Mail [2]** 1/24 20/19
**make [4]** 4/7 5/3 6/22 10/24 14/22 17/21
**making [1]** 11/9
**mandamus [1]** 10/11
**many [2]** 12/4 13/3
**MARK [1]** 1/9
**marshals [3]** 10/19 15/13 18/10
**martyr [3]** 14/17 14/22 17/21
**material [1]** 14/15
**matter [7]** 3/3 3/4 6/4 6/7 10/9 14/8 20/5
**may [4]** 8/6 8/15 18/11 18/13
**me [22]**
**mean [2]** 8/22 11/24
**means [3]** 8/24 11/15 15/2
**mechanical [1]** 1/25
**media [1]** 5/4
**mediation [4]** 9/3 11/5 16/1 16/17
**mediator [1]** 11/3
**mguzman.csr [2]** 1/24 20/19
**might [2]** 9/17 11/13
**million [1]** 12/20
**Miranda [1]** 5/12
**Monday [2]** 16/2 16/7
**Monetary [1]** 11/12
**money [1]** 18/19
**MONICA [4]** 1/22 20/3 20/11 20/11
**months [1]** 15/19

**more [2]** 17/2 18/19
**most [1]** 15/15
**motion [4]** 3/6 7/16 16/20 18/16
**motions [1]** 17/12
**move [2]** 16/10 17/22
**moving [2]** 15/5 16/6
**Mr [26]**
**Ms [3]** 4/13 4/17 18/6
**much [1]** 14/10
**multiple [2]** 7/13 15/21
**my [17]** 5/8 6/5 6/17 8/14 8/24 9/18 9/22 10/10 10/15 11/8 13/1 13/9 13/10 13/24 14/19 15/7 18/10

## N

**name [2]** 3/23 4/17
**nature [1]** 3/19
**NCRA [1]** 20/12
**necessary [1]** 4/7
**necessitated [1]** 3/11
**need [7]** 3/22 4/11 5/22 11/24 12/3 13/3 18/11
**never [3]** 12/15 12/16 16/18
**New [7]** 5/7 9/22 12/25 14/25 15/7 15/13 15/20
**news [1]** 14/19
**next [4]** 3/3 13/19 18/12 18/24
**no [18]** 1/4 7/15 8/2 8/15 8/20 8/21 9/20 10/2 11/22 11/23 11/24 15/22 15/24 17/9 18/1 18/2 20/12 20/12
**noncompliance [1]** 15/3
**NORTHERN [3]** 1/2 1/19 20/13
**not [22]**
**nothing [4]** 7/14 7/19 7/22 12/24
**now [5]** 5/23 10/16 12/22 13/3 13/19 17/23
**number [3]** 3/5 3/22 7/11

## O

**oath [1]** 5/23
**objection [2]** 8/2 10/3
**observed [1]** 15/19
**occur [1]** 16/1
**off [1]** 18/13
**Office [1]** 4/14
**Official [1]** 20/13
**okay [5]** 6/16 13/11 13/18 14/4 16/14
**once [1]** 17/14
**one [10]** 3/22 5/19 6/20 9/25 15/10 16/25 17/2 17/2 17/16 18/12
**only [4]** 11/13 12/18 15/4 17/16
**opportunity [3]** 13/1 14/18 16/4
**option [1]** 6/1
**order [6]** 8/14 9/5 9/11 9/18 17/15 18/18
**ordered [7]** 3/8 8/8 9/18 10/8 11/6 11/16 17/11
**ordering [3]** 4/13 15/25 16/22
**orders [14]** 5/2 5/7 7/13 7/19 8/24 10/14 11/2 11/6 11/9 12/24 14/12 14/19 15/3 15/8
**other [6]** 3/10 6/18 6/21 9/22 10/1 15/24
**our [12]** 3/19 4/9 4/14 6/3 7/7 7/12 7/22 7/23 14/21 16/7 16/25 18/5
**out [4]** 4/6 14/5 14/5 16/11
**overbroad [1]** 10/3

**P**

p.m [2]  1/7 3/2
PAGE [1]  2/2
pages [1]  7/17
paper [1]  11/5
part [4]  12/2 12/3 16/20 16/22
parties [1]  15/25
party [3]  6/14 8/20 13/15
patience [3]  8/11 11/8 11/10
pattern [3]  11/8 15/19 15/20
pay [7]  10/6 10/8 16/22 17/11 17/12
  17/20 17/24
paying [1]  17/18
Pearl [1]  1/13
pending [1]  15/9
perjury [2]  5/22 6/6
pertinent [1]  15/15
phone [1]  13/9
Piper [1]  1/12
PITTMAN [1]  1/9
PLAINTIFF [1]  1/12
plaintiffs [4]  3/12 3/15 7/16 17/11
plaintiffs' [2]  10/16 15/12
pleadings [5]  11/18 14/16 15/1 15/25
  17/16
please [1]  4/16
point [8]  1/4 3/4 3/12 3/15 14/8 16/8
  16/25 17/18
position [1]  11/5
positive [1]  16/3
possibility [1]  15/7
possibly [1]  11/13
postings [1]  5/4
prefer [2]  18/14 19/2
prepared [3]  10/19 11/20 13/5
prescribed [1]  20/7
present [2]  5/18 10/19
previous [1]  17/1
prior [2]  7/16 7/22
prison [1]  12/22
PRO [1]  1/15
probably [5]  5/13 6/21 10/14 14/1
  15/15
problem [1]  17/9
proceedings [3]  1/25 19/6 20/5
process [2]  13/25 14/2
produce [1]  11/6
produced [3]  1/25 7/14 7/19
prove [6]  11/20 12/1 12/7 12/20 16/9
  16/21
provide [3]  3/7 3/8 13/5
provided [3]  5/19 6/13 8/20
provides [1]  6/1
providing [1]  11/15
public [5]  1/19 3/19 4/9 4/14 10/17
purge [4]  4/12 6/3 11/14 13/4 13/5
  17/19
purpose [1]  18/15
put [3]  15/2 16/8 17/17

**Q**

questioning [1]  5/18
questions [4]  5/23 6/5 6/12 17/25
quite [1]  14/14

**R**

raise [1]  6/9

rather [4]  8/22 8/22 9/23 10/3
reach [1]  16/3
read [1]  14/24
ready [2]  13/8 17/5
really [2]  14/17 15/4
reason [1]  15/22
receive [2]  8/12 8/18
receive a [1]  8/12
recently [1]  6/17
recess [1]  14/6
record [6]  3/23 5/1 10/12 14/7 18/14
  20/5
refuse [1]  14/19
regurgitate [1]  4/25
related [1]  11/16
remain [2]  5/15 15/9
remember [1]  15/14
reported [1]  1/25
REPORTER [2]  1/22 20/13
REPORTER'S [1]  19/7
represent [4]  3/20 4/10 4/15 18/7
request [1]  15/12
requiring [1]  3/7
research [1]  10/3
resources [5]  10/15 10/16 10/17
  10/23 13/1
responded [1]  7/24
responsive [1]  15/12
Reston [1]  1/16
RHODES [5]  1/18 4/14 4/17 4/18 18/6
right [14]  3/3 3/17 4/4 4/22 5/15 5/17
  5/18 6/9 6/11 8/8 17/25 18/3 19/3 19/4
rights [1]  4/8
Room [3]  1/20 1/22 20/17
round [1]  10/21
RPR [3]  1/22 20/3 20/11
run [1]  15/6

**S**

same [3]  7/6 15/21 15/21
sanction [3]  11/1 14/12 16/23
sanctions [4]  3/10 7/8 11/12 15/8
SANDERS [5]  1/18 4/13 4/17 4/20
  18/6
sat [1]  8/13
say [2]  5/16 7/21
saying [3]  6/18 9/23 9/25
scope [2]  12/4 12/14
scratching [1]  12/10
SE [1]  1/15
search [1]  11/16
seated [1]  14/9
see [3]  10/6 10/11 18/24
seeing [1]  18/3
seeking [1]  17/1
seem [2]  6/25 7/3
seems [4]  5/3 6/19 7/1 8/21
seen [2]  14/17 15/20
sent [2]  7/23 15/13
separate [1]  6/4
settle [1]  16/5
several [2]  12/20 15/8
severe [2]  15/24 16/12
she [1]  12/25
shenanigans [1]  5/9
Short [1]  14/6
shortly [1]  11/4

show [2]  1/8 7/13
sic [2]  3/6 17/15
sign [2]  17/15 17/15
Signed [1]  20/9
silent [1]  5/15
simply [1]  11/18
since [3]  7/18 7/18 7/22
single [1]  17/6
sir [1]  4/5
situation [2]  9/25 10/25
six [2]  7/24 15/19
SMITH [1]  1/18
social [1]  5/4
some [5]  3/7 5/23 14/15 14/19 15/11
someone [1]  6/2
something [2]  9/19 9/22
song [1]  7/6
soon [1]  17/10
sooner [1]  19/1
sorry [3]  9/4 10/8 15/14
sort [1]  7/17
speak [3]  5/10 5/11 5/17
spending [1]  18/19
spread [1]  12/4
stands [1]  12/25
state [3]  3/23 4/17 16/13
STATES [4]  1/1 1/9 18/20 20/8
stay [1]  13/22
stenography [1]  1/25
Street [4]  1/13 1/20 1/22 20/17
strike [2]  15/1 15/24
striking [1]  11/18
struck [1]  17/16
stuff [1]  12/4
subject [1]  17/17
submission [4]  7/23 17/2 17/7 17/7
submit [3]  11/5 17/1 17/6
submitted [1]  14/15
Substacks [1]  5/4
sufficient [1]  12/13
suggest [1]  10/2
Suite [1]  1/13
support [1]  14/15
supposed [1]  6/14
sure [5]  3/25 4/7 5/3 19/1 19/3
surface [1]  12/10
sworn [1]  6/10

**T**

table [1]  3/16
take [6]  10/19 10/20 13/4 13/24 14/1
  14/4
taken [2]  3/18 14/6
talking [1]  9/5
Taylor [1]  1/20
tea [1]  9/5
Telephone [5]  1/14 1/17 1/21 1/23
  20/18
tell [4]  13/24 15/17 15/23 16/2
telling [1]  6/23
tenth [1]  7/5
terms [2]  10/4 11/16
TEXAS [9]  1/2 1/5 1/14 1/19 1/20 1/23
  20/12 20/13 20/17
than [2]  15/24 19/1
thank [10]  3/17 18/6 18/10 18/12
  18/21 18/22 18/23 19/3 19/4 19/5

**T**

that [73]
that's [5]  6/7 10/7 11/15 14/15 15/4
their [4]  7/16 16/8 16/9 17/23
them [5]  5/3 5/14 6/2 10/21 16/20
then [5]  8/25 12/20 14/2 14/22 17/22
there [1]  16/11
these [4]  7/8 10/24 14/16 17/12
they [8]  10/4 10/4 10/4 10/5 10/6
10/11 10/18 15/15
they'll [4]  10/12 10/14 17/22 17/23
thing [3]  12/18 15/4 16/9
things [1]  3/22
think [16]  7/12 7/21 7/23 8/3 8/19 10/7
11/13 12/6 12/9 14/16 14/17 14/24
15/3 15/12 16/12 16/19
third [5]  6/14 7/7 7/12 8/20 13/15
third-party [3]  6/14 8/20 13/15
this [30]
THOMPSON [6]  1/12 3/15 7/7 11/21
13/13 19/4
those [10]  5/13 5/21 15/8 16/22 17/4
17/13 17/15 17/18 17/20 20/7
thought [2]  4/7 9/17
thousand [1]  7/17
threatened [1]  3/9
through [1]  10/4
throw [2]  14/21 15/6
thrown [2]  7/2 14/16
thwarting [1]  15/7
time [7]  8/8 14/21 16/8 17/24 18/4
18/6 18/19
times [2]  13/13 15/21
tip [1]  12/10
today [8]  3/6 5/24 11/4 13/6 15/19
16/21 17/21 18/11
today's [1]  18/15
told [2]  8/13 9/16
Tomorrow [1]  16/25
too [2]  9/17 10/18
took [1]  6/22
tool [1]  11/13
trample [1]  4/8
transcript [4]  1/8 1/25 20/4 20/6
transport [1]  14/3
trial [5]  11/19 11/20 16/6 16/7 18/5
tried [1]  14/10
trip [1]  10/21
trouble [1]  5/6
true [1]  20/4
trust [1]  15/23
trusted [1]  15/18
truthfully [1]  6/5
try [4]  11/1 13/18 14/5 16/4
trying [3]  11/8 11/11 12/13
tweet [1]  14/22
twice [5]  3/8 8/4 8/8 9/18 11/16
two [4]  4/9 10/17 10/18 10/21
two-hour [1]  10/21
type [2]  16/3 16/13

**U**

unable [2]  6/19 9/23
under [2]  5/23 10/19
understand [5]  9/7 9/14 12/13 13/12
13/21
Understood [1]  16/15

**UNITED [4]**  1/1 1/9 18/20 20/8
until [11]  4/12 6/3 8/19 11/14 12/22
13/22 16/12 17/19 17/20 17/24 17/24
up [14]  5/7 8/8 11/9 11/20 12/1 12/7
12/20 12/24 14/3 14/25 16/6 16/12
16/21 18/10
upon [2]  3/18 6/22
us [6]  1/12 4/17 16/20 18/15 18/18
18/21
use [1]  10/16
used [1]  5/16
using [1]  18/20

**V**

valid [1]  10/25
various [2]  5/4 17/12
vendor [6]  6/14 8/20 13/15
verse [1]  7/6
very [2]  4/9 5/8
violation [2]  6/20 11/6
Virginia [1]  1/16
visit [1]  4/23
VOL [1]  2/2
VOLUME [1]  1/8
volunteering [1]  18/7
vs [3]  1/6 3/4 14/8

**W**

want [15]  4/25 5/10 5/11 5/21 7/1 7/21
9/24 10/5 10/6 13/2 14/16 14/17 14/21
16/4 17/8
warnings [2]  5/12 5/21
was [11]  3/9 4/7 6/19 7/4 7/22 8/19
9/21 9/23 9/25 11/5 18/17
wasteful [1]  18/19
wasting [1]  14/21
way [4]  11/11 14/5 14/11 14/24
we [20]  3/6 4/7 5/9 5/9 7/7 7/11 7/17
7/23 11/18 11/24 12/3 12/9 12/12 17/1
17/1 18/11 18/12 18/13 18/14 19/1
we'll [7]  14/4 16/6 17/2 17/6 18/4
18/11 18/24
we're [5]  7/5 7/12 12/9 12/13 17/22
we've [1]  5/1
week [1]  17/2
well [5]  4/21 7/5 8/23 12/11 13/18
went [1]  18/8
were [6]  6/13 11/6 15/6 15/22 17/1
18/14
whammy [1]  17/16
what [10]  5/23 7/7 7/11 9/4 10/2 10/25
12/7 12/13 14/11 15/18
what's [1]  14/12
when [1]  4/11
where [2]  15/14 15/21
wherever [1]  15/14
whether [4]  4/11 6/5 9/12 9/12
which [11]  5/22 6/7 8/24 9/25 10/21
10/24 11/15 12/20 15/1 16/8 18/4
who [2]  3/12 16/10
why [2]  6/16 12/3
will [11]  3/14 5/16 5/19 14/1 16/2 16/4
16/22 17/13 17/17 17/19 19/1
WILLENBURG [4]  1/22 20/3 20/11
20/11
WILLIAM [1]  1/12
wise [2]  6/25 7/3

withdraw [1]  18/16
without [1]  6/23
witnesses [1]  12/7
word [1]  15/18
work [3]  11/12 11/12 11/14
workload [1]  10/18
WORTH [6]  1/3 1/5 1/20 1/23 20/14
20/17
would [13]  3/9 4/16 5/24 6/20 11/14
13/16 14/12 15/1 15/6 15/15 16/16
16/21 18/14
writ [1]  10/10

**Y**

Y'all [1]  14/8
yahoo.com [2]  1/24 20/19
yes [6]  4/5 4/24 7/10 9/7 12/2 16/24
yet [1]  18/19
York [6]  5/7 9/23 12/25 14/25 15/13
15/20
York's [1]  15/7
you [140]
you'll [2]  13/22 17/15
you're [17]  4/3 6/3 6/5 8/7 8/23 12/15
12/16 12/18 12/19 12/23 13/18 13/20
14/20 15/2 15/15 17/10 19/3
you've [4]  5/13 14/18 15/21 16/20
you-all [5]  4/16 16/2 16/9 16/17 18/18
your [59]
yourself [10]  3/24 4/12 6/4 6/22 7/1
11/14 13/4 13/5 14/22 17/19

# EXHIBIT 18

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC,
ET AL.,

    Plaintiffs,

v.                            No. 4:24-cv-00988-P

CHARLES JOHNSON,

    Defendant.

### ORDER TO SHOW CAUSE

On June 5, 2025, the Court held a hearing. Following that hearing, the Court scheduled a follow-up hearing for June 19, 2025, at 2:00 p.m. ECF No. 61. Because June 19 is a federal holiday on which the Courthouse will be close, the Court finds it appropriate to **RESCHEDULE** the hearing for **June 18, 2025, at 2:00 p.m.**, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse.

**SO ORDERED** on this **9th day of June 2025.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

App.609

# EXHIBIT 19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-00988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' JUNE 13, 2025 NOTICE OF DEFENDANT CHARLES JOHNSON'S
CONTINUED NON-COMPLIANCE WITH THE COURT'S ORDERS AND REQUEST
FOR FURTHER RELIEF TO COMPEL JOHNSON'S COMPLIANCE**

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully submit this Notice of Charles Johnson's Continued Non-Compliance with the Court's Orders and Request for Further Relief to Compel Johnson's Compliance.

**INTRODUCTION**

Despite the Court's clear directives in its May 8, 2025 (ECF No. 52) and June 5, 2025 (ECF No. 61) Orders—and the unambiguous instructions it delivered to Johnson during multiple hearings—he has not taken a single step toward compliance. Since the entry of the June 5th Order, Plaintiffs have sent Johnson six separate emails, each one professional, specific, and accommodating.

Plaintiffs gave Johnson everything he needed to comply. They proposed vendors, attached supporting documents, explained the process clearly, and offered to confer. Johnson refused to engage. He would not even provide the most basic detail: his location. Without it, the vendor cannot collect his devices, and the process cannot move forward. This request does not require legal training or out-of-pocket costs. It requires typing the name of a city. Johnson chose silence

1

App.611